1 | DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
2 |   kellisager@dwt.com
ALONZO WICKERS IV (State Bar No. 169454)
3 |   alonzowickers@dwt.com
LISA J. KOHN (State Bar No. 260236)
4 |   lisakohn@dwt.com
865 South Figueroa Street, Suite 2400
5 | Los Angeles, California 90017-2566
Telephone: (213) 633-6800 / Fax: (213) 633-6899
6 |
LOS ANGELES TIMES COMMUNICATIONS LLC
7 | KARLENE GOLLER (State Bar No. 147065)
  karlenegoller@latimes.com
8 | 202 West First Street
Los Angeles, California 90012
9 | Telephone: (213) 237-3760 / Fax: (213) 237-3810

10 | Attorneys for Defendants LOS ANGELES TIMES
COMMUNICATIONS LLC, MICHAEL HILTZIK, and
11 | STUART PFEIFER

12 |                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
13 |                         WESTERN DIVISION

| | |
|---|---|
| 14  1 800 GET THIN, LLC, | ) Case No. 2:11-CV-0505-ODW (Ex) |
|                Plaintiff, | ) Assigned to the Honorable |
| 15    vs. | ) Otis D. Wright II |
| 16  Michael Hiltzik, an individual; Los Angeles | ) |
| Times Communications, LLC; Stuart Pfeifer, | ) **TIMES DEFENDANTS'** |
| 17  an individual; SNAPSHOTS, an individual; | ) **NOTICE OF MOTION AND** |
| Adrian_Dallas, an individual; jkrischel, an | ) **MOTION TO DISMISS FIRST** |
| 18  individual; neoserf, an individual; paulmayer, | ) **AMENDED COMPLAINT;** |
| an individual; dalefogden, an individual; | ) **SUPPORTING MEMORANDUM** |
| 19  wtharvey, an individual; matt_powers, an | ) **OF POINTS AND** |
| individual; callcenterjohnny, an individual; | ) **AUTHORITIES; AND** |
| 20  Ebuckly, an individual; bigsouthern, an | ) **DECLARATION OF KELLI L.** |
| individual; OCChick, an individual; | ) **SAGER RE: LR 7-3** |
| 21  AllenGillespie, an individual; dhaettig, an | ) |
| individual; Baseballhead, an individual; | ) [Fed. R. Civ. P. 12(b)(6)] |
| 22  mattemons, an individual; JulyPostOp, an | ) |
| individual; DrBruin2, an individual; | ) Hearing Date: May 23, 2011 |
| 23  RUJoking?!, an individual; InstructorP, an | ) Time:            1:30 p.m. |
| individual; 1Friend, an individual; darmaggi, | ) Courtroom:    11 |
| 24  an individual; RamonaInCorona, an | ) |
| individual; dianne.m.daniels, an individual; | ) [Request For Judicial Notice With |
| 25  LAX.Prepster, an individual; Isabellel 106, | ) Declaration Of Lisa J. Kohn And |
| an individual; AlanSmythl, an individual; Ed | ) Exhibits 1-12 Filed Concurrently] |
| 26  Wood, an individual; | ) |
| KatherineLicariVenturoso, an individual; | ) |
| 27  Does 1-10, inclusive, | ) Action Filed: January 18, 2011 |
|                   Defendants. | ) |
| 28 | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, May 23, 2011, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Otis D. Wright II in Courtroom 11 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, defendants Los Angeles Times Communications, LLC, Michael Hiltzik, and Stuart Pfeifer ("Times Defendants") will and hereby do move to dismiss the First Amended Complaint ("FAC") filed by plaintiff 1 800 Get Thin, LLC ("plaintiff") and its single cause of action against the Times Defendants for purported violation of the federal Lanham Act. F.R.C.P. 12(b).

This Motion is made on the grounds that the Times Defendants' news reports and commentary about the controversy surrounding Lap-Band surgery and the ubiquitous 1-800-GET-THIN advertising campaign that promotes it does not provide any basis whatsoever for liability under the Lanham Act. Indeed, Plaintiff's First Amended Complaint does not attempt even to identify or describe precisely what the basis is for the Lanham Act claim it purports to bring against the Times Defendants, and simply recites phrases involving several different theories, no doubt in recognition of the fact that it has no basis for bringing <u>any</u> federal claim.

Instead, it is clear that plaintiff is misusing federal trademark law to evade the constitutional requirements for trade libel claims (which it also cannot satisfy), and to avoid California's anti-SLAPP statute (C.C.P. § 425.16, <u>et seq.</u>), which would apply to any state law libel claim. Thus, regardless of which aspect of the Lanham Act is considered, plaintiff's lawsuit fails. Specifically:

1.     Any trademark infringement claim fails because the Times Defendants' reference to "1-800-GET-THIN" in discussing the widespread billboards and other advertisements promoting Lap-Band

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

surgery was a nominative fair use, which cannot give rise to any Lanham Act claim.  See Section III.B, infra.[1]

2. If plaintiff is attempting to assert a claim for commercial disparagement claim under the Lanham Act, that independently fails for each of the following reasons:

    (a) The Times Defendants' news reports and commentary are beyond the scope of the Lanham Act, which limits disparagement claims to "commercial advertising and promotion."  See Section III.C.1, infra.

    (b) The First Amendment protects the Times Defendants' statements about plaintiff's marketing of Lap-Band surgery.  See Section III.C.2, infra.

    (c) Plaintiff cannot evade the pleading and proof requirements for a state law trade libel claim by disguising it as a violation of the Lanham Act.  In addition to the constitutional defenses for libel claims, plaintiff must specifically plead and prove special damages, which it has not and cannot do.  See Section III.C.3, infra.

4. To the extent plaintiff is attempting to assert a dilution claim, it is barred for two independent reasons:

    (a) The section of the Lanham Act that provides a claim for trademark dilution expressly exempts any form of news reporting and commentary, fair use, and noncommercial use; consequently, plaintiff's assertion of "dilution" arising from the

---

[1] To the extent plaintiff is attempting to state a claim of based on purported "consumer confusion" under some theory of false endorsement or false designation of origin, its claim is constitutionally barred, since "confusion" is not the measure for evaluating liability for any use of trademarks in expressive works, and plaintiff cannot satisfy the requisite First Amendment test.  Id.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Times Defendants' publications is barred. 15 U.S.C. § 1125(c). <u>See</u> Section III.D.1, <u>infra</u>.

   (b)   Any dilution claim also is barred because plaintiff has not and cannot allege that its unregistered mark had the requisite degree of fame required for this claim. <u>See</u> Section III.D.2, <u>infra</u>.

5.   Although plaintiff's FAC added Times reporter Stuart Pfeifer as an individual defendant, purportedly based on The Times' publication of articles by Mr. Pfeifer reporting on the Lap-Band surgery controversies, nothing in the FAC identifies <u>any</u> specific statements or implications in articles authored by Mr. Pfeifer that it claims are actionable, nor does it describe any other purportedly actionable conduct by him. For this additional reason, plaintiff's claim against Mr. Pfeifer should be dismissed.[2]

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Request for Judicial Notice With Declaration Of Lisa J. Kohn And Exhibits 1-12 and any other judicially-noticed materials; on all pleadings, files and records in this action; and on such other argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 20, 2011. <u>See</u> attached Declaration of Kelli L. Sager, ¶ 2.

---

[2] In addition to adding Mr. Pfeifer and Los Angeles Times Communications LLC as defendants, Plaintiff's FAC purported to add <u>twenty-nine</u> additional defendants who allegedly posted comments on The Times' website (and who are identified by the names used in those postings), and it asserts <u>twenty-nine</u> additional Lanham Act claims against these individuals. The very same defendants and statements are the basis for a pending defamation lawsuit in Los Angeles Superior Court. (<u>See</u> concurrently-filed Notice Of Related Cases.) The FAC does not set forth any cause of action against the Times Defendants arising from these posted comments, nor could it, given the immunity provided to web hosts under Section 230 of the Communications Decency Act. <u>See</u> 40 U.S.C. § 230(c)(1); <u>see also</u> Section note 11, <u>infra</u>.

3

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For each of these reasons, the Times Defendants respectfully request that the Court grant this Motion, and dismiss plaintiff's First Amended Complaint in its entirety as against the Times Defendants,[3] without leave to amend.[4]  The Times Defendants also intend to ask this Court to award them the attorneys' fees and costs incurred in defending against this meritless lawsuit.[5]

DATED:  April 25, 2011      DAVIS WRIGHT TREMAINE LLP
                            KELLI L. SAGER
                            ALONZO WICKERS IV
                            LISA J. KOHN

                            LOS ANGELES TIMES COMMUNICATIONS LLC
                            KARLENE GOLLER


                            By:_____s/ Kelli L. Sager_____
                                            Kelli L. Sager

                            Attorneys for Defendants LOS ANGELES TIMES
                            COMMUNICATIONS LLC, MICHAEL HILTZIK,
                            and STUART PFEIFER

---

[3] Although the twenty-nine new defendants are not represented here, the same deficiencies exist as to plaintiff's claims against these pseudononymous web posters.  Indeed, only two of the twenty-nine defendants even mention 1-800-GET-THIN in their comments, according to the statements identified in the FAC, yet each of the twenty-nine individuals have been sued for the same convoluted and duplicative Lanham Act claim.

[4] Plaintiff already has filed one amended complaint.  Moreover, where, as here, a claim is barred as a matter of law, and the legal defect in the claim cannot be cured, dismissal without leave to amend is appropriate.  See, e.g., Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990) (dismissing Lanham Act false advertising claim without leave to amend).

