DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
   kellisager@dwt.com
ALONZO WICKERS IV (State Bar No. 169454)
   alonzowickers@dwt.com
LISA J. KOHN (State Bar No. 260236)
   lisakohn@dwt.com
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800 / Fax: (213) 633-6899

LOS ANGELES TIMES COMMUNICATIONS LLC
KARLENE GOLLER (State Bar No. 147065)
   karlenegoller@latimes.com
202 West First Street
Los Angeles, California 90012
Telephone: (213) 237-3760 / Fax: (213) 237-3810

Attorneys for Defendants LOS ANGELES TIMES
COMMUNICATIONS LLC, MICHAEL HILTZIK, and
STUART PFEIFER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| 1 800 GET THIN, LLC,<br><br>       Plaintiff,<br><br>   vs.<br><br>Michael Hiltzik, an individual; Los Angeles Times Communications, LLC; Stuart Pfeifer, an individual; SNAPSHOTS, an individual; Adrian_Dallas, an individual; jkrischel, an individual; neoserf, an individual; paulmayer, an individual; dalefogden, an individual; wtharvey, an individual; matt_powers, an individual; callcenterjohnny, an individual; Ebuckly, an individual; bigsouthern, an individual; OCChick, an individual; AllenGillespie, an individual; dhaettig, an individual; Baseballhead, an individual; mattemons, an individual; JulyPostOp, an individual; DrBruin2, an individual; RUJoking?!, an individual; InstructorP, an individual; 1Friend, an individual; darmaggi, an individual; RamonaInCorona, an individual; dianne.m.daniels, an individual; LAX.Prepster, an individual; Isabelle106, an individual; AlanSmythl, an individual; Ed Wood, an individual; KatherineLicariVenturoso, an individual; Does 1-10, inclusive,<br><br>       Defendants. | Case No. 2:11-CV-0505-ODW (Ex)<br>Assigned to the Honorable Otis D. Wright II<br><br>**AMENDED NOTICE OF RELATED CASE AND NOTICE OF PENDENCY OF OTHER ACTIONS**<br><br>[L.R. 83-1.3, 83-1.4]<br><br>Action Filed: January 18, 2011 |

# I. NOTICE OF RELATED CASE

Pursuant to Local Rule 83-1.3, defendants Los Angeles Times Communications, Michael Hiltzik, and Stuart Pfeifer, (collectively, the "Times Defendants") hereby provide notice to the Court of the following related case: 1 800 GET THIN, LLC v. Farzin Feizbakhsh, MD aka Dr. Feiz, Case No. CV11-00767 CAS (FFMx), United States District Court, Central District of California.[1]   This case, which was filed by the same attorney, Robert B. Silverman, Esq., Silverman & Associates, 25 S. Oak Knoll Ave., Suite 504, Pasadena, California 91101, Telephone: (714) 936-7499, for the same plaintiff – 1 800 GET THIN, LLC.

Both lawsuits assert Lanham Act claims arising from the alleged publication of articles and comments that refer to the 1-800-GET-THIN trademark.   See L.R. 83-1.3.1(a) and (d).   Plaintiff also alleges that Dr. Farzin Feizbakhsh, the defendant in Case No. CV11-00767 CAS (FFMx), through the alias of "BigMaMaJoans," distributed copies of the Los Angeles Times articles that are the basis for this lawsuit.   See Complaint in 1 800 GET THIN, LLC v. Farzin Feizbakhsh, MD aka Dr. Feiz, Case No. CV11-00767 CAS (FFMx), ¶¶ 14, 16, 18, 26-28.   Because both cases assert alleged violations of the Lanham Act that purport to arise from critical comments made about the marketing campaign for Lap-Band surgery, the cases are likely to "call for determination of … substantially related or similar questions of law and fact," and thus are related.   L.R. 83-1.3.1(b).[2]   Plaintiff's counsel did not file a notice of related cases concerning these two lawsuits, necessitating this Notice.

---

[1] A true and correct copy of the complaint in Case No. CV11-00767 CAS (FFMx) is attached as Exhibit A.

[2] Dr. Feizbakhsh's motion seeking dismissal, among other things, is currently set for hearing before the Honorable Christina A. Snyder on May 16, 2011.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II. NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS

Pursuant to Local Rule 83-1.4, the Times Defendants also hereby provide notice to the Court of the pendency of the following related cases in Los Angeles Superior Court.  Counsel of record for the plaintiff(s) in the following actions is the same as in this lawsuit – Robert B. Silverman, Esq., Silverman & Associates, 25 S. Oak Knoll Ave., Suite 504, Pasadena, California 91101, Telephone: (714) 936-7499.

### A.   <u>Beverly Hills Surgery Center, LLC et al. v. Does 1-100</u> (Los Angeles Superior Court, Case Nos. BC451267 and BC451267)

Beverly Hills Surgery Center, LLC and Top Surgeons, LLC filed a libel lawsuit against 100 "Doe" defendants, based on comments posted concerning the Los Angeles Times' coverage of the Lap-Band surgery controversy (Case No. BC436309, assigned to Judge Joanne B. O'Donnell in Department 37).   It alleged libel claims against anonymous Doe defendants "1 through 100," each of whom was described as having posted comments on the Los Angeles Times website between February 14, 2010 and April 21, 2010, apparently in response to Mr. Hiltzik's columns on lap-band surgery.  Plaintiffs subpoenaed Tribune Company, the parent company of the Los Angeles Times, demanding identifying information for the anonymous posters.  Tribune Company filed a motion to quash the subpoena, which was granted; the Court awarded attorneys' fees of $5,565.04 to Tribune Company.  Plaintiffs voluntarily dismissed this lawsuit without prejudice on November 23, 2010, after losing their motion to compel.  A true and correct copy of the complaint in Case No. BC436309 is attached as Exhibit B.

<u>A few weeks later</u>, on December 15, 2010, the <u>same</u> two plaintiffs filed a <u>new</u> virtually identical lawsuit alleging the <u>same claims</u> against the <u>same "Doe"</u>

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defendants.  (<u>See</u> Case No. BC451267, assigned to Judge Elizabeth A. White.)[3] Case No. BC451267 involves claims for trade libel and unfair business practices arising from the same statements allegedly made by anonymous posters on the latimes.com website at issue in this lawsuit.  A true and correct copy of the complaint in Case No. BC451267 is attached as Exhibit C.

These lawsuits both identify precisely the same statements and alleged postings by individuals on the latimes.com website, although the state court actions purport to name only "Does," while this action – originally brought against "Doe" defendants in addition to defendant Michael Hiltzik – now includes the web-addresses used by the posters as individually named defendants.

**B.     <u>Michael Omidi v. Michael Hiltzik et al.</u> (Los Angeles Superior Court, Case No. BC451424)**

<u>Omidi v. Hiltzik</u> (Los Angeles Superior Court, Case No. BC451424), filed on December 16, 2010 and assigned to Judge Michael C. Solner in Department 39, purports to arise from Mr. Hiltzik's columns, and asserts a defamation claim by Michael Omidi based on a statement made in a column published on April 18, 2010 in the Los Angeles Times.  Although the lawsuit only identifies one statement in one column as being the basis for the libel claim, the Complaint simultaneously asserts that columns published by Mr. Hiltzik on February 14, 2010, and March 4, 2010, "contained false and fraudulent statements of fact" which are not identified in the Complaint, and which do not purport to be the basis for any claim.  This pending lawsuit names Mr. Hiltzik and the Los Angeles Times as defendants.  A true and correct copy of the complaint in Case No. BC451424 is attached as Exhibit D.

---

[3] Plaintiff's counsel violated its duty under Los Angeles Superior Court Local Rule 7.3(f) by failing "immediately to bring the fact of such dismissal and refiling to the attention of the Court."

AMENDED NOTICE OF RELATED CASES
DWT 16936087v3 0026175-000388

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**C.    1 800 GET THIN, LLC v. Does 1-100 (Los Angeles Superior Court, Case No. BC451507)[4]**

1 800 GET THIN, LLC v. Does 1 through 100, Case No. BC451507, filed on December 16, 2010, involves the same plaintiff, 1 800 GET THIN, LLC, suing "Doe" defendants for trade libel and unfair business practices based on the same comments posted concerning The Times' coverage of the lap-band surgery controversy.  These are the same defendants who were identified as Doe defendants in the original complaint, who were then identified by the user names they used to post comments on latimes.com in plaintiff's First Amended Complaint.  1 800 GET THIN, LLC v. Does 1 through 100, Case No. BC451507, is virtually identical to the present lawsuit.  Although it does not name Los Angeles Times Communications LLC, Michael Hiltzik, and Stuart Pfeifer as defendants, it nevertheless includes the same general allegations about the columns published by The Times under Mr. Hiltzik's by-line, which it alleges contain "false and misleading information."  These cases arise from the same transaction, happening or event and call for determination of the same or substantially related or similar questions of law and fact.  A true and correct copy of the complaint in Case No. BC451507 is attached as Exhibit E.[5]

---

[4] The Times Defendants learned of this pending action on April 25, 2010, after filing the original notice of related cases.

[5] Case No. BC451507 was filed by Alexander Weisse, Esq., 27068 La Paz Road, Suite 425, Aliso Viejo, CA 92656, Telephone: (310) 230-5741.  Mr. Weisse also filed the complaint in the original Beverly Hills Surgery Center lawsuit (Case No. BC436309).  Robert B. Silverman, Esq., filed Case No. BC451267 and is the attorney of record in the other cases in this Notice, including the pending 1 800 GET THIN, LLC v. Hiltzik lawsuit.

AMENDED NOTICE OF RELATED CASES
DWT 16936087v3 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**D.**     **Julian Omidi v. Stuart Pfeifer, Los Angeles Times Communications,**
**LLC, Does 1 through 20, inclusive (Los Angeles Superior Court, Case No**
**BC458479)**

Case No. BC458479 was filed on April 1, 2011 by Julian Omidi – the brother
of Michael Omidi – and has been brought against Stuart Pfeifer and Los Angeles
Times Communications, LLC, along with unidentified Doe defendants.  It
references the columns authored by Michael Hiltzik, which are the subject of the
lawsuits discussed above, and purports to link the events discussed in the other
lawsuits.  These cases involve two of the same defendants as this lawsuit, and
substantially similar legal issues.  A true and correct copy of the complaint in Case
No. BC458479 is attached as Exhibit F.


DATED:  April 26, 2011       DAVIS WRIGHT TREMAINE LLP
                             KELLI L. SAGER
                             ALONZO WICKERS IV
                             LISA J. KOHN

                             LOS ANGELES TIMES COMMUNICATIONS LLC
                             KARLENE GOLLER


                             By:  _____/s/ Kelli L. Sager_____
                                        Kelli L. Sager

                             Attorneys for Defendants LOS ANGELES TIMES
                             COMMUNICATIONS LLC, MICHAEL HILTZIK,
                             and STUART PFEIFER

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A

**SILVERMAN & ASSOCIATES**
**ROBERT B. SILVERMAN SBN 170517**
**25 S. OAK KNOLL AVE., SUITE 504**
**PASADENA, CA 91101**
**TEL: (714) 936-7499**
**FAX: (888) 308-5099**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| 1 800 GET THIN, LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>Farzin Feizbakhsh, MD aka Dr. Feiz;<br>Does 1-10, inclusive;<br><br>    Defendants | Case Number: **CV11- 00767** A GR<br>Complaint for Monetary Damages<br><br>(1) Lanham Act<br>(2) False Advertising<br>(3) Unfair Trade Practice<br><br>DEMAND FOR JURY TRIAL |

**PLEASE TAKE NOTICE THAT** Plaintiff 1 800 GET THIN, LLC hereby asserts and alleges a cause of action against defendants as follows:

### JURISDICTION

1.      This is an action for violation of the Lanham Act under 15 U.S.C. § 1125(a).  This court has subject matter of this claim for violation of the Lanham Act under 28 U.S.C. § 1331.  This court also has jurisdiction under 28 U.S.C. § 1367(a) over all other claims that are so related they form a part of the same case or controversy.

### PARTIES

2.     Plaintiff is a limited liability company that is organized under the laws of the state of California.  Its principal place of business is Beverly Hills, California.

3.     Defendant Farzin Feizbakhsh, M.D., aka Dr. Feiz is an individual whose residence is located in Los Angeles County, California.

4.     Defendant John Does ("Defendants") are sued herein under fictitious names.  Their true names and capacities are unknown to Plaintiff.  When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that each of Plaintiff's damages as herein allege were proximately caused by such Defendants.

5.     At all times herein mentioned, all defendants were the agents, servants, employees and/or contractors of their co-defendants and were acting within the scope of their authority as agents, servants, employees and/or contractors and with the permission and consent of said named defendants.

### GENERAL ALLEGATIONS

6.     Plaintiff is a marketing service company.  Plaintiff operates publicly as 1 800 GET THIN.  Plaintiff does not provide any type of medical care or treatment in the course of its business and is purely a marketing service company.

7.     Plaintiff is in the process of registering 1 800 GET THIN as a federally protected trademark.

8.     Plaintiff has engaged in advertising throughout Los Angeles County and greater Southern California, where it places its trademark, 1 800 GET THIN, in the public eye.  1 800 GET THIN is associated with bariatric surgery, most notably the Lap Band® surgical procedure.

2        Complaint for Lanham Act Violation

9.     Defendant is a licensed medical doctor in the State of California who performs bariatric surgery and is not part of Plaintiff's marketing services. As such, Defendant is a competitor of Plaintiff. Through the operation of Plaintiff's marketing, potential bariatric surgery candidates are identified and then serviced by medical professionals not associated with the Defendant.

10.     Plaintiff is informed and believes that Defendant through the publication of false and defamatory statements, via the internet, as stated more fully herein, has attacked against Plaintiff's trademark and/or misused Plaintiff's trademark.

11.     The first attack was centered around disparaging and misleading comments against Plaintiff on websites associated with bariatric surgery. Plaintiff is informed and believes Defendant published or has caused to be published comments relating to Plaintiff's business on the websites identified as LapBandTalk.com and RipoffReport.com. It is possible that Defendant has made similar comments on other websites, but Plaintiff is unaware of such conduct at this time.

12.     Those websites to which Defendant published comments are available to any individual within the County of Los Angeles and they include worldwide accessibility. As a result, at a minimum, Plaintiff has been damaged and continues to be damaged at Plaintiff's business offices in Los Angeles County.

**Commentator "BigMaMaJoans"**

13.     Plaintiff herein alleges that on a public website, Defendant created an alias BigMaMaJoans. On the website, BigMaMaJoans states that she is a patient who was treated at Cedars Sinai Hospital and received the Lap-Band surgical procedure. Plaintiff herein alleges that this internet profile is false and fraudulent and part of the fraudulent scheme. Plaintiff herein alleges that by creating a false profile, Defendant attempts to provide credibility to the subsequent posts.

3        Complaint for Lanham Act Violation

14.    Plaintiff herein alleges that after creating the false profile of a Lap-Band patient, Defendant then posted additional false and fraudulent information on various other Lap-Band specific websites.  With regard to the website, lapbandtalk.com, on or about March 4, 2010, Plaintiff herein alleges that Defendant through the alias of "BigMaMaJoans" caused to be published comments on that site.  In a comment titled "1-800-get-thin," defendant commented "Don't trust them with your life!"  Defendant then copied a news article from the Los Angeles Times regarding an out-patient surgery center which provides bariatric surgery.  Plaintiff herein alleges that Defendant through the alias of BigMaMaJoans has made various other false and fraudulent internet postings.

15.    Plaintiff alleges that by stating don't trust them with your life together with 1 800 GET THIN, BigMaMaJoans sought to equate Plaintiff with the medical facility and/or the doctor that provided medical care and treatment, even though Plaintiff neither owns, operates or controls any medical facility or medical doctor. Plaintiff alleges that BigMaMaJoans' statement were false and misleading with regard to Plaintiff's business operations and damaging to Plaintiff's trademark.

16.    On or about March 4, 2010, commentator BigMaMaJoans posted a report on RipoffReport.com.  Comments made on RipoffReport.com were similar to comments posted on lapbandtalk.com.  In fact, BigMaMaJoans on RipoffReport.com copied the same Los Angeles Times article posted on lapbandtalk.com and sought to equate Plaintiff with the out-patient surgery center and/or medical doctors providing medical care and treatment.  For that reason, Plaintiff is informed and believes that the BigMaMaJoans on RipoffReport.com and lapbandtalk.com are the same person, to wit, the Defendant.

17.    As with the statement on lapbandtalk.com, the statement on RipoffReport.com was false and misleading with regard to Plaintiff's business operations and damaging to Plaintiff's trademark.

18.     Recently, on January 23, 2011, another post on RipoffReport.com was made by BigMaMaJoans.  That post repeated the phrase "THE LAP BAND WORKS 1800 GET THIN KILLS PEOPLE!"  The post then copied a recent Los Angeles Times article by the same columnist as in the previous BigMaMaJoans posts.  As the same modus operandi was followed as in the prior BigMaMaJoans posts, Plaintiff believes this is the same individual who posted this and all prior comments, specifically, the Defendant.

19.     Plaintiff is thus informed and believes that Defendant has established a pattern and practice of making disparaging and misleading comments against Plaintiff which has damaged Plaintiff's trademark.

## Advertising Association

20.     Plaintiff herein alleges that in addition to directly attacking Plaintiff's trademark through the posting of false and fraudulent internet comments, Defendant has also sought to improperly associate himself with Plaintiff's trademark.

21.     Plaintiff is informed and believes that Defendant has sought to associate himself with Plaintiff's trademark, 1 800 GET THIN, with regard to internet advertising.

22.     Specifically, Plaintiff is informed and believes that with regard to Google Ads, Defendant has linked his website with Plaintiff's trademark.  By doing this, any person searching for Plaintiff's trademark, 1 800 GET THIN, on Google will see Defendant's name in the Google Ads space on the displayed web page.  This result occurs as Defendant has linked his name to Plaintiff's trademark.  Therefore, Plaintiff alleges that Defendant did this act, so that when any individual searches for 1 800 GET THIN, they will find a negative article, mainly information falsely posted by the Defendant such that the individual user will then also simultaneously be exposed to a Google Ad for a competitor, namely the Defendant.

Complaint for Lanham Act Violation

23.     Plaintiff is informed and believes that by these actions Defendant is improperly and impermissibly associating with Plaintiff's trademark.

### First Cause of Action

### Violation of the Lanham Act

### (Against Defendant)

24.     Plaintiff hereby incorporates Paragraphs 1 through 23, inclusive, herein by reference, as though set forth in full.

25.     This claim arises under the Lanham Act, 15 U.S.C. § 1051 et seq. This is a Federal Claim for which jurisdiction in the Federal Court is based.

26.     Plaintiff herein alleges that on or about March 4, 2010, Defendant using the alias "BigMaMaJoans" caused to be published comments on the website lapbandtalk.com. In a comment titled "1-800-get-thin," defendant commented "Don't trust them with your life!" BigMaMaJones then copied a Los Angeles Times article regarding an out-patient surgery center with which it sought to associate Plaintiff.

27.     On or about March 4, 2010, commentator BigMaMaJoans posted to another website, RipoffReport.com, on which site BigMaMaJoans made similar comments to the posts on lapbandtalk.com. BigMaMaJoans copied the same Los Angeles Times article it had posted on lapbandtalk.com and sought to equate Plaintiff with the performance of medical services.

28.     On or about January 23, 2010, commentator BigMaMaJoans posted to RipoffReport stating "THE LAP BAND WORKS 1800 GET THIN KILLS PEOPLE!" followed by the posting of another Los Angeles Times article.

29.     On information and belief, Plaintiff alleges that BigMaMaJoans is actually Defendant, who is making comments under an assumed name so as not to reveal his true identity.

30.     As identified, the Defendant in posting the statements specifically identified 1 800 GET THIN. The false and fraudulent comments Defendant made

were of and concerning Plaintiff and would be understood as such by any other individual who read the publication.

31.   By those comments, Defendant, in connection with goods or services, used a false or misleading representation of fact which was likely to cause confusion, to cause mistake, or deceive as to the origin or approval of Plaintiff and Plaintiff's business.

32.   Specifically, Defendant has sought to equate Plaintiff's business with an outpatient surgery center even though Plaintiff does not own or operate any medical facilities or hire any doctors.  As stated above, Plaintiff is merely a marketing service.

33.   Plaintiff is informed and believes that Defendant's statements have deceived or are likely to deceive a substantial portion of the audience reading those statements.

34.   Plaintiff is informed and believes that Defendant, by his actions, has caused members of the public to believe Plaintiff does operate medical facilities and is engaged in conducting medical services.

35.   As a result of Defendant's actions, Plaintiff has, and continues, to suffer injury including loss of sales and profits.

## Second Cause of Action

## False Advertising in Violation of California

## Business & Professions Code § 17500

## (Against Defendant)

36.   Plaintiff hereby incorporates Paragraphs 1 through 35, inclusive, herein by reference, as though set forth in full.  Jurisdiction for this Cause of Action is based upon supplemental jurisdiction.

37.   Plaintiff on information and belief alleges Defendant made disparaging, untrue, and misleading comments against Plaintiff under the assumed name of BigMaMaJoans.

7       Complaint for Lanham Act Violation

38.     Recently, the Federal Trade Commission ("FTC") has issued new guidelines regarding the conduct of bloggers and commentators on the internet. One of new guidelines concerns disclosures of material connections.

39.     Specifically, 16 CFR § 255.5 states:

When there exists a connection between the endorser and seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected from the audience), such connection must be fully disclosed.

40.     Defendant, as a competitor of Plaintiff, has violated 16 CFR § 255.5 by not revealing or using his true identity and using the assumed identity of BigMaMaJoans for his comments.

41.     Plaintiff is informed and believes that in violating FTC regulations, Defendant has engaged in false advertising per se and is in violation of California Business & Professions Code § 17500.

42.     Additionally, in seeking a misleading association with Plaintiff's trademark through the misuse of Google Ads, Defendant has committed a second violation of California Business & Professions Code § 17500.

43.     As a result of the actions of the Defendant, Plaintiff has suffered and continues to suffer economic damages, all according to proof at the time of trial.

## Third Cause of Action

## Unfair Business Practices in Violation of California

## Business & Professions Code § 17200

## (Against Defendant)

44.     Plaintiff hereby incorporates Paragraphs 1 through 43, inclusive, herein by reference, as though set forth in full. Jurisdiction for this Cause of Action is based upon supplemental jurisdiction.

Complaint for Lanham Act Violation

45.     Plaintiff on information and belief alleges Defendant made disparaging comments against Plaintiff under the assumed name of BigMaMaJoans.

46.     As alleged above, Plaintiff alleges that these actions constitute a violation of the Lanham Act.

47.     Plaintiff is also informed and believes that Defendant has violated FTC regulations and engaged in false advertising.

48.     Defendant's statutory and regulatory violations constitute an unfair business practice under California Business & Professions Code § 17200 et. seq.

49.     Plaintiff has been injured by Defendant's unfair business practices and Defendant's acts are the actual and proximate cause of Plaintiff's injuries.

**Prayer for Relief**

Wherefore Plaintiff prays for judgment as follows:

1.     Defendant be enjoined from making false and misleading statements against Plaintiff;

2.     Defendant be enjoined from engaging in false and misleading commercial advertising;

3.     Defendant be ordered to reimburse Plaintiff for any damages suffered in an amount to be proven at trial;

4.     Defendant be ordered to make restitution of all monies due Plaintiff and disgorgement of profits from Defendants' unlawful business practices;

5.     Defendant be ordered to reimburse Plaintiff for reasonable attorney fees and the cost of suit herein pursuant to 15 USC § 1117;

6.     and, For such other and further relief as the Court may determine is just and proper.

9          Complaint for Lanham Act Violation

Dated this 25th day of January, 2011

**SILVERMAN & ASSOCIATES**

_____

Robert B. Silverman
Attorneys For Plaintiff

10          Complaint for Lanham Act Violation

# EXHIBIT B

1  Alexander Weisse, Esq. (SBN 254236)
   27890 Clinton Keith Rd., Ste. D-414
2  Murrieta, CA  92562
   (310) 230-5741
3
   Attorney for Plaintiffs,
4  Beverly Hills Surgery Center, LLC
   Top Surgeons, LLC

A6029
90211

FILED
Los Angeles Superior Court

APR 22 2010

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
   SHAUNA WESLEY

6              SUPERIOR COURT OF CALIFORNIA

7                COUNTY OF LOS ANGELES

8

9  BEVERLY HILLS SURGERY CENTER,  ) Case No.
   LLC, a California limited      )
10 liability company, and TOP     )        BC438309
   SURGEONS, LLC, a California     )
11 limited liability company      ) COMPLAINT FOR DAMAGES AND TREBLE
                                  ) DAMAGES; VERIFICATION OF
12            Plaintiffs,         ) COMPLAINT
                                  ) (Trade Libel and Unfair Business
13       vs.                      ) Practice)
                                  )
14 DOES 1 through 100,            )
                                  )
15            Defendants.         )
                                  )

16

17 Plaintiffs allege:

18

19    1. Plaintiffs, Beverly Hills Surgery Center, LLC ("BHSC"), a

20 California limited liability company, and Top Surgeons, LLC ("Top

21 Surgeons"), a California limited liability company (collectively,

22 "Plaintiffs"), are, and at all times herein mentioned were, doing

23 business in Beverly Hills, California, which is within the County

24 of Los Angeles.

25    2. Defendants, DOES 1 through 100, inclusive ("Defendant),

26 are sued herein under fictitious names. Their true names and

27 capacities are unknown to Plaintiffs. When their true names and

28                          -1-

       COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that each of Plaintiffs' damages as herein alleged were proximately caused by such Defendants.

3. BHSC is the operator of an ambulatory surgical center. BHSC does not, with its own doctors, treat patients within the center, but instead allows independent doctors use the surgical center for examination, diagnosis, and surgery, primarily for the surgical procedure known as laparoscopic banding, as well as for use attendant to the afore-mentioned acts.

4. Top Surgeons is an advertiser for the doctors that perform laparoscopic banding surgeries and other related surgeries in surgery centers across southern California, including BHSC.

5. Defendants have published or have caused to be published comments relating to each of Plaintiffs' businesses on various internet websites, with damage caused at each of Plaintiffs' business offices in Los Angeles County.

**FIRST CAUSE OF ACTION – TRADE LIBEL BY SNAPSHOTS**

6. On or about February 14, 2010, a user identified as SNAPSHOTS ("SNAPSHOTS") published the following on the website of latimes.com: "Thank you for researching what could very clearly be a public health and personal financial risk to many unwitting

-2-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  people who may be desperate and frustrated in their attempts to

2  stop overeating. Dishonesty and bad medical practices are a

3  recipe for disaster."

4      7. The publication SNAPSHOTS made was of and concerning

5  Plaintiffs and was so understood by those who read the

6  publication.

7      8. The statement of SNAPSHOTS disparaged Plaintiffs' above-

8  described business services in that it falsely indicated that

9  Plaintiffs' services were not safe.  The statement of SNAPSHOTS

10  further disparaged Plaintiffs' above-described business services

11  in that it falsely indicated that Plaintiffs operate dishonestly.

12      9. The statement of SNAPSHOTS was false.  BHSC operates

13  pursuant to the Joint Commission medical accreditation program,

14  who has given the facility its Gold Seal; and Top Surgeons only

15  directs patients to licensed doctors performing surgeries in

16  accredited facilities. Further, there have never been any

17  dishonest acts made by either of the Plaintiffs, and none can be

18  shown.

19      10. The statement of SNAPSHOTS was made with knowledge of

20  its falsity or with reckless disregard for its truth or falsity.

21      11. The statement of SNAPSHOTS has a tendency to injure the

22  each of the Plaintiffs in their occupations because it imputes to

23  Plaintiffs fraud, dishonesty, or questionable business methods in

24  connection with its services, and is therefore, pursuant to Civil

25  Code § 45a, libel on its face.

26  ///

27  ///

28

-3-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

**SECOND CAUSE OF ACTION - TRADE LIBEL BY ADRIEN_DALLAS**

12. On or about February 14, 2010, a user identified as Adrian_Dallas ("Adrian") published the following on the website of latimes.com: "And I don't want to be inundated in the months and years to come by the inevitable sad little lawsuits of those fleeced by the clearly (almost?) criminal con-men who own 1-800-GET-THIN."

13. The publication Adrian made was of and concerning Top Surgeons and was so understood by those who read the publication.

14. The statement of Adrian disparaged Top Surgeons's above-described business services in that it falsely indicated that Top Surgeons was operating dishonestly.

15. The statement of Adrian was false. There have never been any dishonest acts made by Top Surgeons, and none can be shown.

16. The statement of Adrian was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

17. The statement of Adrian has a tendency to injure Top Surgeons in its occupation because it imputes to Top Surgeons fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

**THIRD CAUSE OF ACTION - TRADE LIBEL BY JKRISCHEL**

18. On or about February 14, 2010, a user identified as jkrischel ("Jkrischel") published the following on the website of latimes.com: "The fact that we're suggesting to people that

-4-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

surgery should be considered, when it is simply carbohydrate intake that is the problem, is macabre."·

19. The publication Jkrischel made was of and concerning the actions of Plaintiffs, as promoter for laparoscopic banding or as the facility where the procedure is commonly performed, and was so understood by those who read the publication.

20. The statement of Jkrischel disparaged Plaintiffs' above-described business services in that they falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity.

21. The statement of Jkrischel was false. Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

22. The statement of Jkrischel was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

23. The statement of Jkrischel has a tendency to injure the Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

**FOURTH CAUSE OF ACTION - TRADE LIBEL BY NEOSERF**

24. On or about February 14, 2010, a user identified as neoserf ("Neoserf") published the following on the website of latimes.com: "This is not some big controversy or earth-shaking conspiracy, but the shady business practices employed by this

-5-

1  company validate the inkling engendered by the profusion of

2  billboards that it's all about the money machine, and not about

3  helping obese people make a good decision when embarking on a

4  profound change in every aspect of their nutritional lives such

5  as gastric bypass surgery."

6      25. The publication Neoserf made was of and concerning

7  Plaintiffs and was so understood by those who read the

8  publication.

9      26. The statement of Neoserf disparaged Top Surgeons's and

10  BHSC's above-described business services in that it falsely

11  indicated that their businesses were "shady," imputing dishonesty

12  on their business practices.  The statement further disparaged

13  Top Surgeons's and BHSC's above-described business services in

14  that it falsely indicated that the procedure promoted by Top

15  Surgeons or performed at BHSC's facility is not a proper

16  treatment of morbid obesity.

17      27. The statement of Neoserf was false.  There have never

18  been any dishonest acts made by Top Surgeons nor BHSC, and none

19  can be shown.  Further, laparoscopic banding has been shown by

20  numerous medical studies, including studies by the National

21  Institutes of Health, to be a proper treatment for morbid

22  obesity.

23      28. The statement of Neoserf was made with knowledge of its

24  falsity or with reckless disregard for its truth or falsity.

25      29. The statement of Neoserf has a tendency to injure Top

26  Surgeons and BHSC in their occupations because it imputes to

27  Plaintiffs fraud, dishonesty, or questionable business methods in

28

-6-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   connection with their services, and is therefore, pursuant to

2   Civil Code § 45a, libel on its face.

3

4   **FIFTH CAUSE OF ACTION – UNFAIR BUSINESS PRACTICE BY NEOSERF**

5       30. On or about February 14, 2010, Neoserf published the

6   following on the website of latimes.com: "This is not some big

7   controversy or earth-shaking conspiracy, but the shady business

8   practices employed by this company validate the inkling

9   engendered by the profusion of billboards that it's all about the

10   money machine, and not about helping obese people make a good

11   decision when embarking on a profound change in every aspect of

12   their nutritional lives such as gastric bypass surgery."

