1

**SILVERMAN & ASSOCIATES**
**ROBERT B. SILVERMAN SBN 170517**
2
**25 S. OAK KNOLL AVE., SUITE 504**
**PASADENA, CA 91101**
3
**TEL: (714) 936-7499**
**FAX: (888) 308-5099**
4
**EMAIL: SILVERATTY@GMAIL.COM**

5

6                    UNITED STATES DISTRICT COURT

7            FOR THE CENTRAL DISTRICT OF CALIFORNIA

8                          WESTERN DIVISION

9

10   1 800 GET THIN, LLC

11            Plaintiff,

12       vs.

13   Michael Hiltzik, an individual; Los
     Angeles Times Communications, LLC;
14   Stuart Pfeifer, an individual; etc., et al.;

15            Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Number: 2:11-CV-0505-ODW (Ex)

Assigned: HON. OTIS D. WRIGHT, II

**OPPOSITION TO DEFENDANTS, MICHAEL HILTZIK, LOS ANGELES TIMES COMMUNICATIONS, LLC., AND STUART PFEIFER, MOTION TO DISMISS [RULE 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF**

[Fed. R. Civ. P 12(b)(6)]

Hearing Date: May 23, 2011
Time:        1:30 PM
Courtroom:   11

Action Filed: January 18, 2011

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES .............................. 1

I. <u>INTRODUCTION</u> ................................................................................... 1

II.    <u>STATEMENT OF THE CASE</u> ........................................................ 2

A.    <u>1 800 GET THIN'S FIRST AMENDED COMPLAINT</u> ......... 2

1.    <u>SUMMARY OF COMPLAINT</u> ............................................... 2

2.    <u>HILTZIK'S ACTIONS</u> ............................................................ 3

a.    <u>FAKE ALIASES</u> ................................................................... 3

b.    <u>THEFT OF PASSWORDS</u> ................................................. 4

c.    <u>DECEPTIVE INVESTIGATIONS</u> .................................. 4

d.    <u>ASSISTING COMPETITORS</u> ......................................... 4

e.    <u>FALSE STATEMENTS OF FACT</u> .................................. 5

3.    <u>PFEIFER'S ACTIONS</u> ........................................................... 6

4.    <u>LA TIMES ACTIONS</u> ............................................................ 6

III.    <u>LEGAL ARGUMENT</u> ........................................................................ 7

A.    <u>LEGAL STANDARD FOR MOTION TO DISMISS</u> .............. 7

B.    <u>PLAINTIFF HAS A PROTECTABLE TRADEMARK</u> ......... 7

C.    <u>PLAINTIFF HAS SET FORTH A PROPER LANHAM ACT</u>
<u>CAUSE OF ACTION</u> .................................................................... 8

1.    <u>DEFENDANTS HAVE USED THE TRADEMARK IN</u>
<u>COMMERCIAL SPEECH</u> ..................................................... 9

a.    <u>COMMERCIAL SPEECH IS NOT PROTECTED BY THE FIRST</u>
<u>AMENDMENT AND IS ACTIONABLE UNDER LANHAM</u> ... 9

b.    <u>DEFENDANTS ARTICLES DO NOT CONSTITUTE</u>
<u>NOMINATIVE FAIR USE AND ARE ACTIONABLE UNDER</u>
<u>LANHAM</u> ............................................................................... 14

Plaintiff's Opposition to Motion to
Dismiss

c.    DEFENDANTS ARTICLES ARE NOT WORKS OF ART OR

LITERARY PIECES                                                        16

2.    DEFENDANTS DO NOT HAVE THE RIGHT TO FORUM SHOP

OR SELECT PLAINTIFFS CAUSES OF ACTIONS                19

a.    DEFENDANTS HAVE FALSELY DESIGNATED THE SOURCE

OR ORIGIN OF GOODS                                              21

b.    DEFENDANTS USE THE ON-LINE ARTICLES TO

GENERATE INCOME BY LINKING COMPETITOR

ADVERTISEMENTS TO THE ARTICLES                      23

3.    PLAINTIFF HAS PROVEN DAMAGES                         24


IV    CONCLUSION                                                        25


CERTIFICATE OF SERVICE                                          26

Plaintiff's Opposition to Motion to
Dismiss

1
2

# <u>TABLE OF AUTHORITIES</u>

3

## CASES

4
5

<u>AMF, Inc. v. Sleekcraft Boats,</u>
   599 F.2d 341 (9th Cir. 1979) ............ 14, 23

6
7

<u>Apple, Inc. v. Pystar Corp.,</u>
   673 F. Supp. 931, 942 (N.D. Cal. 2009) ............ 14

8
9

<u>Autodesk, inc. v. Dassault Systems Solid Works Corp.,</u>
   2008 U.S. Dist. LEXIS 109800 *5 (N.D. Cal. Dec., 18, 2008) ............ 14

10
11

<u>Barron v. Reich,</u>
   13 F.3d 1370, 1374 (9th Cir.1994) ............ 7

12
13

<u>Brookfield Communications, Inc. v. West Coast Entertainment Corp,</u>
   174 F.3d 1036, 1046 n. 6 ............ 7

14
15

<u>Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,</u>
   447 U.S. 557, 592-93 (1980) ............ 18

16
17

<u>Claridge v. RockYou,</u>
   2011 U.,S. Dist. LEXIS 39145 * 11-12 (N.D. Cal. April 11, 2011) ............ 24

18
19

<u>Coastal Abstract Serv., Inc. V. First Am. Title Co.,</u>
   173 F.3d 725 (9th Cir. 1999) ............ 10

20
21

<u>Committee for Idaho's High Desert v. Yost,</u>
   881 F. Supp. 1457, 1469 (D. Id. 1995), <u>modified on other</u>
   <u>grounds,</u> 92 F.3d 814 (9th Cir. 1966) ............ 2

22
23

<u>Conley v. Gibson,</u>
   355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ............ 7

24
25

<u>Doe v. United States,</u>
   58 F.3d 494, 497 (9th Cir.1995) ............ 7

26
27

28

Plaintiff's Opposition to Motion to
Dismiss

Finance Exp. LLC v. Newcom Corp.,
    564 F. Supp. 2d 1106, ___ (C.D. Cal. 2008)      22

Friedman v. Rogers,
    440 U.S. 1, 9, 12 (1979)      10

Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,
    514 F. Supp. 704 (S.D. Ohio 1981)      25