[5] The Lanham Act provides for an award of attorneys' fees and costs where, as here, a lawsuit is groundless, unreasonable, vexatious, and/or pursued in bad faith.  See 15 U.S.C. § 1117(a) (prevailing party under the Lanham Act is entitled to an award of attorneys' fees in "exceptional" cases); Stephen W. Boney, Inc. v. Boney Servs., 127 F.3d 821, 827 (9th Cir.1997) ("[w]hen a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional").  If the Court dismisses plaintiff's claim against the Times Defendants, they will file a separate motion for fees and costs.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

<u>Page</u>

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.   THE ISSUES PRESENTED IN THIS MOTION CAN AND SHOULD
      BE DECIDED AT THE PLEADING STAGE ....................................... 5

III.  THIS COURT SHOULD DISMISS PLAINTIFF'S LANHAM ACT
      CLAIM AGAINST THE TIMES DEFENDANTS. ............................... 8

      A.   Because The Times Defendants' Use Of Plaintiff's "Mark" Was
           A Nominative Fair Use, Any Trademark Infringement Claim
           Fails. ........................................................................................... 8

      B.   Any Claim Based On Purported "Consumer Confusion" About
           Plaintiff's Business Is Constitutionally Barred ............................. 11

      C.   Any Commercial Disparagement Claim Against The Times
           Defendants Fails As A Matter Of Law. ....................................... 14

           1.   The Times' News Articles And Columns Are Not
                "Commercial Advertising Or Promotion." ........................... 14

           2.   The Times Defendants' Use Of The "Mark" In
                News Reports Is Protected By The First
                Amendment ........................................................................ 16

           3.   Plaintiff Cannot Evade The Heightened Pleading
                Requirements For A State Law Trade Libel Claim
                By Disguising It As A Federal Claim ................................... 21

      D.   Plaintiff Cannot State A Dilution Claim. ..................................... 22

           1.   The Times Defendants' References To 1-800-GET-
                THIN Are Exempt From The Dilution Statute ...................... 22

           2.   Plaintiff Has Not And Cannot Allege That Its Mark
                Is Famous Within The Meaning Of The Lanham
                Act ..................................................................................... 24

IV.   CONCLUSION ................................................................................. 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**CASES**

Abrego v. Dow Chem. Co.,
  443 F.3d 676 (9th Cir. 2006) ...................................................................... 7

Ashcroft v. Iqbal,
  – U.S. –, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................... 6

Avery Dennison Corp. v. Sumpton,
  189 F.3d 868 (9th Cir. 1999) .................................................................... 24

Barry v. Time, Inc.,
  584 F. Supp. 1110 (N.D. Cal. 1984) .......................................................... 6

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 5, 6

Beverly Hills Surgery Center LLC, et al. v. Does 1 through 100,
  LA Superior Court Case No. BC436309 ..................................................... 1

Beverly Hills Surgery Center LLC, et al. v. Does 1 through 100,
  LA Superior Court Case No. BC451267 ..................................................... 1

Bigelow v. Virginia,
  421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222 (1975) ......................... 15

Blatty v. New York Times Co.,
  42 Cal. 3d 1033, 232 Cal. Rptr. 542, 728 P.2d 1177 (1986), cert. denied,
  485 U.S. 934, 99 L. Ed. 2d 268, 108 S. Ct. 1107 (1988) .................. 17, 18

Bolger v. Youngs Drug Products Corp.,
  463 U.S. 60, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983) ......................... 23

Bose Corp. v. Consumers Union of United States, Inc.,
  466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) ....................... 17

Braun v. Chronicle Publ. Co.,
  52 Cal. App. 4th 1036 (1997) ................................................................... 11

Burnett v. Twentieth Century Fox,
  491 F. Supp. 2d 962 (C.D. Cal. 2007) .......................................... 7, 13, 23

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Carafano v. Metrosplash.com, Inc.,*
  207 F. Supp. 2d 1055 (C.D. Cal. 2002) , aff'd. on other grounds, 339 F.3d
  1119 (9th Cir. 2003) ................................................................................. 4

*Cliff Notes, Inc. v. Bantam Doubleday Dell Publ'g Group,*
  886 F.2d 490 (2d Cir. 1989) ................................................................... 12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
  173 F.3d 725 (9th Cir. 1999)................................................... 14, 15, 18

*Comedy III Prods. v. New Line Cinema,*
  200 F.3d 593 (9th Cir. 2000) ................................................................. 13

*Cox Broadcasting v. Cohn,*
  420 U.S. 469 (1975) ............................................................................... 20

*Dombrowski v. Pfister,*
  380 U.S. 479, 85 S. Ct. 1116 (1965) ...................................................... 6

*Dorsey v. National Enquirer, Inc.,*
  973 F.2d 1431 (9th Cir. 1992)................................................................. 6

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,*
  444 F. Supp. 2d 1012 (C.D. Cal. 2006), aff'd, 547 F.3d 1095
  (9th Cir. 2008) ................................................................................. 12, 13

*Erlich v. Etner,*
  224 Cal. App. 2d 69, 36 Cal. Rptr. 256 (1964) ..................................... 22

*ETW Corp. v Jireh Publ'g.,*
  332 F.3d 915 (6th Cir. 2003)................................................................. 12

*Felix the Cat Prods. v. New Line Cinema,*
  54 U.S.P.Q.2d 1856 (C.D. Cal. 2000)................................................... 13

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.,*
  12 F. Supp. 2d 1068 (C.D. Cal. 1998).............................................17, 21

*Food Lion, Inc. v. Capital Cities/ABC, Inc.,*
  964 F. Supp. 956 (M.D.N.C. 1997)......................................................... 7

*Forsher v. Bugliosi,*
  26 Cal. 3d 792, 608 P.2d 716, 163 Cal. Rptr. 628 (1980)................... 18

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Franchise Realty Interstate Corp. v. San Francisco Local Jt. Exec. Bd. of
    Culinary Workers,
    542 F.2d 1076 (9th Cir. 1976) ................................................................. 6

General Motors Corp. v. New A.C. Chevrolet, Inc.,
    263 F.3d 296 (3d Cir. 2001) .................................................................. 6

Gentry v. eBay, Inc.
    99 Cal. App. 4th 816, 121 Cal. Rptr. 2d 703 (2002) .............................. 4

Gomes v. Fried,
    136 Cal. App. 3d 924, 186 Cal. Rptr. 605 (1982) ................................. 21

Gordon & Breach Science Publishers, Ltd. v. American Inst. of Physics,
    859 F. Supp. 1521 (S.D.N.Y. 1994) ................................................ 15, 16

Guess, Inc. v. Superior Court,
    176 Cal. App. 3d 473, 222 Cal. Rptr. 79 (1986) ................................. 21

Hasbro, Inc. v. Clue Computing, Inc.,
    66 F. Supp. 2d 117 (D. Mass. 1999), aff'd 232 F.3d 1 (1st Cir. 2000) ........... 24

Hoffman v. Capital Cities/ABC, Inc.,
    255 F.3d 1180 (9th Cir. 2001) ............................................................. 11

Hofmann Co. v. E.I. Du Pont de Nemours & Co.,
    202 Cal. App. 3d 390 (1988) .................................................................. 7

Hustler v. Falwell,
    485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) ........................... 17

Ileto v. Glock, Inc.,
    349 F.3d 1191 (9th Cir. 2003) ............................................................... 6

In re Silicon Graphics Securities Litig.,
    183 F.3d 970 (9th Cir. 1999) ................................................................. 7

In re Syntex Corp. Sec. Litig.,
    95 F.3d 922 (9th Cir. 1996) ................................................................... 6

Isuzu Motors Ltd. v. Consumers Union of U.S.,
    12 F. Supp. 2d 1035 (C.D. Cal. 1998) .................................................. 7

J.K. Harris & Co. v. Kassel,
    253 F. Supp. 2d 1120 (N.D. Cal. 2003) ......................................... 10, 11

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Julian Omidi v. Pfeifer, et al.,
    LA Superior Court Case No. BC458479 ............................................................. 1

Kahn v. Bower,
    232 Cal. App. 3d 1599, 284 Cal. Rptr. 244 (1991) ...................................... 18

Kent v. Universal Studios,
    C.D. Cal. No. CV08-2704 GAF (Aug. 15, 2008) .......................................... 13

L.L. Bean, Inc. v. Drake Publishers, Inc.,
    811 F.2d 26 (1st Cir. 1987) ........................................................................... 9

Mann v. Quality Old Time Serv., Inc.,
    120 Cal. App. 4th 90, 15 Cal. Rptr. 3d 215 (2004) ..................................... 22

Mann v. Quality Old Time Service, Inc.,
    139 Cal. App. 4th 328, 42 Cal. Rptr. 3d 607 (2006) .................................... 21

Mattel, Inc. v. MCA Records,
    296 F.3d 894 (9th Cir. 2002) ....................................................... 8, 12, 13, 23

Mattel Inc. v. Walking Mt. Prods.,
    353 F.3d 792 (9th Cir. 2003) .................................................................. 22, 23

Mead Data Central, Inc. v. Toyota Motor Sales, Inc.,
    875 F.2d 1026 (2d Cir. 1989) ...................................................................... 24

MGIC Indem. Corp. v. Weisman,
    803 F.2d 500 (9th Cir. 1986) ......................................................................... 7

Michael Omidi v. Hiltzik, et al.,
    LA Superior Court Case No. BC451424 ......................................................... 1

Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Co.,
    82 U.S.P.Q.2d 1583 (C.D. Cal. 2007) ......................................................... 25

Moldea v. New York Times Co.,
    22 F.3d 310 (D.C. Cir. 1994) ...................................................................... 17