13       31. The comments authored by Neoserf were directed toward

14   the business addresses of Plaintiffs in Beverly Hills,

15   California, and have caused harm to the Plaintiffs at the

16   Plaintiffs' business addresses.

17       32. Neoserf's comment states facts about Plaintiffs'

18   businesses and business operations which it knows are untrue or

19   misleading in order to deceive the public, in violation of

20   Business & Professions Code § 17200, as an unlawful, unfair, or

21   fraudulent business act or practice.

22       33. Neoserf knowingly published the comment about the

23   Plaintiffs' businesses while concealing Neoserf's true identity,

24   thereby making it seem that the comments were unbiased.

25   Therefore, the comment was made in a manner likely to deceive the

26   public, in violation of Business & Professions Code § 17200, as

27   an unlawful, unfair, or fraudulent business act or practice.

28                                       -7-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

34. Plaintiffs are informed and believe and thereon allege that Neoserf performed the above-mentioned act for the purpose of injuring the business of the Plaintiff.

35. As a proximate result of the above-mentioned act of Neoserf, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

**SIXTH CAUSE OF ACTION - TRADE LIBEL BY PAULMAYER**

36. On or about February 14, 2010, a user identified as paulmayer ("Mayer") published the following on the website of latimes.com: "It is amazing how characters like these are given so much freedom to perform procedures that do not fall within the guidelines established by the National Institute of Health. They are liars and cheats whose licenses have been revoked. Were I ever in need of such a procedure, I would never go to Topsurgeons."

37. The publication Mayer made was of and concerning Plaintiffs and was so understood by those who read the publication.

38. The statement of Mayer disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity. The statement of Mayer further disparaged Plaintiffs' above-described

-8-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

business services in that it falsely indicated that the
businesses lie, cheat, and operate without a valid license,
imputing fraud, dishonest, or questionable business methods on
their business practices.

39. The statement of Mayer was false. Performance of
laparoscopic banding has been shown by numerous medical studies,
including studies by the National Institutes of Health, to be a
proper treatment for morbid obesity. There have never been any
acts of dishonesty performed by either of the Plaintiffs, and
none can be shown. Further, the Plaintiffs have never had a
license revoked and each currently operate with all licenses
required to lawfully operate.

40. The statement of Mayer was made with knowledge of its
falsity or with reckless disregard for its truth or falsity.

41. The statement of Mayer has a tendency to injure each of
the Plaintiffs in their occupations because it imputes to
Plaintiffs fraud, dishonesty, or questionable business methods in
connection with their services, and is therefore, pursuant to
Civil Code § 45a, libel on its face.


SEVENTH CAUSE OF ACTION - UNFAIR BUSINESS PRACTICE BY MAYER

42. On or about February 14, 2010, Mayer published the
following on the website of latimes.com: "It is amazing how
characters like these are given so much freedom to perform
procedures that do not fall within the guidelines established by
the National Institute of Health. They are liars and cheats whose

-9-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   licenses have been revoked. Were I ever in need of such a

2   procedure, I would never go to Topsurgeons."

3       43. The comments authored by Mayer were directed toward the

4   business addresses of Plaintiffs in Beverly Hills, California,

5   and have caused harm to the Plaintifsf at the Plaintiffs'

6   business addresses.

7       44. Mayer's comment states facts about Plaintiffs'

8   businesses and business operations which it knows is untrue or

9   misleading in order to deceive the public, in violation of

10  Business & Professions Code § 17200, as an unlawful, unfair, or

11  fraudulent business act or practice.

12      45. Mayer knowingly published the comment about the

13  Plaintiffs' businesses while concealing Mayer's true identity,

14  thereby making it seem that the comment was unbiased.  Therefore,

15  the comment was made in a manner likely to deceive the public, in

16  violation of Business & Professions Code § 17200, as an unlawful,

17  unfair, or fraudulent business act or practice.

18      46. Plaintiffs are informed and believe and thereon allege

19  that Mayer performed the above-mentioned act for the purpose of

20  injuring the businesses of the Plaintiffs.

21      47. As a proximate result of the above-mentioned act of

22  Mayer, Plaintiffs have been deprived of the patronage of a large

23  number of its actual and potential customers, the exact amount of

24  such damages is presently unknown to Plaintiffs, and will be

25  subject to further proof at the time of trial, to be subject to

26  treble damages.

27

28

-10-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

**EIGHTH CAUSE OF ACTION – TRADE LIBEL BY DALEFOGDEN**

48. On or about February 15, 2010, a user identified as dalefogden ("Fogden") published the following on the website of latimes.com: "Let's hope these crooks get what's coming to them. It seems there is significant possibility of criminal fraud activity."

49. The publication Fogden made was of and concerning the Plaintiffs and was so understood by those who read the publication.

50. The statement of Fogden disparaged Plaintiffs' above-described business services in that it falsely indicated that the businesses and individual were "crooks," imputing fraud, dishonest, or questionable business methods on their business practices.

51. The statement of Fogden was false.  There have never been any "crooked" or dishonest acts made by Plaintiffs, and none can be shown.

52. The statement of Fogden was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

53. The statement of Fogden has a tendency to injure Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

///
///
///

-11-

**NINTH CAUSE OF ACTION – TRADE LIBEL BY WTHARVEY**

54. On or about February 16, 2010, a user identified as wtharvey ("Harvey") published the following on the website of latimes.com: "I'd be careful of the lap-band device. We see a lot of complications such as erosion into the stomach and slippage. Probably the formal gastric bypass roux-en-y procedure works best, but requires a highly skilled team to get good results."

55. The publication Harvey made was of and concerning Plaintiffs and was so understood by those who read the publication.

56. The statement of Harvey disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a safe treatment of morbid obesity.

57. The statement of Harvey was false.  Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a safe and proper treatment for morbid obesity.

58. The statement of Harvey was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

59. The statement of Harvey has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

///

///

-12-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

TENTH CAUSE OF ACTION — UNFAIR BUSINESS PRACTICE BY WTHARVEY

60. On or about February 16, 2010, Harvey published the following on the website of latimes.com: "I'd be careful of the lap-band device. We see a lot of complications such as erosion into the stomach and slippage. Probably the formal gastric bypass roux-en-y procedure works best, but requires a highly skilled team to get good results."

61. The comments authored by Harvey were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

62. Harvey's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

63. Harvey knowingly published the comment about the Plaintiffs' business while concealing Harvey's true identity, thereby making it seem that the comment was unbiased. Therefore, this comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

64. Plaintiffs are informed and believe and thereon allege that Harvey performed the above-mentioned act for the purpose of injuring the businesses of the Plaintiffs.

65. As a proximate result of the above-mentioned act of Harvey, Plaintiffs have been deprived of the patronage of a large

-13-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  number of its actual and potential customers, the exact amount of
2  such damages is presently unknown to Plaintiffs, and will be
3  subject to further proof at the time of trial, to be subject to
4  treble damages.

5
6  **ELEVENTH CAUSE OF ACTION - TRADE LIBEL BY MATT_POWERS**
7       66. On or about March 3, 2010, a user identified as
8  matt_powers ("Powers") published the following on the website of
9  latimes.com: "Even giving these businesses the benefit of the
10 doubt, it's quite telling that no one is offering any evidence of
11 having 'learned their lessons' from the previous inspection
12 findings. Ridiculous..."
13      67. The publication Powers made was of and concerning
14 Plaintiffs and was so understood by those who read the
15 publication.
16      68. The statement of Powers disparaged Plaintiffs' above-
17 described business services in that it falsely indicated that
18 Plaintiffs' services were not safe.
19      69. The statement of Powers was false.  BHSC operates
20 pursuant to the Joint Commission medical accreditation program,
21 who has given the facility its Gold Seal; and Top Surgeons only
22 directs patients to licensed doctors performing surgeries in
23 accredited facilities.
24      70. The statement of Powers was made with knowledge of its
25 falsity or with reckless disregard for its truth or falsity.
26      71. The statement of Powers has a tendency to injure
27 Plaintiffs in their occupation because it imputes to Plaintiffs
28                                  -14-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  fraud, dishonesty, or questionable business methods in connection
2  with their services, and is therefore, pursuant to Civil Code §
3  45a, libel on its face.

4

5  **TWELFTH CAUSE OF ACTION - TRADE LIBEL BY CALLCENTERJOHNNY**

6  72. On or about March 4, 2010, a user identified as
7  callcenterjohnny ("CCJ") published the following on the website
8  of latimes.com: "They have attempted to refix [sic] their
9  deficiencies but not quietly. After so many failures they changed
10 their name to Beverly Hills surgery center, and oddly, their next
11 door neighbors were Beverly hills center or something of that
12 sort.… Money breaks people or makes people, you can be
13 successful with less problems or be successful have problems but
14 its [sic] dirty money.  Workers comp, would be going out of
15 business and all over latimes if people at the center actually
16 reported everything on a daily basis."

17 73. On or about March 5, 2010, CCJ published the following
18 on the website of latimes.com: "… its [sic] not about what the
19 lapband can do for you...its [sic] about the the [sic] surgery
20 center itself and the scam that is behind it."

21 74. On or about March 7, 2010, CCJ published the following
22 on the website of latimes.com: "PEOPLE...do you not
23 understand..who cares about the doctors..believe me, if you only
24 knew the BEHIND THE SCENES AT what almont or Beverly hills
25 surgery center.. you should care about the ownership of the
26 company..they hav efailed [sic] countless times due to inadequate
27 and unsafe care of patients and thus have changed their name to

28                                  -15-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

beverly hills surgery center...you may have had a pleasant visit and surgery went well, guess you were lucky how about those..how about the deaths that have occurred that you are not aware of , [sic] or the complications. lap band is a good way for weight loss BUT the surgery center does NOT ABIDE medical protocols ensuring a safe procedure for patients."

75. The publications CCJ made were of and concerning the plaintiff and were so understood by those who read the publications.

76. The statements of CCJ disparaged Plaintiffs' above-described business services in that they falsely indicated that Plaintiffs' services were not safe, implying that death or other severe complications occurred at the surgery center, and Plaintiffs were deceptive in their business practices, earning "dirty money."

77. The statements of CCJ were false. BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, no death has occurred at the BHSC. Plaintiffs do not operate a "scam," nor is it earning "dirty money."

78. The statements of CCJ were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

79. The statements of CCJ has a tendency to injure Plaintiffs in their occupation because they impute to Plaintiffs fraud, dishonesty, or questionable business methods in connection

-16-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1 with their services, and are therefore, pursuant to Civil Code §

2 45a, libel on its face.

3

4    **THIRTEENTH CAUSE OF ACTION – TRADE LIBEL BY EBUCKLY**

5        80. On or about March 4, 2010, a user identified as Ebuckly

6 ("Ebuckly") published the following on the website of

7 latimes.com: "They had people overflowing in the place, a former

8 patient was in the waiting room telling everyone that she should

9 have never had the surgery due to issues with her esophagus, but

10 they performed surgery anyway, and she has multiple health issues

11 since. Bottom line, I walked out! I waited 10 years to have this

12 surgery, and as excited as I was, I knew that this place was

13 shady.… After reading this article it has confirmed the feeling I

14 had, and I am so grateful I walked out that day! They are money

15 hungry!!"

16        81. The publication Ebuckly made was of and concerning

17 Plaintiffs and was so understood by those who read the

18 publication.

19        82. The statement of Ebuckly disparaged Plaintiffs' above-

20 described business services in that it falsely indicated that

21 Plaintiffs' services were not safe.  The statement of Ebuckly

22 further disparaged Plaintiffs' above-described business services

23 in that it falsely indicated that the businesses were "shady,"

24 imputing dishonesty on their business practices.

25        83. The statement of Ebuckly was false.  BHSC operates

26 pursuant to the Joint Commission medical accreditation program,

27 who has given the facility its Gold Seal; and Top Surgeons only

28
                                  -17-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiffs, and none can be shown.

84. The statement of Ebuckly was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

85. The statement of Ebuckly has a tendency to injure Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

**FOURTEENTH CAUSE OF ACTION - TRADE LIBEL BY BIGSOUTHERN**

86. On or about March 4, 2010, a user identified as bigsouthern ("Bigsouthern") published the following on the website of latimes.com: "It's too easy to just assume every medical center in the US follows standard procedures to maintain a safe, sterile environment. It's scary to think about the possibilities with lapses in these basic practices."

87. The publication Bigsouthern made was of and concerning BHSC and was so understood by those who read the publication.

88. The statement of Bigsouthern disparaged BHSC's above-described business services in that it falsely indicated that BHSC's services did not follow standard procedures to maintain a safe, sterile environment, and therefore were not safe.

89. The statement of Bigsouthern was false. BHSC operates pursuant to the standard procedures required by the Joint Commission medical accreditation program, who has given the

-18-.

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  facility its Gold Seal; and Top Surgeons only directs patients to

2  licensed doctors performing surgeries in accredited facilities.

3      90. The statement of Bigsouthern was made with knowledge of

4  its falsity or with reckless disregard for its truth or falsity.

5      91. The statement of Bigsouthern has a tendency to injure

6  BHSC in its occupation because it imputes to BHSC fraud,

7  dishonesty, or questionable business methods in connection with

8  its services, and is therefore, pursuant to Civil Code § 45a,

9  libel on its face.

10

11           **FIFTEENTH CAUSE OF ACTION - TRADE LIBEL BY OCCHICK**

12      92. On or about March 4, 2010, a user identified as OCChick

13  ("OCChick") published the following on the website of

14  latimes.com: "I don't know why but I have always had a feeling

15  something was not quite right with this place. On almost all

16  freeways in the southland is 5-6-7 of these bill boards in a row,

17  how can they afford this? They are all over AM radio and TV, How

18  is it all insurance PPOs are covering it. I would suggest an

19  insurance audit as well."

20      93. The publication OCChick made was of and concerning

21  Plaintiffs and was so understood by those who read the

22  publication.

23      94. The statement of OCChick disparaged Plaintiffs' above-

24  described business services in that it falsely indicated that

25  Plaintiffs had deceptive business practices.

26      95. The statement of OCChick was false.  Plaintiffs have

27  never been accused of any insurance fraud, and there is no basis

-19-

28

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  for the statement that any insurance coverage claims made by
2  patients through Plaintiffs' services would not be valid.
3     96. The statement of OCChick was made with knowledge of its
4  falsity or with reckless disregard for its truth or falsity.
5     97. The statement of OCChick has a tendency to injure
6  Plaintiffs in their occupations because it imputes to Plaintiffs
7  fraud, dishonesty, or questionable business methods in connection
8  with their services, and is therefore, pursuant to Civil Code §
9  45a, libel on its face.
10
11    SIXTEENTH CAUSE OF ACTION - TRADE LIBEL BY ALLENGILLESPIE
12    98. On or about March 4, 2010, a user identified as
13  AllenGillespie ("AllenGillespie") published the following on the
14  website of latimes.com: "The comments supporting the disreputable
15  medical facility described in this article generally appear to
16  have been written by the same person."
17    99. The publication AllenGillespie made was of and
18  concerning BHSC and was so understood by those who read the
19  publication.
20    100. The statement of AllenGillespie disparaged BHSC's
21  above-described business services in that they falsely indicated
22  that BHSC's medical facility was disreputable.  Further, the
23  statement seems to infer that BHSC was posting comments under
24  different usernames and creating false personas in an attempt to
25  mislead the public.
26    101. The statement of AllenGillespie was false.  BHSC has
27  never been a focus of disrepute.  Further, BHSC did not create
28                                -20-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  false personas in an attempt to mislead the public with false

2  representations about BHSC and BHSC's business.

3      102. The statement of AllenGillespie was made with knowledge

4  of its falsity or with reckless disregard for its truth or

5  falsity.

6      103. The statement of AllenGillespie has a tendency to

7  injure BHSC in its occupation because it imputes to BHSC fraud,

8  dishonesty, or questionable business methods in connection with

9  its services, and is therefore, pursuant to Civil Code § 45a,

10 libel on its face.

11

12      SEVENTEENTH CAUSE OF ACTION - TRADE LIBEL BY DHAETTIG

13     104. On or about March 4, 2010, a user identified as

14 dhaettig ("Dhaettig") published the following on the website of

15 latimes.com: "[T]hose billboards and ads are like spam..... It

16 doesn't solve the obesity problem. Getting this procedure done

17 doesn't teach people about portion control or good nutrition, or

18 get to the psychological issues behind overeating."

19     105. The publication Dhaettig made was of and concerning

20 Plaintiffs and was so understood by those who read the

21 publication.

22     106. The statement of Dhaettig disparaged Plaintiffs' above-

23 described business services in that it falsely indicated that the

24 procedure promoted by Top Surgeons or performed at BHSC's

25 facility is not a proper treatment of morbid obesity.

26     107. The statement of Dhaettig was false.  Performance of

27 laparoscopic banding has been shown by numerous medical studies,

28                              -21-

1   including studies by the National Institutes of Health, to be a

2   proper treatment for morbid obesity.

3       108. The statement of Dhaettig was made with knowledge of

4   its falsity or with reckless disregard for its truth or falsity.

5       109. The statement of Dhaettig has a tendency to injure

6   Plaintiffs in their occupation because it imputes to Plaintiffs

7   fraud, dishonesty, or questionable business methods in connection

8   with their services, and is therefore, pursuant to Civil Code §

9   45a, libel on its face.

10

11      **EIGHTEENTH CAUSE OF ACTION – TRADE LIBEL BY BASEBALLHEAD**

12      110. On or about March 4, 2010, a user identified as

13  Baseballhead ("Baseballhead") published the following on the

14  website of latimes.com: "Hiltzik didn't shut down their previous

15  surgical venture, he wasn't the one who had a 22-page report made

16  out detailing all the violations at the surgical center that

17  they're accountable for… For the more discriminating consumers

18  who suffer from obesity and are looking at surgical options,

19  Hiltzik's column is a terrific reason to investigate Lap Band

20  more thoroughly %u2014 and then look elsewhere %u2014 before

21  putting their health and wallets on the line."

22      111. The publication Baseballhead made was of and concerning

23  Plaintiffs and was so understood by those who read the

24  publication.

25      112. The statement of Baseballhead disparaged Plaintiffs'

26  above-described business services in that they falsely indicated

27

28                              -22-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   that BHSC's center, and centers promoted by Top Surgeons

2   committed "violations" and were therefore unsafe.

3       113. The statement of Baseballhead was false.   BHSC operates

4   pursuant to the Joint Commission medical accreditation program,

5   who has given the facility its Gold Seal; and Top Surgeons only

6   directs patients to licensed doctors performing surgeries in

7   accredited facilities.   BHSC has never been cited for any

8   "violations."

9       114. The statement of Baseballhead was made with knowledge

10  of its falsity or with reckless disregard for its truth or

11  falsity.

12      115. The statement of Baseballhead has a tendency to injure

13  Plaintiffs in their occupation because it imputes to Plaintiffs

14  fraud, dishonesty, or questionable business methods in connection

15  with their services, and is therefore, pursuant to Civil Code §

16  45a, libel on its face.

17

18              NINTEENTH CAUSE OF ACTION –

19      UNFAIR BUSINESS PRACTICE BY BASEBALLHEAD

20      116. On or about March 4, 2010, Baseballhead published the

21  following on the website of latimes.com: "Hiltzik didn't shut

22  down their previous surgical venture, he wasn't the one who had a

23  22-page report made out detailing all the violations at the

24  surgical center that they're accountable for… For the more

25  discriminating consumers who suffer from obesity and are looking

26  at surgical options, Hiltzik's column is a terrific reason to

27  investigate Lap Band more thoroughly %u2014 and then look

28              -23-

─────────────────────────────────────────

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  elsewhere %u2014 before putting their health and wallets on the
2  line."
3      117. The comments authored by Baseballhead were directed
4  toward the business addresses of Plaintiffs in Beverly Hills,
5  California, and have caused harm to the Plaintiffs at the
6  Plaintiffs' business addresses.
7      118. Baseballhead's comment states facts about Plaintiffs'
8  businesses and business operations which it knows are untrue or
9  misleading in order to deceive the public, in violation of
10 Business & Professions Code § 17200, as an unlawful, unfair, or
11 fraudulent business act or practice.
12     119. Baseballhead knowingly published the comment about the
13 Plaintiffs' business while concealing Baseballhead's true
14 identity, thereby making it seem that the comment was unbiased.
15 Therefore, the comment was made in a manner likely to deceive the
16 public, in violation of Business & Professions Code § 17200, as
17 an unlawful, unfair, or fraudulent business act or practice.
18     120. Plaintiffs are informed and believe and thereon allege
19 that Baseballhead performed the above-mentioned act for the
20 purpose of injuring the business of the Plaintiffs.
21     121. As a proximate result of the above-mentioned act of
22 Baseballhead, Plaintiffs have been deprived of the patronage of a
23 large number of its actual and potential customers, the exact
24 amount of such damages is presently unknown to Plaintiffs, and
25 will be subject to further proof at the time of trial, to be
26 subject to treble damages.
27
28                              -24-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

**TWENTIETH CAUSE OF ACTION — TRADE LIBEL BY MATTEMONS**

122. On or about March 4, 2010, a user identified as mattemons ("Mattemons") published the following on the website of latimes.com: "There are plenty of reputable healthcare providers and facilities in the area that are highly qualified to perform these procedures. Why would anyone want to take a chance by going to a facility with such a shady past?"

123. The publication Mattemons made was of and concerning Plaintiffs and was so understood by those who read the publication.

124. The statement of Mattemons disparaged Plaintiffs' above-described business services in that it falsely indicated that the business was "shady," imputing dishonesty on its business practices.

125. The statement of Mattemons was false. There have never been any "shady" or other dishonest acts made by Plaintiffs, and none can be shown.

126. The statement of Mattemons was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

127. The statement of Mattemons has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

///
///
///

-25-

## TWENTY-FIRST CAUSE OF ACTION –

### UNFAIR BUSINESS PRACTICE BY MATTEMONS

128. On or about March 4, 2010, Mattemons published the following on the website of latimes.com: "There are plenty of reputable healthcare providers and facilities in the area that are highly qualified to perform these procedures. Why would anyone want to take a chance by going to a facility with such a shady past?"

129. The comments authored by Mattemons were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

130. Mattemons's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

131. Mattemons knowingly published the comment about the Plaintiffs' business while concealing Mattemons's true identity, thereby making it seem that the comments were unbiased. Therefore, the comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

132. Plaintiffs are informed and believe and thereon allege that Mattemons performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

-26-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

133. As a proximate result of the above-mentioned act of Mattemons, Plaintiffs have been deprived of the patronage of a large number of their actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

**TWENTY-SECOND CAUSE OF ACTION - TRADE LIBEL BY JULYPOSTOP**

134. On or about March 4, 2010, a user identified as JulyPostOp ("JulyPostOp") published the following on the website of latimes.com: "I was a patient who had so many test ordered for me that I had to call other doctors just to confirm. When I attended seminars at three different centers, I was told that none of these tests was necessary, and had my syrgery [sic] with just the tests that the Lap Band professors perform. Very disappointing that there are so many idiots, myself included, who look at the ads and think this is the real deal. The surgery is great. Just do it elsewhere.  July"

135. On or about March 4, 2010, JulyPostOp published the following on the website of latimes.com: "The biggest scam ever. I went there because they are from my country. I trust them. They charge my insurance $70,000 for surgery cost $18,000 cash. My isurance say [sic] too much. My whole life I only get one million, they take 10%.  Mohammed"

136. The publications JulyPostOp made were of, and concerning Plaintiffs and were so understood by those who read the publication.

-27-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

137. The statements of JulyPostOp disparaged Plaintiffs' above-described business services in that they falsely indicated that Plaintiffs performed tests which were medically unnecessary. The statements further disparage Plaintiffs' above-described business services in that they refer to their business operations as a "scam" and claims that Plaintiffs' fraudulently charges insurance companies more than the value of the surgery performed.

138. The statements of JulyPostOp were false. Plaintiffs have never required patients to undergo tests that were not medically necessary either for diagnosis, treatment, or to verify the healthful ability to undergo treatment. Further, there have never been any "scam" or other dishonest acts, including fraudulent insurance claims, made by Plaintiffs, and none can be shown.

139. The statements of JulyPostOp were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

140. The statements of JulyPostOp have a tendency to injure Plaintiffs in their occupations because they impute to Plaintiffs fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

### TWENTY-THIRD CAUSE OF ACTION –
### UNFAIR BUSINESS PRACTICE BY JULYPOSTOP

141. On or about March 4, 2010, JulyPostOp published the following on the website of latimes.com: "I was a patient who had

-28-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   so many test [sic] ordered for me that I had to call other
2   doctors just to confirm. When I attended seminars at three
3   different centers, I was told that none of these tests was [sic]
4   necessary, and had my syrgery [sic] with just the tests that the
5   Lap Band professors perform. Very disappointing that there are so
6   many idiots, myself included, who look at the ads and think this
7   is the real deal. The surgery is great. Just do it elsewhere.
8   July"

9       142. On or about March 4, 2010, JulyPostOp published the
10  following on the website of latimes.com: "The biggest scam ever.
11  I went there because they are from my country. I trust them. They
12  charge my insurance $70,000 for surgery cost $18,000 cash. My
13  isurance say [sic] too much. My whole life I only get one
14  million, they take 10%.  Mohammed"

15      143. The comments authored by JulyPostOp were directed
16  toward the business addresses of Plaintiffs in Beverly Hills,
17  California, and have caused harm to the Plaintiffs at the
18  Plaintiffs' business addresses.

19      144. JulyPostOp comments state facts about Plaintiffs'
20  business and business operations which it knows are untrue or
21  misleading in order to deceive the public, each in violation of
22  Business & Professions Code § 17200, as an unlawful, unfair, or
23  fraudulent business act or practice.

24      145. JulyPostOp knowingly published comments about the
25  Plaintiffs' business while concealing JulyPostOp's true identity,
26  thereby making it seem that the comments were unbiased.
27  Therefore, these comments were made in a manner likely to deceive
28                              -29-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  the public, each in violation of Business & Professions Code §

2  17200, as an unlawful, unfair, or fraudulent business act or

3  practice.

4      146. Plaintiffs are informed and believe and thereon allege

5  that JulyPostOp performed the above-mentioned acts for the

6  purpose of injuring the business of the Plaintiff.

7      147. As a proximate result of the above-mentioned acts of

8  JulyPostOp, Plaintiffs have been deprived of the patronage of a

9  large number of their actual and potential customers, the exact

10  amount of such damages is presently unknown to Plaintiffs, and

11  will be subject to further proof at the time of trial, to be

12  subject to treble damages.

13

14      **TWENTY-FOURTH CAUSE OF ACTION - TRADE LIBEL BY DRBRUIN2**

15      148. On or about March 4, 2010, a user identified as

16  DrBruin2 ("DrBruin2") published the following on the website of

17  latimes.com: "This company should be closed down permanently and

18  all of their licenses should be revoked."

19      149. The publication DrBruin2 made was of and concerning

20  Plaintiffs and was so understood by those who read the

21  publication.

22      150. The statement of DrBruin2 disparaged Plaintiffs' above-

23  described business services in that it falsely indicated that

24  Plaintiffs operated the business in a manner that would require

25  the revocation of licenses.

26

27

28                      -30-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

151. The statement of DrBruin2 was false.  There have never been any acts by the Plaintiffs that would suggest the revocation of any license would be proper, and none can be shown.

152. The statement of DrBruin2 was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

153. The statement of DrBruin2 has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

**TWENTY-FIFTH CAUSE OF ACTION - TRADE LIBEL BY RUJOKING?!**

154. On or about March 4, 2010, a user identified as RUJoking?! ("RUJoking") published the following on the website of latimes.com: "Mr. Hiltzik's articles here are doing a public service to aid law enforcement in shutting down these quacks as soon as possible."

155. The publication RUJoking made was of and concerning Plaintiffs and was so understood by those who read the publication.

156. The statement of RUJoking disparaged Plaintiffs' above-described business services in that it falsely indicated that the businesses were operating dishonestly.  The statement further disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons of performed at BHSC's facility is "quackery" and not a proper treatment of morbid obesity.

-31-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

157. The statement of RUJoking was false.  There have never been any dishonest acts made by plaintiffs, and none can be shown.  Further, performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

158. The statement of RUJoking was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

159. The statement of RUJoking has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

**TWENTY-SIXTH CAUSE OF ACTION - TRADE LIBEL BY INSTRUCTORP**

160. On or about March 4, 2010, a user identified as InstructorP ("InstructorP") published the following on the website of latimes.com: "Thank you Mike for exposing this fraud and the few customers who would rather take the easy dangerous approach to losing weight instead of just plain old exercise! $18,000 for a surgical procedure by discredited doctors should be on 60 minutes or another expose show."

161. The publication InstructorP made was of and concerning Plaintiffs and was so understood by those who read the publication.

162. The statement of InstructorP disparaged Plaintiffs' above-described business services in that it falsely indicated

-32-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1    that the procedure promoted by Top Surgeons or performed at
2    BHSC's facility is not a proper treatment of morbid obesity.
3    Further, the statement falsely stated that the surgical
4    procedures performed at BHSC was by doctors that have been
5    discredited.

6        163. The statement of Instructor? was false.  Performance of
7    laparoscopic banding has been shown by numerous medical studies,
8    including studies by the National Institutes of Health, to be a
9    proper treatment for morbid obesity.  In addition, the
10   laparoscopic banding procedures performed at BHSC, and at centers
11   promoted by Top Surgeons, are only performed by licensed doctors.

12       164. The statement of Instructor? was made with knowledge of
13   its falsity or with reckless disregard for its truth or falsity.

14       165. The statement of Instructor? has a tendency to injure
15   Plaintiffs in their occupation because it imputes to Plaintiffs
16   fraud, dishonesty, or questionable business methods in connection
17   with their services, and is therefore, pursuant to Civil Code §
18   45a, libel on its face.

19

20       TWENTY-SEVENTH CAUSE OF ACTION - TRADE LIBEL BY 1FRIEND
21       166. On or about March 5, 2010, a user identified as 1Friend
22   ("1Friend") published the following on the website of
23   latimes.com: "A typical california [sic] insurance rip-off scam."
24       167. The publication 1Friend made was of and concerning
25   Plaintiffs and was so understood by those who read the
26   publication.

27

28                              -33-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

168. The statement of 1Friend disparage Plaintiffs' above-described business services in that it refers to Plaintiffs' business operations as a "rip-off scam" and claims that Plaintiffs' fraudulently charge insurance companies.

169. The statement of 1Friend was false.  There have never been any "rip-off scam" or other dishonest acts, including fraudulent insurance claims, made by Plaintiffs, and none can be shown.

170. The statement of 1Friend was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

171. The statement of 1Friend has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code $ 45a, libel on its face.

**TWENTY-EIGHTH CAUSE OF ACTION - TRADE LIBEL BY DARMAGGI**

172. On or about March 5, 2010, a user identified as darmaggi ("Darmaggi") published the following on the website of latimes.com: "Just the ever presence of that annoying and simplistic ad in their multiform media campaign was enough to cause concern and create doubt as to the quality and veracity of who they are and the kind of work they are really performing. With any luck you may have helped put some obviously unscrupulous medical practitioners out of business, and in the process saved some lives, and saved us all from over exposure to those obnoxious ads.  When the medial [sic] boards removed their

-34-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  certifications they just reconstituted under new names without

2  losing too much time or money, but hopefully, you have connected

3  the dots for those concerned, between the Omidi's [sic] and their

4  odious ad campaign, which would probably be much more costly to

5  retool and relaunch than their actual medical corporation."

6      173. The publication Darmaggi made was of and concerning

7  Plaintiffs and was so understood by those who read the

8  publication.

9      174. The statement of Darmaggi disparaged Plaintiffs' above-

10  described business services in that it falsely indicated that

11  Plaintiffs' services were not safe. The statement of Darmaggi

12  further disparaged Plaintiffs' above-described business services

13  in that it falsely indicated that the businesses were operating

14  unscrupulously.  In addition, neither of the Plaintiffs ever had

15  any certification removed from a medical board.