Garrison v. Louisiana,
    379 U.S. 64, 75 (1964)      17

Gilligan v. Jamco Development Corp., 108 F.3d 246, 248 (9th
Cir.1997)      7

Gold Seal Co. v. Weeks,
    129 F. Supp. 928 (D.D.C. 1955), aff'd 442 F.2d 686 (3d Cir.
    1971), cert denied, 352 U.S. 829 (1956)      25

Gordon and Breach Science Publishers S.A. v. American Inst. of
Physics,
    859 F. Supp. 1521 (S.D.N.Y. 1994)      11, 12, 20

Goto.com, Inc. v. Walt Disney, Co.,
    202 F.3d 1199, 1204, n. 3 (9th Cir. 9th Cir. 2000)      7

In re Mavety Media Group, Ltd.,
    33 F.3d 1367, 1374 (Fed. Cir. 1994)      10

J.K. Harris & Co. v. Kassel,
    253 F. Supp. 2d 1120 (N.D. Cal. 2003)      15

KEMA, Inc. V. Koperwhats,
    2010 U.S. Dist LEIS 90803 *10 (N.D. Cal. 2010)      14

Konigsberg v. State Bar of Cal.,
    366 U.S. 36, 49 n.10 (1961)      17

Mattel, Inc. v. MCA Records, 2
    96 F.3d 894 (9th Cir. 2002)      17

Plaintiff's Opposition to Motion to
Dismiss

Milkovich v. Lorain Journal,
    497 U.S. 1, 7, 19-20 (1990)                     17

National Lampoon, Inc. v. American Broad. Co.,
    376 F. Supp. 733, 746 (S.D.N.Y. 1974), aff'd,
    497 F.2d 1343 (2d Cir. 1974)           25

New Kids on the Block v. News Am. Publications, Inc.,
    971 F.2d 302 (9th Cir. 1992)           15

New York Times v. Sullivan,
    376 U.S. 254, 269 (1964)           9, 12

Murray v. Cable National Broadcasting Co.,
    86 f.3d 858, 861 (9th Cir. 1966)       14

Playboy Entertainers, Inc. V. Netscape Communications Corp.,
    354 F.3d 1020 (9th Cir. 2004)       22, 23

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989)        17, 18

Toyota, Motor sales, USA, Inc. V. Tabari,
    610 F.3d 1171, 1175-76 (9th cir. 2010)   14, 15

U-Hall Int'l, Inc. V. Jartran, Inc.,
    793 f.3d 1034, 1042 (9th Cir. 1986)    16

United States v. Alvarez,
    2011 U.S. App. LEXIS 5695 *13-14 (9th Cir. March 21, 2011)   17

United States v. Stevens,
    130 U.S. 1577, 1584 (2010)       17

Virginia Pharmacy Board v. Virginia Citizens Consumer Council,
    425 U. S. 748, 761 (1976)        10

# STATUTES AND TREATISES

15 U.S.C. Section 1051 et seq.,                                          2

15 U.S.C. § 1125(a)                                                      3

15 U.S.C. § 1125(a)(1)(A)                                             8, 21

15 U.S.C. § 1125(a) (1)(B)                                              8

Code of Civil Procedure § 425.16                                       20

Federal Rules of Civil Procedure Rule 8                                 7

Federal Rules of Civil Procedure Rule 12(b)(6)                        7, 9

1 G. Rosden & P. Rosden, The Law of False Advertising ¶
11-02[7][b][ii], at 11-156 (2011)                                      25

5A Charles A. Wright & Arthur R. Miller, *Federal Practice              7
and Procedure* § 1356 (1990)

Plaintiff's Opposition to Motion to
Dismiss

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## **INTRODUCTION**

Plaintiff, 1 800 GET THIN, LLC., submits this Memorandum in Opposition to Defendants' LA Times Communications Group, LLC ("LA Times"), Michael Hiltzik ("Hiltzik"), and Stuart Pfeifer ("Pfeifer"), Motion to Dismiss.  1 800 GET THIN's Opposition is based on the following:

(1)    The Defendants largely make factual arguments which are outside the scope of this Motion as the Court and the Defendants must accept the allegations in the FAC as true.

(2)    The FAC is based upon Commercial and Defamatory Speech about a Trademark for which there is no First Amendment protection under the Lanham Act and other case law.

(a)    The LA Times, in the on-line version of articles, has and continues to allow direct competitors to place advertisements next to, following and in some instances right in the middle of the on-line articles.  This action allows the LA Times to financially benefit from the publication of stories that contain the 1 800 GET THIN Trademark.  This further supports that this is a commercial speech which is not entitled to First Amendment protection and is actionable under the Lanham Act.

(b)    The published articles are NOT works of art or literary pieces as factually alleged by the Defendants.

(c)    The published articles are NOT nominative commentary as factually alleged by the Defendants.

(3)    The Defendants have falsely and intentionally linked the Plaintiff with the providing of medical services, among other material false statements facts that confuse the origin or the goods and services.

Plaintiff's Opposition to Motion to Dismiss

For these reasons and others as set forth herein below, the Motion to Dismiss should be DENIED. In the event, that the Court deems that such Motion has any merit then Plaintiff should be entitled to and granted leave to amend.

## II.   STATEMENT OF THE CASE

### A.   1 800 GET THIN'S FIRST AMENDED COMPLAINT

#### 1.   SUMMARY OF COMPLAINT

Plaintiff, 1 800 GET THIN, filed this action on January 18, 2011, alleging acts constituting False Advertising and Trade disparagement under the Lanham Act, 15 U.S.C. section 1051 et seq.[1/] The FAC contains ONLY ONE cause of action as against the Defendants, LA Times, Hiltzik and Pfeifer. The First Cause of Action of the FAC, states a case for violation of the Lanham Act.

1 800 GET THIN is a trademark that is entitled to protection. [Committee for Idaho's High Desert v. Yost, 881 F. Supp. 1457, 1469 (D. Idaho 1995), modified on other grounds, 92 F.3d 814 (9th Cir. 1966)("It is therefore unnecessary that a mark be registered to obtain protection under 43(a)"]

1 800 GET THIN is a marketing services company where the public calls a toll free phone number and is referred to a medical facility in their area for a free seminar concerning the Lap-Band procedure. (FAC, Page 7, Paragraph 36) 1 800 GET THIN does not perform surgical procedures, own or operate any surgical centers and does not provide any medical services of any kind.

Defendants LA Times is limited liability company that produces and publishes the Los Angeles Times, a newspaper of general circulation and also controls the website, LATIMES.COM. All of the articles which are the subject of this Lawsuit, were published in the print newspaper and simultaneously published on the website, at LATIMES.COM. At LATIMES.COM, LA Times allows for the

---

[1/] On March 31, 2011, 1 800 GET THIN filed a first Amended Complaint.