New Kids on the Block v. News Am. Publications, Inc.,
    971 F.2d 302 (9th Cir. 1992) ................................................................ passim

New York Times Co. v. Sullivan,
    376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ......................... 16, 18

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Parrino v. FHP,
    146 F.3d 699 (9th Cir. 1998), superseded by statute on other grounds
    Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006)...................................7

Philadelphia Newspapers v. Hepps,
    475 U.S. 767, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986)...............................11

Playboy Enters. v. Welles,
    279 F.3d 796 (9th Cir. 2002)....................................................................10, 11

Pridonoff v. Balokovich,
    36 Cal. 2d 788, 228 P.2d 6 (1951)..................................................................21

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989)....................................................................12, 13

Schweitzer v. Scott,
    469 F. Supp. 1017 (C.D. Cal. 1979)..................................................................8

Sipple v. Foundation for National Progress,
    71 Cal. App. 4th 226 (1999).............................................................................20

Thomas v. Los Angeles Times Communications LLC,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002), aff'd without opinion, 45 Fed.
    Appx. 801 (9th Cir. Sept. 6, 2002) ................................................................18

Top Tobacco, L.P. v. North Atlantic Op. Co.,
    509 F.3d 380 ....................................................................................................24

Toyota Motor Sales, U.S.A., Inc. v. Tabari,
    610 F.3d 1171 (9th Cir. 2010)............................................................................9

Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.,
    964 F. Supp. 733 (S.D.N.Y. 1997)..................................................................25

United States ex rel. Robinson Rancheria Citizens Council v. Borneo,
    971 F.2d 244 (9th Cir. 1992).............................................................................7

Universal City Studios, Inc. v. Ideal Publ'g Corp.,
    195 U.S.P.Q. 761 (S.D.N.Y. 1977)..................................................................10

Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research,
    527 F.3d 1045 (10th Cir. 2008).........................................................................8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,
    425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) ..................................... 23

Vogel v. Felice,
    127 Cal. App. 4th 1006, 26 Cal. Rptr. 3d 350 (2005) ..................................... 17

WCVB-TV v. Boston Athletic Ass'n,
    926 F.2d 42 (1st Cir. 1991) ..................................................................... 10

Winter v. DC Comics,
    30 Cal. 4th 881 (2003) ........................................................................... 7

Wojnarowicz v. American Family Ass'n,
    745 F. Supp. 130 (S.D.N.Y. 1990) ............................................................ 15

Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.,
    809 F. Supp. 267 (S.D.N.Y. 1992) ............................................................ 12

**STATUTES**

15 U.S.C. § 1125(a) ............................................................................ passim

15 U.S.C. § 1125(a)(1) ............................................................................ 14

15 U.S.C. § 1125(c) ............................................................................ 4, 24

15 U.S.C. § 1125(c)(2)(A) ....................................................................... 24

15 U.S.C. § 1125(c)(2)(C) ....................................................................... 22

15 U.S.C. § 1125(c)(3) ........................................................................... 23

15 U.S.C. § 1125(c)(3)(B) ....................................................................... 23

15 U.S.C. § 1125(c)(3)(C) ....................................................................... 23

15 U.S.C. § 1125(c)(4)(A) ....................................................................... 10

47 U.S.C. § 230(c)(1) ............................................................................. 4

47 U.S.C. § 230(e)(3) ............................................................................. 4

California Civil Code § 47(d) ................................................................... 20

California Code of Civil Procedure § 425.16 ............................................. 2, 21

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**RULES**

Federal Rule of Civil Procedure 12(b)(6)........................................................ 5, 6, 13

Federal Rule of Evidence 201 ................................................................... 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment................................................ passim

**OTHER AUTHORITIES**

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 24:67 ...................................................................... 24

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 24:127 ..................................................................... 23

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 24:105 ..................................................................... 22

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 27:100 ..................................................................... 18

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 27:95 ...................................................................... 14

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2008), § 27:96.10 ................................................................... 5

Remarks of Rep. Kastenmeier on S. 1883, 134 Cong. Rec. 31850-52 (Oct. 19,
1988), 134 Cong. Rec. H 10420 (daily ed. Oct. 19, 1988) ................................. 14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

Plaintiff 1 800 GET THIN, LLC, is an entity whose only purpose appears to be the marketing of controversial Lap-Band weight-loss surgery. This case is one of at least <u>five</u> pending lawsuits brought by individuals and entities connected to the ubiquitous "1-800-Get-Thin" advertising campaign promoting Lap-Band surgery, which has blanketed Southern California with billboards, radio and television spots, and other ads.[6] Brothers Julian and Michael Omidi, whose surgery centers have been the subject of news articles and commentaries published in the Los Angeles Times, have responded aggressively through their counsel to any news coverage or commentary that raises questions about the saturation advertising used to entice overweight individuals to undergo the surgery, or that reports on the deaths of patients who underwent Lap-Band surgery at facilities connected to the 1-800-Get-Thin advertising campaign.[7]

In this lawsuit, the "marketing company" that operates under the 1 800 Get Thin name has sued the Los Angeles Times ("The Times") and two of its reporters

_____

[6] These lawsuits include the following: <u>Michael Omidi v. Hiltzik, et al.</u>, LA Superior Court Case No. BC451424 (pending); <u>Julian Omidi v. Pfeifer, et al.</u>, LA Superior Court Case No. BC458479 (pending); and <u>Beverly Hills Surgery Center LLC, et al. v. Does 1 through 100</u>, LA Superior Court Case No. BC451267 (pending). A fifth lawsuit, <u>Beverly Hills Surgery Center LLC, et al. v. Does 1 through 100</u>, LA Superior Court Case No. BC436309, was voluntarily dismissed in December 2010, and the virtually identical lawsuit listed above (also brought by Beverly Hills Surgery Center) was filed, in what appears to be a classic case of judge-shopping . <u>See</u> concurrently-filed Notice Of Related Cases. The FAC here makes numerous references to purportedly "false" statements about unnamed individuals, without identifying the Omidis by name, or mentioning the other lawsuits involving those same assertions.

[7] A detailed description of the connections between the Omidi brothers, 1 800 Get Thin, LLC, and the surgical centers is contained in a lawsuit filed by family members of two decedents. <u>See</u> concurrently-filed Request For Judicial Notice ("RJN") and Exh. 9. The agent for service of process for 1 800 Get Thin, LLC is Robert Silverman – plaintiff's counsel in this action and in the related state court lawsuits. RJN, Exh. 11. Mr. Silverman, in the meet-and-confer discussion about this Motion, refused to identify the principals for 1 800 Get Thin, LLC. <u>See</u> concurrently-filed Declaration of Kelli L. Sager at ¶ 6.

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and columnists, Michael Hiltzik ("Mr. Hiltzik") and Stuart Pfeifer ("Mr. Pfeifer") (collectively, "Times Defendants"), for purported violations of the federal Lanham Act.  Notably, plaintiff's "Lanham Act" claim is based <u>solely</u> on articles and commentary published in the Los Angeles Times and on the latimes.com website. FAC ¶¶ 38-40, 77-87.  Plaintiff's FAC does not identify any particular claim under the Act that is being alleged, and conflates language relating to a variety of different claims, ranging from false endorsement to dilution.  <u>See, e.g.</u>, FAC ¶¶ 82, 84, 88, 92.  This deliberate obfuscation seeks to disguise the inherent defect in plaintiff's lawsuit:  the Lanham Act is designed to protect owners of registered trademarks from having their marks used on products in a manner that might confuse consumers as to the source or origin of the goods, or from having their marks tarnished or diluted by competitors using the same or similar marks.  The Act was <u>never</u> intended to prevent journalists from <u>writing</u> about trademarked products or services, nor was it intended to supplant state trade libel law, which has specific, strict threshold requirements under the First Amendment and state law.[8]

Nonetheless, in a transparent attempt to avoid these requirements, and also to evade California's anti-SLAPP statute, Code of Civil Procedure § 425.16 <u>et seq.</u>, which would be applied to any state law claim arising from the Times Defendants' free-speech activity, plaintiff has disingenuously captioned its claim as one under the Lanham Act.  As set forth below, however, both the Act itself and controlling case law flatly prohibit this radically broad application of Section 43(a) to constitutionally protected speech.  Thus, regardless of whether plaintiff tries to

---

[8] Given the inherent defects in the FAC, it appears to have been drafted primarily as a vehicle for plaintiff to recite a litany of criticisms and <u>ad hominem</u> attacks on Mr. Hiltzik.  The bulk of the allegations in the FAC have no bearing whatsoever on this lawsuit.  The reader must wade through seventeen pages before finding the <u>sole</u> basis identified for the Lanham Act claim against the Times Defendants – two statements found in one column by Michael Hiltzik.  FAC, ¶¶ 79-80.  Although the FAC mentions seven other columns and articles, including articles authored by Mr. Pfeifer, <u>there is not a single other statement identified</u> that plaintiff claims gives rise to its spurious "Lanham Act" claim.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fashion its claim as one for trademark infringement, commercial disparagement, or dilution, it fails as a matter of law.