16      175. The statement of Darmaggi was false. BHSC operates

17  pursuant to the Joint Commission medical accreditation program,

18  who has given the facility its Gold Seal; and BHSC never has had

19  any "certification" removed from any entity, including the

20  medical board. Top Surgeons only directs patients to licensed

21  doctors performing surgeries in accredited facilities. Further,

22  there have never been any dishonest acts made by Plaintiffs, and

23  none can be shown.

24      176. The statement of Darmaggi was made with knowledge of

25  its falsity or with reckless disregard for its truth or falsity.

26      177. The statement of Darmaggi has a tendency to injure

27  Plaintiffs in their occupation because it imputes to Plaintiffs

                                    -35-

28

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   fraud, dishonesty, or questionable business methods in connection

2   with their services, and is therefore, pursuant to Civil Code §

3   45a, libel on its face.

4

5   **TWENTY-NINTH CAUSE OF ACTION - TRADE LIBEL BY RAMONAINCORONA**

6   178. On or about March 7, 2010, a user identified as

7   RamonaInCorona ("RamonaInCorona") published the following on the

8   website of latimes.com: "[T]here are PLENTY of other surgeons out

9   in LA that practice at hospitals designated as Bariatric Center

10  [sic] of Excellence. If you have the choice, I'm not sure why

11  anyone would choose TopSurgeons. This is your life folks and if

12  you are taking it seriously enough to go through major surgery,

13  take the extra step and go to a reputable facility."

14  179. The publication RamonaInCorona made was of and

15  concerning Plaintiffs and was so understood by those who read the

16  publication.

17  180. The statement of RamonaInCorona disparaged Plaintiffs'

18  above-described business services in that it falsely indicated

19  that services at BHSC, a center promoted by Top Surgeons, were

20  less safe than other facilities performing the laparoscopic

21  banding procedure.  Further, the statement falsely indicated that

22  BHSC was not a reputable facility.

23  181. The statement of RamonaInCorona was false.  BHSC

24  operates pursuant to the Joint Commission medical accreditation

25  program, who has given the facility its Gold Seal; and Top

26  Surgeons only directs patients to licensed doctors performing

27

28                                -36-

1  surgeries in accredited facilities.  Further, there is no basis
2  for the assertion that BHSC was not reputable.
3      182. The statement of RamonaInCorona was made with knowledge
4  of its falsity or with reckless disregard for its truth or
5  falsity.
6      183. The statement of RamonaInCorona has a tendency to
7  injure Plaintiffs in their occupation because it imputes to
8  Plaintiffs fraud, dishonesty, or questionable business methods in
9  connection with their services, and is therefore, pursuant to
10  Civil Code § 45a, libel on its face.

11
12              THIRTIETH CAUSE OF ACTION –
13      UNFAIR BUSINESS PRACTICE BY RAMONAINCORONA
14      184. On or about March 7, 2010, RamonaInCorona published the
15  following on the website of latimes.com: "[T]here are PLENTY of
16  other surgeons out in LA that practice at hospitals designated as
17  Bariatric Center [sic] of Excellence. If you have the choice, I'm
18  not sure why anyone would choose TopSurgeons. This is your life
19  folks and if you are taking it seriously enough to go through
20  major surgery, take the extra step and go to a reputable
21  facility."
22      185. The comment authored by RamonaInCorona was directed
23  toward the business addresses of Plaintiffs in Beverly Hills,
24  California, and have caused harm to the Plaintiffs at the
25  Plaintiffs' business addresses.
26      186. RamonaInCorona's comment states facts about Plaintiffs'
27  businesses and business operations which it knows are untrue or
28                          -37-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  misleading in order to deceive the public, in violation of

2  Business & Professions Code § 17200, as an unlawful, unfair, or

3  fraudulent business act or practice.

4      187. RamonaInCorona knowingly published the comment about

5  the Plaintiffs' businesses while concealing RamonaInCorona's true

6  identity, thereby making it seem that the comment was unbiased.

7  Therefore, the comment was made in a manner likely to deceive the

8  public, each in violation of Business & Professions Code § 17200,

9  as an unlawful, unfair, or fraudulent business act or practice.

10     188. Plaintiffs are informed and believe and thereon allege

11 that RamonaInCorona performed the above-mentioned act for the

12 purpose of injuring the business of the Plaintiffs.

13     189. As a proximate result of the above-mentioned act of

14 RamonaInCorona, Plaintiffs have been deprived of the patronage of

15 a large number of its actual and potential customers, the exact

16 amount of such damages is presently unknown to Plaintiffs, and

17 will be subject to further proof at the time of trial, to be

18 subject to treble damages.

19

20 **THIRTY-FIRST CAUSE OF ACTION - TRADE LIBEL BY DIANNE.M.DANIELS**

21     190. On or about April 18, 2010, a user identified as

22 dianne.m.daniels ("Daniels") published the following on the

23 website of latimes.com: "Please, let's make this more about the

24 fact that this 'physician' lied about his qualifications and

25 experience and that the information about his lack of knowledge

26 should have been easier to find. It is tragic that this young man

27

28

-38-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1 died because of medical incompetence – but it was not the lap
2 band that killed him."
3    191. The publication Daniels made was of and concerning
4 Plaintiffs and was so understood by those who read the
5 publication.
6    192. The statement of Daniels disparaged Plaintiffs' above-
7 described business services in that it falsely indicated that
8 services at BHSC, a center promoted by Top Surgeons, knowingly
9 permits doctors that are medically incompetent and/or that have
10 lied about his or her qualifications and experience to perform
11 medical procedures at its center, and is, therefore, unsafe.
12    193. The statement of Daniels was false.  BHSC operates
13 pursuant to the Joint Commission medical accreditation program,
14 who has given the facility its Gold Seal; and Top Surgeons only
15 directs patients to licensed doctors performing surgeries in
16 accredited facilities.  Further, there is no basis for the
17 assertion that any doctor at BHSC lied about his or her
18 qualifications and/or experience, nor is there a basis for
19 stating that the any doctor at BHSC is medically incompetent.
20    194. The statement of Daniels was made with knowledge of its
21 falsity or with reckless disregard for its truth or falsity.
22    195. The statement of Daniels has a tendency to injure
23 Plaintiffs in their occupation because it imputes to Plaintiffs
24 fraud, dishonesty, or questionable business methods in connection
25 with their services, and is therefore, pursuant to Civil Code §
26 45a, libel on its face.

-39-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

## THIRTY-SECOND CAUSE OF ACTION –
## UNFAIR BUSINESS PRACTICE BY DIANNE M. DANIELS

196. On or about April 18, 2010, Daniels published the following on the website of latimes.com: "Please, let's make this more about the fact that this 'physician' lied about his qualifications and experience and that the information about his lack of knowledge should have been easier to find. It is tragic that this young man died because of medical incompetence – but it was not the lap band that killed him."

197. The comment authored by Daniels was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

198. Daniels's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

199. Daniels knowingly published the comment about the Plaintiffs' businesses while concealing Daniels's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

200. Plaintiffs are informed and believe and thereon allege that Daniels performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

-40-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

201. As a proximate result of the above-mentioned act of Daniels, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial to be subject to treble damages.

**THIRTY-THIRD CAUSE OF ACTION - TRADE LIBEL BY LAX.PREPSTER**

202. On or about April 18, 2010, a user identified as LAX.Prepster ("LAX.Prepster") published the following on the website of latimes.com: "I have a feeling if you were to dive deeper into this group as well as others, you'll probably find, these so called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of complications) which right there is a red flag.  There's much controversy if these Lap Bands should be performed on an outpatient basis. I'm sure there still [sic] a large group of surgeons out there who insist on keeping patients in the hospital at least a night or two for observation, especially in those cases, [sic] where there's diabetes, hypertension, breathing issues, history of infections etc. involved as no two patients are the same.  There are many serious issues with performing this  less invasive surgery over the laparascopic [sic] bypass."

203. The publication LAX.Prepster made was of and concerning Plaintiffs and was so understood by those who read the publication.

-41-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

204. The statement of LAX.Prepster disparaged Plaintiffs'
above-described business services in that it falsely indicated
that services at BHSC, a center promoted by Top Surgeons,
performs medical procedures on an out-patient basis when the
procedure should instead be held at a hospital, and states that
there is "controversy" over this out-patient treatment.
LAX.Prepster further indicates that there are many serious issues
with the procedure performed by BHSC and promoted by Top
Surgeons.

205. The statement of LAX.Prepster was false.  BHSC operates
pursuant to the Joint Commission medical accreditation program,
who has given the facility its Gold Seal; and Top Surgeons only
directs patients to licensed doctors performing surgeries in
accredited facilities.  Further, there is no basis for the
assertion that there is controversy that the laparoscopic
procedure should not be performed in an out-patient setting.
Instead, the procedure is regularly performed at out-patient
settings without controversy.

206. The statement of LAX.Prepster was made with knowledge
of its falsity or with reckless disregard for its truth or
falsity.

207. The statement of LAX.Prepster has a tendency to injure
Plaintiffs in their occupation because it imputes to Plaintiffs
fraud, dishonesty, or questionable business methods in connection
with their services, and is therefore, pursuant to Civil Code §
45a, libel on its face.

-42-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

### THIRTY-FOURTH CAUSE OF ACTION –
### UNFAIR BUSINESS PRACTICE BY LAX.PREPSTER

208. On or about April 18, 2010, LAX.Prepster published the following on the website of latimes.com: "I have a feeling if you were to dive deeper into this group as well as others, you'll probably find, these so called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of complications) which right there is a red flag. There's much controversy if these Lap Bands should be performed on an outpatient basis. I'm sure there still [sic] a large group of surgeons out there who insist on keeping patients in the hospital at least a night or two for observation, especially in those cases, [sic] where there's diabetes, hypertension, breathing issues, history of infections etc. involved as no two patients are the same.  There are many serious issues with performing this less invasive surgery over the laparascopic [sic] bypass. The California Medical Board and these agencies who give licenses to these centers and so called surgeons need to be looked at much more agressively [sic]."

209. The comment authored by LAX.Prepster was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

210. LAX.Prepster's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of

-43-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1   Business & Professions Code § 17200, as an unlawful, unfair, or

2   fraudulent business act or practice.

3       211. LAX.Prepster knowingly published the comment about the

4   Plaintiffs' businesses while concealing LAX.Prepster's true

5   identity, thereby making it seem that the comment was unbiased.

6   Therefore, the comment was made in a manner likely to deceive the

7   public, each in violation of Business & Professions Code § 17200,

8   as an unlawful, unfair, or fraudulent business act or practice.

9       212. Plaintiffs are informed and believe and thereon allege

10  that LAX.Prepster performed the above-mentioned act for the

11  purpose of injuring the business of the Plaintiffs.

12      213. As a proximate result of the above-mentioned act of

13  LAX.Prepster, Plaintiffs have been deprived of the patronage of a

14  large number of its actual and potential customers, the exact

15  amount of such damages is presently unknown to Plaintiffs, and

16  will be subject to further proof at the time of trial, to be

17  subject to treble damages.

18

19  **THIRTY-FIFTH CAUSE OF ACTION — TRADE LIBEL BY ISABELLE1106**

20      214. On or about April 19, 2010, a user identified as

21  Isabelle1106 ("Isabelle1106") published the following on the

22  website of latimes.com: "Is this insurance fraud too? If Mr.

23  Brooks was 6'6 and 300lbs his BMI would only be 34.7. In order

24  for insurance to pay, a patient must have a BMI of 40 or greater

25  or 35 with some sort of co-morbidity (sleep apnea, diabetes,

26  hypertension). Someone should look into the information submitted

27

28

-44-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1  to the insurance company. Based on his height and weight given

2  Mr. Brooks wouldn't have even qualified for surgery."

3      215. The publication Isabelle1106 made was of and concerning

4  Plaintiffs and was so understood by those who read the

5  publication.

6      216. The statement of Isabelle1106 disparaged Plaintiffs'

7  above-described business services in that it falsely indicated

8  that Plaintiffs had deceptive business practices, specifically,

9  insurance fraud.

10     217. The statement of Isabelle1106 was false.  There is no

11 basis for the statement that any insurance coverage claims made

12 by patients through Plaintiffs' services would not be valid.

13 Instead, Isabelle1106 relies on approximations stated by a sloppy

14 reporter to assert a deceptive business practice by Plaintiffs.

15     218. The statement of Isabelle1106 was made with knowledge

16 of its falsity or with reckless disregard for its truth or

17 falsity.

18     219. The statement of Isabelle1106 has a tendency to injure

19 Plaintiffs in their occupation because it imputes to Plaintiffs

20 fraud, dishonesty, or questionable business methods in connection

21 with their services, and is therefore, pursuant to Civil Code §

22 45a, libel on its face.

23

24                  THIRTY-SIXTH CAUSE OF ACTION –

25          UNFAIR BUSINESS PRACTICE BY ISABELLE1106

26     220. On or about April 19, 2010, Isabelle1106 published the

27 following on the website of latimes.com: "Is this insurance fraud

                              -45-

28

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

too? If Mr. Brooks was 6'6 and 300lbs his BMI would only be 34.7. In order for insurance to pay, a patient must have a BMI of 40 or greater or 35 with some sort of co-morbidity (sleep apnea, diabetes, hypertension). Someone should look into the information submitted to the insurance company. Based on his height and weight given Mr. Brooks wouldn't have even qualified for surgery."

221. The comment authored by Isabelle1106 was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

222. Isabelle1106's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

223. Isabelle1106 knowingly published the comment about the Plaintiffs' businesses while concealing Isabelle1106's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

224. Plaintiffs are informed and believe and thereon allege that Isabelle1106 performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

225. As a proximate result of the above-mentioned act of Isabelle1106, Plaintiffs have been deprived of the patronage of a

-46-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

1    large number of its actual and potential customers, the exact

2    amount of such damages is presently unknown to Plaintiffs, and

3    will be subject to further proof at the time of trial, to be

4    subject to treble damages.

5

6    **THIRTY-SEVENTH CAUSE OF ACTION - TRADE LIBEL BY ALANSMYTH1**

7        226. On or about April 21, 2010, a user identified as

8    AlanSmyth1 ("AlanSmyth") published the following on the website

9    of latimes.com: "The 1 800 GET THIN or GET SLIM group have had so

10   many different surgeons go through their facility. How can all

11   these sub-standard surgeons continue to practice in a facility

12   that continues to change their [sic] name? … Unfortunately,

13   innocent patients will be mesmerized by their continuous

14   billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more

15   appropriate for this group."

16       227. The publication AlanSmyth made was of and concerning

17   Plaintiffs and was so understood by those who read the

18   publication.

19       228. The statement of AlanSmyth disparaged Plaintiffs'

20   above-described business services in that it falsely indicated

21   that Plaintiffs' services were not safe and that BHSC used, and

22   Top Surgeons promoted the use of, "sub-standard surgeons" in

23   BHSC's facility.  The statement of AlanSmyth further disparaged

24   Plaintiffs' above-described business services in that it falsely

25   indicated that Plaintiffs operate dishonestly, were "slimy" and

26   "shady."

27                                    -47-

28

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

229. The statement of AlanSmyth was false. BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by either of the Plaintiffs, and none can be shown.

230. The statement of AlanSmyth was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

231. The statement of AlanSmyth has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

## THIRTY-EIGHTH CAUSE OF ACTION –
## UNFAIR BUSINESS PRACTICE BY ALANSMYTH1

232. On or about April 21, 2010, AlanSmyth published the following on the website of latimes.com: "The 1 800 GET THIN or GET SLIM group have had so many different surgeons go through their facility. How can all these sub-standard surgeons continue to practice in a facility that continues to change their [sic] name? … Unfortunately, innocent patients will be mesmerized by their continuous billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more appropriate for this group."

233. The comment authored by AlanSmyth was directed toward the business addresses of Plaintiffs in Beverly Hills.

-48-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

California, and have caused harm to the Plaintiffs at the
Plaintiffs' business addresses.

234. AlanSmyth's comment states facts about Plaintiffs'
businesses and business operations which it knows are untrue or
misleading in order to deceive the public, in violation of
Business & Professions Code § 17200, as an unlawful, unfair, or
fraudulent business act or practice.

235. AlanSmyth knowingly published the comment about the
Plaintiffs' businesses while concealing AlanSmyth1's true
identity, thereby making it seem that the comment was unbiased.
Therefore, the comment was made in a manner likely to deceive the
public, each in violation of Business & Professions Code § 17200,
as an unlawful, unfair, or fraudulent business act or practice.

236. Plaintiffs are informed and believe and therein allege
that AlanSmyth performed the above-mentioned act for the purpose
of injuring the business of the Plaintiffs.

237. As a proximate result of the above-mentioned act of
AlanSmyth, Plaintiffs have been deprived of the patronage of a
large number of its actual and potential customers, the exact
amount of such damages is presently unknown to Plaintiffs, and
will be subject to further proof at the time of trial, to be
subject to treble damages.

///
///
///
///
///

-49-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

WHEREFORE, Plaintiffs prays for judgment against Defendants as

follows:

     1. For actual damages;

     2. For trebled damages, according to proof;

     3. For punitive damages;

     4. For reasonable attorney's fees;

     5. For its costs incurred; and

     6. For any other and further relief as the court may deem

proper.

                  ALEXANDER WEISSE, ESQ.

April 22, 2010        By: _____
                  Alexander Weisse, Esq.
                  Attorney for Plaintiffs,
                  Top Surgeons, LLC
                  Beverly Hills Surgery Center, LLC

-50-

COMPLAINT RE: TRADE LIBEL AND UNFAIR BUSINESS PRACTICES

# EXHIBIT C



FILED
Los Angeles Superior Court

DEC 15 2010

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

A4029
90210
DEPT#48
(HON. ELIZABETH ALLEN WHITE)

1 ROBERT B. SILVERMAN SBN 170517
  SILVERMAN & ASSOCIATES
2 25 S. OAK KNOLL AVE., SUITE 504
  PASADENA, CA 91101
3 TEL: (714) 936-7499
  FAX: (888) 308-5099
4
5 ATTORNEY FOR PLAINTIFFS,
      BEVERLY HILLS SURGERY CENTER, LLC
6     TOP SURGEONS, LLC
7
8           SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 FOR THE COUNTY OF LOS ANGELES
10 BEVERLY HILLS SURGERY CENTER,       )  CASE NUMBER: **BC451267**
   LLC, a California limited liability company, )
11 and TOP SURGEONS, LLC, a California  )
   limited liability company;          )  **COMPLAINT FOR DAMAGES**
12                                      )
13     Plaintiffs,                      )    **(1) TRADE LIBEL AGAINST VARIOUS**
                                        )    **DOE DEFENDANTS (MULTIPLE**
14     vs.                              )    **CASUSES OF ACTIONS)**
                                        )
15                                      )    **(2) UNFAIR TRADE PRACTICE**
   DOES 1 through 100, inclusive,       )    **AGAINST VARIOUS DOE**
16                                      )    **DEFENDANTS (MULTIPLE CAUSES**
       Defendants.                      )    **OF ACTIONS)**
17                                      )
18                                      )
19                                      )    [UNLIMITED JURISDICTION –
                                        )    DAMAGES EXCEED $25,000.00]
20                                      )
21
22
23
24
25
26
27                      **-1-**
28
─────────────────────────────────────────────
                **COMPLAINT FOR DAMAGES**

**PLEASE TAKE NOTICE THAT** the Plaintiff, Beverly Hills Surgery Center, LLC, and TOP SURGEONS, LLC., hereby asserts for themselves alone, causes of actions against the Defendants and each of them as follows:

## GENERAL ALLEGATIONS

1.      Plaintiffs, Beverly Hills Surgery Center, LLC ("BHSC"), a California limited liability company, and Top Surgeons, LLC ("Top Surgeons"), a California limited liability company (collectively, "Plaintiffs"), are, and at all times herein mentioned were, doing business in Beverly Hills, California, which is within the County of Los Angeles.

2.      Pursuant to the provisions of Section 395 subsection (a) of the California <u>Code of Civil Procedure</u>, this Court is the proper Court and place for trial in this action in that, <u>inter alia</u>, all of the transactions which are the subject matter of this action were entered into and to be performed within the County of Los Angeles.

3.      Pursuant to the provisions of Section 585.5 of the California <u>Code of Civil Procedure</u>, this action is neither based upon a conditional sales contract nor a contract or installment contract for the sale of goods or services subject to the provisions of Section 1812 et seq. and 2984 et seq. of the California <u>Civil Code</u>.

4.      Defendants, DOES 1 through 100, inclusive ("Defendants"), are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs.  When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that each of Plaintiffs' damages as herein alleged were proximately caused by such Defendants.

5.      BHSC is the operator of an ambulatory surgery center.  BHSC does not, with its own doctors, treat patients within the center, but instead allows independent doctors to use the surgical center for examination, diagnosis, and surgery.  For all relevant periods of time, Dr. Atul

-2-

---

**COMPLAINT FOR DAMAGES**

1    Madan was the Medical Director of Beverly Hills Surgery Center.  BHSC is fully accredited and

2    as a fully accredited ambulatory surgery center is fully authorized to conduct surgical procedures

3    requiring general anesthesia.

4         6.      Top Surgeons is a marketing company, which specializes in advertising the

5    medical procedure known as laparoscopic banding.  Laparoscopic banding surgeries were

6    performed at BHSC by independent doctors as stated herein.

7         7.      Each of the identified DOE Defendants have published or have caused to be

8    published comments relating to each of Plaintiffs' businesses on the website identified as

9    LATIMES.COM.  The website is available to any individual within the County of Los Angeles

10   including worldwide accessibility.  As a result, Plaintiffs have been damaged and continued to be

11   damaged at Plaintiffs' business offices in Los Angeles County.

12        8.      Plaintiffs herein allege that all of the comments by the DOE Defendants

13   constituting the causes of actions stated herein were published on the website known as

14   LATIMES.COM.  The LATIMES.COM website is an independent entity and/or organization but

15   has unknown affiliations with the newspaper of general circulation known as the LOS

16   ANGELES TIMES.  Michael Hiltzik authored three (3) negative columns about the Plaintiffs.

17   The columns were published on or about February 14, 2010, March 4, 2010 and April 18, 2010

18   in the print newspaper LOS ANGELES TIMES and were subsequently published either on the

19   same day or the next calendar day on LATIMES.COM.

20        9.      Plaintiffs herein allege that the major difference between the two media forums is

21   that the LATIMES.COM website allows for the posting of comments by the public in reaction to

22   the published column.  LATIMES.COM website allows certain posted comments immediately

23   following the published column.  Each organization has common ownership under an umbrella

24   company known as LOS ANGELES TIMES MEDIA GROUP and ultimately is a wholly owned

25   subsidiary of an organization known as TRIBUNE COMPANY.

26

27                                          -3-

28

---

**COMPLAINT FOR DAMAGES**

10.     All of the comments that form the basis of this Complaint were posted by the DOE Defendants in response to columns published on the LATIMES.COM website that were authored by HILTZIK.

11.     Plaintiffs herein allege that HILTZIK has been engaged and continues to be engaged in a personal vendetta to cause financial harm to the Plaintiffs by intentionally publishing false and fraudulent information about the Plaintiffs via his published columns. HILTZIK has openly acknowledged to at least one individual that he will continue to write articles about the Plaintiffs until such time that the Plaintiffs are placed out of business.

12.     Plaintiffs herein allege that the LOS ANGELES TIMES and/or LATIMES.COM acknowledges that HILTZIK is a columnist, a person who writes articles of opinion and not a journalist. In fact, Plaintiffs herein allege that as described herein, HILTZIK was removed as a journalist due to his inappropriate and unethical conduct. HILTZIK is not edited for content by the LOS ANGELES TIMES as he is not considered to be a journalist and his published articles are not considered to be newsworthy but rather glorified op-ed pieces. HILTZIK'S columns are published by the LOS ANGELES TIMES and LATIMES.COM twice weekly with a mid-week publication and a Sunday column.

13.     Plaintiff herein alleges that on or about 2005, the LOS ANGELES TIMES published a set of ethical guidelines and mandated that its employees follow such standards. Plaintiff asserts that the Ethic Guidelines are published on the LATIMES.COM website. The Ethic Guidelines, among other things, require that employees do not use the LOS ANGELES TIMES for their own personal financial benefit or in pursuit of personal vendettas. The Guidelines, among other things, also require that employees act with Fairness when publishing columns in the LOS ANGELES TIMES. As alleged herein in the Complaint, HILTZIK has operated and continues to operate in a manner inconsistent with the Ethical Guidelines all with the knowledge and consent of the LOS ANGELES TIMES and/or LATIMES.COM.

14.     Plaintiffs on several occasions have notified the LOS ANGELES TIMES about the inappropriate and unethical conduct of HILTZIK. To date, the LOS ANGELES TIMES has

-4-

**COMPLAINT FOR DAMAGES**

1  either failed to respond to said allegations, failed to investigate and/or have failed to take any

2  action whatsoever.

3       15.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified and

4  alerted to the fact that HILTZIK on more than one occasion has lied about his identity in order to

5  obtain information about the Plaintiffs in an attempt to use such coerced information in columns

6  targeted against the Plaintiffs.

7       16.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified and

8  alerted to the fact that HILTZIK on more than one occasion has misrepresented facts to

9  individuals, in fact, asserting that the individual was participating in a federal crime by working

10  for the Plaintiffs, all in an effort to obtain information for use in columns targeted against the

11  Plaintiffs. To date, Plaintiffs have never been charged with the commission of any crimes, as

12  falsely alleged by HILTZIK.

13       17.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified and

14  alerted to the fact that HILTZIK has personally and continually coordinates the sharing and

15  disclosure of information discovered with private attorneys who are currently engaged in

16  litigation with the Plaintiffs all in an effort to either obtain personal financial gain and/or to use

17  such information in his columns against the Plaintiffs and/or use such information to directly

18  influence the outcome of the pending litigation concerning the Plaintiffs. Specifically, Plaintiffs

19  herein allege that HILTZIK uses his column to the advantage of party(s) adverse to the Plaintiffs

20  and/or to taint the jury pool in favor of the parties adverse to the Plaintiffs by intentionally

21  writing false and misleading facts or intentionally omitting material facts about the case all in an

22  effort to place Plaintiffs in a false and defamatory light.

23       18.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified that

24  HILTZIK intentionally misrepresented to individuals that HILTZIK was going to write a positive

25  column about the Plaintiffs in an effort to obtain confidential information about the Plaintiffs and

26  use such information obtained in his columns against the Plaintiffs.

27

28

-5-

---

**COMPLAINT FOR DAMAGES**

19.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified that HILTZIK intentionally misrepresented in his columns about the Plaintiffs that one particular individual had his medical license suspended in 2009 when in fact the license was actually revoked in 2007. Plaintiffs hereby assert that HILTZIK had access to and was in possession of the public Medical Board records documenting the true facts and despite this information, HILTZIK intentionally published such false and misleading facts to intentionally create a fabricated illusion that this individual was involved in the practice of medicine during periods of time that were the focus of the columns against the Plaintiffs.

20.    Plaintiffs hereby assert that the LOS ANGELES TIMES has been notified and alerted to the fact that HILTZIK has intentionally provided false, fraudulent and misleading facts in his columns about the Plaintiffs. In fact, the Plaintiffs herein allege that the acts of HILTZIK were so intentionally false, fraudulent and misleading, that the LOS ANGELES TIMES actually issued two (2) corrections to the April 18, 2010 column published by HILTZIK.

21.    Plaintiffs hereby assert that one such correction that the LOS ANGELES TIMES has been notified and alerted to was the fact that HILTZIK intentionally stated that a deceased individual was a foot taller than his actual height. By making such false and fraudulent assertions, HILTZIK implied to all readers that the Plaintiffs engaged in insurance fraud and provided a surgical procedure to an otherwise unqualified candidate, all accusations asserted by HILTZIK in his columns written against the Plaintiffs and further published by DOE Defendants in the comment section following the column. HILTZIK knew or should have known that the facts as reported were false and fraudulent as HILTZIK was in possession of the Los Angeles County Coroner report, interviewed the family of the individual and obtained other information which would have provided HILTZIK with the true facts. Despite having such true and correct information, HILTZIK via the LOS ANGELES TIMES and the LATIMES.COM website intentionally published such false and fraudulent information.

22.    Plaintiffs herein allege that the LOS ANGELES TIMES has been notified and altered to the fact that individuals attempted to post positive comments about the Plaintiffs in

-6-

**COMPLAINT FOR DAMAGES**

1   response to the false, fraudulent, misleading and negative attacks about the Plaintiffs and that

2   such positive comments were edited and/or otherwise denied publication.  Plaintiffs herein allege

3   that when HILTZIK operated his own blog with the LOS ANGELES TIMES, HILTZIK

4   inappropriately controlled the publication of content on the blog and was reprimanded for such

5   conduct.  Plaintiffs herein allege on information and belief that HILTZIK was either directly or

6   indirectly involved in the censorship of the positive comments in support of the Plaintiffs.

7        23.   Plaintiffs herein allege that on or about 1993, HILTZIK was caught snooping into

8   the emails of his colleagues.  Specifically, it was alleged that HILTZIK obtained other individual

9   passwords and entered those passwords into the computer system at times that those individuals

10  were not present to log into the system.  It is further alleged that HILTZIK was caught when 2

11  fake emails were intercepted by HILTZIK and HITLZIK later inquired about the content of the

12  fake intercepted emails.  As a result of the inappropriate conduct, HILTZIK was disciplined by

13  the LOS ANGELES TIMES and removed from his assigned post in Moscow.

14       24.   Plaintiffs herein allege that on or about 2006, HILTZIK was suspended by the

15  LOS ANGELES TIMES for such inappropriate and unprofessional behavior known as "sock-

16  puppeting."  Sock puppeting is when a person uses an alias and then posts either positive or

17  negative comments in an effort to either create false positive or negative comments thereby

18  creating an illusion that such comments are legitimately being done by neutral disinterested third

19  parties.  As a result of the inappropriate and unethical conduct, HILTZIK's on-line blog with the

20  LOS ANGELES TIMES was removed, HILTZIK was temporarily suspended for his actions and

21  HILTZIK was reassigned to a position as a columnist and not as a journalist as his integrity and

22  credibility as a journalist was completely destroyed based upon this and other acts of unethical

23  conduct.

24       25.   Plaintiffs herein allege that HILTZIK has demonstrated and continues to

25  demonstrate inappropriate, unethical and possible illegal conduct associated with the publication

26  of columns against the Plaintiffs, all with the consent and approval of the LOS ANGELES

27  TIMES and/or LATIMES.COM.

-7-

28

**COMPLAINT FOR DAMAGES**

26.    Plaintiffs herein allege on information and belief that HILTZIK has personally created through the use of aliases, some of the comments attributable to the DOE Defendants listed herein, all consistent with HILTZIK's documented inappropriate and unethical past acts of sock-puppeting for which HILTZIK was previously suspended and otherwise sanctioned.

27.    In the alternative, Plaintiffs herein allege that HILTZIK has personally assisted the Doe Defendant(s) in providing them with specific information to post in the comments in support of the columns against the Plaintiffs and/or as against other individuals who posted positive comments in support of the Plaintiffs all as documented by HILTZIK's past behavior of inappropriate and unethical conduct.

28.    Plaintiffs herein allege on information and belief that HILTZIK has acted in such a manner to support his personal attacks and vendetta against the Plaintiffs and to use the forum of posting anonymous third party comments to attack Plaintiffs in a way that would not otherwise subject HILTZIK to liability.

29.    Plaintiffs herein allege that the LATIMES.COM website specifically states and informs any individual posting comments that, any comments posted to its website are neither protected nor privileged forms of speech. The LATIMES.COM website also requires individuals posting comments to register with the website and agree to the "Terms of Service". The LATIMES.COM website claims that after registration, comments are reviewed for content and screened prior to actual publication on the website.

30.    With regard to the "Terms of Service", said Terms place responsibilities on individual posters with regard to the comments they submit, as well as informing the individual user that LATIMES.COM will provide access to the user(s) information should the user cause injury to others in providing such content to LATIMES.COM. And as further alleged herein, the "Terms of Service" specifically do not provide protection from liability for any comments made by registered users of LATIMES.COM.