Plaintiff's Opposition to Motion to Dismiss

posting of comments following an article and for competitors to link their advertising to key words in the story.

Defendants Hiltzik and Pfeifer are individuals who are employed by LA Times as columnists/journalists and are the authors of the articles which are the subject of this Lawsuit.  During the last 12 months, the LA Times has published no less than 12 columns/articles that mention the Plaintiff (8 of the 12 have appeared in publication since December 2010 and that have been additional articles written after the filing of the FAC – all written by Hiltzik and Pfeifer).

Plaintiff has filed only ONE CAUSE OF ACTION against these Defendants.  Plaintiff has alleged that these Defendants have violated a Lanham Act violation.  In summation, these Defendants have published false and erroneous statements about the Plaintiff (FAC, Page 18, Paragraph 78); falsely linking Top Surgeons to 1 800 GET THIN (FAC, Page 18, Paragraph 79); falsely connecting a surgeon to an ad campaign (FAC, Page 18, Paragraph 80); and falsely equating the marketing services to being a surgery center and performing surgeries (FAC, Page 19, Paragraph 81), among other things.

All of the allegations contained in the first 20 pages of the FAC must be accepted as TRUE for the purposes of this Motion.  Plaintiff further alleges that this constitutes false advertising/unfair competition, false designation of origin, false designation of goods and services. (FAC, Page 20, Paragraph 88- 92)

## 2.    HILTZIK'S ACTIONS

### a.    FAKE ALIASES

The FAC alleges that Hiltzik has utilized "alias" "shills" and "strawmen".  Use of an alias in this manner is known as "sock-puppeteering."  The FAC alleges that Hiltzik through the use of an alias placed false comments about 1 800 GET THIN.  (FAC, Page 13, Paragraph 58)  The FAC further alleges that Hiltzik has a history of such conduct and that the LA Times is on notice of such conduct

because it has reprimanded him for "sock-puppeteering" in the past. (FAC, Page 11, Paragraph 54)

The LA Times suspended Hiltzik when it caught him "sock-puppeteering" and creating fictitious "shills" to blog comments regarding his articles. (FAC, Page 12, Paragraph 56) I is alleged that Hiltzik has continued this identical conduct with "shill" aliases and "strawmen" bloggers to "stock-puppet" defamatory comments on the LA Times website concerning 1 800 GET THIN. (FAC, Page 13, Paragraph 58)

### b.    THEFT OF PASSWORDS

The LA Times removed Hiltzik from his post in Moscow and disciplined him when he broke into the email accounts of other LA Times employees. (FAC, Page 12, lines 7-16) Through the use of an internal sting operation, Hiltzik was caught accessing the password protected email accounts of other staff writers in the Moscow bureau. As a result, LA Times removed Hiltzik from Moscow and took other actions to demote Hiltzik.

### c.    DECEPTIVE INVESTIGATIONS

The FAC alleges Hiltzik has lied to 1 800 GET THIN employees about his identity in order to obtain confidential information which he has published in his articles. (FAC, Page 9, lines 25-28) He told individuals they were committing a federal crime by working for 1 800 GET THIN. (FAC, Page 10, lines 1-7)

### d.    ASSISTING COMPETITORS

Hiltzik has provided private attorneys with the same false and misleading information in an effort to encourage these individuals to bring lawsuits against 1 800 GET THIN. (FAC, Page 10, Paragraph -- lines 8-18)

Hiltzik has worked in concert with 1 800 GET THIN competitors, including Johnson and Johnson, to publish false information from a Los Angeles County Official, Jonathan Fielding, who had a conflict of interest because of his

Plaintiff's Opposition to Motion to Dismiss

representation of Johnson & Johnson, to claim 1 800 GET THIN is violating FDA regulations, when no such violation exists. Defendants knowingly concealed the conflicts of interest. (FAC, Page 19, lines 13-22)

### e.   **FALSE STATEMENTS OF FACT**

Hiltzik has knowingly misrepresented NUMEROUS facts in his articles all in an attempt to disparage the Plaintiff. On April 18, 2010, Hiltzik authored and the LA Times published an article stating that that a patient was a foot taller than his actual height, and thereby 1 800 GET THIN was engaged in insurance fraud by providing a surgical procedure to an unqualified candidate. Defendants published a retraction of their claim acknowledging the statement was false.

Hiltzik has knowingly misrepresented that 1 800 GET THIN is a surgical facility responsible for patient deaths when he knows the claim is not true. (FAC, Page 18, line 15, to p. 19, line 6) Hiltzik's articles of February 14, 2010, March 4, 2010, April 18, 2010, and December 19, 2010, all falsely linked 1 800 GET THIN as a "surgery center." (FAC, Page 18, lines 15-17) Defendant's articles also falsely stated that 1 800 GET THIN is a medical practitioner that caused the death of a patient Renteria. (FAC, Page 18, line 20 to p. 19, line 6)

Hiltzik falsely stated Top Surgeons is not a sponsor of 1 800 GET THIN. Top Surgeons does not operate 1 800 GET THIN. Defendants know it is false because defendants published the article for the purpose of making 1 800 GET THIN responsible for Brook's death.

The FAC states other acts of Hiltzik which constitute Lanham Act violations individually and collectively and if necessary, the Plaintiff will amend this Complaint to add additional acts if the Court deems these insufficient to support the current cause of action.

Plaintiff's Opposition to Motion to Dismiss

### 3.   PFEIFER'S ACTIONS

Defendant Pfeiffer than engaged in the same conduct, concealing the same conflicts of interest, and same reckless disregard for the truth, in publishing his three (3) articles disparaging 1 800 GET THIN.  Pfeiffer has written three (3) articles regarding the same concealment of conflicts of interest, claims of being a surgical facility, and same responsibility for patient deaths.  (FAC, Page 19, lines 23-27)

### 4.   LA TIMES ACTIONS

The LA Times is the employer of both Hiltzik and Pfeifer and are therefore responsible for their actions.  In addition, the LA Times through the operation of the LATIMES.COM, the website, provide space for Google ads.  This is advertising space driven by key words.  For example, when Hiltzik includes 1 800 GET THIN in a story, even by reference, the Google ad space on the web page will include competitors of the Plaintiff.  Such that when Hiltzik or Pfeifer write intentionally false statements and the LA Times includes competitors ads next to the article, the LA Times generates income from the advertising space next to the article.  Hiltzik and the LA Times were placed on Notice of these events.