First, as the Ninth Circuit has recognized, cases like this, which involve the nominative use of a trademark, "are best understood as involving a non-trademark use of a mark – a use to which the infringement laws simply do not apply." New Kids on the Block v. News Am. Publications, Inc., 971 F.2d 302, 307 (9th Cir. 1992). Thus, the use of trademarks in news reporting and commentary do not give rise to any "trademark" claim as a matter of law. See Section III.A, infra.[9]

Second, plaintiff cannot state a claim for commercial disparagement under the Lanham Act, because the Times Defendants' statements about the 1-800-GET-THIN marketing campaign were not made in the context of commercial advertising and promotion, as required to state such a claim under the Lanham Act. In addition, such a claim is independently barred by the First Amendment, because plaintiff cannot demonstrate that the Times Defendants published any false and defamatory statements of fact about plaintiff's services, as the constitution requires.[10]

In particular, plaintiff's claim asserts that four columns authored by Mr. Hiltzik (Exhs. 1-4) and three articles published under Mr. Pfeifer's byline (Exhs. 5-8) "caused members of the public to believe Plaintiff ... operate[s] medical

---

[9] Plaintiff's oblique references to "consumer confusion" about the "origin or approval" of plaintiff's business (FAC ¶ 88), suggests that the FAC is attempting to assert some kind of false endorsement or false designation of origin claim. Plaintiff's counsel conceded during the April 20 meet-and-confer session that no such claim is intended. Sager Decl., ¶ 4. Instead, claims arising from the use of trademarks in expressive works are governed by the First Amendment, which does not permit claims based on the vagaries of alleged "consumer confusion." Under well-established law, plaintiff would have to prove that the reference to the alleged trademark by the Times Defendants was wholly irrelevant to the articles and columns in which it appeared, and that those publications included an express false endorsement – which is nonsensical in the context of the articles and columns at issue. See Section III.B, infra.

[10] Moreover, because the articles and commentary plaintiff complains of concern official government proceedings and records, including records from the state Medical Board, The Times' publications are protected under federal and state "fair report" privileges. See note 25, infra.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

facilities and is engaged in conducting medical services." FAC ¶ 90.  But the <u>only</u> two statements identified by plaintiff cannot conceivably be read to give rise to this implication, nor is there anything else in The Times' articles and columns referenced in the FAC that could give rise to any claim by plaintiff.  Indeed, what plaintiff appears to complain about is being associated with the very surgical centers and procedures that it advertises!  But there is no dispute that plaintiff is the marketing agent, as thousands of billboards and advertisements with the "1-800-GET-THIN" logo attest.  Regardless of the label used, this Court should find that plaintiff's claim is a baseless claim for trade libel – which not only fails on its merits, since plaintiff cannot meet the constitutional and statutory prerequisites, but which does not provide plaintiff with any basis for federal court jurisdiction.[11]

    <u>Third</u>, to the extent plaintiff is attempting to state a claim for trademark dilution, that also fails, since the explicit terms of the statute prohibit claims based on (1) "a <u>nominative or descriptive fair use</u> … in connection with … identifying and … criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner," (2) "[a]ll forms of <u>news reporting and news commentary</u>," and (3) "[a]ny <u>noncommercial use of a mark</u>."  15 U.S.C. § 1125(c) (emphasis added).[12]  Independently, any dilution claim is barred because plaintiff,

---

[11]  Although the FAC also includes allegations against twenty-nine other defendants based on comments posted on The Times' website, plaintiff does not allege any cause of action against the Times Defendants based on these postings, nor could it, given the immunity provided by Section 230 of the Communications Decency Act.  47 U.S.C. 230(c)(1) ("[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider").  The statute prohibits the imposition of liability by any state or local law "inconsistent with this section."  47 U.S.C. 230 (e)(3).  A website operator (like The Times) has been deemed to be a provider of an interactive computer service under Section 230(c)(1).  <u>See, e.g.</u>, <u>Gentry v. eBay, Inc.</u> 99 Cal. App. 4th 816, 831, n.7, 121 Cal. Rptr. 2d 703 (2002); <u>Carafano v. Metrosplash.com, Inc.</u>, 207 F. Supp. 2d 1055, 1066  (C.D. Cal. 2002) , <u>affd. on other grounds</u>, 339 F.3d 1119 (9th Cir. 2003).

[12]  Plaintiff's counsel conceded during the meet-and-confer that the statute expressly bars any dilution claim, making the repeated references to "dilution" in the FAC entirely gratuitous.  Sager Decl. ¶ 5.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which purports to be "in the process of registering 1 800 GET THIN as a federally protected trademark" (FAC ¶ 37), has not alleged and cannot establish that its mark has acquired the requisite fame to state a claim for dilution.  <u>See</u> Section III.D.2, <u>infra</u>.

Plaintiff's lawsuit against the Times Defendants is a sham pleading, brought by the same attorney who has filed several other lawsuits in an attempt to intimidate a local newspaper and its reporters from commenting on the lucrative and pervasive Lap-Band surgery business operated by the Omidi brothers and the pervasive marketing campaign using 1-800-GET-THIN.  As one commentator has warned, "[t]he mere threat or filing of a product disparagement lawsuit under § 43(a) can itself have an effective chilling effect on both the defendant commentator and others who see what happens to one who expresses an opinion unpopular with a business entity." 4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> ("<u>McCarthy</u>") (4th ed. 2008) § 27:96.10.[13]  Because plaintiff's Lanham Act claim is entirely without merit, this Court should grant the Times Defendants' motion to dismiss plaintiff's lawsuit against them in its entirety, without leave to amend.

## II.  THE ISSUES PRESENTED IN THIS MOTION CAN AND SHOULD BE DECIDED AT THE PLEADING STAGE

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  Dismissal is warranted if no relief could be granted under any set of facts that could be proved consistent with the allegations.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In making this determination, the court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party.

---

[13] Plaintiff also has filed another federal lawsuit (<u>see</u> Notice Of Related Cases), and an administrative complaint against Dr. Jonathan E. Fielding, Los Angeles County's top health official, arising from Dr. Fielding's comments criticizing Lap-Band surgery and the 1-800-GET-THIN advertising campaign promoting the surgery.  RJN, Exh. 10.

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996); Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (a court should "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations"); see also General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001) ("minimalist, conclusory allegations … do not suffice to cross the 12(b)(6) threshold"). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Twombly, 550 U.S. at 556).

Stricter standards also must be applied at the pleading stage to claims, like plaintiff's claims here, that arise from the exercise of First Amendment rights. As the United States Supreme Court has noted, "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S. Ct. 1116 (1965). Accordingly, the Ninth Circuit has recognized the need for more specific pleading in cases that threaten to chill First Amendment rights, and has affirmed the dismissal of claims that fail to meet this exacting standard. See, e.g., Franchise Realty Interstate Corp. v. San Francisco Local Jt. Exec. Bd. of Culinary Workers, 542 F.2d 1076, 1083 (9th Cir. 1976) (in cases involving First Amendment rights, "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required"); see also Barry v. Time, Inc., 584 F. Supp. 1110, 1121 (N.D. Cal. 1984) ("the potential chilling effects of harassing litigation concerning the first amendment," court granted motion to dismiss on grounds that allegations of actual malice were not plead "with sufficient specificity").[14]

---

[14] Where, as here, a defendant's First Amendment rights are implicated, dismissal at the pleading stage is favored. See, e.g., Dorsey v. National Enquirer, Inc., 973 F.2d 1431, 1435 (9th Cir. 1992) ("speedy resolution" at the "earliest

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In ruling on a motion to dismiss, this Court may consider not only the plaintiff's allegations, but also materials on which the plaintiff's complaint necessarily relies, even if not attached to the complaint.  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds, Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006); see also In re Silicon Graphics Securities Litig., 183 F.3d 970, 986 (9th Cir. 1999) (under federal rules, court may consider documents "whose contents are alleged in the complaint and whose authenticity no party questions" even where plaintiff does not attach the documents to the complaint); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (court may rely on materials that are properly the subject of judicial notice). For example, in Burnett v. Twentieth Century Fox, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007), the court granted defendants' motion to dismiss plaintiff's Lanham Act claims after reviewing television program that formed the basis of lawsuit).  See also Isuzu Motors Ltd. v. Consumers Union of U.S., 12 F. Supp. 1035, 1042 (C.D. Cal. 1998) (taking judicial notice under Federal Rule of Evidence 201 of "publication of various newspapers and television programs"); Food Lion, Inc. v. Capital Cities/ABC, Inc., 964 F. Supp. 956, 964 n.5 (M.D.N.C. 1997) (taking judicial notice of a report that aired on television newsmagazine "[b]ecause [the broadcast] was publicly disseminated [and was thus] 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"); Hofmann Co. v. E.I. Du Pont de Nemours & Co., 202 Cal. App. 3d 390, 395 n.3 (1988) (judicial notice of newspaper article that was basis of plaintiff's defamation claim).[15]

---

stage" of a case is essential for cases involving First Amendment to avoid chilling expression); Winter v. DC Comics, 30 Cal. 4th 881, 891 (2003) (same).

[15] The Court also can take judicial notice of court records and other official documents.  See MGIC Indem. Corp. v. Weisman, 803 F. 2d 500, 504 (9th Cir. 1986) (taking judicial notice of a motion to dismiss and memorandum of points and authorities filed in another action); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation and internal

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's single cause of action against the Times Defendants purports to arise from The Times' articles and columns that use the term "1-800-GET-THIN" in describing a pervasive marketing campaign for Lap-Band surgery. Although plaintiff chose not to attach these news reports and columns to the FAC, this Court may consider these materials – as well as any other judicially noticeable documents – in evaluating the legal arguments set forth in this motion. See RJN, Exhs. 1-8.

## III. THIS COURT SHOULD DISMISS PLAINTIFF'S LANHAM ACT CLAIM AGAINST THE TIMES DEFENDANTS.

As set forth below, plaintiff cannot state any claim against the Times Defendants under the Lanham Act. Consequently, plaintiff's FAC, and the only cause of action against these defendants, should be dismissed with prejudice.