31.    Plaintiffs hereby allege that the "Terms of Service" state:

    "**Registration.**  Registration is not required to view certain Content.

-8-

**COMPLAINT FOR DAMAGES**

However, you are required to register if you wish to post a comment
or upload a video, or view certain other Content.  If you become a
Registered Member of latimes.com, you accept responsibility for all
Activities that occur under your Registration Account."

32.    Plaintiffs assert that as explicitly made clear by the LATIMES.COM website, a party commenting on LATIMES.COM remains fully liable for any injuries his/her comments may cause.

33.    Plaintiffs hereby allege that with regard to user liability, the "Terms of Service" further state:

**User Content Assumption of Risk.**  latimes.com cannot and does not
Monitor or manage all User Content, and does not guarantee the accuracy,
Integrity, or quality of User Content.  All User Content provided
to latimes.com is the sole responsibility of the person who provided
it.  **This means that you are entirely responsible for all User Content
that you provide.**

34.    Plaintiffs further assert This section of the "Terms of Service" again makes explicitly clear that a party commenting on latimes.com does remain fully liable for any injuries his/her comments may cause.

35.    In addition to the LATIMES.COM statement that liability for a user's comments lies with the user, the "Terms of Service" also contain representations and warranties that every user must agree to make in registering with the cite.  Those representations and warranties state:

**User Content Representations and Warranties.**  By placing material
on latimes.com, including but not limited to posting content or
communications to any latimes.com bulletin board, forum, blogspace,
message or chat area, or posting text, images, audio files or other
audio-visual content to the site ("User Content"), you represent and
warrant: (1) you own or otherwise have all necessary rights to the

-9-

**COMPLAINT FOR DAMAGES**

1   User Content you provide and the rights to provide it under these

2   Terms of Service; and, (2) the User Content will not cause injury to

3   any person or entity.

4   36.   The Terms of Service also provide "User Content Posting Rules" which contain a

5   list of proscribed activities in which users of latimes.com are not to engage.

6   **User Content Posting Rules.** Any decisions as to whether User

7   Content violates any Posting Rule will be made by latimes.com

8   in its sole discretion and after we have actual notice of such posting.

9   When you provide User Content, you agree to the following Posting

10   Rules:

11   …Do not provide User Content that:…

12   • is defamatory, threatening, disparaging, grossly inflammatory,

13   false, misleading, fraudulent, inaccurate, unfair, contains

14   gross exaggeration or unsubstantiated claims, violates

15   the privacy rights of any third party, is unreasonably

16   harmful or offensive to any individual or community.

17   • violates any right of latimes.com or any third party…

18   • violates or encourages the violation of any municipal,

19   state, federal or international law, rule, regulation or

20   ordinance.

21   37.   Should any of the User Content Posting Rules be violated, LATIMES.COM

22   reserves the right to remove such User Content as it sees fit. Specifically, the "Terms of Service"

23   state:

24   **User Content Screening and Removal.** You acknowledge that

25   latimes.com and/or its designees may or may not pre-screen User

26   Content, and shall have the right (but not the obligation), in their sole

27   discretion, to move, remove, block, edit, or refuse any User Content

-10-

28

---

**COMPLAINT FOR DAMAGES**

1   for any reason, including without limitation that such User Content

2   violates these Terms of Service or is otherwise objectionable.

3   38.   In addition to giving LATIMES.COM the right to do with User Content as it will

4   in the face of the "Terms of Service" violations, the "Terms of Service" also allow third-parties

5   access to such information and information disclosed in a user's registration submission.  The

6   "Terms of Service" state:

7   **Use of Information by latimes.com.**  You acknowledge, consent

8   and agree that latimes.com may preserve and disclose your Registration

9   Account information and the contents of your online communications

10   if required to do so by law, or in good faith belief that preservation

11   and/or disclosure is reasonably necessary for the following purposes:

12   (1) to comply with legal process, such as a court order, search warrant, or

13   subpoena; (2) to enforce the terms of this Terms of Service; (3) to render service

14   to you request; (4) to protect the rights or property of latimes.com, TI,

15   and their third party suppliers and licensors; or (5) in circumstances

16   that we deem, in our sole discretion, to pose a threat to the safety of you

17   or others.

18   39.   Plaintiffs assert that as a third-party, having been injured by users of the

19   LATIMES.COM website, Plaintiffs are entitled to access not only User Content but a user's

20   registration information in the ordinary course of business in pursuing a lawsuit for damages as

21   against said users.

22   40.   The Privacy Policy for LATIMES.COM, likewise, does not provide any further

23   protection for a user's information than that provided in the "Terms of Service".  Specifically, the

24   Privacy Policy provides:

25   **Information sharing and disclosure.**

26   …We may disclose your information in response to subpoenas,

27   court orders, or other legal process, or to establish or exercise our

28

-11-

**COMPLAINT FOR DAMAGES**

1    legal rights or to defend against legal claims.

2        We may disclose your information when we believe it necessary or

3    desirable in order to investigate, prevent, or take action regarding

4    illegal activities, suspected fraud, situations involving potential

5    threats to the physical safety of any person, **violations of[sic] our**

6    **Terms of Service,** and/or to protect our rights and property (emphasis

7    added).

8        41.    When reviewing the "Terms of Service" and "Privacy Policy" for

9    LATIMES.COM, it is clear that any comments posted to the site are not protected speech and

10   information regarding users is discoverable in legal actions regarding any injuries allegedly

11   caused by user comments.

12                          **FIRST CAUSE OF ACTION**

13                        **TRADE LIBEL BY SNAPSHOTS**

14                          (Against Doe Defendant #1)

15       42.    On or about February 14, 2010, Doe Defendant #1, an anonymous user identified

16   with the screen name of SNAPSHOTS ("SNAPSHOTS") published the following on the website

17   of LATIMES.COM: "Thank you for researching what could very clearly be a public health and

18   personal financial risk to many unwitting people who may be desperate and frustrated in their

19   attempts to stop overeating. Dishonesty and bad medical practices are a recipe for disaster."

20       43.    This comment was published in response to and directly below the February 14,

21   2010 published column written by HILTZIK.

22       44.    The publication SNAPSHOTS made was of and concerning Plaintiffs and was so

23   understood by those who read the publication.

24       45.    The statement of SNAPSHOTS disparaged Plaintiffs business services in that it

25   falsely indicated that Plaintiffs were dishonest and practiced bad medicine.

26       46.    The statements of SNAPSHOTS are false.  BHSC operates pursuant to the Joint

27   Commission medical accreditation program, who has given the facility its Gold Seal; and Top

                                      -12-

28

                          **COMPLAINT FOR DAMAGES**

1  Surgeons only directs patients to medically licensed doctors performing surgeries in accredited

2  facilities.  Further, there have never been any dishonest acts made by either of the Plaintiffs, and

3  none can be shown.

4       47.    SNAPSHOTS should have known that such statements were false, had no basis to

5  support their truth or were made with knowledge of its falsity and/or with reckless disregard for

6  its truth or falsity.

7       48.    The statement of SNAPSHOTS has a tendency to injure the each of the Plaintiffs

8  in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business

9  methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on

10  its face.

11       49.    Plaintiffs herein allege that SNAPSHOTS knowingly posted such false and

12  fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

13  fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

14  damages.

15  **SECOND CAUSE OF ACTION**

16  **TRADE LIBEL BY ADRIEN DALLAS**

17  (Against Doe Defendant #2)

18       50.    On or about February 14, 2010, Doe Defendant #2, an anonymous user identified

19  with the screen name of Adrian_Dallas ("Adrian") published the following on the website of

20  LATIMES.COM: "And I don't want to be inundated in the months and years to come by the

21  inevitable sad little lawsuits of those fleeced by the clearly (almost?) criminal con-men who own

22  1-800-GET-THIN."

23       51.    This comment was published in response to and directly below the February 14,

24  2010 column written by HILTZIK wherein HILTZIK identified 1-800-GET-THIN as an entity

25  owned and operated or otherwise associated with the Plaintiffs.

26       52.    The publication Adrian made was of and concerning Top Surgeons and would be

27  understood as such by any other individual who read the publication.

28  -13-

**COMPLAINT FOR DAMAGES**

53.     The statement of Adrian disparaged Top Surgeon's business services in that it falsely indicated that Top Surgeons was operating dishonestly, that the owners were criminals and/or con-men who engaged in the fleecing of individuals.

54.     The published statements by Adrian were in fact false.

55.     The published statements by Adrian were made with knowledge of the fact that they were false or with a reckless disregard for its truth or falsity as Adrian had no reasonable information to base said statements of material fact.

56.     The published statements by Adrian have a tendency to injure Top Surgeons in its occupation because it imputes to Top Surgeons fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

57.     Plaintiffs herein allege that Adrian knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### THIRD CAUSE OF ACTION

### TRADE LIBEL BY JKRISCHEL

(Against Doe Defendant #3)

58.     On or about February 14, 2010, Doe Defendant #3, an anonymous user identified with the screen name of jkrischel ("Jkrischel") published the following on the website of LATIMES.COM: "The fact that we're suggesting to people that surgery should be considered, when it is simply carbohydrate intake that is the problem, is macabre."

59.     This comment was published in response to and directly below the February 14, 2010 column written by HILTZIK.

60.     The publication by Jkrischel made of and concerning the actions of Plaintiffs, as promoter for laparoscopic banding or as the facility where the procedure is commonly performed, and was so understood by those who read the publication to be a comment about the Plaintiffs.

-14-

**COMPLAINT FOR DAMAGES**

61.    The statement of Jkrischel disparaged Plaintiffs' business services in that they falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of patients who suffer from morbid obesity.  In fact, the overwhelming amount of medical literature proves Jkrischel's statements to be false.

62.    The statement of Jkrischel was false.  Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for patients who suffer from morbid obesity.

63.    The statement of Jkrischel was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

64.    The statement of Jkrischel has a tendency to injure the Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

65.    Plaintiffs herein allege that Jkrischel knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## FOURTH CAUSE OF ACTION

## TRADE LIBEL BY NEOSERF

### (Against Doe Defendant #4)

66.    On or about February 14, 2010, Doe Defendant #4, an anonymous user identified with screen name neoserf ("Neoserf") published the following on the website of LATIMES.COM: "This is not some big controversy or earth-shaking conspiracy, but the shady business practices employed by this company validate the inkling engendered by the profusion of billboards that it's all about the money machine, and not about helping obese people make a good decision when embarking on a profound change in every aspect of their nutritional lives such as gastric bypass surgery."

67.    This comment was published in response to and directly below the February 14, 2010 column written by HILTZIK.

-15-

**COMPLAINT FOR DAMAGES**

68.     The publication Neoserf made was of and concerning Plaintiffs and was so understood by those who read the publication.

69.     The statement of Neoserf disparaged Top Surgeons's and BHSC's above-described business services in that it falsely indicated that their businesses were "shady," imputing dishonesty on their business practices.  The statement further disparaged Top Surgeons's and BHSC's business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity.

70.     The statement of Neoserf was false.  Further, laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

71.     The statement of Neoserf was made with knowledge of its falsity or with reckless disregard for its truth or falsity.  It is further alleged that Neoserf had no basis to make the statements of fact as asserted.

72.     The statement of Neoserf did in fact cause and continue to cause financial harm to Top Surgeons and BHSC in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

73.     Plaintiffs herein allege that Neoserf knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## FIFTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY NEOSERF

### (Against Doe Defendant #4)

74.     On or about February 14, 2010, Doe Defendant #4, an anonymous user identified by screen name Neoserf published the following on the website of LATIMES.COM: "This is not some big controversy or earth-shaking conspiracy, but the shady business practices employed by this company validate the inkling engendered by the profusion of billboards that it's all about the

-16-

**COMPLAINT FOR DAMAGES**

1   money machine, and not about helping obese people make a good decision when embarking on a

2   profound change in every aspect of their nutritional lives such as gastric bypass surgery."

3       75.      This comment was published in response to and directly below the February 14,

4   2010 column written by HILTZIK.

5       76.      The comments authored by Neoserf were directed toward the business addresses

6   of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs'

7   business addresses.

8       77.      Neoserf's comment states facts about Plaintiffs' businesses and business

9   operations which it knows are untrue or misleading in order to deceive the public, in violation of

10  Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

11  practice.

12      78.      Neoserf knowingly published the comment about the Plaintiffs' businesses while

13  concealing Neoserf's true identity, thereby making it seem that the comments were unbiased.

14  Therefore, the comment was made in a manner likely to deceive the public, in violation of

15  Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

16  practice.

17      79.      Plaintiffs are informed and believe and thereon allege that Neoserf performed the

18  above-mentioned act for the purpose of injuring the business of the Plaintiff.

19      80.      Plaintiffs herein allege that Neoserf knowingly posted such false and fraudulent

20  statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or

21  oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

22      81.      As a proximate result of the above-mentioned act of Neoserf, Plaintiffs have been

23  deprived of the patronage of a large number of its actual and potential customers, the exact

24  amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at

25  the time of trial, to be subject to treble damages.

26

27                                      -17-

28

**COMPLAINT FOR DAMAGES**

## SIXTH CAUSE OF ACTION

## TRADE LIBEL BY PAULMAYER

(Against Doe Defendant #5)

82.    On or about February 14, 2010, Doe Defendant #5, an anonymous user identified by screen name paulmayer ("Mayer") published the following on the website of LATIMES.COM: "It is amazing how characters like these are given so much freedom to perform procedures that do not fall within the guidelines established by the National Institute of Health. They are liars and cheats whose licenses have been revoked. Were I ever in need of such a procedure, I would never go to Topsurgeons."

83.    This comment was published in response to and directly below the February 14, 2010 column written by HILTZIK.

84.    The publication Mayer made was of and concerning Plaintiffs as it directly related to the column about the Plaintiffs and was so understood by those who read the publication by Mayer to be about the Plaintiffs.

85.    The statements of Mayer disparaged Plaintiffs' in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity. The statement of Mayer further disparaged Plaintiffs' business services in that it falsely indicated that the Plaintiffs lie, cheat, and operate without a valid license, imputing fraud, dishonest, or questionable business methods on their business practices.

86.    The statements by Mayer were in fact false. Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity. There have never been any acts of dishonesty performed by either of the Plaintiffs, and none can be shown. Further, the Plaintiffs have never had a license revoked and each currently operate with all licenses required to lawfully operate.

87.    The statement of Mayer was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-18-

**COMPLAINT FOR DAMAGES**

88.    The statement of Mayer has a tendency to injure each of the Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

89.    Plaintiffs herein allege that Mayer knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## SEVENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY MAYER

### (Against Doe Defendant #5)

90.    On or about February 14, 2010, Doe Defendant #5, an anonymous user identified by screen name Mayer published the following on the website of LATIMES.COM: "It is amazing how characters like these are given so much freedom to perform procedures that do not fall within the guidelines established by the National Institute of Health. They are liars and cheats whose licenses have been revoked. Were I ever in need of such a procedure, I would never go to Topsurgeons."

91.    This comment was published in response to and directly below the February 14, 2010 published column written by HILTZIK.

92.    The comments authored by Mayer were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

93.    Mayer's comment states facts about Plaintiffs' businesses and business operations which it knows is untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

94.    Mayer knowingly published the comment about the Plaintiffs' businesses while concealing Mayer's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, in violation of

-19-

**COMPLAINT FOR DAMAGES**

1   Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

2   practice.

3        95.     Plaintiffs are informed and believe and thereon allege that Mayer performed the

4   above-mentioned act for the purpose of injuring the businesses of the Plaintiffs.

5        96.     Plaintiffs herein allege that Mayer knowingly posted such false and fraudulent

6   statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or

7   oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

8        97.     As a proximate result of the above-mentioned act of Mayer, Plaintiffs have been

9   deprived of the patronage of a large number of its actual and potential customers, the exact

10   amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at

11   the time of trial, to be subject to treble damages.

12                  **EIGHTH CAUSE OF ACTION**

13             **TRADE LIBEL BY DALEFOGDEN**

14               (Against Doe Defendant #6)

15        98.     On or about February 15, 2010, Doe Defendant #6, an anonymous user identified

16   by screen name dalefogden ("Fogden") published the following on the website of

17   LATIMES.COM: "Let's hope these crooks get what's coming to them. It seems there is

18   significant possibility of criminal fraud activity."

19        99.     This comment was published in response to and directly below the February 14,

20   2010 published column written by HILTZIK.

21        100.    The publication Fogden made was of and concerning the Plaintiffs and was so

22   understood by those who read the publication.

23        101.    The statement of Fogden disparaged Plaintiffs' above-described business services

24   in that it falsely indicated that the businesses and individual were "crooks," imputing fraud,

25   dishonest, or questionable business methods on their business practices.

26        102.    The statement of Fogden was false. There have never been any "crooked" or

27   dishonest acts made by Plaintiffs, and none can be shown.

                                       -20-

28

**COMPLAINT FOR DAMAGES**

103.    The statement of Fogden was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

104.    The statement of Fogden has a tendency to injure Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

105.    Plaintiffs herein allege that Fogden knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### NINTH CAUSE OF ACTION

### TRADE LIBEL BY WTHARVEY

(Against Doe Defendant #7)

106.    On or about February 16, 2010, Doe Defendant #7, an anonymous user identified by screen name wtharvey ("Harvey") published the following on the website of LATIMES.COM: "I'd be careful of the lap-band device. We see a lot of complications such as erosion into the stomach and slippage. Probably the formal gastric bypass roux-en-y procedure works best, but requires a highly skilled team to get good results."

107.    This comment was published in response to and directly below the February 14, 2010 published column written by HILTZIK.

108.    The publication Harvey made was of and concerning Plaintiffs and was so understood by those who read the publication.

109.    The statement of Harvey disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a safe treatment of morbid obesity.

110.    The statement of Harvey was false. Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a safe and proper treatment for morbid obesity.

-21-

**COMPLAINT FOR DAMAGES**

111.    The statement of Harvey was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

112.    The statement of Harvey has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

113.    Plaintiffs herein allege that Harvey knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## TENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY WTHARVEY

(Against Doe Defendant #7)

114.    On or about February 16, 2010, Doe Defendant #7, an anonymous user identified by screen name Harvey published the following on the website of LATIMES.COM: "I'd be careful of the lap-band device. We see a lot of complications such as erosion into the stomach and slippage. Probably the formal gastric bypass roux-en-y procedure works best, but requires a highly skilled team to get good results."

115.    This comment was published in response to and directly below the February 14, 2010 published column written by HILTZIK.

116.    The comments authored by Harvey were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

117.    Harvey's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

118.    Harvey knowingly published the comment about the Plaintiffs' business while concealing Harvey's true identity, thereby making it seem that the comment was unbiased.

-22-

**COMPLAINT FOR DAMAGES**

1  Therefore, this comment was made in a manner likely to deceive the public, in violation of

2  Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

3  practice.

4     119.   Plaintiffs are informed and believe and thereon allege that Harvey performed the

5  above-mentioned act for the purpose of injuring the businesses of the Plaintiffs.

6     120.   Plaintiffs herein allege that Harvey knowingly posted such false and fraudulent

7  statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or

8  oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

9     121.   As a proximate result of the above-mentioned act of Harvey, Plaintiffs have been

10  deprived of the patronage of a large number of its actual and potential customers, the exact

11  amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at

12  the time of trial, to be subject to treble damages.

### ELEVENTH CAUSE OF ACTION

### TRADE LIBEL BY MATT POWERS

(Against Doe Defendant #8)

16     122.   On or about March 3, 2010, Doe Defendant #8, an anonymous user identified by

17  screen name matt_powers ("Powers") published the following on the website of

18  LATIMES.COM: "Even giving these businesses the benefit of the doubt, it's quite telling that no

19  one is offering any evidence of having 'learned their lessons' from the previous inspection

20  findings. Ridiculous..."

21     123.   This comment was published in response to and directly below the March 3, 2010

22  preview to the March 4, 2010 published column written by HILTZIK.

23     124.   The publication Powers made was of and concerning Plaintiffs and was so

24  understood by those who read the publication.

25     125.   The statement of Powers disparaged Plaintiffs' above-described business services

26  in that it falsely indicated that Plaintiffs' services were not safe and associated the Plaintiffs

27  business practices with prior businesses when such facts were not true.

-23-

### COMPLAINT FOR DAMAGES

126.    The statement of Powers was false. BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities.

127.    The statement of Powers was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

128.    The statement of Powers has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

129.    Plaintiffs herein allege that Powers knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### TWELFTH CAUSE OF ACTION

### TRADE LIBEL BY CALLCENTERJOHNNY

(Against Doe Defendant #9)

130.    On or about March 4, 2010, Doe Defendant #9, an anonymous user identified by screen name callcenterjohnny ("CCJ") published the following on the website of LATIMES.COM: "They have attempted to refix [sic] their deficiencies but not quietly. After so many failures they changed their name to Beverly Hills surgery center, and oddly, their next door neighbors were Beverly hills center or something of that sort.... Money breaks people or makes people, you can be successful with less problems or be successful have problems but its [sic] dirty money. Workers comp, would be going out of business and all over latimes if people at the center actually reported everything on a daily basis."

131.    On or about March 5, 2010, CCJ published the following on the website of LATIMES.COM: "... its [sic] not about what the lapband can do for you...its [sic] about the the [sic] surgery center itself and the scam that is behind it."

132.    These comments were published in response to and directly below the March 4, 2010 published column written by HILTZIK and in response to other comments posted.

-24-

**COMPLAINT FOR DAMAGES**

133.   On or about March 7, 2010, CCJ published the following on the website of LATIMES.COM: "PEOPLE...do you not understand..who cares about the doctors..believe me, if you only knew the BEHIND THE SCENES AT what almont or Beverly hills surgery center.. you should care about the ownership of the company..they have failed [sic] countless times due to inadequate and unsafe care of patients and thus have changed their name to beverly hills surgery center...you may have had a pleasant visit and surgery went well, guess you were lucky how about those..how about the deaths that have occurred that you are not aware of , [sic] or the complications.  lap band is a good way for weight loss BUT the surgery center does NOT ABIDE medical protocols ensuring a safe procedure for patients."

134.   These comments were published in response to and directly below the March 4, 2010 published column written by HILTZIK and in response to other comments posted.

135.   The publications CCJ made were of and concerning the plaintiff and were so understood by those who read the publications.

136.   The statements of CCJ disparaged Plaintiffs' above-described business services in that they falsely indicated that Plaintiffs' services were not safe, implying that death or other severe complications occurred at the surgery center, and Plaintiffs were deceptive in their business practices, earning "dirty money."

137.   The statements of CCJ were false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, no death has occurred at the BHSC.  Plaintiffs do not operate a "scam," nor is it earning "dirty money."

138.   The statements of CCJ were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

139.   The statements of CCJ has a tendency to injure Plaintiffs in their occupation because they impute to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and are therefore, pursuant to Civil Code § 45a, libel on its face.

-25-

**COMPLAINT FOR DAMAGES**

140.    Plaintiffs herein allege that CCJ knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### THIRTEENTH CAUSE OF ACTION

### TRADE LIBEL BY EBUCKLY

(Against Doe Defendant #10)

141.    On or about March 4, 2010, Doe Defendant #10, an anonymous user identified by screen name Ebuckly ("Ebuckly") published the following on the website of LATIMES.COM: "They had people overflowing in the place, a former patient was in the waiting room telling everyone that she should have never had the surgery due to issues with her esophagus, but they performed surgery anyway, and she has multiple health issues since. Bottom line, I walked out! I waited 10 years to have this surgery, and as excited as I was, I knew that this place was shady.... After reading this article it has confirmed the feeling I had, and I am so grateful I walked out that day! They are money hungry!!"

142.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

143.    The publication Ebuckly made was of and concerning Plaintiffs and was so understood by those who read the publication.

144.    The statement of Ebuckly disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs' services were not safe.  The statement of Ebuckly further disparaged Plaintiffs' above-described business services in that it falsely indicated that the businesses were "shady," imputing dishonesty on their business practices.

145.    The statement of Ebuckly was false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiffs, and none can be shown.

-26-

**COMPLAINT FOR DAMAGES**

146.     The statement of Ebuckly was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

147.     The statement of Ebuckly has a tendency to injure Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

148.     Plaintiffs herein allege that EBuckly knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## FOURTEENTH CAUSE OF ACTION

## TRADE LIBEL BY BIGSOUTHERN

(Against Doe Defendant #11)

149.     On or about March 4, 2010, Doe Defendant #11, an anonymous user identified by screen name bigsouthern ("Bigsouthern") published the following on the website of LATIMES.COM: "It's too easy to just assume every medical center in the US follows standard procedures to maintain a safe, sterile environment. It's scary to think about the possibilities with lapses in these basic practices."

150.     This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

151.     The publication Bigsouthern made was of and concerning BHSC and was so understood by those who read the publication.

152.     The statement of Bigsouthern disparaged BHSC's above-described business services in that it falsely indicated that BHSC's services did not follow standard procedures to maintain a safe, sterile environment, and therefore were not safe.

153.     The statement of Bigsouthern was false.  BHSC operates pursuant to the standard procedures required by the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities.

-27-

**COMPLAINT FOR DAMAGES**

154.    The statement of Bigsouthern was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

155.    The statement of Bigsouthern has a tendency to injure BHSC in its occupation because it imputes to BHSC fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

156.    Plaintiffs herein allege that Bigsouthern knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## FIFTEENTH CAUSE OF ACTION

## TRADE LIBEL BY OCCHICK

(Against Doe Defendant #12)

157.    On or about March 4, 2010, Doe Defendant #12, an anonymous user identified by screen name OCChick ("OCChick") published the following on the website of LATIMES.COM: "I don't know why but I have always had a feeling something was not quite right with this place. On almost all freeways in the southland is 5-6-7 of these bill boards in a row, how can they afford this? They are all over AM radio and TV, How is it all insurance PPOs are covering it. I would suggest an insurance audit as well."

158.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

159.    The publication OCChick made was of and concerning Plaintiffs and was so understood by those who read the publication.

160.    The statement of OCChick disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs had deceptive business practices.

161.    The statement of OCChick was false. Plaintiffs have never been accused of any insurance fraud, and there is no basis for the statement that any insurance coverage claims made by patients through Plaintiffs' services would not be valid.

-28-

## COMPLAINT FOR DAMAGES

162.    The statement of OCChick was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

163.    The statement of OCChick has a tendency to injure Plaintiffs in their occupations because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

164.    Plaintiffs herein allege that OCChick knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## SIXTEENTH CAUSE OF ACTION

## TRADE LIBEL BY ALLENGILLESPIE

(Against Doe Defendant #13)

165.    On or about March 4, 2010, Doe Defendant #13, an anonymous user identified by screen name AllenGillespie ("AllenGillespie") published the following on the website of LATIMES.COM: "The comments supporting the disreputable medical facility described in this article generally appear to have been written by the same person."

166.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

167.    ·The publication AllenGillespie made was of and concerning BHSC and/or TOP SURGEONS and was so understood by those who read the publication.

168.    The statement of AllenGillespie disparaged BHSC's above-described business services in that they falsely indicated that BHSC's medical facility was disreputable. Further, the statement seems to infer that BHSC was posting comments under different usernames and creating false personas in an attempt to mislead the public.

169.    The conduct AllenGillespie was commenting on was the same type of conduct done by HITLZIK in the past and would be known by HILTZIK. Therefore, Plaintiff on information and belief, herein alleges that AllenGillespie is specifically linked to HILTZIK.

-29-

**COMPLAINT FOR DAMAGES**

170.    The statement of AllenGillespie was false.  BHSC has never been a focus of disrepute.  Further, BHSC nor Top Surgeons created any false personas in an attempt to mislead the public with false representations about BHSC or Top Surgeons business practice.

171.    The statement of AllenGillespie was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

172.    The statement of AllenGillespie has a tendency to injure BHSC in its occupation because it imputes to BHSC and  Top Surgeons fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

173.    Plaintiffs herein allege that AllenGillespie knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## SEVENTEENTH CAUSE OF ACTION
## TRADE LIBEL BY DHAETTIG
(Against Doe Defendant #14)

174.    On or about March 4, 2010, Doe Defendant #14, an anonymous user identified by screen name dhaettig ("Dhaettig") published the following on the website of LATIMES.COM: "[T]hose billboards and ads are like spam..... It doesn't solve the obesity problem. Getting this procedure done doesn't teach people about portion control or good nutrition, or get to the psychological issues behind overeating."

175.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

176.    The publication Dhaettig made was of and concerning Plaintiffs and was so understood by those who read the publication.

-30-

**COMPLAINT FOR DAMAGES**

177.   The statement of Dhaettig disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity.

178.   The statement of Dhaettig was false.  Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

179.   The statement of Dhaettig was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

180.   The statement of Dhaettig has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

181.   Plaintiffs herein allege that Dhaettig knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## EIGHTEENTH CAUSE OF ACTION

## TRADE LIBEL BY BASEBALLHEAD

(Against Doe Defendant #15)

182.   On or about March 4, 2010, Doe Defendant #15, an anonymous user identified by screen name Baseballhead ("Baseballhead") published the following on the website of LATIMES.COM: "Hiltzik didn't shut down their previous surgical venture, he wasn't the one who had a 22-page report made out detailing all the violations at the surgical center that they're accountable for... For the more discriminating consumers who suffer from obesity and are looking at surgical options, Hiltzik's column is a terrific reason to investigate Lap Band more thoroughly %u2014 and then look elsewhere %u2014 before putting their health and wallets on the line."

183.   This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

-31-

**COMPLAINT FOR DAMAGES**

184.     The publication Baseballhead made was of and concerning Plaintiffs and was so understood by those who read the publication.

185.     The manner and style of the comments by Baseballhead to support HILTZIK in response to the column published by HILTZIK when the comments were already being screened in favor of HILTZIK appears to be directly or indirectly linked to HILTZIK, all as previously documented unethical and inappropriate and possibly illegal conduct by HITLZIK.

186.     The statement of Baseballhead disparaged Plaintiffs' above-described business services in that they falsely indicated that BHSC's center, and centers promoted by Top Surgeons, committed "violations" and were therefore unsafe.

187.     The statement of Baseballhead was false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. BHSC has never been cited for any "violations."

188.     The statement of Baseballhead was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

189.     The statement of Baseballhead has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

190.     Plaintiffs herein allege that Baseballhead knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## NINTEENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY BASEBALLHEAD

(Against Doe Defendant #15)

191.     On or about March 4, 2010, Doe Defendant #15, an anonymous user identified by screen name Baseballhead published the following on the website of LATIMES.COM: "Hiltzik

-32-

COMPLAINT FOR DAMAGES

didn't shut down their previous surgical venture, he wasn't the one who had a 22-page report made out detailing all the violations at the surgical center that they're accountable for… For the more discriminating consumers who suffer from obesity and are looking at surgical options, Hiltzik's column is a terrific reason to investigate Lap Band more thoroughly %u2014 and then look elsewhere %u2014 before putting their health and wallets on the line."

192.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

193.    The manner and style of the comments by Baseballhead to support HILTZIK in response to the column published by HILTZIK when the comments were already being screened in favor of HILTZIK appears to be directly or indirectly linked to HILTZIK, all as previously documented unethical and inappropriate and possibly illegal conduct by HITLZIK.

194.    The comments authored by Baseballhead were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

195.    Baseballhead's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

196.    Baseballhead knowingly published the comment about the Plaintiffs' business while concealing Baseballhead's true identity, thereby making it seem that the comment was unbiased.  Therefore, the comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

197.    Plaintiffs are informed and believe and thereon allege that Baseballhead performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

198.    Plaintiffs herein allege that Baseballhead knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

-33-

**COMPLAINT FOR DAMAGES**

1  fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

2  damages.

3      199.    As a proximate result of the above-mentioned act of Baseballhead, Plaintiffs have

4  been deprived of the patronage of a large number of its actual and potential customers, the exact

5  amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at

6  the time of trial, to be subject to treble damages.