As such, the attorneys for LA Times intentionally scrubbed all of their Exhibits of the advertising that accompanies an on-line article.  The Plaintiff believes that this was done to intentionally deceive the Court to believe that Defendants engaged in NON-commercial speech.  As noted this is completely false.

For all of these reasons and the reasons set forth herein below, the Motion to Dismiss should be DENIED.

Plaintiff's Opposition to Motion to Dismiss

### III.   LEGAL ARGUMENT

#### A.   LEGAL STANDARD FOR MOTION TO DISMISS

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. [Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir.1994)]

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." [5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)] The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." [Gilligan v. Jamco Development Corp., 108 F.3d 246, 248 (9th Cir.1997)]

A court may not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)]

In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by the inclusion of additional factual allegations. [Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995)]

#### B.   PLAINTIFF HAS A PROTECTABLE TRADEMARK

In the instant case, Plaintiff GET THIN has a protectable service mark that is on the verge of receiving federal registration. Whether or not a trademark is registered, the same standard is applied in determining whether or not it has been infringed under the Lanham Act. [Goto.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1204, n. 3 (9th Cir. 9th Cir. 2000); Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 n. 6]

Plaintiff's Opposition to Motion to Dismiss

As set forth herein below, 15 U.S.C. § 1125(a) protects "any word, term, name, symbol or device..."

Based upon the above case law, the Defendants argument that a Trademark must be registered in order to be protected under the Lanham Act is false, misleading and plain wrong!

## C.   <u>PLAINTIFF HAS SET FORTH A PROPER LANHAM ACT CAUSE OF ACTION</u>

Only the First Cause of Action is against these Defendants and alleges that based on a series of articles/columns published by these Defendants and other actions by the Defendants, that these Defendants have violated the Lanham Act.

The Lanham Act is codified in 15 U.S.C. §1125(a) Civil Action.  The Lanham covers any word, term, name, symbol or device that is misused in such a way to cause confusion, mistake, deceive as to affiliation, connection or association of such person with another person as to the origin, sponsorship, or approval...or commercial activities by another person.  [15 U.S.C. § 1125(a)(1)(A)]  Under Subsection (a)(1)(B) such acts of false and misleading facts in a commercial advertisement or promotion which misrepresent the nature, characteristics qualities or geographic origin shall be liable.

The Defendants have intentionally misused 1 800 GET THIN in a variety of ways which either collectively and/or singularly violate the Lanham Act.  The First Cause of Action sets forth all of the acts that constitute the claim for relief under the Lanham Act.  All of these acts, either individually or collectively are likely to cause confusion, mistake or deceive the public concerning the trademark 1 800 GET THIN.

The Motion should be DENIED.

Plaintiff's Opposition to Motion to Dismiss

### 1.   DEFENDANTS HAVE USED THE TRADEMARK IN COMMERCIAL SPEECH

#### a.   COMMERCIAL SPEECH IS NOT PROTECTED BY THE FIRST AMENDMENT AND IS ACTIONALBE UNDER LANHAM

The First Cause of Action is the only cause of action as against these Defendants.  The First Cause of Action states that the Defendants are liable under the Lanham Act.

The FAC sets forth numerous acts by these Defendants which support the allegation that the articles/columns written and published by these Defendants constitute Commercial Speech for which they are NOT entitled to First Amendment protection.

Defendants make numerous arguments to defeat this allegation: (1) Defendants argue that its disparagement of 1 800 GET THIN is beyond the Lanham Act's scope because disparagement is limited to "commercial advertising and promotion." (Defendant's Motion, p. 2, lines 8-9); (2) Defendants argue the First Amendment protects its disparagement of 1 800 GET THIN. (Defendant's Motion, p. 2, lines 10-12); (3) Defendants argue 1 800 GET THIN's cause of action is barred by the First Amendment because there were no false or defamatory statements of fact in plaintiff's statements. (Defendant's Memo, p. 3, lines 13-15); and (4) Defendants argue that their actions are protected under NY Times v. Sullivan.

These are all FACTUAL arguments which fail for purposes of their Rule 12(b)(6) Motion to Dismiss.  Despite the Defendants' allegations, the Court must accept the allegations contained in the FAC as TRUE.  The FAC alleges extensive false and fraudulent utilization of "shills," "straw men," and "sock-puppets" to make false statements about 1 800 GET THIN among other facts to support the

9

cause of action.  The Court and the Defendants MUST accept ALL of these factual allegations to be TRUE for purposes of this Motion.

Notwithstanding, the First Amendment does not protect falsity or otherwise defamatory statements.  Immoral, scandalous, or fraudulent matters are not protected under trademark law and may be regulated by the laws against false advertising.  [In re Mavety Media Group, Ltd., 33 F.3d 1367, 1374 (Fed. Cir. 1994)]  Speech regarding trademarks and trade names is not entitled to First Amendment protection because trade names do not convey any commercial information of the kind considered to be protected speech.  [Friedman v. Rogers, 440 U.S. 1, 9, 12 (1979)(false speech enjoys no constitutional protection)]  Speech regarding a trademark or trade name is not entitled to First Amendment protection where "there is a significant possibility that trade names will be used to mislead the public."  [Id., 12; Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U. S. 748, 761 (1976)]

Defendants' erroneously rely on Coastal Abstract Serv., Inc. V. First Am. Title Co., 173 F.3d 725 (9th Cir. 1999), for the proposition that the Lanham Act will not regulate defendants' commentary on 1 800 GET THIN because it is not commercial speech.  (Defendants' Memo, p. 14, line 27, to p. 15, line 3)  The case does not support Defendants position.

In Coastal Abstract Services, a jury found for the plaintiff.  In review, the Ninth Circuit affirmed and reversed, finding one of the derogatory statements that plaintiff was not paying its bills was actionable under the Lanham Act. [Id., 732-33]  The reasoning was that the false statements caused a "competitive injury" designed to divert business from the defendant.  [Id., 734]

By engaging in a pattern of conduct to disparage the trademark of the Plaintiff and providing advertisements for competitors next to the articles, the Defendants are causing a competitive injury that is a covered claim under Lanham.

Plaintiff's Opposition to Motion to Dismiss

Defendants false endorsement of competitors, false designation of 1 800 GET THIN as a surgery facility, and deception through the use of "shills" and "sock-puppeteers" is not merely commentary as the Defendant would like the Court to believe.

Defendants are engaged in commercial speech when they allow advertisers to solicit similar services in ads directly linked to the same articles in which the Plaintiff is being disparaged by the Defendants. And when the click is made on the advertisement, Defendants receive a financial benefit. This clearly constitutes an ad campaign for which the Defendants are engaged.