### A. Because The Times Defendants' Use Of Plaintiff's "Mark" Was A Nominative Fair Use, Any Trademark Infringement Claim Fails.

"[T]he primary focus of trademark law has been misappropriation – the problem of one producer's placing his rival's mark on his own goods." New Kids, 971 F.2d at 305. Because of the potential threat to constitutionally protected speech, Congress and reviewing courts have made quite clear that "the Lanham Act is intended to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses." Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research, 527 F.3d 1045, 1052 (10th Cir. 2008) (internal quotation marks and citation omitted). As the Ninth Circuit has explained, "[t]he First Amendment may offer little protection for a competitor who labels its commercial good with a confusingly similar mark, but 'trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" Mattel, Inc. v. MCA Records,

---

quotes omitted); Schweitzer v. Scott, 469 F. Supp. 1017, 1020 (C.D. Cal. 1979) (taking judicial notice of court records filed in other civil actions).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

296 F.3d 894, 900 (9th Cir. 2002) (quoting <u>L.L. Bean, Inc. v. Drake Publishers, Inc.</u>, 811 F.2d 26, 29 (1st Cir. 1987)).

In particular, "nominative uses" of a trademark, <u>i.e.</u>, use of a mark to identify or refer to the mark holder's product or service, do not give rise to any cause of action under trademark law. Nominative uses thus fall outside the scope of activities prohibited by the Lanham Act. The Ninth Circuit acknowledged these bedrock trademark principles in <u>New Kids</u>, 971 F.2d 302, and held that a permissible, nominative use of another's mark exists where (1) the product or service in question is not readily identifiable without use of the trademark; (2) only so much of the mark or marks is used as is reasonably necessary to identify the product or service; and (3) the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. <u>Id.</u> at 308. "[I]f the nominative use satisfies the three-factor <u>New Kids</u> test, it doesn't infringe." <u>Toyota Motor Sales, U.S.A., Inc. v. Tabari</u>, 610 F.3d 1171, 1176 (9th Cir. 2010).

In <u>New Kids</u>, the plaintiffs – a rock band – asserted that two newspapers had violated the band's trademark rights by using it in a poll and in articles publishing the results of the poll. 971 F.2d at 304. The poll asked the public to vote for their favorite New Kids band member by calling a 900 telephone number, for which consumers were charged fifty cents per call. <u>Id.</u> The band claimed that use of its trademark implied that it sponsored or approved the poll, and therefore constituted trademark infringement, unfair competition, and false advertising. <u>Id.</u> at 308.

The Ninth Circuit rejected all of the band's claims, finding that the newspapers' use of the NEW KIDS trademark fell outside the scope of any conduct prohibited by the trademark laws. <u>Id.</u> at 308-09. As the court explained, "[i]t is no more reasonably possible ... to refer to the New Kids as an entity than it is to refer to the Chicago Bulls, Volkswagens or the Boston Marathon without using the trademark." <u>Id.</u> at 308. Nothing about the poll falsely claimed, or even suggested, that the band sponsored or endorsed the poll; as the court held, the newspapers'

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"use of the trademark does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source." Id. at 306 (emphasis added).

Similarly, in J.K. Harris & Co. v. Kassel, 253 F. Supp. 2d 1120, 1127 (N.D. Cal. 2003) the federal district court in Northern California followed the New Kids decision in finding that the defendant had engaged in fair use of the plaintiff's trademark where he reported complaints about the plaintiff, even though the reports were frequent. The court found that the defendant used the plaintiff's mark solely "in order to make statements about it. … [Such] referential use … is exactly what the nominative use doctrine is designed to allow." Id. See also Playboy Enters. v. Welles, 279 F.3d 796, 802-03 (9th Cir. 2002) (upholding right of former Playboy Playmate to use Playboy's trademarks in a nominative sense on her web site; such use of the marks did not suggest endorsement or sponsorship by Playboy); WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42, 46 (1st Cir. 1991) ("[c]ommon sense suggests … that a viewer who sees those words [Boston Marathon] flash upon the screen will believe simply that Channel 5 will show, or is showing, or has shown, the marathon, not that Channel 5 has some special approval from the [trademark holder] to do so"); Universal City Studios, Inc. v. Ideal Publ'g Corp., 195 U.S.P.Q. 761, 762 (S.D.N.Y. 1977) (no infringement of television show's HARDY BOYS trademark by magazine which used the trademark in connection with photographs of show's stars; "[t]he words 'Hardy Boys' are used descriptively in connection with the activities of the actors on the set"), cited in New Kids, 971 F.2d at 309.[16]

---

[16] Although the New Kids plaintiffs did not allege dilution (the claim was not added to the Lanham Act until 1995), nominative uses are no more actionable under this section of the Act than those sections at issue in New Kids. Welles, 279 F.3d at 804 ("[w]e hold that nominative uses, by definition, do not dilute the trademarks"); see also 15 U.S.C. 1125(c)(4)(A) (recognizing that is a "fair use" to use "a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark"). "Uses that do not create an improper association between a mark and a new product but merely identify the trademark holder's products should be excepted from the reach

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Like the reports in J.K. Harris and the newspaper articles in New Kids, the
2  references to 1-800-GET-THIN marketing campaign in the Times Defendants'
3  news reports do not violate the Lanham Act "as the uses in question were purely
4  nominative." New Kids, 971 F.2d at 309.  Reporting on the 1-800-GET-THIN
5  marketing campaign by necessity refers to the mark.  Moreover, where the Times'
6  columns and articles reported on the controversial Lap-Band procedure and the
7  deaths of Southern California patients after they had surgery, there is no possibility
8  that the publications at issue could be read as implying any endorsement by
9  plaintiff.  The use of a trademark in The Times' publications simply cannot support
10  plaintiff's Lanham Act claim against The Times Defendants.

11  **B.   Any Claim Based On Purported "Consumer Confusion" About**
12  **Plaintiff's Business Is Constitutionally Barred.**

13  Plaintiff's FAC also includes allegations that the Times Defendants'
14  publications caused consumers to be "confused" about plaintiff's business and its
15  "origin."  Although not expressly stated, this language suggests an attempt to state
16  some kind of false designation of origin claim, which is neither articulated nor
17  explained.  Plaintiff's counsel conceded in the parties' meet-and-confer that
18  plaintiff has no "false endorsement" or "false designation of origin" claim; nor
19  could it, since the First Amendment does not permit Lanham Act claims arising
20  from expressive works unless there is some kind of an express endorsement
21  contained with the publication.[17]  As the Ninth Circuit has explained, the likelihood

22

23  of the anti-dilution statute. Such uses cause no harm."  Welles, 279 F.3d at 806.
   See also Section III.D.1, infra.

24

25  [17] It cannot be seriously disputed that the Times Defendants' columns and
   articles are expressive works that enjoy constitutional protection.  See Philadelphia
26  Newspapers v. Hepps, 475 U.S. 767, 775-76, 106 S. Ct. 1558, 89 L. Ed. 2d 783
   (1986) (equating newspaper publications with "free speech"); Hoffman v. Capital
27  Cities/ABC, Inc., 255 F.3d 1180, 1186 (9th Cir. 2001) (Los Angeles magazine
   feature on Hollywood fashion was constitutionally protected); Braun v. Chronicle
28  Publ. Co., 52 Cal. App. 4th 1036, 1046 (1997) ("news reporting activity is free
   speech").

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of confusion test typically used to evaluate trademark claims involving false endorsement or false designation of origin "fails to account for the full weight of the public's interest in free expression." <u>Mattel</u>, 296 F.3d at 900.[18]

To ensure these First Amendment concerns are properly accommodated, the Ninth Circuit has adopted the two-part test established by the Second Circuit in <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989), which held that a Lanham Act claim based on the use of a plaintiff's mark in an expressive work is barred by the First Amendment unless the plaintiff can establish that (1) the use "has no artistic relevance to the underlying work whatsoever," <u>and</u>, (2) if it has some artistic relevance, the use "explicitly misleads as to the source or content of the work." <u>Mattel</u>, 296 F.3d at 902.[19]

---

[18] <u>See also</u> <u>ETW Corp. v Jireh Publ'g</u>, 332 F.3d 915, 926-28 (6th Cir. 2003) (likelihood of confusion test is not appropriate "where the defendant has articulated a colorable claim that the use of a celebrity's identity is protected by the First Amendment" because the test "fails to adequately consider the interests protected by the First Amendment"); <u>Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.</u>, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("when unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right").

[19] In <u>Rogers</u>, the Second Circuit rejected a Lanham Act false endorsement claim brought by dancer and actress Ginger Rogers based on the use of her name in the title of the film "Ginger and Fred." The film was not about Ginger Rogers and Fred Astaire; it was about two fictional Italian cabaret performers who imitated Rogers and Astaire and became known in Italy as "Ginger and Fred." 875 F.2d at 996-997. In <u>Mattel</u>, the Ninth Circuit similarly rejected a false endorsement claim based on the use of Mattel's Barbie mark in the title and lyrics of a song by the Danish band Aqua called "Barbie Girl." 296 F.3d at 901-02. The two-part test has been widely adopted by federal courts as a threshold test for false endorsement claims based on expressive works. <u>See, e.g.,</u> <u>ETW</u>, 332 F.3d at 926-28 (applying <u>Rogers</u> test to the use of Tiger Woods's likeness in a painting and art prints); <u>Cliff Notes, Inc. v. Bantam Doubleday Dell Publ'g Group</u>, 886 F.2d 490, 495 (2d Cir. 1989) (applying <u>Rogers</u> to use of plaintiff's trademark and trade dress in book's cover artwork); <u>E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.</u>, 444 F. Supp. 2d 1012, 1038 (C.D. Cal. 2006), <u>aff'd</u>, 547 F.3d 1095, 1099 (9th Cir. 2008) (applying <u>Rogers</u> test to use of trademark in graphics of video game); <u>Yankee Publ'g</u>, 809 F. Supp. at 276 (applying <u>Rogers</u> to use of trade dress of <u>The Old Farmer's Almanac</u> in the design and artwork of an issue of <u>New York</u> magazine).