7                          **TWENTIETH CAUSE OF ACTION**

8                          **TRADE LIBEL BY MATTEMONS**

9                              (Against Doe Defendant #16)

10     200.    On or about March 4, 2010, Doe Defendant #16, an anonymous user identified by

11 screen name mattemons ("Mattemons") published the following on the website of

12 LATIMES.COM: "There are plenty of reputable healthcare providers and facilities in the area

13 that are highly qualified to perform these procedures. Why would anyone want to take a chance

14 by going to a facility with such a shady past?"

15     201.    This comment was published in response to and directly below the March 4, 2010

16 published column written by HILTZIK.

17     202.    The publication Mattemons made was of and concerning Plaintiffs and was so

18 understood by those who read the publication.

19     203.    Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs

20 business that based upon such information and belief Plaintiffs herein allege that this is the type

21 of comment that HILTZIK would be either directly or indirectly involved in the publication as

22 HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner

23 inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not

24 otherwise be directly linked to HITLZTK.

25     204.    The statement of Mattemons disparaged Plaintiffs' above-described business

26 services in that it falsely indicated that the business was "shady," imputing dishonesty on its

27 business practices.

28                                   -34-

                          **COMPLAINT FOR DAMAGES**

205.    The statement of Mattemons was false.  There have never been any "shady" or other dishonest acts made by Plaintiffs, and none can be shown.

206.    The statement of Mattemons was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

207.    The statement of Mattemons has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

208.    Plaintiffs herein allege that Mattemons knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## TWENTY-FIRST CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY MATTEMONS

(Against Doe Defendant #16)

209.    On or about March 4, 2010, Doe Defendant #16, an anonymous user identified by screen name Mattemons published the following on the website of LATIMES.COM: "There are plenty of reputable healthcare providers and facilities in the area that are highly qualified to perform these procedures. Why would anyone want to take a chance by going to a facility with such a shady past?"

210.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

211.    Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs business that based upon such information and belief Plaintiffs herein allege that this is the type of comment that HILTZIK would be either directly or indirectly involved in the publication as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not otherwise be directly linked to HITLZTK.

-35-

**COMPLAINT FOR DAMAGES**

212.    The comments authored by Mattemons were directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

213.    Mattemons's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

214.    Mattemons knowingly published the comment about the Plaintiffs' business while concealing Mattemons's true identity, thereby making it seem that the comments were unbiased. Therefore, the comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

215.    Plaintiffs are informed and believe and thereon allege that Mattemons performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

216.    Plaintiffs herein allege that Mattemons knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

217.    As a proximate result of the above-mentioned act of Mattemons, Plaintiffs have been deprived of the patronage of a large number of their actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

## TWENTY-SECOND CAUSE OF ACTION

## TRADE LIBEL BY JULYPOSTOP

(Against Doe Defendant #17)

218.    On or about March 4, 2010, Doe Defendant #17, an anonymous user identified by screen name JulyPostOp ("JulyPostOp") published the following on the website of

-36-

**COMPLAINT FOR DAMAGES**

1    LATIMES.COM: "I was a patient who had so many test [sic] ordered for me that I had to call

2    other doctors just to confirm. When I attended seminars at three different centers, I was told that

3    none of these tests was necessary, and had my syrgery [sic] with just the tests that the Lap Band

4    professors perform. Very disappointing that there are so many idiots, myself included, who look

5    at the ads and think this is the real deal. The surgery is great. Just do it elsewhere. July"

6        219.   On or about March 4, 2010, JulyPostOp published the following on the website of

7    LATIMES.COM: "The biggest scam ever. I went there because they are from my country. I trust

8    them. They charge my insurance $70,000 for surgery cost $18,000 cash. My isurance say [sic]

9    too much. My whole life I only get one million, they take 10%.  Mohammed"

10       220.   This comment was published in response to and directly below the March 4, 2010

11   published column written by HILTZIK.

12       221.   The publications JulyPostOp made were of and concerning Plaintiffs and were so

13   understood by those who read the publication.

14       222.   The statements of JulyPostOp disparaged Plaintiffs' above-described business

15   services in that they falsely indicated that Plaintiffs performed tests which were medically

16   unnecessary.  The statements further disparage Plaintiffs' above-described business services in

17   that they refer to their business operations as a "scam" and claims that Plaintiffs' fraudulently

18   charges insurance companies more than the value of the surgery performed.

19       223.   The statements of JulyPostOp were false.  Plaintiffs have never required patients

20   to undergo tests that were not medically necessary either for diagnosis, treatment, or to verify the

21   healthful ability to undergo treatment.  Further, there have never been any "scam" or other

22   dishonest acts, including fraudulent insurance claims, made by Plaintiffs, and none can be shown.

23       224.   The statements of JulyPostOp were made with knowledge of their falsity or with

24   reckless disregard for their truth or falsity.

25       225.   The statements of JulyPostOp have a tendency to injure Plaintiffs in their

26   occupations because they impute to Plaintiffs fraud, dishonesty, or questionable business

27                                              -37-

28

**COMPLAINT FOR DAMAGES**

1  methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on

2  its face.

3       226.    Plaintiffs herein allege that JulyPostOp knowingly posted such false and

4  fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

5  fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

6  damages.

7                        **TWENTY-THIRD CAUSE OF ACTION**

8                **UNFAIR BUSINESS PRACTICE BY JULYPOSTOP**

9                          (Against Doe Defendant #17)

10      227.    On or about March 4, 2010, Doe Defendant #17, an anonymous user identified by

11  screen name JulyPostOp published the following on the website of LATIMES.COM: "I was a

12  patient who had so many test [sic] ordered for me that I had to call other doctors just to confirm.

13  When I attended seminars at three different centers, I was told that none of these tests was [sic]

14  necessary, and had my syrgery [sic] with just the tests that the Lap Band professors perform.

15  Very disappointing that there are so many idiots, myself included, who look at the ads and think

16  this is the real deal. The surgery is great. Just do it elsewhere.  July"

17      228.    On or about March 4, 2010, JulyPostOp published the following on the website of

18  LATIMES.COM: "The biggest scam ever. I went there because they are from my country. I trust

19  them. They charge my insurance $70,000 for surgery cost $18,000 cash. My isurance say [sic]

20  too much. My whole life I only get one million, they take 10%.  Mohammed"

21      229.    This comment was published in response to and directly below the March 4, 2010

22  published column written by HILTZIK.

23      230.    The comments authored by JulyPostOp were directed toward the business

24  addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the

25  Plaintiffs' business addresses.

26      231.    JulyPostOp comments state facts about Plaintiffs' business and business

27  operations which it knows are untrue or misleading in order to deceive the public, each in

                                      -38-

                        **COMPLAINT FOR DAMAGES**

1  violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business

2  act or practice.

3      232.   JulyPostOp knowingly published comments about the Plaintiffs' business while

4  concealing JulyPostOp's true identity, thereby making it seem that the comments were unbiased.

5  Therefore, these comments were made in a manner likely to deceive the public, each in violation

6  of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

7  practice.

8      234.   Plaintiffs are informed and believe and thereon allege that JulyPostOp performed

9  the above-mentioned acts for the purpose of injuring the business of the Plaintiff.

10     235.   Plaintiffs herein allege that JulyPostOp knowingly posted such false and

11 fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

12 fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

13 damages.

14     236.   As a proximate result of the above-mentioned acts of JulyPostOp, Plaintiffs have

15 been deprived of the patronage of a large number of their actual and potential customers, the

16 exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further

17 proof at the time of trial, to be subject to treble damages.

18                    **TWENTY-FOURTH CAUSE OF ACTION**

19                      **TRADE LIBEL BY DRBRUIN2**

20                      (Against Doe Defendant #18)

21     237.   On or about March 4, 2010, Doe Defendant #18, an anonymous user identified by

22 screen name DrBruin2 ("DrBruin2") published the following on the website of LATIMES.COM:

23 "This company should be closed down permanently and all of their licenses should be revoked."

24     238.   This comment was published in response to and directly below the March 4, 2010

25 published column written by HILTZIK.

26     239.   The publication DrBruin2 made was of and concerning Plaintiffs and was so

27 understood by those who read the publication.

                              -39-

28

                    **COMPLAINT FOR DAMAGES**

240.    Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs business that based upon such information and belief Plaintiffs herein allege that this is the type of comment that HILTZIK would be either directly or indirectly be involved with the publication as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not otherwise be directly linked to HITLZTK. and which would further the personal goals of HILTZIK which would be to permanently shut down Plaintiffs business.

241.    The statement of DrBruin2 disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs operated the business in a manner that would require the revocation of licenses.

242.    The statement of DrBruin2 was false.  There have never been any acts by the Plaintiffs that would suggest the revocation of any license would be proper, and none can be shown.

243.    The statement of DrBruin2 was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

244.    The statement of DrBruin2 has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

245.    Plaintiffs herein allege that DrBruin2 knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## TWENTY-FIFTH CAUSE OF ACTION
## TRADE LIBEL BY RUJOKING?!
(Against Doe Defendant #19)

246.    On or about March 4, 2010, Doe Defendant #19, an anonymous user identified by screen name RUJoking?! ("RUJoking") published the following on the website of

-40-

**COMPLAINT FOR DAMAGES**

1   LATIMES.COM: "Mr. Hiltzik's articles here are doing a public service to aid law enforcement in

2   shutting down these quacks as soon as possible."

3       247.    This comment was published in response to and directly below the March 4, 2010

4   published column written by HILTZIK.

5       248.    Plaintiffs herein allege that this type of statement matches the previous pattern of

6   puff statements that HILTZIK previously posted through his inappropriate and unethical acts of

7   sock-puppeting.  Based upon such information and belief, Plaintiffs herein allege that HILTZIK

8   is either directly or indirectly associated with the posting of this comment.

9       249.    The publication RUJoking made was of and concerning Plaintiffs and was so

10   understood by those who read the publication.

11       250.    The statement of RUJoking disparaged Plaintiffs' above-described business

12   services in that it falsely indicated that the businesses were operating dishonestly.  The statement

13   further disparaged Plaintiffs' above-described business services in that it falsely indicated that the

14   procedure promoted by Top Surgeons or performed at BHSC's facility is "quackery" and not a

15   proper treatment of morbid obesity.

16       251.    The statement of RUJoking was false.  There have never been any dishonest acts

17   made by plaintiffs, and none can be shown.  Further, performance of laparoscopic banding has

18   been shown by numerous medical studies, including studies by the National Institutes of Health,

19   to be a proper treatment for morbid obesity.

20       252.    The statement of RUJoking was made with knowledge of its falsity or with

21   reckless disregard for its truth or falsity.

22       253.    The statement of RUJoking has a tendency to injure Plaintiffs in their occupation

23   because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection

24   with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

25       254.    Plaintiffs herein allege that RUJoking knowingly posted such false and fraudulent

26   statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or

27   oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

-41-

28

**COMPLAINT FOR DAMAGES**

## TWENTY-SIXTH CAUSE OF ACTION

## TRADE LIBEL BY INSTRUCTORP

(Against Doe Defendant #20)

255.    On or about March 4, 2010, Doe Defendant #20, an anonymous user identified by screen name InstructorP ("InstructorP") published the following on the website of LATIMES.COM: "Thank you Mike for exposing this fraud and the few customers who would rather take the easy dangerous approach to losing weight instead of just plain old exercise! $18,000 for a surgical procedure by discredited doctors should be on 60 minutes or another expose show."

256.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

257.    Plaintiffs herein allege that this type of statement matches the previous pattern of puff statements that HILTZIK previously posted through his inappropriate and unethical acts of sock-puppeting. Based upon such information and belief, Plaintiffs herein allege that HILTZIK is either directly or indirectly associated with the posting of this comment.

258.    The publication InstructorP made was of and concerning Plaintiffs and was so understood by those who read the publication.

259.    The statement of InstructorP disparaged Plaintiffs' above-described business services in that it falsely indicated that the procedure promoted by Top Surgeons or performed at BHSC's facility is not a proper treatment of morbid obesity. Further, the statement falsely stated that the surgical procedures performed at BHSC was by doctors that have been discredited.

260.    The statement of InstructorP was false. Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity. In addition, the laparoscopic banding procedures performed at BHSC, and at centers promoted by Top Surgeons, are only performed by licensed doctors.

-42-

**COMPLAINT FOR DAMAGES**

261.   The statement of InstructorP was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

262.   The statement of InstructorP has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

263.   Plaintiffs herein allege that InstructorP knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## TWENTY-SEVENTH CAUSE OF ACTION

## TRADE LIBEL BY 1FRIEND

(Against Doe Defendant #21)

264.   On or about March 5, 2010, Doe Defendant #21, an anonymous user identified by screen name 1Friend  ("1Friend") published the following on the website of LATIMES.COM: "A typical california [sic] insurance rip-off scam."

265.   This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

266.   The publication 1Friend made was of and concerning Plaintiffs and was so understood by those who read the publication.

267.   The statement of 1Friend disparage Plaintiffs' above-described business services in that it refers to Plaintiffs' business operations as a "rip-off scam" and claims that Plaintiffs' fraudulently charge insurance companies.

268.   The statement of 1Friend was false.  There have never been any "rip-off scam" or other dishonest acts, including fraudulent insurance claims, made by Plaintiffs, and none can be shown.

269.   The statement of 1Friend was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-43-

**COMPLAINT FOR DAMAGES**

270.   The statement of 1Friend has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

270.   Plaintiffs herein allege that 1Friend knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## TWENTY-EIGHTH CAUSE OF ACTION

### TRADE LIBEL BY DARMAGGI

(Against Doe Defendant #22)

271.   On or about March 5, 2010, Doe Defendant #21, an anonymous user identified by screen name darmaggi ("Darmaggi") published the following on the website of LATIMES.COM: "Just the ever presence of that annoying and simplistic ad in their multiform media campaign was enough to cause concern and create doubt as to the quality and veracity of who they are and the kind of work they are really performing.  With any luck you may have helped put some obviously unscrupulous medical practitioners out of business, and in the process saved some lives, and saved us all from over exposure to those obnoxious ads.  When the medial [sic] boards removed their certifications they just reconstituted under new names without losing too much time or money, but hopefully, you have connected the dots for those concerned, between the Omidi's [sic] and their odious ad campaign, which would probably be much more costly to retool and relaunch than their actual medical corporation."

272.   This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

273.   Plaintiffs herein allege that this type of statement matches the previous pattern of puff statements that HILTZIK previously posted through his inappropriate and unethical acts of sock-puppeting.  Based upon such information and belief, Plaintiffs herein allege that HILTZIK is either directly or indirectly associated with the posting of this comment.

-44-

**COMPLAINT FOR DAMAGES**

274.    The publication Darmaggi made was of and concerning Plaintiffs and was so understood by those who read the publication.

275.    The statement of Darmaggi disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs' services were not safe.  The statement of Darmaggi further disparaged Plaintiffs' above-described business services in that it falsely indicated that the businesses were operating unscrupulously.  In addition, neither of the Plaintiffs ever had any certification removed from a medical board.

276.    The statement of Darmaggi was false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and BHSC never has had any "certification" removed from any entity, including the medical board. Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiffs, and none can be shown.

277.    The statement of Darmaggi was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

278.    The statement of Darmaggi has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

279.    Plaintiffs herein allege that Darmaggi knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

**TWENTY-NINTH CAUSE OF ACTION**

**TRADE LIBEL BY RAMONAINCORONA**

(Against Doe Defendant #23)

280.    On or about March 7, 2010, Doe Defendant #23, an anonymous user identified by screen name RamonaInCorona ("RamonaInCorona") published the following on the website of LATIMES.COM: "[T]here are PLENTY of other surgeons out in LA that practice at hospitals designated as Bariatric Center [sic] of Excellence. If you have the choice, I'm not sure why

-45-

**COMPLAINT FOR DAMAGES**

1  anyone would choose TopSurgeons. This is your life folks and if you are taking it seriously

2  enough to go through major surgery, take the extra step and go to a reputable facility."

3      281.   This comment was published in response to and directly below the March 4, 2010

4  published column written by HILTZIK.

5      282.   Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs

6  business that based upon such information and belief Plaintiffs herein allege that this is the type

7  of comment that HILTZIK would be either directly or indirectly be involved with the publication

8  as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a

9  manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that

10  would not otherwise be directly linked to HITLZTK. and which would further the personal goals

11  of HILTZIK which would be to permanently shut down Plaintiffs business.

12      283.   The publication RamonaInCorona made was of and concerning Plaintiffs and was

13  so understood by those who read the publication.

14      284.   The statement of RamonaInCorona disparaged Plaintiffs' above-described

15  business services in that it falsely indicated that services at BHSC, a center promoted by Top

16  Surgeons, were less safe than other facilities performing the laparoscopic banding procedure.

17  Further, the statement falsely indicated that BHSC was not a reputable facility.

18      285.   The statement of RamonaInCorona was false.  BHSC operates pursuant to the

19  Joint Commission medical accreditation program, who has given the facility its Gold Seal; and

20  Top Surgeons only directs patients to licensed doctors performing surgeries in accredited

21  facilities.  Further, there is no basis for the assertion that BHSC was not reputable.

22      286.   The statement of RamonaInCorona was made with knowledge of its falsity or

23  with reckless disregard for its truth or falsity.

24      287.   The statement of RamonaInCorona has a tendency to injure Plaintiffs in their

25  occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in

26  connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

27                                          -46-

28

COMPLAINT FOR DAMAGES

288.    Plaintiffs herein allege that RamonainCarona knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### THIRTIETH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICE BY RAMONAINCORONA

(Against Doe Defendant #23)

289.    On or about March 7, 2010, Doe Defendant #23, an anonymous user identified by screen name RamonaInCorona published the following on the website of LATIMES.COM: "[T]here are PLENTY of other surgeons out in LA that practice at hospitals designated as Bariatric Center [sic] of Excellence. If you have the choice, I'm not sure why anyone would choose TopSurgeons. This is your life folks and if you are taking it seriously enough to go through major surgery, take the extra step and go to a reputable facility."

290.    This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

291.    Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs business that based upon such information and belief Plaintiffs herein allege that this is the type of comment that HILTZIK would be either directly or indirectly be involved with the publication as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not otherwise be directly linked to HITLZTK. and which would further the personal goals of HILTZIK which would be to permanently shut down Plaintiffs business.

292.    The comment authored by RamonaInCorona was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

293.    RamonaInCorona's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of

-47-

**COMPLAINT FOR DAMAGES**

1  Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

2  practice.

3        294.   RamonaInCorona knowingly published the comment about the Plaintiffs'

4  businesses while concealing RamonaInCorona's true identity, thereby making it seem that the

5  comment was unbiased.  Therefore, the comment was made in a manner likely to deceive the

6  public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or

7  fraudulent business act or practice.

8        295.   Plaintiffs are informed and believe and thereon allege that RamonaInCorona

9  performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

10        296.   Plaintiffs herein allege that RamonaInCarona knowingly posted such false and

11  fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

12  fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

13  damages.

14        297.   As a proximate result of the above-mentioned act of RamonaInCorona, Plaintiffs

15  have been deprived of the patronage of a large number of its actual and potential customers, the

16  exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further

17  proof at the time of trial, to be subject to treble damages.

18                    **THIRTY-FIRST CAUSE OF ACTION**

19                **TRADE LIBEL BY DIANNE.M.DANIELS**

20                       (Against Doe Defendant #24)

21        298.   On or about April 18, 2010, Doe Defendant #24, an anonymous user identified by

22  screen name dianne.m.daniels ("Daniels") published the following on the website of

23  LATIMES.COM: "Please, let's make this more about the fact that this 'physician' lied about his

24  qualifications and experience and that the information about his lack of knowledge should have

25  been easier to find. It is tragic that this young man died because of medical incompetence - but it

26  was not the lap band that killed him."

27                                  -48-

28

                        **COMPLAINT FOR DAMAGES**

299.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

300.    Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs business that based upon such information and belief Plaintiffs herein allege that this is the type of comment that HILTZIK would be either directly or indirectly be involved with the publication as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not otherwise be directly linked to HITLZTK. and which would further the personal goals of HILTZIK which would be to permanently shut down Plaintiffs business.

301.    The publication Daniels made was of and concerning Plaintiffs and was so understood by those who read the publication.

302.    The statement of Daniels disparaged Plaintiffs' above-described business services in that it falsely indicated that services at BHSC, a center promoted by Top Surgeons, knowingly permits doctors that are medically incompetent and/or that have lied about his or her qualifications and experience to perform medical procedures at its center, and is, therefore, unsafe.

303.    The statement of Daniels was false. BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there is no basis for the assertion that any doctor at BHSC lied about his or her qualifications and/or experience, nor is there a basis for stating that the any doctor at BHSC is medically incompetent.

304.    The statement of Daniels was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

305.    The statement of Daniels has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

-49-

**COMPLAINT FOR DAMAGES**

306.   Plaintiffs herein allege that Daniels knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### THIRTY-SECOND CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICE BY DIANNE.M.DANIELS

(Against Doe Defendant #24)

307.   On or about April 18, 2010, Doe Defendant #24, an anonymous user identified by screen name Dianne.M.Daniels (Daniels) published the following on the website of LATIMES.COM: "Please, let's make this more about the fact that this 'physician' lied about his qualifications and experience and that the information about his lack of knowledge should have been easier to find. It is tragic that this young man died because of medical incompetence - but it was not the lap band that killed him."

308.   This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

309.   Plaintiffs allege that HILTZIK is on a personal vendetta to destroy the Plaintiffs business that based upon such information and belief Plaintiffs herein allege that this is the type of comment that HILTZIK would be either directly or indirectly be involved with the publication as HILTZIK could directly influence readers and prospective customers of the Plaintiffs in a manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not otherwise be directly linked to HITLZTK. and which would further the personal goals of HILTZIK which would be to permanently shut down Plaintiffs business.

310.   The comment authored by Daniels was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

311.   Daniels's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of

-50-

---

**COMPLAINT FOR DAMAGES**

Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

312.    Daniels knowingly published the comment about the Plaintiffs' businesses while concealing Daniels's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

313.    Plaintiffs are informed and believe and thereon allege that Daniels performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

314.    Plaintiffs herein allege that Daniels knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

315.    As a proximate result of the above-mentioned act of Daniels, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

## THIRTY-THIRD CAUSE OF ACTION

## TRADE LIBEL BY LAX.PREPSTER

(Against Doe Defendant #25)

316.    On or about April 18, 2010, Doe Defendant #25, an anonymous user identified by screen name LAX.Prepster ("LAX.Prepster") published the following on the website of LATIMES.COM: "I have a feeling if you were to dive deeper into this group as well as others, you'll probably find, these so called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of complications) which right there is a red flag.  There's much controversy if these Lap Bands should be performed on an outpatient basis. I'm sure there still [sic] a large group of surgeons out there who insist on keeping patients in the hospital at least a night or two for observation, especially in those cases, [sic] where there's diabetes, hypertension,

-51-

**COMPLAINT FOR DAMAGES**

breathing issues, history of infections etc. involved as no two patients are the same.  There are many serious issues with performing this less invasive surgery over the laparascopic [sic] bypass."

317.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

318.    The publication LAX.Prepster made was of and concerning Plaintiffs and was so understood by those who read the publication.

319.    The statement of LAX.Prepster disparaged Plaintiffs' above-described business services in that it falsely indicated that services at BHSC, a center promoted by Top Surgeons, performs medical procedures on an out-patient basis when the procedure should instead be held at a hospital, and states that there is "controversy" over this out-patient treatment.  LAX.Prepster further indicates that there are many serious issues with the procedure performed by BHSC and promoted by Top Surgeons.

320.    The statement of LAX.Prepster was false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities.  Further, there is no basis for the assertion that there is controversy that the laparoscopic procedure should not be performed in an out-patient setting.  Instead, the procedure is regularly performed at out-patient settings without controversy.

321.    The statement of LAX.Prepster was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

322.    The statement of LAX.Prepster has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

323.    Plaintiffs herein allege that LAX.Prepster knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of

-52-

**COMPLAINT FOR DAMAGES**

1   fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary

2   damages.

### THIRTY-FOURTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICE BY LAX.PREPSTER

(Against Doe Defendant #25)

6   324.    On or about April 18, 2010, Doe Defendant #25, an anonymous user identified by

7   screen name LAX.Prepster published the following on the website of LATIMES.COM: "I have a

8   feeling if you were to dive deeper into this group as well as others, you'll probably find, these so

9   called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of

10  complications) which right there is a red flag.  There's much controversy if these Lap Bands

11  should be performed on an outpatient basis. I'm sure there still [sic] a large group of surgeons out

12  there who insist on keeping patients in the hospital at least a night or two for observation,

13  especially in those cases, [sic] where there's diabetes, hypertension, breathing issues, history of

14  infections etc. involved as no two patients are the same.  There are many serious issues with

15  performing this  less invasive surgery over the laparascopic [sic] bypass. The California Medical

16  Board and these agencies who give licenses to these centers and so called surgeons need to be

17  looked at much more aggressively [sic]."

18  325.    This comment was published in response to and directly below the April 18, 2010

19  published column written by HILTZIK.

20  326.    The comment authored by LAX.Prepster was directed toward the business

21  addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the

22  Plaintiffs' business addresses.

23  327.    LAX.Prepster's comment states facts about Plaintiffs' businesses and business

24  operations which it knows are untrue or misleading in order to deceive the public, in violation of

25  Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

26  practice.

27

28                                          -53-

---

**COMPLAINT FOR DAMAGES**

328.    LAX.Prepster knowingly published the comment about the Plaintiffs' businesses while concealing LAX.Prepster's true identity, thereby making it seem that the comment was unbiased.  Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

329.    Plaintiffs are informed and believe and thereon allege that LAX.Prepster performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

330.    Plaintiffs herein allege that LAX.Prepster knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

331.    As a proximate result of the above-mentioned act of LAX.Prepster, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

## THIRTY-FIFTH CAUSE OF ACTION

## TRADE LIBEL BY ISABELLE1106

(Against Doe Defendant #26)

332.    On or about April 19, 2010, Doe Defendant #26, an anonymous user identified by screen name Isabelle1106 ("Isabelle1106") published the following on the website of LATIMES.COM: "Is this insurance fraud too? If Mr. Brooks was 6'6 and 300lbs his BMI would only be 34.7. In order for insurance to pay, a patient must have a BMI of 40 or greater or 35 with some sort of co-morbidity (sleep apnea, diabetes, hypertension). Someone should look into the information submitted to the insurance company. Based on his height and weight given Mr. Brooks wouldn't have even qualified for surgery."

333.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

-54-

**COMPLAINT FOR DAMAGES**

334. The publication Isabelle1106 made was of and concerning Plaintiffs and was so understood by those who read the publication.

335. The statement of Isabelle1106 disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs had deceptive business practices, specifically, insurance fraud.

336. The statement of Isabelle1106 was false. There is no basis for the statement that any insurance coverage claims made by patients through Plaintiffs' services would not be valid. Instead, Isabelle1106 relies on approximations stated by a sloppy reporter to assert a deceptive business practice by Plaintiffs.

337. At the time the column was posted on the LATIMES.COM, HILTZIK the author of the column was in possession of the Los Angeles County Coroner's Report and other factual data that contained the exact height and weight of the deceased individual. Despite having this information in his possession, HILTZIK intentionally reported false and fraudulent information in his column. Plaintiffs believe and on such information and belief, hereby assert that HILTZIK intentionally misrepresented these facts, so that individuals reading the column would in fact conclude that the Plaintiffs engaged in insurance fraud.

338. It is hereby asserted on information and belief that the LATIMES.COM website issued a Correction indicating and confirming that HILTZIK had intentionally and deceptively misreported the facts concerning the deceased specifically the height of the deceased. Even thought the LATIMES.COM website issued a correction, they continued to allow the posted comments of Isabelle1106 to remain published.

339. The statement of Isabelle1106 was made with knowledge of its falsity or with reckless disregard for its truth or falsity. On information and belief, Plaintiffs hereby allege that HILTZIK either; coordinated with Isabelle1106, acted under the screen name of Isabelle1106 and/or otherwise caused Isabelle1106 to publish her false and defamatory comments on the LATIMES.COM website.

-55-

**COMPLAINT FOR DAMAGES**

340.    The statement of Isabelle1106 has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face for which damages are presumed.

341.    Plaintiffs herein allege that Isabelle1106 knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

## THIRTY-SIXTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY ISABELLE1106

(Against Doe Defendant #26)

342.    On or about April 19, 2010, Doe Defendant #26, an anonymous user identified by screen name Isabelle1106 published the following on the website of LATIMES.COM: "Is this insurance fraud too? If Mr. Brooks was 6'6 and 300lbs his BMI would only be 34.7. In order for insurance to pay, a patient must have a BMI of 40 or greater or 35 with some sort of co-morbidity (sleep apnea, diabetes, hypertension). Someone should look into the information submitted to the insurance company. Based on his height and weight given Mr. Brooks wouldn't have even qualified for surgery."

343.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

344.    The comment authored by Isabelle1106 was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

345.    Isabelle1106's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

-56-

**COMPLAINT FOR DAMAGES**

346.     Isabelle1106 knowingly published the comment about the Plaintiffs' businesses while concealing Isabelle1106's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

347.     Plaintiffs are informed and believe and thereon allege that Isabelle1106 performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

348.     Plaintiffs herein allege that Isabelle1106 knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

349.     As a proximate result of the above-mentioned act of Isabelle1106, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

## THIRTY-SEVENTH CAUSE OF ACTION

## TRADE LIBEL BY ALANSMYTH1

### (Against Doe Defendant #27)

350.     On or about April 21, 2010, Doe Defendant #27, an anonymous user identified by screen name AlanSmyth1 ("AlanSmyth") published the following on the website of LATIMES.COM: "The 1 800 GET THIN or GET SLIM group have had so many different surgeons go through their facility. How can all these sub-standard surgeons continue to practice in a facility that continues to change their [sic] name? … Unfortunately, innocent patients will be mesmerized by their continuous billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more appropriate for this group."

351.     This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

-57-

**COMPLAINT FOR DAMAGES**

352.    The publication AlanSmyth made was of and concerning Plaintiffs and was so understood by those who read the publication.

353.    The statement of AlanSmyth disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs' services were not safe and that BHSC used, and Top Surgeons promoted the use of, "sub-standard surgeons" in BHSC's facility.  The statement of AlanSmyth further disparaged Plaintiffs' above-described business services in that it falsely indicated that Plaintiffs operate dishonestly, were "slimy" and "shady."

354.    The statement of AlanSmyth was false.  BHSC operates pursuant to the Joint Commission medical accreditation program, who has given the facility its Gold Seal; and Top Surgeons only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by either of the Plaintiffs, and none can be shown.

355.    The statement of AlanSmyth was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

356.    The statement of AlanSmyth has a tendency to injure Plaintiffs in their occupation because it imputes to Plaintiffs fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

357.    Plaintiffs herein allege that AlanSmyth knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

### THIRTY-EIGHTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICE BY ALANSMYTH1

(Against Doe Defendant #27)

358.    On or about April 21, 2010, Doe Defendant #27, an anonymous user identified by screen name AlanSmyth published the following on the website of LATIMES.COM: "The 1 800 GET THIN or GET SLIM group have had so many different surgeons go through their facility.

-58-

**COMPLAINT FOR DAMAGES**

How can all these sub-standard surgeons continue to practice in a facility that continues to change their [sic] name? … Unfortunately, innocent patients will be mesmerized by their continuous billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more appropriate for this group."

359.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

360.    The comment authored by AlanSmyth was directed toward the business addresses of Plaintiffs in Beverly Hills, California, and have caused harm to the Plaintiffs at the Plaintiffs' business addresses.

361.    AlanSmyth's comment states facts about Plaintiffs' businesses and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

362.    AlanSmyth knowingly published the comment about the Plaintiffs' businesses while concealing AlanSmyth1's true identity, thereby making it seem that the comment was unbiased.  Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

363.    Plaintiffs are informed and believe and thereon allege that AlanSmyth performed the above-mentioned act for the purpose of injuring the business of the Plaintiffs.