Defendants' further erroneously rely on <u>Gordon and Breach Science Publishers, Ltd. v. American Inst. of Physics</u>, 859 F. Supp. 1521 (S.D.N.Y. 1994), for the proposition that allegations of "competition" do not satisfy the Lanham Act's requirements where the statements are made for news or commentary. (Defendant's Memo, p. 15, lines 11-14)

In <u>Gordon and Breach Science Publishers</u> an action was brought against a journal publisher claiming defendants published a comparison of journals and distributed them to librarians stating plaintiffs' publications were among the least cost-effective. Defendants misrepresented their surveys as being neutral, when in fact they were designed to injure competition, and were false and misleading.

The Lanham act is designed to prohibit false or misleading representations of fact, which misrepresents the nature, characteristics, or qualities of goods or services. [<u>Id.</u>, 1530] Scienter or knowing state of mind in making the misrepresentations is not an element under the Act, but is important in assessing the validity of defendant's claims. [<u>Id.</u>, 1529] Defendant's commercial speech was accompanied by false and misleading representations as to the content of the articles when distributed to librarians, and such misrepresentations were actionable under the Act. [<u>Id.</u>, 1538]

11

Defendants' alleged news articles are commercial speech because they are false, misleading, and designed to endorse competitors. They further misrepresent that 1 800 GET THIN is a surgical facility when defendants know that is untrue and they misrepresent that 1 800 GET THIN is responsible for patient deaths when they know that is also untrue.

Defendants further conceal and thereby misrepresent the conflicts of interest and competitive status of persons whom they quote, including Jonathan Fielding and Johnson & Johnson, and then use their "sock-puppets" and shills to disparage 1 800 GET THIN in a fraudulent scheme to promote competitors of the Plaintiff, all of which constitutes a violation of the Lanham Act as set forth in the FAC.

Defendants further claim it should have the constitutional protection under New York Times v. Sullivan, 376 U.S. 254 (1964). (Defendant's Memo, p. 16, line 18, to p. 17, line 2) "[S]cienter" or knowing state of mind is not a standard under the Lanham Act. [Gordon & Breach Science Publishers, Ltd. v. American Inst. of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994)]  More important, the Complaint alleges defendant knew their statements were false when they published that 1 800 GET THIN was a surgical facility, that it was responsible for patient deaths, and that it was violating FDA regulations.  All of these factual allegations must be accepted as TRUE for purposes of this Motion.

In addition, the FAC alleges: (1) Hiltzik has lied to 1 800 GET THIN employees about his identify in order to obtain confidential information which he has published in his articles (FAC, p. 9, lines 25-28); (2) Hiltzik told 1 800 GET THIN employees they were committing a federal crime by working for 1 800 GET THIN (FAC, p.10, lines 1-7); (3) Hiltzik has provided private attorneys with the same false and misleading information in an effort to encourage those individuals to bring lawsuits against 1 800 GET THIN which accuse it of being a medical facility responsible for patient deaths (FAC, p. 10, lines 8-18); (4) Hiltzik

12

Plaintiff's Opposition to Motion to Dismiss

intentionally misrepresented in his news article that a patient was a foot taller than his actual height, and thereby 1 800 GET THIN was engaged in insurance fraud by providing a surgical procedure to an unqualified candidate.  Defendants published a retraction of their claim acknowledging the statement was false. (FAC, p. 11, lines 11-24); (5) Hiltzik has continued his "sock-puppeteering" activities through the blogger identities identified as Doe Defendants by publishing false comments about 1 800 GET THIN causing patient deaths and being a medical facility, and by posting positive comments about defendant Hiltzik uncovering the truth when he knows his statements to be false. (FAC, p. 13, lines 10-25); (6) Hiltzik has knowingly misrepresented that 1 800 GET THIN is a surgical facility responsible for patient deaths when he knows the claim is not true. (FAC, p. 18, line 15, to p. 19, line 6); (7) Hiltzik has worked in concert with 1 800 GET THIN competitors, including Johnson and Johnson, to publish false information from a Los Angeles County Official, Jonathan Fielding, who had a conflicts of interest because of his representation of Johnson & Johnson, to claim 1 800 GET THIN is violating FDA regulations, when no such violation exists. (FAC, p. 19, lines 13-22); and (8) Pfeiffer has written three (3) articles regarding the same concealment of conflicts of interest, claims of being a surgical facility, and same responsibility for patient deaths. (FAC, Page 19, lines 23-27).

The FAC further alleges that on February 14, 2010, unknown defendants SNAPSHOTS, Adrian-Dallas, neoserf and dalefogden all posted false and defamatory comments which constitute Lanham Act violations and are alleged to be the work of Hiltzik through the use of sock-puppeting.

For purposes of this Motion, this allegation must be accepted as TRUE and none of these acts are protected under the First Amendment as alleged by the Defendants.

Plaintiff's Opposition to Motion to Dismiss

### b.   DEFENDANTS ARTICLES DO NOT CONSTITUTE NOMINATIVE FAIR USE AND ARE ACTIONABLE UNDER LANHAM

Defendant claims that its reference to the 1 800 GET THIN trademark was "nominative fair use, which cannot give rise to any Lanham Act claim." (Defendant's Motion, p. 2, lines 1)

Defendants hide behind "fake" bloggers to falsely misrepresent and cause confusion as to the Plaintiff and their mark.  Defendants also commercially benefit when they promote 1 800 GET THIN's competitors in the very same blogs and on the website where they place advertising right next to, following or even in the same article in which the Plaintiff is disparaged by the Defendants.

Whenever a complaint alleges a false sponsorship or fraud in the use of a trademark, there is no nominative use or fair use. [KEMA, Inc. V. Koperwhats, 2010 U.S. Dist LEIS 90803 *10 (N.D. Cal. 2010)]  The false designation of sponsorship or endorsement to attach a trademark holder is **not** recognized as a nominative or fair use of the trademark. [Toyota, Motor sales, USA, Inc. V. Tabari, 610 F.3d 1171, 1175-76 (9th cir. 2010)]  Falsity in the use of a trademark or reference to it by a competitor making a comparison or comment prevents application of a claim of nominative or fair use. [Murray v. Cable National Broadcasting Co., 86 f.3d 858, 861 (9th Cir. 1966)][2]

---

[2]  The nominative or fair use of a trademark is lost whenever falsity is involved in the use of the mark.  AMF, Inc. V. Sleekcraft Boats, 599 F.3F 341, __ (9th Cir. ).  Because nominative use involves a factual inquiry, most courts refuse to rule on the claim at the pleading stage. KEMA, inc. v. Koperwhats, 2010 U.S. Dist. Lexis 90803 * 10-11 (N.D. Cal. 2010)(nominative use and fair use are factual matters which should not be decided at the pleading stage); Autodesk, inc. v. Dassault Systems Solid Works Corp., 2008 U.S. Dist. LEXIS 109800 *5 (N.D. Cal. Dec., 18, 2008)("analysis of nominative fair use is premature on a motion to dismiss, particularly given the factual nature of the inquiry"); Apple, Inc. v. Pystar Corp., 673 F. Supp. 931, 942 (N.D. Cal. 2009)("While nominative use may be asserted as a defense, the defendant has the burden of proof").