---

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, the Times Defendants' reference to 1-800-GET-THIN in articles and columns clearly is relevant to the publications' discussion about the marketing campaign for Lap-Band surgery.  Moreover, nothing in the articles can be said to be "explicitly misleading" under the second prong of the Rogers/Mattel test, which requires an affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic.  Rogers, 875 F.2d at 1001 (plaintiff must prove an express statement that she "endorsed the [show] or had a role in producing it."); see also E.S.S., 547 F.3d at 1100 ("[t]he relevant question, therefore, is whether the Game would confuse its players into thinking that the [plaintiff] is somehow behind the [game] or that it sponsors [it]").[20]  The Times' news articles and columns do not remotely – much less explicitly – mislead the public into believing that plaintiff endorsed the articles.  Indeed, based on the content of the articles, it is ridiculous to suggest that they imply any endorsement by plaintiff.  Thus, any false endorsement claim is constitutionally barred, and should be rejected as a matter of law.[21]

_____

[20] As the Ninth Circuit explained in Mattel, if the only alleged basis for a claim of sponsorship or endorsement is the inclusion of the plaintiff's mark in the defendant's expressive work, the plaintiff necessarily fails to satisfy the second prong of the Rogers test.  Id. at 902 ("[t]he only indication that Mattel might be associated with the song is the use of Barbie in the title; if this were enough to satisfy this prong of the Rogers test, it would render Rogers a nullity").

[21] Other courts have not hesitated to dismiss Lanham Act claims, especially where the defendant's expressive work is before the court on a Rule 12(b)(6) motion.  See, e.g., Comedy III Prods. v. New Line Cinema, 200 F.3d 593, 596 (9th Cir. 2000) (granting motion to dismiss Lanham Act and state law claims based on use of a public domain film featuring The Three Stooges within a motion picture); Burnett v. Twentieth Century Fox, 491 F. Supp. 2d 962, 972-973 (C.D. Cal. 2007) (granting motion to dismiss Section 43(a) claim based on animated television show's parody of actress Carol Burnett); Felix the Cat Prods. v. New Line Cinema, 54 U.S.P.Q.2d 1856, 1857-58 (C.D. Cal. 2000) (granting motion to dismiss Lanham Act claim based on defendants' use of clip of Poindexter cartoon in movie "Pleasantville"); see also RJN, Exh. 12, which is an August 2008 decision from Judge Gary Feess in Kent v. Universal Studios, C.D. Cal. No. CV08-2704 GAF (SHx) (Aug. 15, 2008), dismissing a claim by former television journalist Arthur Kent that use of television footage with Kent's voice in the film "Charlie Wilson's War" gave rise to a false-endorsement claim under Section 43(a).

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

C.     **Any Commercial Disparagement Claim Against The Times Defendants Fails As A Matter Of Law.**

1.     **The Times' News Articles And Columns Are Not "Commercial Advertising Or Promotion."**

In extending the Lanham Act to product disparagement, Congress carefully limited the scope of Section 43(a) to cases arise within the context of "commercial advertising or promotion" so as not to restrict free speech protected by the First Amendment.  <u>See</u> 15 U.S.C. § 1125(a)(1); <u>see also</u> <u>Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.</u>, 173 F.3d 725, 734 (9th Cir. 1999) ("[t]he Lanham Act proscribes misrepresentation of another's goods or services in 'commercial advertising or promotion'").  Representative Robert Kastenmeier explained:

> The provision revising section 43(a) to prohibit a kind of commercial defamation has been carefully limited to commercial advertising and promotion.  Therefore, <u>consumer reporting, editorial comment, political advertising, and other constitutionally protected material is not covered by this provision</u>. … Because section 43(a) will now provide a kind of commercial defamation action, the reach of the section specifically extends only to false and misleading speech that is encompassed within the "commercial speech" doctrine developed by the United States Supreme Court. … <u>[T]he proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material.</u>

4 <u>McCarthy</u> § 27:95 (quoting Remarks of Rep. Kastenmeier on S. 1883, 134 Cong. Rec. 31850-52 (Oct. 19, 1988), 134 Cong. Rec. H 10420 (daily ed. Oct. 19, 1988)) (emphasis added).

Given this legislative intent, the Ninth Circuit has found that to constitute "commercial advertising or promotion" under the Lanham Act, representations of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fact "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services." Coastal Abstract, 173 F.3d at 735 (adopting test articulated in Gordon & Breach Science Publishers, Ltd. v. American Inst. of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994)). The Lanham Act "has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service." Wojnarowicz v. American Family Ass'n, 745 F. Supp. 130, 141 (S.D.N.Y. 1990) (emphasis added) (use of fragment of artist's work did not constitute "advertising or promotion" within the meaning of the Lanham Act).

Even an allegation of "competition" does not satisfy the Lanham Act's strict limitations where the comments are made in the context of news or commentary. For example, in Gordon & Breach, plaintiffs and defendants were competing publishers of scientific journals. 859 F. Supp. at 1523. Defendants published articles comparing the merits of numerous scientific journals, ranking plaintiffs' publications as among the least cost-effective. Id. On defendants' motion to dismiss plaintiff's Lanham Act claim, the court held that Section 43(a) of the Lanham Act was applicable only to false and misleading commercial speech. Id. at 1533-34. The articles in question "fall decidedly on the noncommercial, fully protected side of the line." Id. at 1540. In drawing this conclusion, the court found it "significant" that defendants had "purposes beyond the solely commercial – purposes (publishing and the advancement of scientific inquiry) which implicate significant First Amendment concerns." Id. (citing Bigelow v. Virginia, 421 U.S. 809, 828, 44 L. Ed. 2d 600, 95 S. Ct. 2222 (1975) for the proposition that "statute, by being applied against newspaper publisher rather than advertiser, 'incurred more serious First Amendment overtones'"). Moreover, "[t]he articles examine[d] an issue of considerable public significance, the dilemma facing scientific libraries that must cope with stagnant budgets and escalating subscription costs." Id. The court

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

also concluded that a letter to the editor and a press release concerning the articles "fall too close to core First Amendment values to be considered 'commercial advertising or promotion' under the Lanham Act. Id. at 1544.[22]

Like the academic articles in Gordon & Breach, The Times' news articles and commentary are not commercial speech. The Times Defendants, a newspaper and its journalists, published articles and columns about matters of significant public concern – the lax regulation of privately owned surgery centers, the controversial marketing of Lap Band weight-loss surgery, and the deaths of patients following the surgery. Furthermore, the Times Defendants are not in commercial competition with plaintiff, and their speech was not made to influence consumers to buy their own competing goods or services.[23] Thus, plaintiff cannot state a claim for commercial disparagement under the Lanham Act against the Times Defendants.

## 2.     The Times Defendants' Use Of The "Mark" In News Reports Is Protected By The First Amendment.

Plaintiff's purported disparagement claim independently is barred under the First Amendment, and its duplicitous labeling of the claim does not avoid the constitutional requirements plaintiff must meet.

For more than four decades, the Supreme Court has recognized that First Amendment protection does not depend on the labels given to causes of action. New York Times Co. v. Sullivan, 376 U.S. 254, 269, 84 S. Ct. 710, 11 L. Ed. 2d

---

[22] Here, plaintiff does not and cannot allege that the Times Defendants are competitors of plaintiff's, or even that they "compete" with plaintiff's customers – the Lap-Band surgery centers.

[23] Plaintiff's allegation that Mr. Hiltzik "worked with and aided Plaintiff's competitor to dilute and tarnish Plaintiff's trademark" because he published information about a letter from the director of the Los Angeles County Public Health Department certainly does not make Mr. Hiltzik a "competitor" of plaintiff's – indeed, even assuming, as plaintiff has asserted, that one of Mr. Hiltzik's sources of information used to work for a company that markets medical supplies in competition with the Lap-Band (FAC ¶ 83), that is irrelevant here: plaintiff, by its own allegations, does not produce the Lap-Band or perform any surgical services in connection with the Lap-Band.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

686 (1964); see also Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) (treating the fact that the case before it was one of product disparagement rather than defamation as immaterial and discussing the importance of "independent judicial review").   Three decades ago, in Hustler v. Falwell, 485 U.S. 46, 50, 54-57, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988), the Supreme Court held that the First Amendment not only barred the Reverend Jerry Falwell's defamation claim arising from a satirical feature in Hustler magazine that depicted Falwell as engaged in an incestuous relationship, but also barred his intentional infliction of emotional distress claim arising from the same publication.   Falwell stands for the now well-established proposition that courts may not permit a plaintiff, through clever pleading, to invoke other claims as a vehicle for "end-running other requirements of defamation law."