364.    Plaintiffs herein allege that Isabelle1106 knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

365.    As a proximate result of the above-mentioned act of AlanSmyth, Plaintiffs have been deprived of the patronage of a large number of its actual and potential customers, the exact

-59-

**COMPLAINT FOR DAMAGES**

amount of such damages is presently unknown to Plaintiffs, and will be subject to further proof at the time of trial, to be subject to treble damages.

**WHEREFORE**, Plaintiffs pray for judgment against each of the Defendants as follows:

1.     For actual damages;

2.     For trebled damages, according to proof;

3.     For punitive damages;

4.     For reasonable attorney's fees;

5.     For its costs incurred; and

6.     For any other and further relief as the court may deem proper.

DATED: December 14, 2010                    **SILVERMAN & ASSOCIATES**

                                                          Robert B. Silverman
                                                          Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**

**VERIFICATION**

I, Charles Klasky, declare:

I am a manager of Top Surgeons, LLC, a limited liability company organized and existing under the laws of the state of California, which is the plaintiff in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing complaint and know the contents thereof. I am informed and believe that the matters stated therein are true and on that ground I allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:        December 14, 2010

Charles Klasky, Manager

-61-

**COMPLAINT FOR DAMAGES**

1

## <u>VERIFICATION</u>

2

3    I, Charles Klasky, declare:

4         I am a Manager of Beverly Hills Surgery Center, LLC, a limited liability company

5    organized and existing under the laws of the state of California, which is one of the Plaintiffs in

6    the above-entitled action, and I have been authorized to make this verification on its behalf.

7         I have read the foregoing complaint and know the contents thereof. I am informed and

8    believe that the matters stated therein are true and on that ground I allege that the matters stated

9    therein are true.

10        I declare under penalty of perjury under the laws of the State of California that the

11   foregoing is true and correct.

12

13   Dated:        December 14, 2010

14

15                 Charles Klasky, Manager

16

17

18

19

20

21

22

23

24

25

26

27

28                              -62-

## COMPLAINT FOR DAMAGES

# EXHIBIT D

1 | ELIGIO LUEVANOS SBN 198372
LAW OFFICES OF ELIGIO LUEVANOS
2 | 5926 COCHRAN STREET
SIMI VALLEY, CA 93063
3 | TEL: (310) 351-9162

**FILED**
Los Angeles Superior Court

A6010
A0310
DEPT# 39

DEC 16 2010

JOHN A. CLARKE, CLERK

(HON. MICHAEL C. Stringer)

BY DAWN ALEXANDER, DEPUTY

4 | ATTORNEY FOR PLAINTIFF,
MICHAEL OMIDI, MD

5

6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

8

9 | MICHAEL OMIDI, MD.,

CASE NUMBER: **BC451424**

10 | Plaintiff,

11 | vs.

**COMPLAINT FOR DAMAGES**

(1) DEFAMATION – LIBEL PER SE

12

13 | MICHAEL HILTZIK, DOES 1 through 10,
inclusive,

14

15 | Defendants.

[UNLIMITED JURISDICTION –
DAMAGES EXCEED $25,000.00]

16

17

18

19 | Plaintiff, Michael Omidi, MD, complains of defendants, and each of them, and by this

20 | complaint alleges as follows:

21 | **PARTIES**

22 | 1.    For all times herein relevant, Plaintiff, Michael Omidi, MD., is a licensed Medical

23 | Doctor in the State of California, (hereinafter referred to as "Plaintiff"), and a resident of Los

24 | Angeles County.

25 | 2.    Plaintiff is informed and believes and thereon alleges that, at all times herein

26 | relevant, Defendant, Michael Hiltzik ("HILTZIK"), is a columnist with the Los Angeles Times, a

27 | -1-

28

**COMPLAINT FOR DAMAGES**

newspaper of general circulation and is believed to be an individual who resides in the County of Los Angeles, State of California.

3.     Plaintiff is uncertain as to the identity or capacity of the Defendants included herein as DOES 1 through 20, inclusive, and therefore sues said Defendants by their fictitious names. Plaintiff is informed and believes and thereon alleges that said Defendants, DOES 1 through 20, inclusive, and each of them, are liable to Plaintiff on the facts herein alleged and will seek leave of this Court to amend this Complaint when their true names are ascertained.

4.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendants was an associate, employee, agent, principal, or servant of each of the co-Defendants and, in doing the things herein mentioned, was acting in the scope of his or her authority and with the permission and consent of each of the other co-Defendants.

## VENUE

5.     Pursuant to the provisions of Section 395 subsection (a) of the California Code of Civil Procedure, this Court is the proper Court and place for trial in this action in that, inter alia, all of the transactions which are the subject matter of this action were entered into and to be performed within the County of Los Angeles.

6.     Pursuant to the provisions of Section 585.5 of the California Code of Civil Procedure, this action is neither based upon a conditional sales contract nor a contract or installment contract for the sale of goods or services subject to the provisions of Section 1812 et seq. and 2984 et seq. of the California Civil Code.

## STATEMENT OF THE CASE

A.     **Defendant Michael Hiltzik**

7.     Defendant Michael Hiltzik ("Hiltzik") has been employed by the Los Angeles Times in different positions.

8.     In 1993, Hiltzik was stationed in Moscow as a bureau reporter for the Los Angeles Times. While in Moscow, the Los Angeles Times set up a sting operation to capture an

-2-

**COMPLAINT FOR DAMAGES**

1  employee in that bureau who was believed to be snooping into the personal emails of fellow co-

2  workers.

3       9.      The Los Angeles Times arranged the transmission of a fake email from Isreal to

4  Moscow. The fake email while not directed to Hiltzik was intercepted by Hiltzik through his

5  unauthorized use of co-workers passwords.

6       10.     Hiltzik subsequently made verbal inquiries concerning the fake email which

7  exposed him as the person who was accessing the email of the coworkers without authority.

8       11.     Hiltzik was removed from the Moscow bureau and reassigned. The Los Angeles

9  Times would not release any other information concerning the incident.

10      12.     In 2006, while as a journalist with the Los Angeles Times covering the Golden

11 State and operating a blog on the Los Angeles Times website, Hiltzik would use various aliases

12 such as "Mikoshi" and through the use of such aliases, would make various internet blog

13 comments on his own blog in support of Hiltzik and would criticize any individual commenter

14 who spoke negatively about Hiltzik. Such conduct is commonly referred to as sock-puppeting.

15      13.     Hiltzik even used the alias on various other internet blogs against making

16 comments in support of himself through this alias, criticizing other individuals especially anyone

17 who made negative comments about Hiltzik and articles written for the Los Angeles Times.

18      14.     In addition, Hiltzik would selectively censor his blog to prohibit negative

19 comments made about him.

20      15.     Hiltzik's actions were discovered by third parties, confirmed by the Los Angeles

21 Times and subsequently Hiltzik was suspended for his actions. In addition to the suspension,

22 Hiltzik was removed as a journalist and reassigned to being a columnist an individual merely

23 writing opinion columns. Hiltzik's blog was also removed from the website.

24      16.     On or about early 2010, Hiltzik started inquiring into a series of businesses known

25 as Almont Ambulatory Surgery Center, Beverly Hills Surgery Center, Plaintiff and other family

26 members associated with the Plaintiff.

27                                          -3-

28

**COMPLAINT FOR DAMAGES**

17.     During the course of these inquiries, Hiltzik engaged in a pattern of unethical and inappropriate conduct.  Among other things; Hiltzik lied about his identity, Hiltzik lied about how he obtained information, Hiltzik lied to individuals accusing them of committing and participating in criminal conduct, Hiltzik also informed other third parties that he was on a personal vendetta to get the Plaintiff and businesses that Hiltzik associated with the Plaintiffs.

18.     Hiltzik also has cooperated with private attorneys to coordinate information to be used against the Plaintiff in various lawsuits either now pending or expected to be pending.

19.     Through various individuals, the Los Angeles Times was placed on Notice of the actions of Hiltzik.  Despite being alerted to these actions, the Los Angeles Times allowed Hiltzik to continue to publish columns about the Plaintiff.

20.     Hiltzik actually wrote and the Los Angeles Times published in the newspaper and concurrently on the Los Angeles Times website, a series of negative articles against the Plaintiff.

21.     Hiltzik authored and Los Angeles Times published three articles February 14, 2010, March 4, 2010 and April 18, 2010.

22.     While each article contained false and fraudulent statements of fact as against the Plaintiff the third column published on April 18, 2010 in the Los Angeles Times and concurrently published on the Los Angeles Times website forms the basis of this lawsuit.

23.     In addition the cause of action contained herein, Hiltzik, in preparation of the April 18, 2010 column interviewed the family of a deceased individual and obtained copies of the coroner's report.

24.     Despite having significant information concerning the facts about the individual, Hiltzik intentionally published false and fraudulent statements of fact.  Hiltzik specifically stated that the individual was a full foot taller than his actual height.  By making such an intentional false and fraudulent statement, Hiltzik created an illusion that the Plaintiff participated in or was associated with insurance fraud and/or inappropriate medical care by providing the surgical procedure to an unqualified individual.  All of this was false and subsequently corrected by the Los Angeles Times.

-4-

**COMPLAINT FOR DAMAGES**

25.     Notwithstanding, individual third parties had already made various comments following the article also stating that this was an act of insurance fraud.  While the Los Angeles Times corrected the column, the Los Angeles Times did not remove the comments that were based upon such intentional false and fraudulent statements by Hiltzik.

B.     **Plaintiff Michael Omidi, MD**

26.     Plaintiff Michael Omidi, MD, is a licensed Medical Doctor in the State of California.

27.     Plaintiff has a primary practice in the area of Cosmetic Surgery and a secondary practice in the area of General Surgery.  Plaintiff has also participated in a Cardiac Fellowship program.

28.     Plaintiff also volunteers his time to provide free medical services in countries outside the United States, such as Viet Nam.

29.     At some point in time, Plaintiff was involved in obtaining accreditation for a surgery center.  Prior to accreditation, Plaintiff was specifically informed in writing that he would need to perform at least two procedures in the surgery center before accreditation would be granted.

30.     In response to the written request, Plaintiff did in fact perform two procedures as required.

31.     At some time thereafter, the Medical Board of California filed an Accusation containing 10 causes of actions against the Plaintiff.

32.     The Medical Board and the Plaintiff entered into a Stipulation and Order wherein the Plaintiff agreed that he violated 2216 of the Business and Profession Code and 1248.1(g) of the Health and Safety Code.  Neither violation was an act of gross negligence as alleged in the Accusation.  The violations both relate to the situation where procedures were performed prior to accreditation.

-5-

**COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

## DEFAMATION - LIBEL

(Against Michael Hiltzik)

33.    Plaintiff hereby incorporates Paragraphs 1 through 32, inclusive, herein by reference, as though set forth in full.

34.    On or about April 18, 2010, Hiltzik authored a column titled "Lap-band patients operate in the dark"

35.    In the April 18, 2010, Hiltzik specifically stated "The board also has placed Michael Omidi on probation for such acts of "gross negligence" as allowing unlicensed medical assistants to operate on patients." This was statement was an intentional and material misstatement of material facts.

36.    The April 18, 2010 was published in the Los Angeles Times newspaper of general circulation and the Los Angeles Times website.

37.    The publication by Hiltzik clearly identified the Plaintiff by name. As such said statement is clearly of and concerning the Plaintiff and would clearly be understood by any reader of the publication to be about the Plaintiff.

38.    The statement of material fact by Hiltzik disparaged Plaintiff in his profession and ability as a Medical Doctor in that it falsely indicated that Plaintiff was incompetent and practiced bad medicine.

39.    Hiltzik knew or should have known that such statement of material fact was in false, as Hiltzik had in his possession the Medical Board Accusation and the Stipulation and Order. In addition, Hiltzik actually linked the article to the Medical Board website and/or the Disciplinary Report. As such, Hiltzik knew, should have known that said statements of material fact were in fact false or was made with the reckless disregard for its truth or falsity.

40.    Plaintiff on May 7, 2010, sent Hiltzik and others, a written demand for Retraction. Plaintiff specifically informed Hiltzik and others that the statement concerning the acts of "gross negligence" were in fact false and constituted libel.

-6-

**COMPLAINT FOR DAMAGES**

41.    In response to the demand for the retraction and/or correction, Hiltzik and/or others posted the following statement "Lap-Band doctor: A column by Michael Hiltzik in the April 18 Business section incorrectly stated that Dr. Michael Omidi, who has been associated with Top Surgeons, the promoter of Lap-Band weight-loss surgery, was placed on probation by the California Medical Board for such acts of "gross negligence" as allowing medical assistants to operate on patients. Although the board did make such accusations, Omidi settled the case by stipulating to having violated state law by performing surgeries on three patients at an unaccredited surgical facility. The board revoked his license but stayed that action for a three-year probationary period. —"

42.    Despite having issued a retraction, the statement by Hiltzik has a tendency to injure and did in fact cause injury to the Plaintiff in his occupation, pursuant to Civil Code § 45a, libel on its face.

43.    Plaintiff herein alleges that despite issuing the retraction, Plaintiff incurred special damages in the actual loss of patients who cancelled their appointments and/or medical procedures with the Plaintiff. As a result, Plaintiff has incurred and continues to incur special damages as a direct and proximate result of the actions of Hiltzik.

44.    Plaintiffs herein allege that Hiltzik knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiffs in a manner of fraud or oppression, such that Plaintiffs should be entitled to an award of punitive or exemplary damages.

**WHEREFORE**, Plaintiffs pray for judgment against each of the Defendants as follows:

1.    For actual damages;

2.    For trebled damages, according to proof;

3.    For punitive damages;

4.    For reasonable attorney's fees;

5.    For its costs incurred; and

6.    For any other and further relief as the court may deem proper.

-7-

**COMPLAINT FOR DAMAGES**

DATED: December 16, 2010

_____
Eligio Luevanos
Attorney for Plaintiff

-8-

**COMPLAINT FOR DAMAGES**

# EXHIBIT E

1   ALEXANDER WEISSE, ESQ. (SBN 254236)
    27068 LA PAZ ROAD, SUITE 425
2   ALISO VIEJO, CA 92656
    (310) 230-5741
3

4   ATTORNEY FOR PLAINTIFF,      D 32
       1 800 GET THIN., LLC
5                                mary H.
6                                Strobel

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF LOS ANGELES

10                                                   BC451507

11  1 800 GET THIN, LLC, a California limited    )   CASE NUMBER:
    liability company;                           )
12                                               )
                                                 )   COMPLAINT FOR DAMAGES
13        Plaintiff,                             )
                                                 )      (1) TRADE LIBEL AGAINST VARIOUS
14        vs.                                    )      DOE DEFENDANTS (MULTIPLE
                                                 )      CAUSES OF ACTIONS)
15  DOES 1 through 100, inclusive,               )
                                                 )      (2) UNFAIR TRADE PRACTICE
16        Defendants.                            )      AGAINST VARIOUS DOE
                                                 )      DEFENDANTS (MULTIPLE CAUSES
17                                               )      OF ACTIONS)
                                                 )
18                                               )
                                                 )
19                                               )   [UNLIMITED JURISDICTION –
                                                 )   DAMAGES EXCEED $25,000.00]
20                                               )
                                                 )   BY FAX
21                                               )
                                                 )
22                                               )
                                                 )
23                                               )
                                                 )
24                                               )

25        PLEASE TAKE NOTICE THAT the Plaintiff, 1 800 GET THIN, LLC, hereby asserts

26  causes of actions against the Defendants and each of them as follows:

27                                      -1-

28  _____

                      COMPLAINT FOR DAMAGES

                                            ORIGINAL

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 16 2010

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
        Nancy Alvarez

### GENERAL ALLEGATIONS

1.     Plaintiff, 1 800 GET THIN, LLC ("Plaintiff"), a California limited liability company, is, and at all times herein mentioned was, doing business in Beverly Hills, California, which is within the County of Los Angeles.

2.     Pursuant to the provisions of Section 395 subsection (a) of the California <u>Code of Civil Procedure</u>, this Court is the proper Court and place for trial in this action in that, <u>inter alia</u>, all of the transactions which are the subject matter of this action were entered into and to be performed within the County of Los Angeles.

3.     Pursuant to the provisions of Section 585.5 of the California <u>Code of Civil Procedure</u>, this action is neither based upon a conditional sales contract nor a contract or installment contract for the sale of goods or services subject to the provisions of Section 1812, et seq., and 2984, et seq., of the California <u>Civil Code</u>.

4.     Defendants, DOES 1 through 100, inclusive ("Defendants"), are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that each of Plaintiff's damages as herein alleged were proximately caused by such Defendants.

5.     Plaintiff is a marketing company, which specializes in advertising the medical procedure known as laparoscopic banding. Laparoscopic banding surgeries were performed at, among other centers, Beverly Hills Surgery Center ("BHSC"), by independent doctors as stated herein.

6.     Each of the identified DOE Defendants have published or have caused to be published comments relating to Plaintiff's business on the website identified as LATIMES.COM. The website is available to any individual within the County of Los Angeles

-2-

**COMPLAINT FOR DAMAGES**

1 | including worldwide accessibility.  As a result, Plaintiff has been damaged and continued to be

2 | damaged at Plaintiff's business office in Los Angeles County.

3 |       7.     Plaintiff herein alleges that all of the comments by the DOE Defendants

4 | constituting the causes of actions stated herein were published on the website known as

5 | LATIMES.COM.  The LATIMES.COM website is an independent entity and/or organization but

6 | has unknown affiliations with the newspaper of general circulation known as the LOS

7 | ANGELES TIMES.  Michael Hiltzik ("HILTZIK") authored three (3) negative columns about

8 | the Plaintiff.  The columns were published on or about February 14, 2010, March 4, 2010, and

9 | April 18, 2010, in the print newspaper LOS ANGELES TIMES and were subsequently published

10 | either on the same day or the next calendar day on LATIMES.COM.

11 |       8.     Plaintiff herein alleges that the major difference between the two media forums is

12 | that the LATIMES.COM website allows for the posting of comments by the public in reaction to

13 | the published column.  LATIMES.COM website allows certain posted comments immediately

14 | following the published column.  Each organization has common ownership under an umbrella

15 | company known as LOS ANGELES TIMES MEDIA GROUP and ultimately is a wholly owned

16 | subsidiary of an organization known as TRIBUNE COMPANY.

17 |       9.     All of the comments that form the basis of this Complaint were posted by the

18 | DOE Defendants in response to columns published on the LATIMES.COM website that were

19 | authored by HILTZIK.

20 |      10.    Plaintiff herein alleges that HILTZIK has been engaged and continues to be

21 | engaged in a personal vendetta to cause financial harm to the Plaintiff by intentionally publishing

22 | false and fraudulent information about the Plaintiff via his published columns.  HILTZIK has

23 | openly acknowledged to at least one individual that he will continue to write articles about the

24 | Plaintiff until such time that the Plaintiff is placed out of business.

25 |      11.    Plaintiff herein alleges that the LOS ANGELES TIMES and/or LATIMES.COM

26 | acknowledges that HILTZIK is a columnist, a person who writes articles of opinion and not a

27

28

-3-

**COMPLAINT FOR DAMAGES**

1   journalist. In fact, Plaintiff herein alleges that as described herein, HILTZIK was removed as a

2   journalist due to his inappropriate and unethical conduct. HILTZIK is not edited for content by

3   the LOS ANGELES TIMES as he is not considered to be a journalist and his published articles

4   are not considered to be newsworthy but rather glorified op-ed pieces. HILTZIK'S columns are

5   published by the LOS ANGELES TIMES and LATIMES.COM twice weekly with a mid-week

6   publication and a Sunday column.

7        12.   Plaintiff herein alleges that on or about 2005, the LOS ANGELES TIMES

8   published a set of ethical guidelines and mandated that its employees follow such standards.

9   Plaintiff asserts that the Ethic Guidelines are published on the LATIMES.COM website. The

10  Ethic Guidelines, among other things, require that employees do not use the LOS ANGELES

11  TIMES for their own personal financial benefit or in pursuit of personal vendettas. The

12  Guidelines, among other things, also require that employees act with Fairness when publishing

13  columns in the LOS ANGELES TIMES. As alleged herein in the Complaint, HILTZIK has

14  operated and continues to operate in a manner inconsistent with the Ethical Guidelines all with

15  the knowledge and consent of the LOS ANGELES TIMES and/or LATIMES.COM.

16       13.   Plaintiff on several occasions has notified the LOS ANGELES TIMES about the

17  inappropriate and unethical conduct of HILTZIK. To date, the LOS ANGELES TIMES has

18  either failed to respond to said allegations, failed to investigate and/or have failed to take any

19  action whatsoever.

20       14.   Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified and

21  alerted to the fact that HILTZIK on more than one occasion has lied about his identity in order to

22  obtain information about the Plaintiff in an attempt to use such coerced information in columns

23  targeted against the Plaintiff.

24       15.   Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified and

25  alerted to the fact that HILTZIK on more than one occasion has misrepresented facts to

26  individuals, in fact, asserting that the individual was participating in a federal crime by working

27

28                                    -4-

                        **COMPLAINT FOR DAMAGES**

1  for the Plaintiff, all in an effort to obtain information for use in columns targeted against the

2  Plaintiff.  To date, Plaintiff has never been charged with the commission of any crimes, as falsely

3  alleged by HILTZIK.

4       16.    Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified and

5  alerted to the fact that HILTZIK has personally and continually coordinates the sharing and

6  disclosure of information discovered with private attorneys who are currently engaged in

7  litigation with the Plaintiff all in an effort to either obtain personal financial gain and/or to use

8  such information in his columns against the Plaintiff and/or use such information to directly

9  influence the outcome of the pending litigation concerning the Plaintiff.  Specifically, Plaintiff

10 herein alleges that HILTZIK uses his column to the advantage of party(s) adverse to the Plaintiff

11 and/or to taint the jury pool in favor of the parties adverse to the Plaintiff by intentionally writing

12 false and misleading facts or intentionally omitting material facts about the case all in an effort to

13 place Plaintiff in a false and defamatory light.

14      17.    Plaintiff hereby asserts that HILTZIK has personally and continually coordinates

15 the sharing and disclosure of information discovered with public entities who are currently

16 engaged in oversight of Plaintiff all in an effort to either obtain personal financial gain and/or to

17 use such information in his columns against the Plaintiff and/or use such information to directly

18 influence the outcome of the pending regulatory and/or legislative oversight concerning the

19 Plaintiff and Plaintiff's business.  Specifically, Plaintiff herein alleges that HILTZIK uses his

20 column to the advantage of business interests adverse to the Plaintiff and/or to sway the voting

21 public to favor business interests adverse to the Plaintiff by intentionally writing false and

22 misleading facts or intentionally omitting material facts about the case all in an effort to place

23 Plaintiff in a false and defamatory light.

24      18.    Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified that

25 HILTZIK intentionally misrepresented to individuals that HILTZIK was going to write a

26

27                                      -5-

28

---

**COMPLAINT FOR DAMAGES**

1  positive column about the Plaintiff in an effort to obtain confidential information about the

2  Plaintiff and use such information obtained in his columns against the Plaintiff.

3       19.    Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified that

4  HILTZIK intentionally misrepresented in his columns about the Plaintiff that one particular

5  individual had his medical license suspended in 2009 when in fact the license was actually

6  revoked in 2007. Plaintiff hereby asserts that HILTZIK had access to and was in possession of

7  the public Medical Board records documenting the true facts and despite this information,

8  HILTZIK intentionally published such false and misleading facts to intentionally create a

9  fabricated illusion that this individual was involved in the practice of medicine during periods of

10  time that were the focus of the columns against the Plaintiff.

11       20.    Plaintiff hereby asserts that the LOS ANGELES TIMES has been notified and

12  alerted to the fact that HILTZIK has intentionally provided false, fraudulent and misleading facts

13  in his columns about the Plaintiff. In fact, the Plaintiff herein alleges that the acts of HILTZIK

14  were so intentionally false, fraudulent and misleading, that the LOS ANGELES TIMES actually

15  issued two (2) corrections to the April 18, 2010, column published by HILTZIK.

16       21.    Plaintiff hereby asserts that one such correction that the LOS ANGELES TIMES

17  has been notified and alerted to was the fact that HILTZIK intentionally stated that a deceased

18  individual was a foot taller than his actual height. By making such false and fraudulent

19  assertions, HILTZIK implied to all readers that the Plaintiff engaged in insurance fraud and

20  knowingly marketed the services of a surgical center that would and did provide a surgical

21  procedure to an otherwise unqualified candidate, all accusations asserted by HILTZIK in his

22  columns written against the Plaintiff and further published by DOE Defendants in the comment

23  section following the column. HILTZIK knew or should have known that the facts as reported

24  were false and fraudulent as HILTZIK was in possession of the Los Angeles County Coroner

25  report, interviewed the family of the individual and obtained other information which would

26  have provided HILTZIK with the true facts. Despite having such true and correct information,

-6-

**COMPLAINT FOR DAMAGES**

1   HILTZIK via the LOS ANGELES TIMES and the LATIMES.COM website intentionally

2   published such false and fraudulent information.

3       22.    Plaintiff herein alleges that the LOS ANGELES TIMES has been notified and

4   altered to the fact that individuals attempted to post positive comments about the Plaintiff in

5   response to the false, fraudulent, misleading and negative attacks about the Plaintiff and that

6   such positive comments were edited and/or otherwise denied publication.  Plaintiff herein alleges

7   that when HILTZIK operated his own blog with the LOS ANGELES TIMES, HILTZIK

8   inappropriately controlled the publication of content on the blog and was reprimanded for such

9   conduct.  Plaintiff herein alleges on information and belief that HILTZIK was either directly or

10  indirectly involved in the censorship of the positive comments in support of the Plaintiff.

11      23.    Plaintiff herein alleges that on or about 1993, HILTZIK was caught snooping into

12  the emails of his colleagues.  Specifically, it was alleged that HILTZIK obtained other individual

13  passwords and entered those passwords into the computer system at times that those individuals

14  were not present to log into the system.  It is further alleged that HILTZIK was caught when 2

15  fake emails were intercepted by HILTZIK and HITLZIK later inquired about the content of the

16  fake intercepted emails.  As a result of the inappropriate conduct, HILTZIK was disciplined by

17  the LOS ANGELES TIMES and removed from his assigned post in Moscow.

18      24.    Plaintiff herein alleges that on or about 2006, HILTZIK was suspended by the

19  LOS ANGELES TIMES for such inappropriate and unprofessional behavior known as "sock-

20  puppeting."  Sock puppeting is when a person uses an alias and then posts either positive or

21  negative comments in an effort to either create false positive or negative comments thereby

22  creating an illusion that such comments are legitimately being done by neutral disinterested third

23  parties.  As a result of the inappropriate and unethical conduct, HILTZIK's on-line blog with the

24  LOS ANGELES TIMES was removed, HILTZIK was temporarily suspended for his actions and

25  HILTZIK was reassigned to a position as a columnist and not as a journalist as his integrity and

26

27

28

-7-

**COMPLAINT FOR DAMAGES**

1   credibility as a journalist was completely destroyed based upon this and other acts of unethical

2   conduct.

3        25.    Plaintiff herein alleges that HILTZIK has demonstrated and continues to

4   demonstrate inappropriate, unethical and possible illegal conduct associated with the publication

5   of columns against the Plaintiff, all with the consent and approval of the LOS ANGELES

6   TIMES and/or LATIMES.COM.

7        26.    Plaintiff herein alleges on information and belief that HILTZIK has personally

8   created through the use of aliases, some of the comments attributable to the DOE Defendants

9   listed herein, all consistent with HILTZIK's documented inappropriate and unethical past acts of

10  sock-puppeting for which HILTZIK was previously suspended and otherwise sanctioned.

11       27.    In the alternative, Plaintiff herein alleges that HILTZIK has personally assisted

12  the Doe Defendant(s) in providing them with specific information to post in the comments in

13  support of the columns against the Plaintiff and/or as against other individuals who posted

14  positive comments in support of the Plaintiff all as documented by HILTZIK's past behavior of

15  inappropriate and unethical conduct.

16       28.    Plaintiff herein alleges on information and belief that HILTZIK has acted in such

17  a manner to support his personal attacks and vendetta against the Plaintiff and to use the forum

18  of posting anonymous third party comments to attack Plaintiff in a way that would not otherwise

19  subject HILTZIK to liability.

20       29.    Plaintiff herein alleges that the LATIMES.COM website specifically states and

21  informs any individual posting comments that, any comments posted to its website are neither

22  protected nor privileged forms of speech.  The LATIMES.COM website also requires

23  individuals posting comments to register with the website and agree to the "Terms of Service."

24  The LATIMES.COM website claims that after registration, comments are reviewed for content

25  and screened prior to actual publication on the website.

26

27

28
                    -8-

**COMPLAINT FOR DAMAGES**

30.     With regard to the "Terms of Service," said Terms place responsibilities on individual posters with regard to the comments they submit, as well as informing the individual user that LATIMES.COM will provide access to the user(s) information should the user cause injury to others in providing such content to LATIMES.COM.  And as further alleged herein, the "Terms of Service" specifically do not provide protection from liability for any comments made by registered users of LATIMES.COM.

31.     Plaintiff hereby alleges that the "Terms of Service" state:  ·

> "Registration.  Registration is not required to view certain Content.
> However, you are required to register if you wish to post a comment
> or upload a video, or view certain other Content.  If you become a
> Registered Member of latimes.com, you accept responsibility for all
> Activities that occur under your Registration Account."

32.     Plaintiff asserts that as explicitly made clear by the LATIMES.COM website, a party commenting on LATIMES.COM remains fully liable for any injuries his/her comments may cause.

33.     Plaintiff hereby alleges that with regard to user liability, the "Terms of Service" further state:

> **User Content Assumption of Risk.**  latimes.com cannot and does not
> Monitor or manage all User Content, and does not guarantee the accuracy,
> Integrity, or quality of User Content.  All User Content provided
> to latimes.com is the sole responsibility of the person who provided
> it.  **This means that you are entirely responsible for all User Content
> that you provide.**

34.     Plaintiff further asserts the above-referenced section of the "Terms of Service" again makes explicitly clear that a party commenting on latimes.com does remain fully liable for any injuries his/her comments may cause.

-9-

**COMPLAINT FOR DAMAGES**

35.     In addition to the LATIMES.COM statement that liability for a user's comments lies with the user, the "Terms of Service" also contain representations and warranties that every user must agree to make in registering with the cite.  Those representations and warranties state:

> **User Content Representations and Warranties.**  By placing material on latimes.com, including but not limited to posting content or communications to any latimes.com bulletin board, forum, blogspace, message or chat area, or posting text, images, audio files or other audio-visual content to the site ("User Content"), you represent and warrant: (1) you own or otherwise have all necessary rights to the User Content you provide and the rights to provide it under these Terms of Service; and, (2) the User Content will not cause injury to any person or entity.

36.     The Terms of Service also provide "User Content Posting Rules" which contain a list of proscribed activities in which users of latimes.com are not to engage.

> **User Content Posting Rules.**  Any decisions as to whether User Content violates any Posting Rule will be made by latimes.com in its sole discretion and after we have actual notice of such posting. When you provide User Content, you agree to the following Posting Rules:
>
> ...Do not provide User Content that:...
>
> - is defamatory, threatening, disparaging, grossly inflammatory, false, misleading, fraudulent, inaccurate, unfair, contains gross exaggeration or unsubstantiated claims, violates the privacy rights of any third party, is unreasonably harmful or offensive to any individual or community.
> - violates any right of latimes.com or any third party...

-10-

COMPLAINT FOR DAMAGES

- violates or encourages the violation of any municipal,
  state, federal or international law, rule, regulation or
  ordinance.

37.   Should any of the User Content Posting Rules be violated, LATIMES.COM reserves the right to remove such User Content as it sees fit.  Specifically, the "Terms of Service" state:

> **User Content Screening and Removal.**  You acknowledge that latimes.com and/or its designees may or may not pre-screen User Content, and shall have the right (but not the obligation), in their sole discretion, to move, remove, block, edit, or refuse any User Content for any reason, including without limitation that such User Content violates these Terms of Service or is otherwise objectionable.