Plaintiff's Opposition to Motion to Dismiss

Defendants cite <u>New Kids on the Block v. News Am. Publications, Inc.</u>, 971 F.2d 302 (9th Cir. 1992), for the proposition that the nominative use of a trademark does not involve use of the mark whereby infringement laws do not apply. (Defendant's Memo, p. 3, lines 3-8)

In <u>New Kids on the Block</u>, a group of rock musicians brought an action against several newspapers alleging violations of their trademark because defendants had used plaintiffs' name to conduct popularity polls. There was NO commercial use or advertising associated with the facts of this case. The court held that defendants made no commercial use of the trademark. There is nothing in the facts <u>New Kids</u> that is similar to this case.

Defendants continue to fail to acknowledge that the allegations in the FAC must be accepted as TRUE for purpose of this Motion and that the Plaintiff has alleged through facts, that Defendants have engaged in fraud through the use of "shill" competitors to attack the 1 800 GET THIN trademark, and their use involves making a profit for 1 800 GET THIN's competitors.

There is also no support in <u>Toyota Motor Sales, U.S.A., Inc. V. Tabari</u>, 610 F.3d 1171 (9th Cir. 2010), for the proposition the nominative use of a trademark does not infringe on the mark. (Defendant's Memo, p. 9, lines 13-14) <u>Toyota</u> held that the brokers using the mark merely referred to the trademarked good itself, which was a nominative fair use that was not infringement. [<u>Id.</u>, 1176-77] This is a factual argument by the Defendants.

Notwithstanding, the Defendants use of the 1 800 GET THIN trademark does NOT merely refer to the mark itself but go on to state that 1 800 GET THIN is a surgical facility and caused the death of patients. This does NOT qualify for protection under <u>Toyota</u> and is not a fair or nominative use of the trademark.

Defendant also inappropriately cites <u>J.K. Harris & Co. v. Kassel</u>, 253 F. Supp. 2d 1120 (N.D. Cal. 2003), for the proposition that use of a trademark to

Plaintiff's Opposition to Motion to Dismiss

report complaints about the owner is a fair use.  (Defendant's Memo, p. 10, lines 4-10)  This case was about a web site merely to accept complaints.  There was NO COMMERCIAL use of the website.

Under U-Hall Int'l, Inc. V. Jartran, Inc., 793 f.3d 1034, 1042 (9th Cir. 1986), false commercial speech enjoys no constitutional protection, and when used to describe another's trademark, may be enjoined or subjected to damages under the Lanham Act. [Id., 1129]  Statements which utilize another's trademark which are false or misleading are prohibited under the Lanham Act. [Id., 1130]

Again the Defendants merely offer the Court FACTUAL arguments in support of their Motion to Dismiss.

> "Moreover, where the times' columns and articles report on the controversial Lap-Band procedure and the deaths of Southern California patients after they had surgery, there is no possibility that the publications at issue could be read as implying any endorsement by plaintiff."  (Defendant's Memo, p. 11, lines 5-9)

The FAC alleges that Defendants' fraudulent "sock-puppeteering" with fake "shills" and alias "straw men" who use 1 800 GET THIN to promote competitors is not a fair use.  Defendant's blatant endorsement of 1 800 GET THIN competitors and use of 1 800 GET THIN's trademark to promote competitors is not a nominative use nor in any manner fair use as alleged in the FAC must be accepted as TRUE for the purposes of this Motion.

The Motion to Dismiss should be DENIED.

### c.   DEFENDANTS ARTICLES ARE NOT WORKS OF ART OR LITERARY PIECES

The articles/columns authored and published by the Defendants are not works of art or literary pieces, rather they are false and misleading publications intentionally written to benefit competitors of the Plaintiff.

Plaintiff's Opposition to Motion to Dismiss

Defendants cite <u>Mattel, Inc. v. MCA Records</u>, 296 F.3d 894 (9th Cir. 2002), for the proposition trademark rights do not entitle the owner to quash an unauthorized use of a trademark by another who is communicating ideas or expression points of view.  (Defendant's Memo, p. 8, lines 22-25)  The Court in <u>Mattel</u> ruled upon the use of a Trademark in a song parody.  This is not the case herein.

Defendants LA Times, Hiltzik, Pfeiffer, and their "shills" are not communicating points of view or expressing ideas because they are engaged in anti-competitive fraud for the purpose of promoting 1 800 GET THIN's competitors and pandering off 1 800 GET THIN's trademark to cause it a competitive injury.

Fraudulent speech is not entitled to any constitutional protection.  [<u>United States v. Stevens</u>, 530 U.S. 1577, 1584 (2010)(false statements of fact enjoy no constitutional status and are not protected speech); <u>Milkovich v. Lorain Journal</u>, 497 U.S. 1, 7 (1990)(false accusation  enjoy no constitutional protection); <u>Garrison v. Louisiana</u>, 379 U.S. 64, 75 (1964)("[T]he use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected."); <u>Konigsberg v. State Bar of Cal</u>., 366 U.S. 36, 49 n.10 (1961) (listing "libel, slander, misrepresentation, obscenity, perjury, false advertising, solicitation of crime, complicity by encouragement, conspiracy, and the like"); <u>United States v. Alvarez</u>, 2011 U.S. App. LEXIS 5695 *13-14 (9th cir. March 21, 2011)(defamatory speech enjoys no constitutional protection)]

Defendant cites <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989), for the proposition that use of a trademark in an "expressive work is barred by the First Amendment unless the plaintiff can establish that (1) the use 'has no artistic relevance to the underlying work whatsoever,' <u>and</u> (2) if it has some artistic

Plaintiff's Opposition to Motion to Dismiss

relevance, the use 'explicitly misleads as to the source or content of the work.'" (Defendant's Memo, p. 12, lines 6-10)

Defendants' articles are competitive commercial speech, not "expressive works." Any element of expression is a "facade" designed to conceal Defendants commercial misuse of the 1 800 GET THIN trademark to promote its "shills" and advertisers. [Central Hudson Gas & Electric v. Public Service Commission, 447 U.S. 557, 563 (1980) ("The government may ban forms of communication more likely to deceive the public than inform it")]