Federal and state courts in California similarly have made clear that constitutional protections "are not peculiar to [defamation] actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement." Blatty v. New York Times Co., 42 Cal. 3d 1033, 1042-43, 232 Cal. Rptr. 542, 728 P.2d 1177 (1986), cert. denied, 485 U.S. 934, 99 L. Ed. 2d 268, 108 S. Ct. 1107 (1988) (recognizing that if the constitutional limitations protecting free speech were not broadly applied to different causes of action, litigants would plead claims other than defamation to avoid the First Amendment restrictions, thereby "frustrat[ing] the[] underlying purpose" of the constitutional protections); see also Films of Distinction, Inc. v. Allegro Film Productions, Inc., 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (dismissing causes of action that, like the defamation claim, targeted defendant's free speech rights, and court wanted to avoid "'creative pleading' from 'rendering nugatory the First Amendment limitations placed on litigation against speech'") (quoting Blatty, 42 Cal. 3d at 1045); Moldea v. New York Times Co., 22 F.3d 310, 319-20 (D.C. Cir. 1994) ("a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation"); Vogel v. Felice, 127 Cal. App. 4th

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1006, 1018, 26 Cal. Rptr. 3d 350 (2005) (plaintiffs' failure to plead the elements of a viable defamation claim "constitutes a fatal defect as to all of their [other tort] claims 'hav[ing] as their gravamen the alleged injurious falsehood of a statement'"); Kahn v. Bower, 232 Cal. App. 3d 1599, 1615, 284 Cal. Rptr. 244 (1991) (rejecting negligence and emotional distress claims pleaded by plaintiff based on Blatty because social worker plaintiff's claim was based on alleged injurious falsehood of published statements that she was hostile to children and incompetent). "Thus, a plaintiff cannot, by refraining from pleading common law product disparagement, circumvent the constitutional constraints of the First Amendment by using the post-1989 version of Lanham Act § 43(a) as a vehicle to challenge alleged product disparagement." McCarthy § 27:100.

In cases involving allegedly injurious falsehoods, a trial court must examine "the statements in issue … to see … whether they are of the character which the principles of the First Amendment … protect." New York Times v. Sullivan, 376 U.S. 254, 285 (1964). In doing so, the court must avoid "hair-splitting analysis … to find a defamatory meaning which the article does not convey to a lay reader." Forsher v. Bugliosi, 26 Cal. 3d 792, 803, 608 P.2d 716, 163 Cal. Rptr. 628 (1980) (citations omitted). The law does not allow injurious falsehood claims to be brought based on attenuated, unreasonable interpretations of a publication. Id.; see also Thomas v. Los Angeles Times Communications LLC, 189 F. Supp. 2d 1005 (C.D. Cal. 2002) (rejecting claim by plaintiff that newspaper implied he was a liar), affirmed without opinion, 45 Fed. Appx. 801 (9th Cir. Sept. 6, 2002). Furthermore, "[l]iability under the relevant provision of the Lanham Act requires, among other things, a 'false or misleading representation of fact.'" Coastal Abstract, 173 F.3d at 730-31 (holding that statements of opinion cannot give rise to liability under the Lanham Act).

Here, plaintiff alleges that it is "a marketing service that places people seeking medical services in contact with medical professionals." FAC ¶¶ 36, 86.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Specifically, plaintiff markets Lap-Band surgical procedures. Id. ¶ 83.  Plaintiff's apparent distress at being associated with the very medical facilities and surgeons that it is engaged in widely advertising is therefore absurd, particularly when the very name of the company – 1 800 Get Thin, LLC, is used on hundreds of billboards as the telephone contact number for Lap-Band surgery!

Similarly, plaintiff's allegation that the Times Defendants' articles and columns imply that 1 800 Get Thin, LLC actually performs surgeries (id. ¶ 90), is equally absurd.[24]  Plaintiff's FAC only identifies two specific statements, both from Mr. Hiltzik's December 19, 2010 column, as a basis for the alleged "implication" claim:

> (1) "Renteria's death may finally prompt California's medical regulators to take a close look at the weight-loss surgeries marketed by an outfit called TopSurgeons through the I-800-GET-THIN number."

> (2) "The Medical Board of California informed Renteria's family July 27 that it was reviewing the medical care she had received from Dr. Atul Madan, who is identified by the coroner as her surgeon at a Beverly Hills clinic connected to the billboard campaign."

FAC ¶¶ 79-81 (emphasis added).  Statement 1 clearly conveys that 1-800-GET-THIN was the toll-free number used to market weight-loss surgeries – a statement that plaintiff does not and cannot dispute.  Nothing in this statement says, or can reasonably be understood as implying, that plaintiff actually performs surgeries.

Statement 2 reported that a patient who died after having Lap-Band surgery had received medical care from Dr. Atul Madan, and that he worked at a clinic that was "connected to" the billboard campaign.  Even if 1 800 Get Thin, LLC had been identified – which it was not – the statement is completely accurate.  The clinic

---

[24] Plaintiff does not explain why being associated with the Lap-Band surgery centers, or even a direct statement that it engages in the business of Lap-Band surgery would be defamatory.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

where the patient received medical care <u>did</u> advertise using the 1-800-Get-Thin billboards and numbers, and plaintiff does not suggest otherwise.[25]

Nothing in the Times Defendants' columns and articles states or suggests that 1 800 GET THIN, LLC "performs" surgeries, and this purported implication is unreasonable when viewing the articles in context.  Instead, they refer to plaintiff's advertising campaign, and in particular, the ubiquitous 1-800-GET-THIN billboards and radio ads found in Southern California.  <u>See</u>, <u>e.g.</u>, Ex. 4 ("the Lap-Band weight-loss operation advertised on those billboards and radio spots bearing the phone number 1-800-GET-THIN"); Ex. 5 ("the 1-800-GET-THIN ads … were created by a marketing company that directs prospective patients to clinics that perform the weight-loss procedure");  Ex. 7 ("[p]rospective patients are referred to surgery clinics after calling a toll-free number that is advertised on Southern California billboards, buses, on television and through direct mail, said Robert Silverman, an attorney who represents the two clinics and 1-800-GET-THIN").

Plaintiff's assertion that the two statements in Mr. Hiltzik's December 19, 2010 column contain false or defamatory statements of fact about plaintiff is completely baseless.  Moreover, there are <u>no</u> statements identified in the FAC from articles authored by Mr. Pfeifer, making clear there is no basis for a disparagement claim against him.  Because nothing in the Times Defendants' publications gives rise to a commercial disparagement claim, the FAC should be dismissed.

---

[25] The column, in reporting on records and proceedings of the California Medical Board, also is absolutely privileged under Civil Code § 47(d) and the First Amendment, each of which independently protect fair and true reports of government records and proceedings.  <u>See</u>, <u>e.g.</u>, <u>Sipple v. Foundation for National Progress</u>, 71 Cal. App. 4th 226, 244 (1999); <u>Cox Broadcasting  v. Cohn</u>, 420 U.S. 469, 491, 495-496 (1975).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 3.   Plaintiff Cannot Evade The Heightened Pleading Requirements For A State Law Trade Libel Claim By Disguising It As A Federal Claim.

Plaintiff's Lanham Act claim against the Times Defendants was transparently designed to try to avoid California's anti-SLAPP statute, Code of Civil Procedure § 425.16, as well as California's heightened pleading standards for trade libel claims.  Under California law, "trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage." <u>Films of Distinction, Inc. v. Allegro Film Prods.</u>, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998); <u>Mann v. Quality Old Time Service, Inc.</u>, 139 Cal. App. 4th 328, 340, 42 Cal. Rptr. 3d 607 (2006) ("trade libel involves false disparagement of the quality of goods or services").  To state a trade libel claim, a plaintiff must allege that the defendant: (1) made a statement that disparages the quality of the plaintiff's product or service; (2) that the offending statement was an assertion of fact; (3) that the statement was false; (4) that the statement was made with constitutional actual malice; and (5) that the statement resulted in special damages.  <u>Guess, Inc. v. Superior Court</u>, 176 Cal. App. 3d 473, 479, 222 Cal. Rptr. 79 (1986).

As set forth above, plaintiff has not and cannot meet these requirements as a matter of law, since there is nothing in the Times Defendants' publications that contains false, disparaging statements of fact about plaintiff's company.  In addition, plaintiff has not sufficiently pleaded, and cannot prove, that it has suffered special damages as a result of any statements it claims to be actionable.

It is well established under California law that ambiguous allegations that the plaintiff has been "damaged" are inadequate to meet this requirement.  As one appellate court noted, special damages caused by an allegedly actionable statement "must be pled ... <u>precisely</u>[.]"  <u>Gomes v. Fried</u>, 136 Cal. App. 3d 924, 940, 186 Cal. Rptr. 605 (1982) (emphasis added).  A "general allegation of loss of a prospective ... sale, or profit will not suffice." <u>Pridonoff v. Balokovich</u>, 36 Cal. 2d 788, 792,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

228 P.2d 6 (1951). Thus, a pleader "may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which [they] were deprived as a result of the [trade] libel." <u>Mann v. Quality Old Time Serv., Inc.</u>, 120 Cal. App. 4th 90, 109, 15 Cal. Rptr. 3d 215 (2004). "This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." <u>Erlich v. Etner</u>, 224 Cal. App. 2d 69, 73-74, 36 Cal. Rptr. 256 (1964) (quotations and citation omitted).

Plaintiff has not pled special damages with the required particularity, nor can plaintiff present any evidence of special damages resulting from the news reports. It is not enough for plaintiff to allege generally that it "has and continues to suffer injury including loss of sales and profits and tarnishment of trademark." (FAC ¶ 92.) Because plaintiff has not and cannot plead and prove <u>specific</u> losses incurred because of any actionable statements it claims the Times Defendants published, this independently defeats its disguised trade libel claim.