38.   In addition to giving LATIMES.COM the right to do with User Content as it will in the face of the "Terms of Service" violations, the "Terms of Service" also allow third-parties access to such information and information disclosed in a user's registration submission.  The "Terms of Service" state:

> **Use of Information by latimes.com.**  You acknowledge, consent and agree that latimes.com may preserve and disclose your Registration Account information and the contents of your online communications if required to do so by law, or in good faith belief that preservation and/or disclosure is reasonably necessary for the following purposes: (1) to comply with legal process, such as a court order, search warrant, or subpoena; (2) to enforce the terms of this Terms of Service; (3) to render service to you request; (4) to protect the rights or property of latimes.com, TI, and their third party suppliers and licensors; or (5) in circumstances

-11-

**COMPLAINT FOR DAMAGES**

1  that we deem, in our sole discretion, to pose a threat to the safety of you

2  or others.

3      39.   Plaintiff asserts that as a third-party, having been injured by users of the

4  LATIMES.COM website, Plaintiff is entitled to access not only User Content but a user's

5  registration information in the ordinary course of business in pursuing a lawsuit for damages as

6  against said users.

7      40.   The Privacy Policy for LATIMES.COM, likewise, does not provide any further

8  protection for a user's information than that provided in the "Terms of Service".  Specifically,

9  the Privacy Policy provides:

10      **Information sharing and disclosure.**

11      …We may disclose your information in response to subpoenas,

12      court orders, or other legal process, or to establish or exercise our

13      legal rights or to defend against legal claims.

14      We may disclose your information when we believe it necessary or

15      desirable in order to investigate, prevent, or take action regarding

16      illegal activities, suspected fraud, situations involving potential

17      threats to the physical safety of any person, **violations of[sic] our**

18      **Terms of Service,** and/or to protect our rights and property (emphasis

19      added).

20      41.   When reviewing the "Terms of Service" and "Privacy Policy" for

21  LATIMES.COM, it is clear that any comments posted to the site are not protected speech and

22  information regarding users is discoverable in legal actions regarding any injuries allegedly

23  caused by user comments.

24  ///

25

26  ///

27

28      -12-

**COMPLAINT FOR DAMAGES**

# FIRST CAUSE OF ACTION

## TRADE LIBEL BY SNAPSHOTS

(Against Doe Defendant #1)

42.     On or about February 14, 2010, Doe Defendant #1, an anonymous user identified with the screen name of SNAPSHOTS ("SNAPSHOTS") published the following on the website of LATIMES.COM: "Thank you for researching what could very clearly be a public health and personal financial risk to many unwitting people who may be desperate and frustrated in their attempts to stop overeating. Dishonesty and bad medical practices are a recipe for disaster."

43.     This comment was published in response to and directly below the February 14, 2010, published column written by HILTZIK.

44.     The publication SNAPSHOTS made was of and concerning Plaintiff and was so understood by those who read the publication.

45.     The statement of SNAPSHOTS disparaged Plaintiff business services in that it falsely indicated that Plaintiff was dishonest and was involved in the bad practice of medicine.

46.     The statements of SNAPSHOTS are false.  Plaintiff only directs patients to medically licensed doctors performing surgeries in accredited facilities.  Further, there have never been any dishonest acts made by Plaintiff, and none can be shown.

47.     SNAPSHOTS should have known that such statements were false, had no basis to support their truth or were made with knowledge of its falsity and/or with reckless disregard for its truth or falsity.

48.     The statement of SNAPSHOTS has a tendency to injure the Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

49.     Plaintiff herein alleges that SNAPSHOTS knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of

-13-

COMPLAINT FOR DAMAGES

1  fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary·

2  damages.

3  **SECOND CAUSE OF ACTION**

4  **TRADE LIBEL BY ADRIEN DALLAS**

5  (Against Doe Defendant #2)

6      50.    On or about February 14, 2010, Doe Defendant #2, an anonymous user identified

7  with the screen name of Adrian_Dallas ("Adrian") published the following on the website of

8  LATIMES.COM: "And I don't want to be inundated in the months and years to come by the

9  inevitable sad little lawsuits of those fleeced by the clearly (almost?) criminal con-men who own

10  1-800-GET-THIN."

11      51.    This comment was published in response to and directly below the February 14,

12  2010, column written by HILTZIK wherein HILTZIK identified 1-800-GET-THIN as an entity

13  owned and operated or otherwise associated with the Plaintiff.

14      52.    The publication Adrian made was of and concerning Plaintiff and would be

15  understood as such by any other individual who read the publication.

16      53.    The statement of Adrian disparaged Plaintiff's business services in that it falsely

17  indicated that Plaintiff was operating dishonestly, that its owners were criminals and/or con-men

18  who engaged in the fleecing of individuals.

19      54.    The published statements by Adrian were in fact false.

20      55.    The published statements by Adrian were made with knowledge of the fact that

21  they were false or with a reckless disregard for its truth or falsity as Adrian had no reasonable

22  information to base said statements of material fact.

23      ·56.    The published statements by Adrian have a tendency to injure Plaintiff in its

24  occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in

25  connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

26

27                                -14-

28

**COMPLAINT FOR DAMAGES**

57.    Plaintiff herein alleges that Adrian knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

### THIRD CAUSE OF ACTION

### TRADE LIBEL BY JKRISCHEL

(Against Doe Defendant #3)

58.    On or about February 14, 2010, Doe Defendant #3, an anonymous user identified with the screen name of jkrischel ("Jkrischel") published the following on the website of LATIMES.COM: "The fact that we're suggesting to people that surgery should be considered, when it is simply carbohydrate intake that is the problem, is macabre."

59.    This comment was published in response to and directly below the February 14, 2010, column written by HILTZIK.

60.    The publication by Jkrischel made of and concerning the actions of Plaintiff, as promoter for laparoscopic banding or as the facility where the procedure is commonly performed, and was so understood by those who read the publication to be a comment about the Plaintiff.

61.    The statement of Jkrischel disparaged Plaintiff's business services in that they falsely indicated that the procedure promoted by Plaintiff is not a proper treatment of patients who suffer from morbid obesity.  In fact, the overwhelming amount of medical literature proves Jkrischel's statements to be false.

62.    The statement of Jkrischel was false.  Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for patients who suffer from morbid obesity.

63.    The statement of Jkrischel was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-15-

**COMPLAINT FOR DAMAGES**

64.     The statement of Jkrischel has a tendency to injure the Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

65.     Plaintiff herein alleges that Jkrischel knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

### FOURTH CAUSE OF ACTION

### TRADE LIBEL BY NEOSERF

(Against Doe Defendant #4)

66.     On or about February 14, 2010, Doe Defendant #4, an anonymous user identified with screen name neoserf ("Neoserf") published the following on the website of LATIMES.COM: "This is not some big controversy or earth-shaking conspiracy, but the shady business practices employed by this company validate the inkling engendered by the profusion of billboards that it's all about the money machine, and not about helping obese people make a good decision when embarking on a profound change in every aspect of their nutritional lives such as gastric bypass surgery."

67.     This comment was published in response to and directly below the February 14, 2010, column written by HILTZIK.

68.     The publication Neoserf made was of and concerning Plaintiff and was so understood by those who read the publication.

69.     The statement of Neoserf disparaged Plaintiff's business services in that it falsely indicated that their business was "shady," imputing dishonesty on their business practices. The statement further disparaged Plaintiff's business services in that it falsely indicated that the procedure promoted by Plaintiff is not a proper treatment of morbid obesity.

-16-

**COMPLAINT FOR DAMAGES**

70.     The statement of Neoserf was false.  Further, laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

71.     The statement of Neoserf was made with knowledge of its falsity or with reckless disregard for its truth or falsity.  It is further alleged that Neoserf had no basis to make the statements of fact as asserted.

72.     The statement of Neoserf did in fact cause and continue to cause financial harm to Plaintiff in its occupations because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

73.     Plaintiff herein alleges that Neoserf knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## FIFTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY NEOSERF

(Against Doe Defendant #4)

74.     On or about February 14, 2010, Doe Defendant #4, an anonymous user identified by screen name Neoserf published the following on the website of LATIMES.COM: "This is not some big controversy or earth-shaking conspiracy, but the shady business practices employed by this company validate the inkling engendered by the profusion of billboards that it's all about the money machine, and not about helping obese people make a good decision when embarking on a profound change in every aspect of their nutritional lives such as gastric bypass surgery."

75.     This comment was published in response to and directly below the February 14, 2010, column written by HILTZIK.

///

-17-

COMPLAINT FOR DAMAGES

76.     The comments authored by Neoserf were directed toward the business addresses of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's business addresses.

77.     Neoserf's comment states facts about Plaintiff's business and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

78.     Neoserf knowingly published the comment about the Plaintiff's business while concealing Neoserf's true identity, thereby making it seem that the comments were unbiased. Therefore, the comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

79.     Plaintiff is informed and believes and thereon alleges that Neoserf performed the above-mentioned act for the purpose of injuring the business of the Plaintiff.

80.     Plaintiff herein alleges that Neoserf knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

81.     As a proximate result of the above-mentioned act of Neoserf, Plaintiff has been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at the time of trial, to be subject to treble damages.

### SIXTH CAUSE OF ACTION

### TRADE LIBEL BY DALEFOGDEN

(Against Doe Defendant #5)

82.     On or about February 15, 2010, Doe Defendant #5, an anonymous user identified by screen name dalefogden ("Fogden") published the following on the website of

-18-

COMPLAINT FOR DAMAGES

1  LATIMES.COM: "Let's hope these crooks get what's coming to them. It seems there is

2  significant possibility of criminal fraud activity."

3      83.    This comment was published in response to and directly below the February 14,

4  2010, published column written by HILTZIK.

5      84.    The publication Fogden made was of and concerning the Plaintiff and was so

6  understood by those who read the publication.

7      85.    The statement of Fogden disparaged Plaintiff's above-described business services

8  in that it falsely indicated that the business was "crooks," imputing fraud, dishonest, or

9  questionable business methods on its business practices.

10     86.    The statement of Fogden was false.  There have never been any "crooked" or

11  dishonest acts made by Plaintiff, and none can be shown.

12     87.    The statement of Fogden was made with knowledge of its falsity or with reckless

13  disregard for its truth or falsity.

14     88.    The statement of Fogden has a tendency to injure Plaintiff in its occupations

15  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

16  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

17     89.    Plaintiff herein alleges that Fogden knowingly posted such false and fraudulent

18  statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

19  oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

20                      **SEVENTH CAUSE OF ACTION**

21                      **TRADE LIBEL BY WTHARVEY**

22                      (Against Doe Defendant #6)

23     90.    On or about February 16, 2010, Doe Defendant #6, an anonymous user identified

24  by screen name wtharvey ("Harvey") published the following on the website of

25  LATIMES.COM: "I'd be careful of the lap-band device. We see a lot of complications such as

26

27

28                              -19-

                  **COMPLAINT FOR DAMAGES**

1   erosion into the stomach and slippage. Probably the formal gastric bypass roux-en-y procedure

2   works best, but requires a highly skilled team to get good results."

3         91.    This comment was published in response to and directly below the February 14,

4   2010 published column written by HILTZIK.

5         92.    The publication Harvey made was of and concerning Plaintiff and was so

6   understood by those who read the publication.

7         93.    The statement of Harvey disparaged Plaintiff's above-described business services

8   in that it falsely indicated that the procedure promoted by Plaintiff is not a safe treatment of

9   morbid obesity.

10        94.    The statement of Harvey was false.  Performance of laparoscopic banding has

11   been shown by numerous medical studies, including studies by the National Institutes of Health,

12   to be a safe and proper treatment for morbid obesity.

13        95.    The statement of Harvey was made with knowledge of its falsity or with reckless

14   disregard for its truth or falsity.

15        96.    The statement of Harvey has a tendency to injure Plaintiff in its occupation

16   because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

17   with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

18        97.    Plaintiff herein alleges that Harvey knowingly posted such false and fraudulent

19   statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

20   oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

21                       **EIGHTH CAUSE OF ACTION**

22               **UNFAIR BUSINESS PRACTICE BY WTHARVEY**

23                   (Against Doe Defendant #7)

24        98.    On or about February 16, 2010, Doe Defendant #7, an anonymous user identified

25   by screen name Harvey published the following on the website of LATIMES.COM: "I'd be

26   careful of the lap-band device. We see a lot of complications such as erosion into the stomach

27

28                                    -20-

---

**COMPLAINT FOR DAMAGES**

1    and slippage. Probably the formal gastric bypass roux-en-y procedure works best, but requires a

2    highly skilled team to get good results."

3         99.    This comment was published in response to and directly below the February 14,

4    2010, published column written by HILTZIK.

5         100.   The comments authored by Harvey were directed toward the business addresses

6    of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's

7    business addresses.

8         101.   Harvey's comment states facts about Plaintiff's business and business operations

9    which it knows are untrue or misleading in order to deceive the public, in violation of Business

10   & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

11        102.   Harvey knowingly published the comment about the Plaintiff's business while

12   concealing Harvey's true identity, thereby making it seem that the comment was unbiased.

13   Therefore, this comment was made in a manner likely to deceive the public, in violation of

14   Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

15   practice.

16        103.   Plaintiff is informed and believes and thereon alleges that Harvey performed the

17   above-mentioned act for the purpose of injuring the business of the Plaintiff.

18        104.   Plaintiff herein alleges that Harvey knowingly posted such false and fraudulent

19   statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

20   oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

21        105.   As a proximate result of the above-mentioned act of Harvey, Plaintiff has been

22   deprived of the patronage of a large number of its actual and potential customers, the exact

23   amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at

24   the time of trial, to be subject to treble damages.

25   ///

26

27

28                                                -21-

**COMPLAINT FOR DAMAGES**

## NINTH CAUSE OF ACTION

## TRADE LIBEL BY CALLCENTERJOHNNY

(Against Doe Defendant #8)

106.    On or about March 4, 2010, Doe Defendant #8, an anonymous user identified by screen name callcenterjohnny ("CCJ") published the following on the website of LATIMES.COM: "They have attempted to refix [sic] their deficiencies but not quietly. After so many failures they changed their name to Beverly Hills surgery center, and oddly, their next door neighbors were Beverly hills center or something of that sort…. Money breaks people or makes people, you can be successful with less problems or be successful have problems but its [sic] dirty money.  Workers comp, would be going out of business and all over latimes if people at the center actually reported everything on a daily basis."

107.    On or about March 5, 2010, CCJ published the following on the website of LATIMES.COM: "… its [sic] not about what the lapband can do for you…its [sic] about the the [sic] surgery center itself and the scam that is behind it."

108.    These comments were published in response to and directly below the March 4, 2010 published column written by HILTZIK and in response to other comments posted.

109.    On or about March 7, 2010, CCJ published the following on the website of LATIMES.COM: "PEOPLE…do you not understand..who cares about the doctors..believe me, if you only knew the BEHIND THE SCENES AT what almont or Beverly hills surgery center.. you should care about the ownership of the company..they have failed [sic] countless times due to inadequate and unsafe care of patients and thus have changed their name to beverly hills surgery center…you may have had a pleasant visit and surgery went well, guess you were lucky how about those..how about the deaths that have occurred that you are not aware of , [sic] or the complications.  lap band is a good way for weight loss BUT the surgery center does NOT ABIDE medical protocols ensuring a safe procedure for patients."

-22-

**COMPLAINT FOR DAMAGES**

110.    These comments were published in response to and directly below the March 4, 2010, published column written by HILTZIK and in response to other comments posted.

111.    The publications CCJ made were of and concerning the plaintiff and were so understood by those who read the publications.

112.    The statements of CCJ disparaged Plaintiff's above-described business services in that they falsely indicated that Plaintiff marketed services that were not safe.

113.    The statements of CCJ were false.  Plaintiff only directs patients to licensed doctors performing surgeries in accredited facilities.  Plaintiff does not operate a "scam," nor is it earning "dirty money."

114.    The statements of CCJ were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

115.    The statements of CCJ has a tendency to injure Plaintiff in its occupation because they impute to Plaintiff fraud, dishonesty, or questionable business methods in connection with its services, and are therefore, pursuant to Civil Code § 45a, libel on its face.

116.    Plaintiff herein alleges that CCJ knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## TENTH CAUSE OF ACTION

## TRADE LIBEL BY EBUCKLY

(Against Doe Defendant #9)

117.    On or about March 4, 2010, Doe Defendant #9, an anonymous user identified by screen name Ebuckly ("Ebuckly") published the following on the website of LATIMES.COM: "They had people overflowing in the place, a former patient was in the waiting room telling everyone that she should have never had the surgery due to issues with her esophagus, but they performed surgery anyway, and she has multiple health issues since. Bottom line, I walked out! I waited 10 years to have this surgery, and as excited as I was, I knew that this place was shady....

-23-

COMPLAINT FOR DAMAGES

After reading this article it has confirmed the feeling I had, and I am so grateful I walked out that day! They are money hungry!!"

118.   This comment was published in response to and directly below the March 4, 2010 published column written by HILTZIK.

119.   The publication Ebuckly made was of and concerning Plaintiff and was so understood by those who read the publication.

120.   The statement of Ebuckly disparaged Plaintiff's above-described business services in that it falsely indicated that Plaintiff marketed services that were not safe. The statement of Ebuckly further disparaged Plaintiff's above-described business services in that it falsely indicated that the business was "shady," imputing dishonesty on their business practices.

121.   The statement of Ebuckly was false. Plaintiff only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiff, and none can be shown.

122.   The statement of Ebuckly was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

123.   The statement of Ebuckly has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

124.   Plaintiff herein alleges that EBuckly knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## ELEVENTH CAUSE OF ACTION

## TRADE LIBEL BY OCCHICK

(Against Doe Defendant #10)

125.   On or about March 4, 2010, Doe Defendant #12, an anonymous user identified by screen name OCChick ("OCChick") published the following on the website of LATIMES.COM:

-24-

**COMPLAINT FOR DAMAGES**

1   "I don't know why but I have always had a feeling something was not quite right with this place.

2   On almost all freeways in the southland is 5-6-7 of these bill boards in a row, how can they

3   afford this? They are all over AM radio and TV, How is it all insurance PPOs are covering it. I

4   would suggest an insurance audit as well."

5         126.    This comment was published in response to and directly below the March 4, 2010

6   published column written by HILTZIK.

7         127.    The publication OCChick made was of and concerning Plaintiff and was so

8   understood by those who read the publication.

9         128.    The statement of OCChick disparaged Plaintiff's above-described business

10  services in that it falsely indicated that Plaintiff had deceptive business practices.

11        129.    The statement of OCChick was false.  Plaintiff has never been accused of any

12  insurance fraud, and there is no basis for the statement that any insurance coverage claims made

13  by patients through Plaintiff's services would not be valid.

14        130.    The statement of OCChick was made with knowledge of its falsity or with

15  reckless disregard for its truth or falsity.

16        131.    The statement of OCChick has a tendency to injure Plaintiff in its occupation

17  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

18  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

19        132.    Plaintiff herein alleges that OCChick knowingly posted such false and fraudulent

20  statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

21  oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

22                              **TWELVTH CAUSE OF ACTION**

23                              **TRADE LIBEL BY DHAETTIG**

24                              (Against Doe Defendant #11)

25        133.    On or about March 4, 2010, Doe Defendant #11, an anonymous user identified by

26  screen name dhaettig ("Dhaettig") published the following on the website of LATIMES.COM:

27

28                                          -25-

                              **COMPLAINT FOR DAMAGES**

1  "[T]hose billboards and ads are like spam..... It doesn't solve the obesity problem. Getting this

2  procedure done doesn't teach people about portion control or good nutrition, or get to the

3  psychological issues behind overeating."

4      134.   This comment was published in response to and directly below the March 4, 2010

5  published column written by HILTZIK.

6      135.   The publication Dhaettig made was of and concerning Plaintiff and was so

7  understood by those who read the publication.

8      136.   The statement of Dhaettig disparaged Plaintiff's above-described business

9  services in that it falsely indicated that the procedure promoted by Plaintiff is not a proper

10  treatment of morbid obesity.

11      137.   The statement of Dhaettig was false.  Performance of laparoscopic banding has

12  been shown by numerous medical studies, including studies by the National Institutes of Health,

13  to be a proper treatment for morbid obesity.

14      138.   The statement of Dhaettig was made with knowledge of its falsity or with reckless

15  disregard for its truth or falsity.

16      139.   The statement of Dhaettig has a tendency to injure Plaintiff in their occupation

17  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

18  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

19      140.   Plaintiff herein allege that Dhaettig knowingly posted such false and fraudulent

20  statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

21  oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

22  **THIRTEENTH CAUSE OF ACTION**

23  **TRADE LIBEL BY MATTEMONS**

24  (Against Doe Defendant #12)

25      141.   On or about March 4, 2010, Doe Defendant #12, an anonymous user identified by

26  screen name mattemons ("Mattemons") published the following on the website of

27

28  -26-

---

**COMPLAINT FOR DAMAGES**

1   LATIMES.COM: "There are plenty of reputable healthcare providers and facilities in the area

2   that are highly qualified to perform these procedures. Why would anyone want to take a chance

3   by going to a facility with such a shady past?"

4        142.    This comment was published in response to and directly below the March 4, 2010

5   published column written by HILTZIK.

6        143.    The publication Mattemons made was of and concerning Plaintiff and was so

7   understood by those who read the publication.

8        144.    Plaintiff alleges that HILTZIK is on a personal vendetta to destroy the Plaintiff's

9   business that based upon such information and belief Plaintiff herein alleges that this is the type

10  of comment that HILTZIK would be either directly or indirectly involved in the publication as

11  HILTZIK could directly influence readers and prospective customers of the Plaintiff in a manner

12  inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not

13  otherwise be directly linked to HITLZTK.

14       145.    The statement of Mattemons disparaged Plaintiff's above-described business

15  services in that it falsely indicated that the business was "shady," imputing dishonesty on its

16  business practices.

17       146.    The statement of Mattemons was false. There have never been any "shady" or

18  other dishonest acts made by Plaintiff, and none can be shown.

19       147.    The statement of Mattemons was made with knowledge of its falsity or with

20  reckless disregard for its truth or falsity.

21       148.    The statement of Mattemons has a tendency to injure Plaintiff in its occupation

22  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

23  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

24       149.    Plaintiff herein alleges that Mattemons knowingly posted such false and

25  fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of

26

27

28

-27-

COMPLAINT FOR DAMAGES

1    fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary

2    damages.

3                         **FOURTEENTH CAUSE OF ACTION**

4                **UNFAIR BUSINESS PRACTICE BY MATTEMONS**

5                           (Against Doe Defendant #12)

6         150.    On or about March 4, 2010, Doe Defendant #12, an anonymous user identified by

7    screen name Mattemons published the following on the website of LATIMES.COM: "There are

8    plenty of reputable healthcare providers and facilities in the area that are highly qualified to

9    perform these procedures. Why would anyone want to take a chance by going to a facility with

10   such a shady past?"

11        151.    This comment was published in response to and directly below the March 4,

12   2010, published column written by HILTZIK. .

13        152.    Plaintiff alleges that HILTZIK is on a personal vendetta to destroy the Plaintiff

14   business that based upon such information and belief Plaintiff herein alleges that this is the type

15   of comment that HILTZIK would be either directly or indirectly involved in the publication as

16   HILTZIK could directly influence readers and prospective customers of the Plaintiff in a manner

17   inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that would not

18   otherwise be directly linked to HITLZTK.

19        153.    The comments authored by Mattemons were directed toward the business address

20   of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's

21   business address.

22        154.    Mattemons's comment states facts about Plaintiff's business and business

23   operations which it knows are untrue or misleading in order to deceive the public, in violation of

24   Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

25   practice.

26

27                                    -28-

28

                         **COMPLAINT FOR DAMAGES**

155.    Mattemons knowingly published the comment about the Plaintiff's business while concealing Mattemons's true identity, thereby making it seem that the comments were unbiased. Therefore, the comment was made in a manner likely to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

156.    Plaintiff is informed and believes and thereon alleges that Mattemons performed the above-mentioned act for the purpose of injuring the business of the Plaintiff.

157.    Plaintiff herein alleges that Mattemons knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

158.    As a proximate result of the above-mentioned act of Mattemons, Plaintiff has been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at the time of trial, to be subject to treble damages.

## FIFTEENTH CAUSE OF ACTION

## TRADE LIBEL BY JULYPOSTOP

(Against Doe Defendant #13)

159.    On or about March 4, 2010, Doe Defendant #13, an anonymous user identified by screen name JulyPostOp ("JulyPostOp") published the following on the website of LATIMES.COM: "I was a patient who had so many test [sic] ordered for me that I had to call other doctors just to confirm. When I attended seminars at three different centers, I was told that none of these tests was necessary, and had my syrgery [sic] with just the tests that the Lap Band professors perform. Very disappointing that there are so many idiots, myself included, who look at the ads and think this is the real deal. The surgery is great. Just do it elsewhere.  July"

-29-

COMPLAINT FOR DAMAGES

160.     On or about March 4, 2010, JulyPostOp published the following on the website of LATIMES.COM: "The biggest scam ever. I went there because they are from my country. I trust them. They charge my insurance $70,000 for surgery cost $18,000 cash. My isurance say [sic] too much. My whole life I only get one million, they take 10%. Mohammed"

161.     This comment was published in response to and directly below the March 4, 2010, published column written by HILTZIK.

162.     The publications JulyPostOp made were of and concerning Plaintiff and were so understood by those who read the publication.

163.     The statements of JulyPostOp disparaged Plaintiff's above-described business services in that they falsely indicated that BHSC performed tests which were medically unnecessary. The statements further disparage Plaintiff's above-described business services in that they refer to its business operations as a "scam" and claims that Plaintiff fraudulently charges insurance companies more than the value of the surgery performed.

164.     The statements of JulyPostOp were false. There have never been any "scam" or other dishonest acts, including fraudulent insurance claims, made by Plaintiff, and none can be shown.

165.     The statements of JulyPostOp were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

166.     The statements of JulyPostOp have a tendency to injure Plaintiff in its occupations because they impute to Plaintiff fraud, dishonesty, or questionable business methods in connection with its services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

167.     Plaintiff herein alleges that JulyPostOp knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

///

-30-

**COMPLAINT FOR DAMAGES**

## SIXTEENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICE BY JULYPOSTOP

(Against Doe Defendant #13)

168. On or about March 4, 2010, Doe Defendant #13, an anonymous user identified by screen name JulyPostOp published the following on the website of LATIMES.COM: "I was a patient who had so many test [sic] ordered for me that I had to call other doctors just to confirm. When I attended seminars at three different centers, I was told that none of these tests was [sic] necessary, and had my syrgery [sic] with just the tests that the Lap Band professors perform. Very disappointing that there are so many idiots, myself included, who look at the ads and think this is the real deal. The surgery is great. Just do it elsewhere.  July"

169. On or about March 4, 2010, JulyPostOp published the following on the website of LATIMES.COM: "The biggest scam ever. I went there because they are from my country. I trust them. They charge my insurance $70,000 for surgery cost $18,000 cash. My isurance say [sic] too much. My whole life I only get one million, they take 10%.  Mohammed"

170. This comment was published in response to and directly below the March 4, 2010, published column written by HILTZIK.

171. The comments authored by JulyPostOp were directed toward the business addresses of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's business addresses.

172. JulyPostOp comments state facts about Plaintiff's business and business operations which it knows are untrue or misleading in order to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

173. JulyPostOp knowingly published comments about the Plaintiff's business while concealing JulyPostOp's true identity, thereby making it seem that the comments were unbiased. Therefore, these comments were made in a manner likely to deceive the public, each in violation

-31-

COMPLAINT FOR DAMAGES

1  of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

2  practice.

3       174.    Plaintiff is informed and believes and thereon alleges that JulyPostOp performed

4  the above-mentioned acts for the purpose of injuring the business of the Plaintiff.

5       175.    Plaintiff herein alleges that JulyPostOp knowingly posted such false and

6  fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of

7  fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary

8  damages.

9       176.    As a proximate result of the above-mentioned acts of JulyPostOp, Plaintiff has

10 been deprived of the patronage of a large number of their actual and potential customers, the

11 exact amount of such damages is presently unknown to Plaintiff, and will be subject to further

12 proof at the time of trial, to be subject to treble damages.

13                    **SEVENTEENTH CAUSE OF ACTION**

14                    **TRADE LIBEL BY DRBRUIN2**

15                    (Against Doe Defendant #14)

16      177.    On or about March 4, 2010, Doe Defendant #14, an anonymous user identified by

17 screen name DrBruin2 ("DrBruin2") published the following on the website of LATIMES.COM:

18 "This company should be closed down permanently and all of their licenses should be revoked."

19      178.    This comment was published in response to and directly below the March 4, 2010

20 published column written by HILTZIK.

21      179.    The publication DrBruin2 made was of and concerning Plaintiff and was so

22 understood by those who read the publication.

23      180.    Plaintiff alleges that HILTZIK is on a personal vendetta to destroy the Plaintiff

24 business that based upon such information and belief Plaintiff herein alleges that this is the type

25 of comment that HILTZIK would be either directly or indirectly be involved with the publication

26 as HILTZIK could directly influence readers and prospective customers of the Plaintiff in a

27

28                                    -32-

                        **COMPLAINT FOR DAMAGES**

1   manner inconsistent with the LOS ANGELES TIMES Ethics Guidelines and in a manner that

2   would not otherwise be directly linked to HITLZTK. and which would further the personal goals

3   of HILTZIK which would be to permanently shut down Plaintiff business.

4        181.    The statement of DrBruin2 disparaged Plaintiff's above-described business

5   services in that it falsely indicated that Plaintiff operated the business in a manner that would

6   require the revocation of licenses.

7        182.    The statement of DrBruin2 was false.  There have never been any acts by the

8   Plaintiff that would suggest the revocation of any license would be proper, and none can be

9   shown.

10       183.    The statement of DrBruin2 was made with knowledge of its falsity or with

11  reckless disregard for its truth or falsity.

12       184.    The statement of DrBruin2 has a tendency to injure Plaintiff in its occupation

13  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

14  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

15       185.    Plaintiff herein alleges that DrBruin2 knowingly posted such false and fraudulent

16  statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or

17  oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

18                      **EIGHTEENTH CAUSE OF ACTION**

19                      **TRADE LIBEL BY RUJOKING?!**

20                         (Against Doc Defendant #15)

21       186.    On or about March 4, 2010, Doc Defendant #15, an anonymous user identified by

22  screen name RUJoking?! ("RUJoking") published the following on the website of

23  LATIMES.COM: "Mr. Hiltzik's articles here are doing a public service to aid law enforcement

24  in shutting down these quacks as soon as possible."

25       187.    This comment was published in response to and directly below the March 4,

26  2010, published column written by HILTZIK.

27                              -33-

28

---

                    **COMPLAINT FOR DAMAGES**

188.   Plaintiff herein alleges that this type of statement matches the previous pattern of puff statements that HILTZIK previously posted through his inappropriate and unethical acts of sock-puppeting. Based upon such information and belief, Plaintiff herein alleges that HILTZIK is either directly or indirectly associated with the posting of this comment.

189.   The publication RUJoking made was of and concerning Plaintiff and was so understood by those who read the publication.

190.   The statement of RUJoking disparaged Plaintiff's above-described business services in that it falsely indicated that the business was operating dishonestly. The statement further disparaged Plaintiff's above-described business services in that it falsely indicated that the procedure promoted by Plaintiff is "quackery" and not a proper treatment of morbid obesity.

191.   The statement of RUJoking was false. There have never been any dishonest acts made by Plaintiff, and none can be shown. Further, performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity.