In Rogers, actress Ginger Rogers brought an action against producers and distributors of a motion picture alleging common law and Lanham act infringement when defendants sought to distribute a movie entitled "Ginger and Fred" which was a fictionalized story referring to Ginger Rogers and Fred Astaire. The District Court granted summary judgment finding the use of Rogers' name was artistically relevant to the film and not a trademark infringement. The Second Circuit affirmed, finding there was no false description or false designation of origin in the film, it did not mislead consumers or denote authorship, sponsorship, or endorsement as to the content of the film, and there was no false endorsement implied from plaintiff. [Id., 1005] Plaintiff's name was sufficiently related to the film and was not being used for commercial advertisement. [Id., 1004-05]

Defendants' use of 1 800 GET THIN to promote competitors, provide fodder for "shills" and "stock-puppeteers," is not an "expressive work," and nothing in Rogers protects such activities. There is no "artistically relevant" use of the 1 800 GET THIN trademark in any of defendants' false articles. Further the FAC alleges that the "straw man" fake bloggers, are actually Defendants in disguise. That the Defendants created the false information contained in the articles thereby creating a false designation of endorsement, authorship, and sponsorship which misleads the consumer for the benefit of competitors.

Plaintiff's Opposition to Motion to Dismiss

Defendants' conduct is unlawful and no claim of first amendment protection or "artistic relevance" can save such deception.  Defendants claim that "based on the content of the articles, it is ridiculous to suggest that they imply any endorsement by plaintiff." (Defendant's Memo, p. 13, lines 12-14)  However, it is the false use of "shills" and "strawmen" to "sock-puppeteer" which is the "false endorsement" which "misleads the public."  The Defendants created the false impression that these individuals are independent commentators, when in fact they are aliases being used by the Defendants to attack those who compete with their advertisers.   The deception creates a false attribution of responsibility for patient deaths to 1 800 GET THIN who is not a surgery facility.

The Motion should be DENIED.

## 2.   <u>DEFENDANTS DO NOT HAVE THE RIGHT TO FORUM SHOP OR SELECT PLAINTIFFS CAUSES OF ACTIONS</u>

The First Cause of Action in the FAC sets forth sufficient facts to justify a Lanham Act violation.  The facts as set forth, must be accepted as TRUE for the purposes of this Motion.  The Defendants are clearly upset with the fact that the Plaintiff has alleged a prima facie case for the Lanham Act which vests exclusive jurisdiction in the Federal Court.  Plaintiff HAS NOT alleged Trade Libel.

Despite attempting to deny the very essence of a Rule 12(b)(6) Motion, the Defendants are attempting to forum shop this case back to state court by raising a number of issues that are not relevant and/or pertinent to the First Cause of Action in the FAC.

First, Defendants falsely state, with intent to deceive, that there is a "heightened pleading requirement" to state a claim for trade libel.  (Defendants' Memo, p. 21, lines 1-3)  Again this is NOT a trade libel case.  However, there is no heightened pleading requirement under the Lanham Act, and the pleading

19

Plaintiff's Opposition to Motion to Dismiss

requirements are the customary standards. [Gordon and Breach Science Publishers S.A. v. American Inst. of Physics, 859 F. Supp. 1521 1358 (S.D.N.Y. 1994)]

Defendant then assert the non-legal and non-factual argument that 1 800 GET THIN is attempting to evade proof requirements of state libel laws by "Disguising" its claim under the Lanham Act. (Defendant's Motion, p. 2, lines 13-18) The Plaintiff has asserted a Lanham Act Cause of Action. Defendants' argument must fail.

Defendant further claims 1 800 GET THIN's trade libel action is "a transparent attempt to avoid [state libel] requirements, and to evade California's anti-SLAPP statute, *Code of Civil Procedure* § 425.16 et seq." (Defendant's Memo, p. 2, lines 16-17) This is also a non-legal and non-factual argument presented by the Defendants. The Plaintiff has ONLY alleged ONE cause of action against these Defendants for violation of the Lanham Act. This is NOT a trade libel action or cause of action. These arguments have no merit and no place in this pleading.

What is clear is that the Defendants engaged in unscrupulous actions by publishing false and misleading statements about the Plaintiff. Plaintiff has alleged a Cause of Action for Lanham Act violation. No matter what the Defendant attempts to state, they cannot and are not entitled to forum shop this case to State Court or dictate what causes of actions the Plaintiff is entitled to file. The Plaintiff has appropriately asserted in Federal Court, a Cause of Action that asserts a violation of Federal Law. This is the proper cause of action in the proper Court.

The Defendants Motion should be DENIED.

Plaintiff's Opposition to Motion to Dismiss

a. **<u>DEFENDANTS HAVE FALSELY DESIGNATED THE SOURCE OR ORIGIN OF GOODS</u>**

The FAC alleges, and this must be accepted as true that, the LA Times via Hiltzik and Pfeifer have falsely and intentionally linked the Plaintiff with the providing of medical services, among other false statements through the false publication that the mark is a "surgery center." This allows the Defendants to disparage the Trademark of the Plaintiff in a commercial non-protected setting by falsely designated the source or origin of goods in violation of 15 U.S.C. § 1125 (a)(1)(A).

Defendants argue that when Defendants' falsely stated that 1 800 GET THIN operated medical facilities and engaged in medical services, that "what plaintiff appears to complain about is being associated with the very surgical centers and procedures that it advertises." (Defendant's Memo, p. 3, line 16, to p. 4, line 6) Defendant again misses the boat on the plain terms of the protection provided by the Lanham Act.

However, 1 800 GET THIN's complaint is that Defendants knowingly claimed 1 800 GET THIN was a medical facility to falsely attribute patient deaths to 1 800 GET THIN all in an intentional effort to deceive and confuse the public as the source and origin of the goods and services. It is believed and alleged that Hiltzik was engaged in a personal vendetta to ruin the business of the Plaintiff. Hiltzik knew that by associating patient deaths with the Plaintiff's marketing services, that Plaintiff's business would be harmed. These allegations must be accepted as TRUE. These allegations are precisely what the Lanham Act is intended to protect.

Defendants also financially benefited from the publication of this false and misleading fact as the Defendant linked competitor advertisements to the articles

Plaintiff's Opposition to Motion to Dismiss

whereby the Defendants would receive financial compensation for any individual that clicked on advertisement placed next to the false and misleading article.