**D.    Plaintiff Cannot State A Dilution Claim.**

**1.    The Times Defendants' References To 1-800-GET-THIN Are Exempt From The Dilution Statute.**

Plaintiff contends that The Times Defendants' use of its toll-free number, 1-800-GET-THIN in news reports, diluted the value of its mark by tarnishing it. "Dilution by tarnishment" requires that plaintiff show an "association arising from the similarity between a mark or trade name and [Plaintiff's mark] that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Tarnishment caused merely by criticism or commentary about a plaintiff's products or services "is not actionable … because of the free speech protections of the First Amendment …." <u>Mattel Inc. v. Walking Mt. Prods.</u>, 353 F.3d 792, 812 (9th Cir. 2003) (citing 4 <u>McCarthy</u>, § 24:105, at 24-225). Thus, "[a] dilution action only applies to purely commercial speech." <u>Id.</u>

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The 2006 Trademark Dilution Revision Act expressly prohibits dilution claims for "[a]ny fair use, including a nominative or descriptive fair use," … including use in connection with … criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner"; "[a]ll forms of news reporting and news commentary"; and "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3) (emphasis added).

The Times Defendants' reference to plaintiff's "mark" plainly falls within all these exemptions.  The articles and columns at issue unquestionably fall within the exemption for news reporting and commentary.  15 U.S.C. § 1125(c)(3)(B); 4 McCarthy § 24:127 ("[t]his category of exempted uses seems self-explanatory and was inserted to assure the media that the federal dilution law would not be used as a weapon against media use of trademarks in the context of conveying news and other forms of socially useful information").

Independently, their publications also squarely fall within the noncommercial use exemption.  15 U.S.C. § 1125(c)(3)(C); see, e.g., MCA Records, Inc., 296 F.3d 894 (use of the BARBIE trademark in a song and in its title was not actionable under the dilution laws); Walking Mountain Prods., 353 F.3d 792  (photographs parodying BARBIE doll did not tarnish the BARBIE image); Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962 (C.D. Cal. 2007) (dismissing dilution claim against a television cartoon parody of performer Carol Burnett because speech was noncommercial).[26]

Finally, as discussed above, the exemption for "[a]ny fair use, including a nominative or descriptive fair use," applies where, as here, the Times Defendants

---

[26] Commercial speech does "no more than propose a commercial transaction." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 66, 103 S. Ct. 2875, 2880, 77 L. Ed. 2d 469 (1983) (quoting Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 762, 96 S. Ct. 1817, 1825, 48 L. Ed. 2d 346 (1976). Here, The Times' articles and columns, which communicated information and expressed opinions about matters of significant public interest, clearly are entitled to full First Amendment protection.

THE TIMES DEFENDANTS' MOTION TO DISMISS
DWT 16841046v2 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | used plaintiff's mark in news reporting and commentary about the Lap-Band
2 | procedure marketed by plaintiff.

3 | **2.    Plaintiff Has Not And Cannot Allege That Its Mark Is**
4 | **Famous Within The Meaning Of The Lanham Act.**

5 | Plaintiff's claim for dilution under federal law independently is barred
6 | because it has not and cannot allege a key requirement for such claims, namely, that
7 | its mark is "famous."  The federal dilution statute, 15 U.S.C. § 1125(c), only
8 | provides for relief against a third party's commercial use of a mark if the use causes
9 | blurring or tarnishment of a "famous" mark.  To be considered "famous" under the
10 | statute, the mark must be "widely recognized by the general consuming public of
11 | the United States as a designation of source of the goods or services of the mark's
12 | owner."  15 U.S.C. § 1125(c)(2)(A); see also Top Tobacco, L.P. v. North Atlantic
13 | Op. Co., 509 F.3d 380, 384 (7th Cir. 2007) (the 2006 amendments to the Lanham
14 | Act, including the dilution section, "eliminated any possibility of 'niche fame'"); 4
15 | McCarthy, § 24:67 ("[t]he antidilution remedy was intended to apply only in
16 | unusual and extraordinary cases [and] be reserved for a small, elite group of truly
17 | renowned marks").  As the Ninth Circuit explained, "by carefully limiting the class
18 | of trademarks eligible for dilution protection, Congress … granted the most potent
19 | form of trademark protection in a manner designed to minimize undue impact on
20 | other uses."  Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999).

21 | Marks that are deserving of recognition under the anti-dilution statute have a
22 | degree of fame that cause consumers to associate them with the company that owns
23 | the marks.  Even a mark that is familiar to some people may not have the requisite
24 | degree of fame.  See Mead Data Central, Inc. v. Toyota Motor Sales, Inc., 875 F.2d
25 | 1026 (2d Cir. 1989) (applying New York anti-dilution statute and concluding that
26 | LEXIS for a legal research system lacked fame); Hasbro, Inc. v. Clue Computing,
27 | Inc., 66 F. Supp. 2d 117, 131-32 (D. Mass. 1999) (CLUE, a mark used on a board
28 | game, lacked fame in part because the word "clue" is common), aff'd 232 F.3d 1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(1st Cir. 2000); <u>Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.</u>, 964 F. Supp. 733, 750 (S.D.N.Y. 1997) (COLUMBIA not a famous mark).  In other words, the degree of fame must be such that the mark is a "household name." <u>Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Co.</u>, 82 U.S.P.Q.2d 1583, 1587 (C.D. Cal. 2007) (Milbank not a household name).

Here, plaintiff does not and cannot allege that its mark is famous, much less set forth any allegations sufficient to meet the extraordinarily high standard for fame under the Lanham Act.  Consequently, for this additional reason, any attempt by plaintiff to state a dilution claim fails.

## IV.  CONCLUSION

Plaintiff plainly is seeking to retaliate against the Times Defendants for publishing news articles and columns that raise questions about the 1-800-GET-THIN marketing campaign, and which reported on the deaths of several individuals who had Lap-Band surgery at facilities associated with the marketing campaign.  As set forth above, The Times' articles and columns cannot give rise to liability for infringement, dilution, or disparagement under the Lanham Act.  Accordingly, The Times Defendants respectfully request that the Court grant this motion to dismiss without leave to amend.

DATED:  April 25, 2011    DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ALONZO WICKERS IV
LISA J. KOHN

LOS ANGELES TIMES COMMUNICATIONS LLC
KARLENE GOLLER


By:_____s/ Kelli L. Sager_____
                       Kelli L. Sager

Attorneys for Defendants LOS ANGELES TIMES COMMUNICATIONS LLC, MICHAEL HILTZIK, and STUART PFEIFER

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION

## DECLARATION OF KELLI L. SAGER

I, Kelli L. Sager, declare:

1. I am an attorney admitted to practice before all the courts of the State of California and before this Court. I am a partner in the law firm of Davis Wright Tremaine LLP ("DWT"), and I am one of the attorneys representing defendants Los Angeles Times Communications LLC, Michael Hiltzik, and Stuart Pfeifer (collectively, the "Times Defendants") in this matter. The facts stated below are true of my own personal knowledge, and, if called to testify, I could and would competently testify to these facts.

2. On April 20, 2011, pursuant to Local Rule 7-3, I had a telephonic meet-and-confer discussion with Robert Silverman, counsel for plaintiff 1 800 Get Thin, LLC, concerning the Times Defendants' motion to dismiss the lawsuit under FRCP 12(b)(6).

3. During our conversation, I discussed with Mr. Silverman each of the legal arguments we intended to include in the Motion. I told Mr. Silverman that it was difficult to discern from the First Amended Complaint ("FAC") precisely what kind of claim he intended to state under the Lanham Act, since there was language suggesting that the claim is for false endorsement/false designation of origin; dilution; and commercial disparagement, but that regardless of which avenue he was intending to pursue, there was no legal basis for his client's claim under the Lanham Act.

4. Mr. Silverman responded that he "did not think" false endorsement was what his client was pursuing, but that the "consumer confusion" referenced in the FAC was because of the "disparagement" of the 1 800 Get Thin mark.

5. Mr. Silverman stated that he did not intend to bring a claim under 15 U.S.C. § 1125(c), which sets forth the requirements for a dilution claim, but that his position was that "dilution" should be taken into account.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

6.    In our discussion of the "disparagement" claim, Mr. Silverman acknowledged that he was not suggesting that 1 800 Get Thin, LLC was wholly unrelated to the Lap-Band surgery centers discussed in the Times Defendants' articles and columns, pointing out that it would be "crazy" for him to say that, given the hundreds of billboards with 1-800-Get-Thin that advertise for Lap-Band surgery. But he refused to identify the principals or owners of 1 800 Get Thin, LLC, or explain any distinction between its owners/operators and the owners/operators of the surgery centers, asserting that the information was "private" and "confidential."

7.    Mr. Silverman stated during our telephone conversation that he was in his car during our conversation and did not have the FAC or any other materials in front of him (even though we had pre-arranged the date and time for the call), but that there might be additional statements in the Times Defendants' articles and columns that gave rise to a commercial disparagement claim. In particular, in response to my inquiry about any claim based on statements in articles under Stuart Pfeifer's by-line, Mr. Silverman said that he could not respond "off the top of [his] head." He told me that he would review the publications and the FAC again and let me know by noon on Friday, April 22, 2011, if he saw any additional statements that he would propose to add through another amended complaint. I did not receive any communication from Mr. Silverman about any amendment.

8.    In closing our conversation, Mr. Silverman told me that he had "thoroughly researched" the issues, and although he was not aware of any case law directly on point, he believed that the claim brought on behalf of his client was a "good faith extension" of existing law. Consequently, Mr. Silverman said that we

//

//

//

//

DECLARATION OF KELLI L. SAGER
DWT 16936194v1 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

could not agree on any issues, and that he would not dismiss the First Amended Complaint as to any of the Times Defendants.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this Declaration was executed on the 25th day of April, 2011, in Los Angeles, California.

_____
/s/ Kelli L. Sager
Kelli L. Sager

DECLARATION OF KELLI L. SAGER
DWT 16936194v1 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899