192.   The statement of RUJoking was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

193.   The statement of RUJoking has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

194.   Plaintiff herein alleges that RUJoking knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

///

///

-34-

**COMPLAINT FOR DAMAGES**

## NINTEENTH CAUSE OF ACTION

## TRADE LIBEL BY INSTRUCTORP

(Against Doe Defendant #16)

195.   On or about March 4, 2010, Doe Defendant #16, an anonymous user identified by screen name InstructorP ("InstructorP") published the following on the website of LATIMES.COM: "Thank you Mike for exposing this fraud and the few customers who would rather take the easy dangerous approach to losing weight instead of just plain old exercise! $18,000 for a surgical procedure by discredited doctors should be on 60 minutes or another expose show."

196.   This comment was published in response to and directly below the March 4, 2010, published column written by HILTZIK.

197.   Plaintiff herein alleges that this type of statement matches the previous pattern of puff statements that HILTZIK previously posted through his inappropriate and unethical acts of sock-puppeting. Based upon such information and belief, Plaintiff herein allege that HILTZIK is either directly or indirectly associated with the posting of this comment.

198.   The publication InstructorP made was of and concerning Plaintiff and was so understood by those who read the publication.

199.   The statement of InstructorP disparaged Plaintiff's above-described business services in that it falsely indicated that the procedure promoted by Plaintiff is not a proper treatment of morbid obesity.

200.   The statement of InstructorP was false. Performance of laparoscopic banding has been shown by numerous medical studies, including studies by the National Institutes of Health, to be a proper treatment for morbid obesity. In addition, the laparoscopic banding procedures promoted by Plaintiff is only performed by licensed doctors.

201.   The statement of InstructorP was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-35-

**COMPLAINT FOR DAMAGES**

202.    The statement of InstructorP has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

203.    Plaintiff herein allege that InstructorP knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

**TWENTIETH CAUSE OF ACTION**

**TRADE LIBEL BY 1FRIEND**

(Against Doe Defendant #17)

204.    On or about March 5, 2010, Doe Defendant #17, an anonymous user identified by screen name 1Friend ("1Friend") published the following on the website of LATIMES.COM: "A typical california [sic] insurance rip-off scam."

205.    This comment was published in response to and directly below the March 4, 2010, published column written by HILTZIK.

206.    The publication 1Friend made was of and concerning Plaintiff and was so understood by those who read the publication.

207.    The statement of 1Friend disparage Plaintiff's above-described business services in that it refers to Plaintiff's business operations as a "rip-off scam" and claims that Plaintiff fraudulently charge insurance companies.

208.    The statement of 1Friend was false. There have never been any "rip-off scam" or other dishonest acts, including fraudulent insurance claims, made by Plaintiff, and none can be shown.

209.    The statement of 1Friend was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-36-

**COMPLAINT FOR DAMAGES**

210.    The statement of IFriend has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

211.    Plaintiff herein allege that IFriend knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## TWENTY-FIRST CAUSE OF ACTION

## TRADE LIBEL BY DARMAGGI

(Against Doe Defendant #18)

212.    On or about March 5, 2010, Doe Defendant #18, an anonymous user identified by screen name darmaggi ("Darmaggi") published the following on the website of LATIMES.COM: "Just the ever presence of that annoying and simplistic ad in their multiform media campaign was enough to cause concern and create doubt as to the quality and veracity of who they are and the kind of work they are really performing. With any luck you may have helped put some obviously unscrupulous medical practitioners out of business, and in the process saved some lives, and saved us all from over exposure to those obnoxious ads. When the medial [sic] boards removed their certifications they just reconstituted under new names without losing too much time or money, but hopefully, you have connected the dots for those concerned, between the Omidi's [sic] and their odious ad campaign, which would probably be much more costly to retool and relaunch than their actual medical corporation."

213.    This comment was published in response to and directly below the March 4, 2010, published column written by HILTZIK.

214.    Plaintiff herein alleges that this type of statement matches the previous pattern of puff statements that HILTZIK previously posted through his inappropriate and unethical acts of sock-puppeting. Based upon such information and belief, Plaintiff herein alleges that HILTZIK is either directly or indirectly associated with the posting of this comment.

-37-

## COMPLAINT FOR DAMAGES

215.    The publication Darmaggi made was of and concerning Plaintiff and was so understood by those who read the publication.

216.    The statement of Darmaggi disparaged Plaintiff's above-described business services in that it falsely indicated that Plaintiff's services were not safe. The statement of Darmaggi further disparaged Plaintiff's above-described business services in that it falsely indicated that the business was operating unscrupulously. In addition, Plaintiff never had any certification removed from a medical board.

217.    The statement of Darmaggi was false. Plaintiff only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiff, and none can be shown.

218.    The statement of Darmaggi was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

219.    The statement of Darmaggi has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

220.    Plaintiff herein alleges that Darmaggi knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## TWENTY-SECOND CAUSE OF ACTION

## TRADE LIBEL BY LAX.PREPSTER

(Against Doe Defendant #19)

221.    On or about April 18, 2010, Doe Defendant #19, an anonymous user identified by screen name LAX.Prepster ("LAX.Prepster") published the following on the website of LATIMES.COM: "I have a feeling if you were to dive deeper into this group as well as others, you'll probably find, these so called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of complications) which right there is a red flag. There's much

-38-

COMPLAINT FOR DAMAGES

1  controversy if these Lap Bands should be performed on an outpatient basis. I'm sure there still

2  [sic] a large group of surgeons out there who insist on keeping patients in the hospital at least a

3  night or two for observation, especially in those cases, [sic] where there's diabetes, hypertension,

4  breathing issues, history of infections etc. involved as no two patients are the same.  There are

5  many serious issues with performing this less invasive surgery over the laparascopic [sic]

6  bypass."

7      222.    This comment was published in response to and directly below the April 18,

8  2010, published column written by HILTZIK.

9      223.    The publication LAX.Prepster made was of and concerning Plaintiff and was so

10  understood by those who read the publication.

11      224.    The statement of LAX.Prepster disparaged Plaintiff's above-described business

12  services in that it falsely indicated that services at BHSC, a center promoted by Plaintiff,

13  performs medical procedures on an out-patient basis when the procedure should instead be held

14  at a hospital, and states that there is "controversy" over this out-patient treatment.  LAX.Prepster

15  further indicates that there are many serious issues with the procedure performed by BHSC and

16  promoted by Plaintiff.

17      225.    The statement of LAX.Prepster was false.  Plaintiff only directs patients to

18  licensed doctors performing surgeries in accredited facilities.  Further, there is no basis for the

19  assertion that there is controversy that the laparoscopic procedure should not be performed in an

20  out-patient setting.  Instead, the procedure is regularly performed at out-patient settings without

21  controversy.

22      226.    The statement of LAX.Prepster was made with knowledge of its falsity or with

23  reckless disregard for its truth or falsity.

24      227.    The statement of LAX.Prepster has a tendency to injure Plaintiff in its occupation

25  because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection

26  with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

27

28

-39-

**COMPLAINT FOR DAMAGES**

228.    Plaintiff herein alleges that LAX.Prepster knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

**TWENTY-THIRD CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICE BY LAX.PREPSTER**

(Against Doe Defendant #19)

229.    On or about April 18, 2010, Doe Defendant #19, an anonymous user identified by screen name LAX.Prepster published the following on the website of LATIMES.COM: "I have a feeling if you were to dive deeper into this group as well as others, you'll probably find, these so called surgeons do not even have prviledges [sic] at any local hospitals (to admit in case of complications) which right there is a red flag. There's much controversy if these Lap Bands should be performed on an outpatient basis. I'm sure there still [sic] a large group of surgeons out there who insist on keeping patients in the hospital at least a night or two for observation, especially in those cases, [sic] where there's diabetes, hypertension, breathing issues, history of infections etc. involved as no two patients are the same. There are many serious issues with performing this less invasive surgery over the laparascopic [sic] bypass. The California Medical Board and these agencies who give licenses to these centers and so called surgeons need to be looked at much more aggressively [sic]."

230.    This comment was published in response to and directly below the April 18, 2010 published column written by HILTZIK.

231.    The comment authored by LAX.Prepster was directed toward the business addresses of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's business addresses.

232.    LAX.Prepster's comment states facts about Plaintiff's business and business operations which it knows are untrue or misleading in order to deceive the public, in violation of

-40-

**COMPLAINT FOR DAMAGES**

1   Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or

2   practice.

3       233.    LAX.Prepster knowingly published the comment about the Plaintiff's business

4   while concealing LAX.Prepster's true identity, thereby making it seem that the comment was

5   unbiased.  Therefore, the comment was made in a manner likely to deceive the public, each in

6   violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business

7   act or practice.

8       234.    Plaintiff is informed and believes and thereon alleges that LAX.Prepster

9   performed the above-mentioned act for the purpose of injuring the business of the Plaintiff.

10      235.    Plaintiff herein alleges that LAX.Prepster knowingly posted such false and

11  fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of

12  fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary

13  damages.

14      236.    As a proximate result of the above-mentioned act of LAX.Prepster, Plaintiff has

15  been deprived of the patronage of a large number of its actual and potential customers, the exact

16  amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at

17  the time of trial, to be subject to treble damages.

18                    **TWENTY-FOURTH CAUSE OF ACTION**

19                     **TRADE LIBEL BY ISABELLE1106**

20                         (Against Doe Defendant #20)

21      237.    On or about April 19, 2010, Doe Defendant #20, an anonymous user identified by

22  screen name Isabelle1106 ("Isabelle1106") published the following on the website of

23  LATIMES.COM: "Is this insurance fraud too? If Mr. Brooks was 6'6 and 300lbs his BMI would

24  only be 34.7. In order for insurance to pay, a patient must have a BMI of 40 or greater or 35 with

25  some sort of co-morbidity (sleep apnea, diabetes, hypertension). Someone should look into the

26

27                              -41-

28

                    **COMPLAINT FOR DAMAGES**

1   information submitted to the insurance company. Based on his height and weight given Mr.

2   Brooks wouldn't have even qualified for surgery."

3        238.   This comment was published in response to and directly below the April 18,

4   2010, published column written by HILTZIK.

5        239.   The publication Isabelle1106 made was of and concerning Plaintiff and was so

6   understood by those who read the publication.

7        240.   The statement of Isabelle1106 disparaged Plaintiff's above-described business

8   services in that it falsely indicated that Plaintiff had deceptive business practices, specifically,

9   insurance fraud.

10       241.   The statement of Isabelle1106 was false. There is no basis for the statement that

11   any insurance coverage claims made by patients through Plaintiff's services would not be valid.

12   Instead, Isabelle1106 relies on approximations stated by a sloppy reporter to assert a deceptive

13   business practice by Plaintiff.

14       242.   At the time the column was posted on the LATIMES.COM, HILTZIK the author

15   of the column was in possession of the Los Angeles County Coroner's Report and other factual

16   data that contained the exact height and weight of the deceased individual. Despite having this

17   information in his possession, HILTZIK intentionally reported false and fraudulent information

18   in his column. Plaintiff believes and on such information and belief, hereby asserts that

19   HILTZIK intentionally misrepresented these facts, so that individuals reading the column would

20   in fact conclude that the Plaintiff engaged in insurance fraud.

21       243.   It is hereby asserted on information and belief that the LATIMES.COM website

22   issued a Correction indicating and confirming that HILTZIK had intentionally and deceptively

23   misreported the facts concerning the deceased specifically the height of the deceased. Even

24   thought the LATIMES.COM website issued a correction, they continued to allow the posted

25   comments of Isabelle1106 to remain published.

26

27

28                              -42-

**COMPLAINT FOR DAMAGES**

244.     The statement of Isabelle1106 was made with knowledge of its falsity or with reckless disregard for its truth or falsity.  On information and belief, Plaintiff hereby alleges that HILTZIK either; coordinated with Isabelle1106, acted under the screen name of Isabelle1106 and/or otherwise caused Isabelle1106 to publish her false and defamatory comments on the LATIMES.COM website.

245.     The statement of Isabelle1106 has a tendency to injure Plaintiff in its occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face for which damages are presumed.

246.     Plaintiff herein alleges that Isabelle1106 knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

## TWENTY-FIFTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICE BY ISABELLE1106
### (Against Doe Defendant #20)

247.     On or about April 19, 2010, Doe Defendant #20, an anonymous user identified by screen name Isabelle1106 published the following on the website of LATIMES.COM: "Is this insurance fraud too? If Mr. Brooks was 6'6 and 300lbs his BMI would only be 34.7. In order for insurance to pay, a patient must have a BMI of 40 or greater or 35 with some sort of co-morbidity (sleep apnea, diabetes, hypertension). Someone should look into the information submitted to the insurance company. Based on his height and weight given Mr. Brooks wouldn't have even qualified for surgery."

248.     This comment was published in response to and directly below the April 18, 2010, published column written by HILTZIK.

-43-

## COMPLAINT FOR DAMAGES

1   249.   The comment authored by Isabelle1106 was directed toward the business
2   addresses of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the
3   Plaintiff's business addresses.

4   250.   Isabelle1106's comment states facts about Plaintiff's business and business
5   operations which it knows are untrue or misleading in order to deceive the public, in violation of
6   Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or
7   practice.

8   251.   Isabelle1106 knowingly published the comment about the Plaintiff's business
9   while concealing Isabelle1106's true identity, thereby making it seem that the comment was
10   unbiased.  Therefore, the comment was made in a manner likely to deceive the public, each in
11   violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business
12   act or practice.

13   252.   Plaintiff is informed and believes and thereon alleges that Isabelle1106 performed
14   the above-mentioned act for the purpose of injuring the business of the Plaintiff.

15   253.   Plaintiff herein alleges that Isabelle1106 knowingly posted such false and
16   fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of
17   fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary
18   damages.

19   254.   As a proximate result of the above-mentioned act of Isabelle1106, Plaintiff has
20   been deprived of the patronage of a large number of its actual and potential customers, the exact
21   amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at
22   the time of trial, to be subject to treble damages.

23   ///

24

25   ///

26

27

28

-44-

**COMPLAINT FOR DAMAGES**

## TWENTY-SIXTH CAUSE OF ACTION

## TRADE LIBEL BY ALANSMYTH1

(Against Doe Defendant #20)

255. On or about April 21, 2010, Doe Defendant #20, an anonymous user identified by screen name AlanSmyth1 ("AlanSmyth") published the following on the website of LATIMES.COM: "The 1 800 GET THIN or GET SLIM group have had so many different surgeons go through their facility. How can all these sub-standard surgeons continue to practice in a facility that continues to change their [sic] name? ... Unfortunately, innocent patients will be mesmerized by their continuous billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more appropriate for this group."

256. This comment was published in response to and directly below the April 18, 2010, published column written by HILTZIK.

257. The publication AlanSmyth made was of and concerning Plaintiff and was so understood by those who read the publication.

258. The statement of AlanSmyth disparaged Plaintiff's above-described business services in that it falsely indicated that Plaintiff's services were not safe and that Plaintiff promoted the use of, "sub-standard surgeons." The statement of AlanSmyth further disparaged Plaintiff's above-described business services in that it falsely indicated that Plaintiff operate dishonestly, were "slimy" and "shady."

259. The statement of AlanSmyth was false. Plaintiff only directs patients to licensed doctors performing surgeries in accredited facilities. Further, there have never been any dishonest acts made by Plaintiff, and none can be shown.

260. The statement of AlanSmyth was made with knowledge of its falsity or with reckless disregard for its truth or falsity.

-45-

**COMPLAINT FOR DAMAGES**

261.   The statement of AlanSmyth has a tendency to injure Plaintiff in their occupation because it imputes to Plaintiff fraud, dishonesty, or questionable business methods in connection with their services, and is therefore, pursuant to Civil Code § 45a, libel on its face.

262.   Plaintiff herein allege that AlanSmyth knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

### TWENTY-SEVENTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICE BY ALANSMYTH1

(Against Doe Defendant #21)

263.   On or about April 21, 2010, Doe Defendant #21, an anonymous user identified by screen name AlanSmyth published the following on the website of LATIMES.COM: "The 1 800 GET THIN or GET SLIM group have had so many different surgeons go through their facility. How can all these sub-standard surgeons continue to practice in a facility that continues to change their [sic] name? ... Unfortunately, innocent patients will be mesmerized by their continuous billboard and tv ads. '1 800 GET SLIM-Y and SHADY' is more appropriate for this group."

264.   This comment was published in response to and directly below the April 18, 2010, published column written by HILTZIK.

265.   The comment authored by AlanSmyth was directed toward the business addresses of Plaintiff in Beverly Hills, California, and have caused harm to the Plaintiff at the Plaintiff's business addresses.

266.   AlanSmyth's comment states facts about Plaintiff's business and business operations which it knows are untrue or misleading in order to deceive the public, in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

-46-

COMPLAINT FOR DAMAGES

267.    AlanSmyth knowingly published the comment about the Plaintiff's business while concealing AlanSmyth1's true identity, thereby making it seem that the comment was unbiased. Therefore, the comment was made in a manner likely to deceive the public, each in violation of Business & Professions Code § 17200, as an unlawful, unfair, or fraudulent business act or practice.

268.    Plaintiff is informed and believes and thereon alleges that AlanSmyth performed the above-mentioned act for the purpose of injuring the business of the Plaintiff.

269.    Plaintiff herein alleges that AlanSmyth knowingly posted such false and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of fraud or oppression, such that Plaintiff should be entitled to an award of punitive or exemplary damages.

270.    As a proximate result of the above-mentioned act of AlanSmyth, Plaintiff has been deprived of the patronage of a large number of its actual and potential customers, the exact amount of such damages is presently unknown to Plaintiff, and will be subject to further proof at the time of trial, to be subject to treble damages.

///

///

///

///

///

///

-47-

**COMPLAINT FOR DAMAGES**

**WHEREFORE,** Plaintiff prays for judgment against each of the Defendants as follows:

1.    For actual damages;

2.    For trebled damages, according to proof;

3.    For punitive damages;

4.    For reasonable attorney's fees;

5.    For its costs incurred; and

6.    For any other and further relief as the court may deem proper.


DATED: December 15, 2010                    **ALEXANDER WEISSE, ESQ.**


_____

Alexander Weisse, Esq.
Attorneys for Plaintiff

-48-

**COMPLAINT FOR DAMAGES**

## VERIFICATION

I, Charles Klasky, declare:

I am a manager of 1 800 GET THIN, LLC, a limited liability company organized and existing under the laws of the state of California, which is the plaintiff in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing complaint and know the contents thereof. I am informed and believe that the matters stated therein are true and on that ground I allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:          December 15, 2010

_____
Charles Klasky, Manager

-49-

COMPLAINT FOR DAMAGES

# EXHIBIT F

ROBERT B. SILVERMAN SBN 170517
SILVERMAN & ASSOCIATES
25 S. OAK KNOLL AVE., SUITE 504
PASADENA, CA 91101
TEL: (714) 936-7499
FAX: (888) 308-5099

ATTORNEY FOR PLAINTIFF
JULIAN OMIDI

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 1 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Mary Flores

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC 458479

JULIAN OMIDI,

        Plaintiff,

    vs.

STUART PFEIFER; LOS ANGELES TIMES
COMMUNICATIONS, LLC., DOES 1 through
20, inclusive,

        Defendants.

CASE NUMBER:

COMPLAINT FOR DAMAGES

(1) DEFAMATION – LIBEL PER SE

[UNLIMITED JURISDICTION –
DAMAGES EXCEED $25,000.00]

Plaintiff, JULIAN OMIDI for himself and himself only and by this complaint alleges as

follows:

## PARTIES

1.      For all times herein relevant, Plaintiff, Julian Omidi ("Plaintiff") is a resident of

Los Angeles County.

2.      Plaintiff is informed and believes and thereon alleges that, at all times herein

relevant, Defendant, Stuart Pfeifer ("PFEIFER"), is a journalist with the Los Angeles Times, a

-1-

COMPLAINT FOR DAMAGES

1  newspaper of general circulation and is believed to be an individual who resides in the County of

2  Los Angeles, State of California.

3      3.    Plaintiff informed and believes and thereon alleges that, at all times herein

4  relevant, Defendant, Los Angeles Times Communications, LLC. ("LAT"), is a Delaware

5  Corporation doing business in the State of California, County of Los Angeles, with its principle

6  business of printing and distributing a newspaper of general circulation.

7      4.    Plaintiff is uncertain as to the identity or capacity of the Defendants included

8  herein as DOES 1 through 20, inclusive, and therefore sues said Defendants by their fictitious

9  names. Plaintiff is informed and believes and thereon alleges that said Defendants, DOES 1

10 through 20, inclusive, and each of them, are liable to Plaintiff on the facts herein alleged and will

11 seek leave of this Court to amend this Complaint when their true names are ascertained.

12     5.    Plaintiff is informed and believes and thereon alleges that, at all times herein

13 mentioned, each of the Defendants was an associate, employee, agent, principal, or servant of

14 each of the co-Defendants and, in doing the things herein mentioned, was acting in the scope of

15 his or her authority and with the permission and consent of each of the other co-Defendants.

16                                 **VENUE**

17     6.    Pursuant to the provisions of Section 395 subsection (a) of the California <u>Code of</u>

18 <u>Civil Procedure</u>, this Court is the proper Court and place for trial in this action in that, <u>inter alia,</u>

.19 all of the transactions which are the subject matter of this action were entered into and to be

20 performed within the County of Los Angeles.

21     7.    Pursuant to the provisions of Section 585.5 of the California <u>Code of Civil</u>

22 <u>Procedure,</u> this action is neither based upon a conditional sales contract nor a contract or

23 installment contract for the sale of goods or services subject to the provisions of Section 1812 et

24 seq. and 2984 et seq. of the California <u>Civil Code.</u>

25

26

27                            -2-

28

**COMPLAINT FOR DAMAGES**

## STATEMENT OF THE CASE

**A.** **Defendant Stuart Pfeifer**

8. Defendant Stuart Pfeifer ("PFEIFER") has been and is currently employed by Los Angeles Times Communications, LLC ("LAT") as a journalist.

9. Prior to Stuart Pfeifer writing about Julian Omidi and falsely associating him with 1 800 GET THIN and other entities associated with the performance of bariatric surgery, the Los Angeles Times allowed several prior columns and articles to be published by columnist, Michael Hiltzik.

10. Michael Hiltzik, in his position as a columnist, authored four (4) negative columns about the Lap-Band procedure, 1 800 GET THIN and usually referenced the Plaintiff as having direct involvement in the performance and/or control of the medical procedure. The columns were published on or about February 14, 2010, March 4, 2010, April 18, 2010, and December 19, 2010 in the print newspaper LOS ANGELES TIMES and were subsequently published contemporaneously therewith on LATIMES.COM.

11. Numerous complaints were made to LAT concerning the columns authored by Hiltzik and published by the LAT, in part associating the Plaintiff with the procedure and other companies. Ultimately, Dr. Michael Omidi, the brother of Julian Omidi, filed a Defamation lawsuit against Michael Hiltzik for his acts. The lawsuit was filed December 18, 2010.

12. PFEIFER, in his position as a reporter, authored three (3) negative articles about Plaintiff. The articles were published on or about February 3, 2011, February 5, 2011, and February 10, 201, and a brief article about the Lap-Band procedure on March 22, 2011. All of PFEIFER'S articles appeared in the LOS ANGELES TIMES print newspaper and were subsequently published contemporaneously therewith on LATIMES.COM.

13. PFEIFER made it clear from the onset that he was a colleague of Hiltzik. Plaintiff herein alleges that PFEIFER was instructed to start writing about the Plaintiff at a time when it was known to the LAT that Hiltzik was in fact sued for defamation by Dr. Michael Omidi.

-3-

## COMPLAINT FOR DAMAGES

1   Plaintiff herein alleges that such conduct was a coordinated effort by LAT to continue to

2   disparage the Plaintiff in the same manner as Michael Hiltzik.

3          14.    Plaintiff herein alleges that the personal attacks against the Plaintiff by Hiltzik and

4   PFEIFER were done at the instruction of and/or with the consent of LAT.

5          B.    **Plaintiff Julian Omidi**

6          15.    Plaintiff Julian Omidi ("Plaintiff") is an individual residing in the County and City

7   of Los Angeles.

8          16.    Plaintiff was previously licensed as a medical doctor in the State of California and

9   subsequently had his license revoked by the Medical Board of California.

10         17.    The reason Plaintiff had his license revoked was due to his failure to list his

11  undergraduate attendance at the University of Irvine on his medical board application.

12         18.    Plaintiff herein alleges that while he was a student at University of Irvine, he was

13  expelled due to his alleged involvement in the stealing of exams.  Plaintiff was charged with a

14  criminal complaint in the County of Orange for commercial burglary, but was NEVER convicted

15  of any offense.

16         19.    Plaintiff agreed to resolve the criminal case by participating in a diversion

17  program.  Pursuant to the terms of the agreement, it was agreed that Plaintiff would merely offer

18  a plea of guilty for which the Court would HOLD and NOT enter into the record, that Plaintiff

19  would complete certain terms and conditions and upon completion of such events the charges

20  would be dismissed without any entry of guilt.

21         20.    For reasons outside the control of Plaintiff the Court did not initially properly

22  handle the dismissal of the charges.  At some point thereafter and prior to the publication of the

23  statements by PFIEFER, the Orange County Superior Court was informed of the error and the

24  Court on its own motion corrected the error and entered a dismissal of the case with retro-active

25  effect such that there was NEVER any entry of guilt, all pursuant to Penal Code § 1385(a).

26         21.    As a result of the Court's correction, Plaintiff was NEVER convicted of any

27  crime.  Plaintiff under the impression that the Court had initially handled the case properly such

28                                              -4-

---

**COMPLAINT FOR DAMAGES**

that there was never any conviction, did not list such information on the Medical Board Application.

22. While the Medical Board attempted to use such non-disclosure against Plaintiff, the California Superior Court issued a ruling against the Medical Board, finding that Plaintiff was NEVER convicted of a crime and therefore was not under any obligation to list such information and further ordered the Medical Board to remove any such information as their basis for revocation.

## FIRST CAUSE OF ACTION

### DEFAMATION - LIBEL PER SE
(Against all Defendants)

23. Plaintiff hereby incorporates Paragraphs 1 through 22, inclusive, herein by reference, as though set forth in full.

24. On or about February 11, 2011, Pfeifer authored a column titled "Lap-band clinic is sued over death" The article was published by LAT in the print newspaper and also on-line at LATIMES.COM and remains in publication on-line.

25. In the February 11, 2011 article, PFEIFER specifically stated "The medical board also accused him [Plaintiff] of failing to disclose that he had pleaded guilty to commercial burglary in Orange County in 1991. That burglary conviction was dismissed at Omidi's request in 2006."

26. Plaintiff within 20 days of obtaining knowledge of the article provided a written request for a retraction. The retraction was based upon the fact that while the Medical Board of California accused Plaintiff of failing to disclose such information, the Superior Court of California Ordered the Medical Board to remove such accusations as Plaintiff was NEVER convicted of a crime and therefore there was NO justification for the Medical Board to assert such accusations or rely on such statements.

27. The publication of the alleged criminal conduct by PFEIFER clearly identified the Plaintiff by name in the same paragraph and in immediate sentences. As such said statement is

-5-

## COMPLAINT FOR DAMAGES

clearly of and concerning the Plaintiff and would clearly be understood by any reader of the publication to be about the Plaintiff.

28.   The statement of material fact by PFEIFER disparaged Plaintiff in that it falsely indicated that Plaintiff was convicted of a crime and/or criminal conduct. As such, Plaintiff herein alleges that this constitutes libel per se.

29.   PFEIFER knew or should have known that such accusation by the Medical Board was in fact false, as PFEIFER had in his possession the Medical Board Accusation and all other information pertaining to the Medical Board investigation and actions. In addition, PFEIFER and/or the LAT actually linked the article to the Medical Board website and/or the Disciplinary Report, when the LAT posted the column on-line. As such, PFEIFER knew or should have known that said statements of material fact, conviction of a crime, were in fact false or PFEIFER made such statements with reckless disregard for its truth or falsity all in an effort to defame the Plaintiff.

30.   In response to the demand for the retraction and/or correction, PFEIFER and/or LAT posted the following statement

"FOR THE RECORD:

Lap-Band lawsuits: A Business article that appeared online Feb. 10 and in print Feb. 11 about lawsuits filed against marketing company 1-800-GET-THIN reported that the Medical Board of California, in revoking Julian Omidi's license to practice medicine, accused him of failing to disclose that he had attended UC Irvine, which expelled him in 1990, and that he pleaded guilty to commercial burglary in Orange County in 1991. Both of these accusations were made by the board, but a subsequent court proceeding found that Omidi reasonably relied on the advice of his attorneys in failing to disclose the burglary conviction, which was dismissed after he completed probation and community service. In its final order revoking Omidi's license, the medical board included references to the burglary for "historical

-6-

COMPLAINT FOR DAMAGES

1    context," but the revocation itself was based on Omidi's failure to disclose

2    his attendance at UCI."

3        31.    Plaintiff herein alleges that this statement is NOT a retraction nor does it correct

4    the record.  Plaintiff herein alleges that neither PFEIFER nor the LAT should be afforded any of

5    the protections of the Civil Code in association with the issuance of a retraction as the retraction

6    itself continues to assert that Plaintiff was convicted of a crime.  By issuing this retraction,

7    PFEIFER and/or LAT fail to recognize or appreciate the fact that Plaintiff has NEVER been

8    convicted of any crime.  Plaintiff's case was DISMISSED nunc pro tunc such that the

9    DISMISSAL supersedes any entry of guilt.  Plaintiff herein alleges that any statement by anybody

10   to the effect that Plaintiff was convicted of a crime is libelous.  The fact that PFEIFER and LAT

11   issued a retraction that reiterated their prior statement that Plaintiff was in fact convicted of a

12   crime, continues the publication of the defamatory statements.  The fact that PFEIFER and LAT

13   continue to assert that this was the statement of a third party, does NOT exonerate PFEIFER or

14   LAT of the fact that the statement is libelous.  In fact, the California Superior Court specifically

15   Ordered the Medical Board of California to remove any findings associated with the conviction

16   of a crime as the case was DISMISSED without any judgment of guilt.

17       32.    The statement by PFEIFER has a tendency to injure and did in fact cause injury to

18   the Plaintiff in his occupation, pursuant to Civil Code § 45a, and constitutes libel on its face.

19       33.    Plaintiff herein alleges that he is a private individual and has not placed himself

20   into the public or any public controversy.  Plaintiff herein asserts that Plaintiff as a private

21   individual is not required to prove malice in asserting a claim of defamation.

22       34.    Plaintiff herein alleges that neither PFEIFER nor the LAT should be afforded the

23   protection of issuing a retraction such that Plaintiff is NOT required to prove special damages.

24       35.    Plaintiff herein alleges that Plaintiff has incurred special damages in the actual

25   loss of business opportunities.  As a result, Plaintiff has incurred and continues to incur special

26   damages as a direct and proximate result of the actions of PFEIFER and LAT, such that Plaintiff

27   herein alleges damages in excess of millions of dollars.  Plaintiff herein alleges that he has been

28

-7-

**COMPLAINT FOR DAMAGES**

1  damaged in the amount of $50,000,000, Plaintiff reserves the right to proof damages at the time

2  of trial.

3     36.    Plaintiff herein alleges that PFEIFER and/or LAT knowingly posted such false

4  and fraudulent statements with a conscious disregard of the rights of the Plaintiff in a manner of

5  fraud or oppression, such that Plaintiff should and would be entitled to an award of punitive or

6  exemplary damages.

7     **WHEREFORE**, Plaintiffs pray for judgment against each of the Defendants as follows:

8     1.    For actual damages;

9     2.    For trebled damages, according to proof;

10    3.    For punitive damages;

11    4.    For reasonable attorney's fees;

12    5.    For its costs incurred; and

13    6.    For any other and further relief as the court may deem proper.

14

15  DATED: March 30, 2011            **SILVERMAN & ASSOCIATES**

16

17

18                                    Robert B. Silverman
                                      Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27                       -8-

28

**COMPLAINT FOR DAMAGES**