While the Defendants Request the Court to accept Judicial Notice of the articles written by Defendants Hiltzik (Exhibit 1-4) and Pfeifer (Exhibits 5-8) the Request is particularly offensive because of its deception in not including the actual ON-LINE articles that contain advertisements next to, following and even in the middle of the articles.

Defendants are engaged in a scheme called "keying" where they purchase keywords containing 1 800 GET THIN and its associated terms from internet search engines to ensure that internet web users searching for those terms will be exposed to defendants banner advertisements. In this manner defendant utilizes the commercial market power of 1 800 GET THIN to promote its own advertisers by writing false articles that will draw the attention of readers to its advertisements. [Finance Exp. LLC v. Newcom Corp., 564 F. Supp. 2d 1106, ____ (C.D. Cal. 2008)]

Defendants have intentionally provided to the court "false" examples of the articles they have published. This deliberate deception is designed to conceal their unfair use of the 1 800 GET THIN trademark in their "keying" scheme to write false articles, making claims that 1 800 GET THIN is a surgical facility, that 1 800 GET THIN is responsible for patient deaths, and then use "shills" and "sock-puppets" to increase the "keying" value of the 1 800 GET THIN trademark to Defendant's own advertisers. For Defendants to conceal this conduct from the Court and produce false examples of the articles is inexcusable.

In Playboy Entertainers, Inc. V. Netscape Communications Corp., 354 F.3d 1020 (9th Cir. 2004), the court addressed the issue of whether the plaintiff had established that the defendant's practice of keying demonstrated a likelihood of confusion sufficient to withstand summary judgment. The court applied the

Plaintiff's Opposition to Motion to Dismiss

factors in AMF, Inc. V. Sleekcraft Boats, 599 f.2d 341 (9th cir. 1997), and determined plaintiff had established a genuine issue of fact as to whether defendant's keying and related use of banner advertisements caused initial interest confusion. Playboy Entertainers, Inc., 354 F.3d at 1029.

The court then addressed defendant's fair use and concluded that having found a genuine issue of fact existed regarding likelihood of confusion, defendant could not establish fair use, since "[a] fir use may not be a confusing one." [Id.]

For these reasons, the Motion should be Denied.

**b. DEFENDANTS USE THE ON-LINE ARTICLES TO GENERATE INCOME BY LINKING COMPETITOR ADVERTISEMENTS TO THE ARTICLES**

In the on-line version of the published articles, which have NOT been presented by the Defendants, the LA Times, has and continues to allow direct competitors to place advertisements of competitors next to, following, and in some instances even in the middle of articles published by Hiltzik and/or Pfeifer. This action allows the LA Times to financially benefit from the publication of stories that contain the 1 800 GET THIN Trademark. This further supports that this is a commercial speech which is not entitled to First Amendment protection and is actionable under the Lanham Act.

Defendants claim its statements were not made in connection with commercial advertising or promotion. (Defendant's Memo, p. 3, lines 11-12) The FAC alleges Defendants used a "shill" to assist 1 800 GET THIN's competitors through "sock-puppeting" and fake bloggers who defame and disparage 1 800 GET THIN. Defendants' assertion they have not engaged in commercial advertising is contrary to the direct allegations of the FAC which must be accepted as TRUE for the purposes of this Motion.

Patrick Frey is a LA County Prosecutor who writes the website "Paterico's Pontifications." On February 5, 2011, he wrote about how the LA Times and Michael Hiltzik use 1 800 GET THIN's trademark to sponsor advertisements for competitors.

It is unmistakable that defendants and their attorney know the significance of the "keying" of the advertisements and their commercial misuse of the 1 800 TRADEMARK. "L.A. Times Wants It Both Ways" by Patrick Frey,

Mr. Frey states in a sarcastic commentary criticizing the LA Times conduct:

"Thank God the L.A. Times doesn't engage in such hypocrisy. Rest assured that they would never simultaneously criticize the 1-800GET-THIN program and similar ad campaigns that publicize the procedure as a cosmetic weight-loss ... and attempt to profit from such ad campaigns at the same time.

"Would they?

The importance of this "commentator" is that defendant Michael Hiltzik defended himself from the claim by entering a comment on the website.

Defendants have full knowledge of the "keying" and "tagging" of advertisements where Defendant LA Times profits from 1 800 GET THIN competitors and they promote those competitors with their "sock-puppeting" and "shill" aliases.

It is inescapable that Defendants are engaged in a deliberate concealment right before this Court's eyes of the very anti-competitive advertising sponsorship of 1 800 GET THIN competitors that is the subject of 1 800 GET THIN's FAC.

### 3.   **PLAINTIFF HAS PROVEN DAMAGES**

Defendant claims 1 800 GET THIN's claims of damages are ambiguous. (Defendant's Memo, p. 21, lines 23-24). However, the allegations show actual, imminent, concrete and particularized damages. [Claridge v. RockYou, 2011 U.,S.

Plaintiff's Opposition to Motion to Dismiss

Dist. LEXIS 39145 * 11-12 (N.D. Cal. April 11, 2011)(allegations of harm sufficient a pleading state where generalized injury in fact alleged)]

Under the Lanham Act, allegations of damages require no particular format because damages are based on the plaintiff's reasonable belief that it will likely be damaged. [1 G. Rosden & P. Rosden, The Law of False Advertising ¶ 11-02[7][b][ii], at 11-156 (2011); Gold Seal Co. v. Weeks, 129 F. Supp. 928 (D.D.C. 1955), aff'd 442 f.2d 686 (3d Cir. 1971), cert denied, 352 U.S. 829 (1956)(plaintiff may bring false advertising claim for trade disparagement if plaintiff's business was subject to likely adverse affect); Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 514 F. Supp. 704 (S.D. Ohio 1981)(likely injury of damages is standard under Lanham Act); National Lampoon, Inc. v. American Broad. Co., 376 F. Supp. 733, 746 (S.D.N.Y. 1974), aff'd, 497 F.2d 1343 (2d Cir. 1974)(likelihood of injury required for Lanham Act claim)]

The allegation of damages in 1 800 GET THIN's Complaint establish the reasonable belief of the likelihood of damages.  (Complaint, p. 7, line 26, to p. 8, line 14).

## IV.

## CONCLUSION

For the foregoing reasons the Motion to Dismiss should be DENIED.

Dated: May 2, 2011                      **SILVERMAN & ASSOCIATES**

Robert B. Silverman
Attorneys For Plaintiff

25                      Plaintiff's Opposition to Motion to Dismiss

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system on May 2, 2011.

/s/ Robert B. Silverman

Plaintiff's Opposition to Motion to Dismiss

26