**SILVERMAN & ASSOCIATES**
**ROBERT B. SILVERMAN SBN 170517**
**25 S. OAK KNOLL AVE., SUITE 504**
**PASADENA, CA 91101**
**TEL: (626) 529-4202**
**FAX: (888) 308-5099**
**EMAIL: SILVERATTY@GMAIL.COM**

**ATTORNEYS FOR PLAINTIFF:**
**1800 GET THIN, LLC**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| 1 800 GET THIN, LLC<br><br>Plaintiff,<br><br>vs.<br><br>Michael Hiltzik, an individual; Los Angeles Times Communications, LLC; Stuart Pfeifer, an individual; etc., et al.;<br><br>Defendants | Case Number: 11-CV-0505-ODW (Ex)<br>Assigned: HON. OTIS D. WRIGHT, II<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO STRIKE THE MOTION FOR LEAVE TO AMEND OR CONTINUE THE HEARING**<br><br>Hearing Date: N/A<br>Time:         N/A<br>Courtroom:    11 - Spring<br><br>Action Filed: January 18, 2011 |

TO JUDGE OTIS D. WRIGHT, II AND ALL INTERESTED PARTIES:

PLAINTIFF, 1 800 GET THIN, LLC., hereby submits this Opposition to the Defendants' Ex Parte Application to Strike the Motion to Amend the Complaint and/or reset the Motion to August 29, 2011

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................   1

II.    1 800 GET THIN COMPLIED WITH LOCAL RULE 7-3, AND
       DEFENDANTS MAKE NO SHOWING OF FAILURE TO
       "MEET AND CONFER" OR PREJUDICE ...........................   1

       A.  1 800 GET THIN's Counsel "met and conferred" with
           Defendants ................................................   1

           1.  Mr. Silverman sent emails and had two (2) personal
               meetings ..............................................   1

           2.  Mr. Silverman "met and conferred" in good faith ..........   3

           3.  1 800 GET THIN met the times requirements of Local
               Rule 703 ..............................................   5

       B.  1 800 GET THIN's Notice of Motion was Properly given .........   6

           1.  Defendant received 31-days notice of the motion ..........   6

           2.  Defendants' request for a continuance to August 29, 2011
               Demonstrates a lack of candor to this Court ................   7

           3.  Defendant fails to establish a lack of civility................   9

       C.  Defendant Has Failed to Establish Prejudice ........................   9

           1.  Defendant states no facts showing prejudice .................   9

           2.  No basis to strike 1 800 GET THIN's Motion ...............   10

           3.  Defendants' reference to other lawsuits is irrelevant ........   12

       D.  Defendants did not "Meet and Confer" for the Ex Parte
           Application ................................................   12

       E.  Defendants' Request for Sanctions is Improper .....................   13

           1.  Defendants have shown no bad faith conduct ...............   13

           2.  Defendants own affidavits contradict defendants ............   15

III.   CONCLUSION ................................................15

CERTIFICATE OF ELECTRONIC SERVICE……………………………...16

DECLARATION OF BRIAN OXMAN……………………………………17

DECLARATION OF ROBERT B. SILVERMAN…………………………..18

# TABLE OF CASES

Abthai v. Chase Home Financial, LLC., 2011 U.S. Dist. LEXIS 68428

    (C.D. Cal. 2011) ................................................................ 11

Allen v. United States Fidelity & Co., 342 F.2d 951 (9th Cir. 1965) ........... 11

Bank Meli Iran v. Pahlavi, 58 F.3d 1406 (9th Cir. 1995) ...................….......... 15

Castro v. Maxim Healthcare Servs., 2011 U.S. Dist LEXIS 66121 (C.D. Cal.

    2011) ...................................................................................... 11

Cruz v. County of Los Angeles, 65 Fed. App. 627 (9th Cir. 2003) .........  4, 13

Designing Health, Inc. v. Erasmus, 202 U.S. Dist. Lexis 277790

    (C.D. Cal. 2002) ............................................................. 14

Eminence Capital, LLC. v. Asperon, Inc., 316 F.3d 1048 (9th Cir. 2003) ...   10

Hinton v. Pacific Enters., 5 F.3d 392 (9th Cir. 1993) ...........................   4

Kang v. PB Fasteners, 268 Fed. Appx. 548 (9th Cir. 2008) ....................   5

Linder v. Readers Digest Ass'n, 231 Fed. Appx. 663 (9th Cir. 2007) ........   13

Martinez v. Newport Beach City, 125 F.3f 777 (9th Cir. 1997) ...............   10

Professional Programs Group v. Department of Commerce, 29 F.3d 1349

    (9th Cir. 1994) ................................................................   11

Superbalife, Int'l v. Powerpay, 208 U.S. Dist. LEXIS 89204

    (C.D. Cal. 2008) .............................................................   13

Tasharal v. County of Los Angeles, 170 Fed. Appx. 449 (9th Cir. 2006) ....   4

Trulist v. Barton, 107 F.3d 684 (9th Cir. 1995) .................................   14

William Hablinski Architecture v. Amir Const., Inc., 2004 W.L. 4909901

    (C.D. Cal. 2004) .............................................................   4

U.S. Structures, Inc. v. JP Structures, Inc., 130 F.3d 1185 (6th Cir. 1977) ...   12

United States v. Convalescent Enter., Inc., 766 F.2d 1342 (9th Cir. 1985) ...   14

Yacla v. Department of Air Force, 943 F.2d 1388 (5th Cir. 1991) ............   10

# TABLE OF STATUTES AND RULES

28 U.S.C. § 1927 ……………………………………………..…    14

Local Rule 3-7 …………………………………………….......    11

Local Rule 6-1 …………………………………………………..1, 11

Local Rule 7-3 …………………………………….   1, 3, 5, 9, 11, 12, 13, 14

Local Rule 83-7 ……………………………………………..    13

Rule 15(a), Fed. R. Civ. Proc. ……………………………………    5, 10

# TABLE OF SECONDARY AUTHORITIES

3 W. Schwarer, A. Tashima & J. Wagstaffe, California Practice Guide –

    Federal Civil Before Trial (2010)…………………………………..    6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff, 1 800 GET THIN, submits this Opposition to Defendants Ex Parte Application to Strike Plaintiff's Motion for Leave to Amend filed on July 5, 2011. 1 800 GET THIN's Opposition is based on the following:

(1) 1 800 GET THIN complied with Local Rule 7-3's "meet and confer" requirement when its counsel sent two (2) e-mails and had two (2) face-to-face meetings with defendants' counsel before filing the Motion for Leave to Amend;

(2) 1800 GET THIN's Motion for Leave to Amend was filed with 31-days notice which exceeded Local Rule 6-1's 28-day notice requirement, and defendants actually received the Motion on July 1, 2011, acknowledging receipt of such on July 2, 2011, which was 30 days prior to the August 1, 2011, hearing date;

(3) Defendants' request for a hearing date of August 29, 2011, is unreasonable, and defendants have demonstrated no justification for such a lengthy continuance or prejudice which would justify a continuance.

(4) Defendants have failed to properly "meet and confer." Defendants' counsel sent one email on a Saturday, a non-business day and Holiday weekend. Defendants failed to make any attempt to contact Plaintiff's counsel telephonically nor did they make any attempt to obtain any statement from Plaintiff's counsel with regard to the Ex Parte Application.

## II.

## 1 800 GET THIN COMPLIED WITH LOCAL RULE 7-3, AND DEFENDANTS MAKE NO SHOWING OF FAILURE TO "MEET AND CONFER" OR PREJUDICE

### A. 1 800 GET THIN's Counsel "met and conferred" with Defendants.

#### 1. Mr. Silverman sent e-mails and had two (2) personal meetings.

Defendant argues that 1 800 GET THIN's counsel, Mr. Robert Silverman failed to 'meet and confer' with defendant's counsel prior to filing its Motion for Leave to Amend Second Amended Complaint, and then "lied" about doing so to the Court. (Defendants Motion, p. 1, lines 9-12)  However, not only did Mr. Silverman exchange e-mails with defense counsel on June 1 and June 2, 2011, concerning the motion for leave to amend in which he identified the basis for the motion, but also he had two (2) personal meeting with defense counsel, Kelli Sager at the Los Angeles County Superior Court on June 27, 2011, and June 29, 2011 while handling other cases between the parties.

At both personal and face-to-face meetings, Mr. Silverman was readily available to discuss the June 1 and 2 emails concerning the Amended Complaint. Ms. Sager did not make any inquiry into the e-mail exchange or request any clarification concerning the alleged unanswered email.  At the June 29, 2011 hearing, Mr. Brian Oxman specifically states that there was an exchange between counsel as well.  The vitriolic language in defendants' Ex Parte Application is not only improper, but also factually incorrect as there was full and complete compliance with the "meet and confer" requirements.  Additionally, Ms. Sager, produces no evidence to substantiate that any additional meet and confers would have resolved the pending issue or that it would have a different result.

Mr. Silveman testifies that he set forth the basis for the request to amend the complaint in two (2) e-mails dated June 1, 2011.  The first e-mail stated he was going to file an Ex Parte Application to Amend the Complaint and requested the e-mail constitute an official "meet and confer."  The email was sent to Julie Kohn who added as an attorney on this case.  Ms. Kohn has not been named as an attorney of record for any other matters between the parties. (Exhibit "A").  Based upon the inclusion of Ms. Kohn, it was believed that the Defendants would know

which case was being referenced.  Mr. Silverman has never sent Ms. Kohn an email or included her in any prior emails between counsel.

When defense counsel replied on June 1, 2011, that an Ex Parte request may not be appropriate, (Exhibit "B"), Mr. Silverman agreed and replied, "the basis for the Amendment is to add additional causes of action and to clarify current causes of action." (Exhibit "C").  Mr. Silverman then personally and face-to-face met with defense counsel on June 27, 2011, and a second time on June 29, 2011, at the Los Angeles Superior Court.

Attached to this Memorandum is the Declaration of Brian Oxman who was personally present when Mr. Silverman met and conferred with defendants' counsel on June 29, 2011, at the LA Superior Court House.  Mr. Oxman states that Sager did not wish to hold further discussions with Mr. Silverman.  Mr. Oxman states that Mr. Silverman asked Ms. Sager if she wished to discuss the pleading amendment in the federal court proceedings, and Ms. Sager stated "no."

Defense counsel has artificially created this emergency when she refused to discuss this matter further.  Mr. Silverman cannot be expected to perform the "impossible" when defense counsel refused to discuss the matter.  Local Rule 7-3 was not designed to permit defendants to engage in this type of conduct, and Mr. Silverman complied with Local Rule 7-3 in an exchange of two (2) e-mails and two (2) personal face-to-face meetings.

## 2. Mr. Silverman "met and conferred" in good faith.

Defendant claims that Mr. Silveman did not disclose or discuss the basis for the motion before filing it. (Defendant's Motion, p. 1, lines 12-14).  However, the basis of this Rule 15 Motion for Leave to Amend was disclosed in Mr. Silverman's June 1, 2011, e-mail to Ms. Sager because 1 800 GET THIN had discovered new information and conduct from defendant which warranted an amended complaint. (Exhibit "C").  The e-mails and meetings of June 27 and 29, 2011, met all good

faith requirements to meet and confer. [William Hablinski architecture v. Amir Const., Inc., 2004 WL 4909901 * 3 (C.D. Cal. 2004)]

Defendant's counsel Kelli Sager knew the full extent of the new evidence and basis for the Amended Complaint when she "sanitized," "erased," and "deleted" the competitive advertisements from the editorial articles contained in defendant's Request for Judicial Notice filed April 26, 2011 (Docket 5-2). Defendants' counsel knew she was part of defendant's concerted conduct of concealing from the Court the anticompetitive and protection scheme conduct of defendants' conducting sponsored "infomercials" with 1 800 GET THIN's competitors which attacked their 1 800 GET THIN. Defense counsel hid from this Court the protection scheme which defendants operated where advertisers who pay a "premium" to defendant LA Times are granted "immunity" from editorial attack. Advertisers who refuse to pay "protection", such as 1 80 GET THIN, are subjected to false and misleading accusations "sponsored" by its competitors and where LA Times engages in revenue sharing with these sponsoring advertisers.

The District Court has considerable latitude in determining compliance with local rules. [Hinton v. Pacific Enters, 5 F. 3d 392, 395 (9th Cir. 1993)] The District Court determination of compliance with local rules should be based on reasonableness and sound discretion. [Tasharal v. County of Los Angeles, 170 Fed. Appx. 449, 451 (9th Cir. 2006)] The requirement to "meet and confer" is designed to make a "good faith" attempt to resolve motions a party seeks to file with the court, and does not require any party to attempt the impossible. [Cruz v. County of Los Angeles, 65 Fed. App. 627, 628 (9th Cr. 2003)] Ms. Sager offers no testimony or evidence to establish that any additional meet and confers would have been productive or dispositive of any issue.

Defendant acknowledges that Mr. Silverman sent her an e-mail stating the basis for amending the Complaint was to add additional causes of action and to

clarify current causes of action. (Defendants' Memo, p. 3, lines 18-25).  It escapes explanation of what further information Mr. Silverman could have provided in additional "meet and confer" sessions with defendant's counsel.  Mr. Silverman had two (2) in-person face-to-face meetings with defendants' counsel on June 27, 2011, and June 29, 2011, and there was no fruitful resolution of the Motion for Leave to File Second Amended Complaint.  Defendant identifies nothing that would be accomplished by additional meetings.

### 3. 1 800 GET THIN met the times requirements of Local Rule 7-3

Defendant claims that Mr. Silverman waited a month after his June 1, 2011, e-mail without "any further communication of any kind" before he filed his Motion. (Defendant's Memo, p. 3,line 26, top. 4, line 3).  However, not only were there two in-person meetings following June 1, 2011, but also Local Rule 7-3 requires counsel to confer 20-days prior to filing a motion which need not be filed within a specified period of time, such as motions under Rule 15(a). [Kang v. PB Fasteners, 268 Fed. Appx. 545, 548 (9th Cir. 2008)]  There was no undue delay in this matter and the motion was filed within two (2) days of the final "meet and confer" in-person meeting with defense counsel on June 29, 2011.

Following the meet and confer, Defendants published another false and misleading story about the Plaintiff.  This information needed to be incorporated into the Amended Complaint.  In addition, ongoing investigations were continually developing new information in support of the Amended Complaint.  The July 1, 2011 filing was merely the date in which the Motion and Amended Complaint were completed.

Defendant's counsel claims she never received a response to her June 2, 2011, e-mail. (Defendants' Memo, p. 3, line 26).  However, Mr. Silverman met with Ms., Sager on June 27 and 29, 2011, and Ms. Sager did not wish to conduct any discussions regarding any of the pending matters between the parties, and in

particular did not have anything additional to discuss regarding Mr. Silverman's request to file an Amended Complaint. Defendants' failure to tell this Court about the two face-to-face meetings is further compounding conduct from defendants' counsel who also concealed the advertisers by erasing them from her Motion to Dismiss. (See discussion below, pp. 5-6 infra.)

## B. 1 800 GET THIN's Notice of Motion was Properly Given

### 1. Defendant received 31-days notice of the Motion.

Defendants claim Mr. Silveman engaged in "gamesmanship" by filing a Motion for Leave to File an Amended Complaint on July 1, 2011, at 6:30 p.m. (Defendants' Memo, p. 8-10). However, the Motion was served and filed 31-days prior to the August 1, 2011, noticed hearing date, which fully complied with the 28-day notice requirements under Local Rule 6-1 for electronically served motions. [3 W Schwarer, A. Tashima & J. Wagstaffe, California Practice Guide – Federal Civil Procedure Before Trial ¶ 12:34, at 12-15 (2010)]

Further, the undisputed facts are that defendant actually received the motion on July 1, 2011. (Sager Dec., p. 3, lines 15-19 & Exhibit "F"). The actual receipt of the motion constituted sufficient notice and was 31-days prior to the August 1, 2011, hearing date. There is no exclusion from the notice period for weekends or holidays. [Id. ¶ 12:35, at 12-16]

Defendants have failed to establish any "gamesmanship" on 1 800 GET THIN's part. In fact, based upon the meet and confer, Plaintiff did not file an Ex Parte Application to Amend and filed a Notice Motion. In addition, the filing of the Motion on Friday, July 1, 2011 actually provided 31 days Notice.

Defendants continue to hide the ball as they fail to inform the Court of the real motivation behind the need for an extension of time. It can only be perceived that defendant's motivation for the Ex Parte Application is to continually hide the fact that defendants engaged in "sanitizing" the advertisers from the news articles

in its pleadings before this Court filed April 26, 2011, an act that should result in the recusal of Ms. Sager as attorney of record.

The false and misleading accusations by Ms. Sager is merely a diversionary tactic to avoid the real issues and shift the focus away from this very serious case where in the Los Angeles Times and its writers are engaged in anticompetitive, antitrust and racketeering schemes all designed to injure 1 800 GET THIN.

## 2. **Defendants' request for a continuance to August 29, 2011, demonstrates a lack of candor to this Court.**

Defendants' state that the hearing on the motion should be continued to August 29, 2011. (Defendant's Motion, p. 1, lines 22-27). However, not only have defendants made no showing of why two (2) months from now is necessary, but also the request demonstrates another example of defendants' lack of candor to this Court regarding the real reason for its request which is most likely based on its ongoing bankruptcy proceedings in Delaware in the case of In re Los Angeles Times Communications, Ltd., United States Bankruptcy Court, District of Delaware, Case No. 08-13185 (KJC), consolidated with the Tribune Company bankruptcy, Case No. 08-13431 (KJC).

On June 28, 2011, defendant Times reported on the bankruptcy stating that a motion was being considered by the Bankruptcy Judge Kevin Carey to approve its Reorganization Plan and the Judge had order the creditors and debtors to attempt to resolve their differences. (Exhibit "D").

Defendant stated:

"U.S. Bankruptcy Judge Kevin Carey on Tuesday [June 288, 2011,] asked the bickering parties in the Tribune Co. Chapter 11 case to continue trying to settle their differences.

"But he also said he would spend most of the next month coming up with a decision that would resolve the case, although he made no promises about when he would be finished." (Exhibit "D").

The real reason defendants want to delay this matter to August 29, 2011, is to prevent its anticipative, racketeering, and disparaging conduct from being brought to the attention of its creditors and the Bankruptcy Court. Defendants want to hide the fact it engages in a "protection scheme" to have its advertisers sponsor repeated attacks against their competitor 1 800 GET THIN in an "infomercial" designed to generate shared advertising revenues to finance its bankruptcy.

This Court should not participate in the unreasonable request to continue a hearing where defendants have engaged in a lack of candor with the Court as to the real reason for its request, and the Court should not permit defendant to hide the egregious conduct of engaging in a "protection" scheme whereby its has gathered a group of 1 800 GET THIN's competitors advertisers together to pay an advertising "premium" to attack the market leader 1 800 GET THIN and thereby share revenues in a concerted and anticompetitive joint venture to destroy competition.

On top of defendant concealing the "advertisers" who sponsor the anticompetitive advertisements against 1 800 GET THIN in its papers filed April 26, 2011, and on top of defendant failing to "meet and confer" before filing this Ex Parte Application, defendant has now "concealed" from the Court the actual reason for its request for a continuance to August 29, 2011. The lack of defendants' candor in this case has been excessive, and defendants made no effort to "meet and confer" or even contact Mr. Silverman telephonically over the holiday weekend. As such, Defendants attempt to falsely malign Mr. Silverman for "gamesmanship" and "lack of civility" when Defendant's Ex Parte request for a one month continuance violates the very same matters of which Defendants' complain.

### 3. **Defendant fails to establish a lack of civility.**

Defendant claims there was a "deliberate transgression of this Court's Civility and Professional Guidelines" because the Notice Motion was filed at 6:30 p.m. on July 1, 2011 for hearing August 1, 2011, 31-days later. (Defendants' Motion, p. 1, lines 15-19). However, the hearing was scheduled 31-days from the notice, which was more than the required 28-days, and defendants' claim of lack of "civility" defies explanation. Defendant makes no showing there was a lack of civility, especially in light of the fact that it was a Noticed Motion.

Defendants claim they will have less than 5-days to respond to the Motion for Leave to Amend Complaint. (Defendant's Motion, p. 1, lines 20-22). However, the motion was timely filed 31-days before the noticed hearing date of August 1, 2011, which was more than the required notice, and defendant makes no showing any of any prejudice or inability to respond. The undeniable fact is that 1 800 GET THIN timely served defendant with the Motion on July 1, 2011, which was 31-days from the time of hearing. There clearly was no advantaged gained by the filing of the Motion on July 1, 2011 with a hearing date of August 1, 2011, 31 days later.

While defendants have accused 1 800 GET THIN of failing to meet and confer, the truth is it was Defendants who violated Local Rule 7-3 on their Ex Parte Application while 1 800 GET THIN fully complied.

### C. **Defendant Has Failed to Establish Prejudice.**

### 1. **Defendants state no facts showing prejudice.**

Defendants claim it will be "irreparably" prejudiced because it does not have sufficient time to prepare a response to 1 800 GET THIN's Motion for Leave to File Second Amended Complaint. (Defendants' Memo, p. 2, lines 10-17). However, defendant makes no showing of prejudice, and there is not one factual allegation which demonstrates inability to respond to the Motion for Leave to

Amend. The claim that defendant will only have five (5) business days to respond is demonstrated without foundation by the undeniable fact defendant had actual notice of the Motion no later than July 2, 2011, which was 30 days prior to the hearing on the motion. Defendant makes no showing what "defense" to the Motion for Leave to Amend, as opposed to the Second Amended Complaint itself, would be in any manner prejudiced by the 31-days notice 1 800 GET THIN provided.

The policy of permitting the amendment to a pleading under Rule 15 should be applied with "extreme liberality." [Eminence Capital, LLC v. Asperon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003)] Rule 15 requires leave to amend should be freely given unless the opposing party shows undue prejudice, bad faith, or dilatory motive, on the part of the moving party. [Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997)] A denial of leave to amend should only take place where extensive proceedings have occurred and a strong showing of prejudice is made. [Yacla v. Department of Air Force, 943 F.2d 1388, 1391 (5th Cir. 1991)]

There is no basis for defendants to claim prejudice because no facts exist which would establish prejudice. Defendant's claim to attack the Amended Complaint is misplaced. Rule 15 allows for the Amendment of a Pleading unless it causes prejudice. This is not an inquiry into the document itself, rather the process and the stage of the proceedings. Here, no scheduling order has been issued.

Defendants' claim of insufficient time to respond strains credulity because defendants apparently had sufficient time to prepare a 45- page Ex Parte Application in a matter of only three (3) days over the same holiday weekend that they claim prevents them from formulating a timely response.

### 2. No basis exists to strike 1 800 GET THIN's Motion.

Defendant argues the Motion for Leave To Amend and the Amended Complaint should be stricken. (Defendants' Motion, p. 2, lines 1-6). However,

defendant does not identify any reason, fact, or evidence which would justify striking the Motion or the Amended Complaint, and defendant's effort to strike a motion of which defendant had actual notice 30-days prior to the hearing lacks foundation. The Motion complied with all "meet and confer" requirements under Local Rule 3-7 and notice requirements under Local Rule 6-1.

Defendant sent Mr. Silverman an e-mail on July 2, 2011, demanding Mr. Silverman withdraw this Motion and utilizing "vitriolic" language to suggest Mr. Silverman has "misrepresented" his e-mails and discussions with Ms. Sager. (Defendants' Motion, p. 1, lines 9-12). The July 2, 2011, e-mail is a direct contradiction to defendants' claim of lack of sufficient notice. Defendants had actual notice of this motion no later than July 2, 2011, 30-days before the hearing, and defendants' claim of misrepresentations are without merit.

The court should strike a pleading for failure to comply with Local Rule 7-3 only where there is a showing of prejudice by the noncompliance. [Castro v. Maxim Healthcare Servs., 2011 U.S. Dist. LEXIS 66121 * 11 n. 5 (C.D. Cal. 2011)] The Court may excuse noncompliance of Local Rule 7-3 where it is "so slight and unimportant that the sensible treatment is to overlook [it]." [Professional Programs Group. v. Department of Commerce, 29 F.3d 1349, 1353 (9th Cir. 1994)(quoting Allen v. United States Fidelity & Guaranty Co., 342 F.2d 951,954 (9th Cir. 1965)]

The purpose of the meet and confer obligation of Rule 7-3 is to "reach a revolution which eliminates the necessity for a hearing." [Abtahi v. Chase Home Financial, LLC., 2011 U.s. Dist. Lexis 68428 * 1 (C.d. Cal. 2011)]. Defendants provide this Court with no statement, evidence, or testimony that any further discussion would have resolved anything.

### 3. **Defendants' reference to other lawsuits is irrelevant.**

Defendant points to other lawsuits Mr. Silverman is handling for other clients in an attempt to suggest they are in some manner related to this proceeding and that the Court should consider proceedings involving strangers when it reviews this matter. (Defendant's Memo, p. 1, lines 3-5). However, the fact there are other cases pending with other clients is irrelevant to this matter. [U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1977)(irrelevant evidence must be disregarded when contained in an affidavit)] Nothing in any other proceeding has any bearing on 1 800 GET THIN's Motion to Amend the Complaint.

### D. **Defendants did not "Meet and Confer" for the Ex Parte Application**

While arguing 1 800 GET THIN's two (2) e-mails and two in-person meetings failed to satisfy "meet and confer" obligations, defendants argue that their "written notice" e-mail of this application given on Saturday, July 2, 2011, somehow satisfies Rule 7-3's "meet and confer" requirement for this Ex Parte Application the next business day at noon on July 5, 2011. (Defendant's Motion, p. 2, lines 7-10).

However, not only did defendant not meet and confer regarding this Ex Parte Application, but also it "never" gave telephonic notice of this Ex Parte Application. The failure to have a telephonic notice or to "meet and confer" only highlights defendants' duplicity because Mr. Silverman did everything he could, including face-to-face meetings, to resolve the Motion for Leave, while defendants did nothing to resolve their Ex Parte Application.

Defendants claim Ms. Sager sent an e-mail to Mr. Silverman on Saturday, July 2, 2011, and that by the next business day, July 5, 2011, at noon she had not received a response. (Defendant's Memo, p.4, lines 13-18). In fact, shortly after the filing of the Ex Parte Application Ms. Sager was provided with a response that

had to be amended due the filing of the Ex Parte Application. This email is attached herein. ("Exhibit "E")

However, it is defendants who complain of the holiday weekend, and then turn around and complains that Mr. Silverman did not respond in three (3) hours on the first business day following the same holiday period. More important, defendant failed to telephone Mr. Silverman to give notice or to discuss this Ex Parte Application as mandated by Local Rule 7-3. [Cruz v. County of Los Angeles, 65 Fed. App. 627, 628 (9th Cir. 2003)(only justification for failure to comply with meet and confer obligation is where compliance is impossible)] Defendant's conduct in this matter has been improper. [Superbalife, Int'l v. Powerpay, 2008 U.S. Dist. LEXIS 89204 * 5 (C.D. Cal. 2008)]

### E. **Defendants' Request for Sanctions is Improper**

#### 1. **Defendants have shown no bad faith conduct.**

Defendants seek sanctions against Mr. Silverman of $2,655.00 under Local Rule 83-7. (Defendant's Memo, p. 5, lines 10-15). However, defendants make no showing of any willful, grossly negligent, or reckless conduct, and there is no showing of "bad faith" on Mr. Silverman's behalf. This request is in retaliation for defendants' counsel having been exposed for concealing, sanitizing, and erasing the advertisements to the articles in this case, which goes to the heart of the Second Amended Complaint. Defendants' conduct has been anticompetitive, extortionate, and trade libelous, and all the Motion for Leave to File Second Amended Complaint seeks to accomplish is exposing what was so obvious to defense counsel that she had to hide it from the Court when she filed her Request for Judicial Notice on April 26, 2011 (Docket 5-2).

In Linder v. Reader's Digest Ass'n, 231 Fed. Appx. 663, 665 (9th Cir. 2007), the Court stated:

We review decisions whether or not to award sanctions for abuse of discretion. <u>United States v. Associated Convalescent Enter., Inc.</u>, 766 F.2d 1342, 1345 (9th Cir. 1985). District courts enjoy wide latitude in assessing whether sanctions are appropriate. <u>See Trulis v. Barton</u>, 107 F.3d 685, 694 (9th Cir. 1995). Appellants and Reader's Digest did discuss the amended complaint as required by local rule 7-3, though in little detail and for only 'three (3) minutes or less.' Reader's Digest may have stretched the truth by describing the brief conversation as 'conferences,' but the district court acted within its discretion in refusing to find that it was an attempt to commit fraud on the court."

Mr. Silverman did far more than have a three-minute discussion with Ms.Sager. He sent e-mails and had two (2) in-person face-to-face meetings. There was full compliance with Rule 7-3, and the request for sanctions is without factual support.

It is difficult to imagine the granting of sanctions because of a request made on Saturday, July 1, 2011, went unanswered over a holiday weekend followed by the filing of an Ex Parte Application the next business day before noon.   It is defense counsel who has created their own emergency through precipitous action, not plaintiff.   Sanction orders under Local Rule 7-3 bear substantial similarity to sanctions under 28 U.SC. § 1927 and require a showing that counsel's conduct unnecessarily multiplied litigation costs. [<u>Designing Health, Inc. V. Erasmus</u>, 2002 U.S. Dist. LEXIS 277790 * 60 (C.D. Cal. 2002)] Defendants' Ex Parte request for sanctions is a veiled attempt to mask defendant's lack of candor to the Court and lack of concrete facts to demonstrate prejudice that would defeat the Rule 15 standards.

## 2. **Defendants own affidavits contradict defendants**

Defendants present the hearsay affidavit of Lisa Kohn in support of their request for sanctions. [Bank Meli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995)(hearsay in affidavits should be disregarded)]  However, Ms. Kohn does state:

> "David Wright Termain senior partner Kelli L. Sager also worked on this application and supporting documents, **and communications with plaintiff's counsel, Robert Silverman**.  Her agreed-upon hourly billing rate for this matter, which includes a discount from her normal billing rate, is $522.00.  **I reviewed Ms. Sager's time records, and she spent over 2.5 hours in connection with this application and related communications with Mr. Silverman.**" (Kohn Dec., p. 1, line 24, to p. 2, line 2)(emphasis added).

It defies explanation of how Attorney Sager spent 2.5 hours communicating with Mr. Silverman, yet there was no "meet and confer."  Perhaps not all of that time was spent in "communications with Mr. Silverman," but certainly two (2) e-mails and two (2) in-person meetings were spent communicating with him. Defendants Ex Parte request for sanctions is improper.

## III.

## CONCLUSION

The Ex Parte Application should be denied.

Dated: July 6, 2011                    **SILVERMAN & ASSOCIATES**

Robert B. Silverman
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system on July 6, 2011.

/s/ Robert B. Silverman

## DECLARATION OF BRIAN OXMAN

I, Brian Oxman, hereby declare that I have personal firsthand knowledge of the following facts and if called upon to testify, I would competently testify as follows:

1. I am an attorney at law admitted into practice before the United States District court, Central District of California. I submit this declaration in support of plaintiff, 1 800, GET THIN's, Opposition to the LA Times' Ex Parte Application to Strike Motion for Leave to Amend.

2. On June 29, 2011, I accompanied plaintiff's attorney, Robert Silverman, to the Los Angeles County Superior Court building located at 111 North Hill Street, Los Angeles, California 90012. Defendant LA Times' counsel, Kelli Sager, was present at a hearing in another matter.

3. Mr. Silverman with Ms. Sager following the hearing about a resolution of the issues between us in the 1 800 GET THIN v. LA Times federal case. Ms. Sager stated she did not wish to further discuss any of the pending matters in the federal court proceedings. Ms. Sager refused any discussion, despite Mr. Silverman's request in-person that she do so. When he asked her if they could resolve the Amendment Complaint in the federal case, Ms. Sager said "no."

I declare under penalty of perjury under the laws of the State of California, the foregoing is true and correct.

Executed this 6th day of July, 2011, at Santa Fe Springs, California.

_____
Brian Oxman

## DECLARATION OF ROBERT SILVERMAN

I, Robert Silverman, hereby declare that I have personal firsthand knowledge of the following facts and if called upon to testify, I would competently testify as follows:

1. I am an attorney at law admitted to practice before the United States District Court for the Central District of California, and I am the counsel for plaintiff, 1 800 GET THIN. I submit this Declaration in Opposition to Defendants' Ex Parte Application to Strike Motion for Leave to File Second Amended Complaint.

2. On June 1, 2011, I sent to defendants' counsel, Kelli Sager, and e-mail which stated that 1 800 GET THIN wished to file an Ex Parte Application for Leave to file a Second Amended Complaint. (Exhibit "A"). The email specifically included Julie Kohn as she was designated as an attorney of record for this case. On June 1, 2011, I received a reply form Ms. Sager in which she stated that an Ex Parte request may not be appropriate and to specify the basis for the request to file an Amended Complaint. (Exhibit "B"). On June 1, 2011, I sent Ms. Sager an e-mail in which I agreed and stated that "the basis for the Amendment is to add additional causes of action and to clarify current causes of action." (Exhibit "C"). I received a June 2, 2011 email form Ms. Sager which I deemed to be relating solely to the filing of an Ex Parte Application. At that time I had decided that the request for Leave to Amend would be filed as a Noticed Motion and therefore, no further response was necessary.

3. I then received an e-mail from Ms. Sager dated July 2, 2011, in which she stated in "vitriolic" terms that the e-mails do not satisfy the meet and confer requirements of Local Rules and wanted a face to face meeting. She further stated she would oppose any motion, Ex Parte or otherwise.

4. On June 27, 2011, I had an opportunity to be in-person face-to-face with Ms. Sager at the Los Angeles County Superior Court building at 111 North Hill Street, Los Angeles, California 90012 at a hearing for another matter. Ms. Sager made no attempt to address any alleged non failure to respond to her June 2, 2011 email.

5. On June 29, 2011, I again was face-to-face and in-person with Ms. Sager at the Los Angeles County Superior Court. I did asked Ms. Sager if we could resolve the motion to amend in the federal court. I do not recall receiving a response to my question, however, Mr. Oxman heard Ms. Sager indicate to the contrary. The conversation took place in the presence of Brian Oxman who has submitted a Declaration which accompanies the Opposition to Ex Parte Application.

6. Since June 1, 2011, I had a series of email exchanges and was face to face with Ms. Sager on two separate occasions. At no time did Ms. Sager approach me or inquire as to the status of the alleged unanswered email or the filing of the Amended Complaint. I clearly believed that we have sufficiently met and conferred in compliance with Rule 7-3, especially in light of the fact that I opted to file the Motion to Leave as a Noticed Motion.

7. Defendant states that the hearing on the motion should be continued to August 29, 2011. (Defendant's Motion, p. 1, lines 22-27). In review of the Moving papers, defendants have not provided any showing of why a two (2) month delay is necessary. I also believe that the moving papers further demonstrate another example of defendants' lack of candor to this Court regarding the real reason for its request which is based on its ongoing bankruptcy proceedings in Delaware in the case of In re Los Angeles Times Communications, Ltd., United States Bankruptcy Court, District of Delaware, Case No. 08-13185 (KJC), consolidated with the Tribune Company bankruptcy, Case No. 08-13431 (KJC).

On June 28, 2011, defendant Times reported on the bankruptcy stating that a motion was being considered by the Bankruptcy Judge Kevin Carey to approve its Reorganization Plan and the Judge had order the creditors and debtors to attempt to resolve their differences. (Exhibit "E").

8. Defendant stated:

"U.S. Bankruptcy Judge Kevin Carey on Tuesday [June 288, 2011,] asked the bickering parties in the Tribune Co. Chapter 11 case to continue trying to settle their differences.

"But he also said he would spend most of the next month coming up with a decision that would resolve the case, although he made no promises about when he would be finished." (Exhibit "E").

9. It is very apparent that the real reason defendants want to delay this matter to August 29, 2011, is to prevent its anticipative, racketeering, and disparaging conduct from being brought to the attention of its creditors and the Bankruptcy Court. Defendants want to hide the fact it engages in a "protection scheme" to have its advertisers sponsor repeated attacks against their competitor 1 800 GET THIN in an "infomercial" designed to generate advertising revenues to finance its bankruptcy. This Court should not participate in the unreasonable request to continue a hearing where defendants have engaged in a lack of candor with the Court as to the real reason for its request, and the Court should not permit defendant to hide the egregious conduct of engaging in a "protection" scheme whereby its has gathered a group of 1 800 GET THIN's competitors advertisers together to pay an advertising "premium" to attack the market leader 1 800 GET THIN and thereby share revenues in a concerted and anticompetitive joint venture to destroy competition.

10. There is no basis for defendants to claim prejudice because no facts exist which would establish prejudice. Defendants' claim of insufficient time to

respond is absolutely ridiculous in light of the fact that over the holiday weekend, they prepared a 45- page Ex Parte Application. It was incumbent on defendants to "meet and confer" before filing its Ex Parte Application which defendants never did.

11. Defendants claim Ms. Sager sent an e-mail to me on Saturday, July 2, 2011, and that by the next business day, July 5, 2011, at noon she had not received a response. (Defendant's Memo, p.4, lines 13-18). However, it is defendants who complain of the holiday weekend, and then turn around and complains that Mr. Silverman did not respond in three (3) hours on July 5, 2011. More important, defendant failed to telephone me to give notice or to discuss this Ex Parte Application as mandated by Local Rule 7-3. In fact, I was preparing a response to the July 2, 2011 email when I received the electronic service of the Ex Parte Application. As a result, I amended my response. A true and correct copy of the responsive email is attached hereto as Exhibit E.

12. I hereby assert that there was nothing sinister about the filing of the Motion for Leave to Amend. The Motion had been continually worked on since June 1, 2011. The Motion went through various revisions and needed to be further amended to incorporate additional investigation and the fact that Stuart Pfeifer wrote an article on June 11, 2011. As a result, the final proposed Second Amended Complaint was completed and promptly filed on July 1, 2011. I set it for hearing on August 1, 2011 knowing that it provided additional time such that there would be no prejudice as a result of the holiday weekend.

13. I also believed that it was important for the Court to know that we had an Amended Complaint as the Defendants' Motion to Dismiss remains under consideration and the ruling on the Motion for Leave could materially affect the Motion to Dismiss. Therefore additional delay was not warranted.

14. Defendants' request for sanctions against me on this Ex Parte proceeding is improper. Not only is an Ex Parte preceding not the proper forum for such a request, but also defendants make no showing of any willful, grossly negligent, or reckless conduct, and there is no showing of "bad faith" on my behalf. I sent e-mails and had two (2) in-person face-to-face meetings with defense counsel. I have fully and in good faith complied with Local Rule 7-3.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed this 6th day of July, 2011, at Los Angeles, California.

Robert B. Silverman

# EXHIBIT "A"

# EXHIBIT "A"



Robert Silverman <silveratty@gmail.com>

# Meet and Confer - Amended Complaint

**Robert Silverman <silveratty@gmail.com>**                    Wed, Jun 1, 2011 at 2:27 PM
To: kellisager <Kellisager@dwt.com>, lisakohn@dwt.com

Dear Counsel:

This is to provide you with Notice that we intend to file an Ex Parte Application to Amend the Complaint. As
required, please accept this email as our official meet and confer.

If you are opposing the Ex Parte Application, please specifically provide me with the statement that you
would like included in the Ex Parte Application.

Sincerely,

Robert B. Silverman

# EXHIBIT "B"

# EXHIBIT "B"



Robert Silverman <silveratty@gmail.com>

# Meet and Confer - Amended Complaint

**Sager, Kelli <kellisager@dwt.com>**　　　　　　　　　　　　**Wed, Jun 1, 2011 at 3:17 PM**
To: silveratty@gmail.com
Cc: karlene.goller@latimes.com, "Kohn, Lisa" <LisaKohn@dwt.com>

Mr. Silverman:
Your email does not indicate which of the three pending lawsuits you are talking about, does not provide any
explanation of the proposed amendment to whatever case you are referring to, and does not explain any
basis for any amendment that you might be considering. For these reasons alone, your purported "meet and
confer" email is not that at all, and any filing done where a meet and confer is required will be opposed for
that reason alone.
Moreover, as you are aware, I am out of the country, so any purported ex parte filed now is clearly done for
the sole purpose of prejudicing our client in my absence, and as such is in bad faith. If you choose to file an
ex parte under these circumstances, please be advised that we will be forced to bring your bad faith
conduct to the attention of the court, and to request sanctions against you and whichever client you are
representing.
I hope you will instead refrain from this nonsense.
Sincerely,
Kelli Sager

---

Sent From Blackberry Wireless.

Kelli L. Sager
Davis Wright Tremaine
(213)633-6821
kellisager@dwt.com

---

**From**: Robert Silverman <silveratty@gmail.com>
**To**: Sager, Kelli; Kohn, Lisa
**Sent**: Wed Jun 01 14:27:46 2011
**Subject**: Meet and Confer - Amended Complaint

[Quoted text hidden]

---

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　7/6/2011 3:30 PM

Case 2:11-cv-00505-ODW -E   Document 19   Filed 07/06/11   Page 32 of 42   Page ID #:1013



Robert Silverman <silveratty@gmail.com>

# Meet and Confer - Amended Complaint

**Sager, Kelli <kellisager@dwt.com>**               **Wed, Jun 1, 2011 at 3:19 PM**
To: silveratty@gmail.com
Cc: karlene.goller@latimes.com, "Kohn, Lisa" <LisaKohn@dwt.com>

Ps
To the extent there is any doubt, we will oppose any ex parte brought under these circumstances, and my
emails to you should be included in any papers you choose to file.
Sincerely,
Kelli Sager

Sent From Blackberry Wireless.

Kelli L. Sager
Davis Wright Tremaine
(213)633-6821
kellisager@dwt.com

**From**: Sager, Kelli
**To**: 'silveratty@gmail.com' <silveratty@gmail.com>
**Cc**: 'karlene.goller@latimes.com' <karlene.goller@latimes.com>; Kohn, Lisa
**Sent**: Wed Jun 01 15:17:42 2011
**Subject**: Re: Meet and Confer - Amended Complaint

[Quoted text hidden]

# EXHIBIT "C"

EXHIBIT "C"



Robert Silverman <silveratty@gmail.com>

# Meet and Confer - Amended Complaint

**Robert Silverman <silveratty@gmail.com>**                    Wed, Jun 1, 2011 at 5:24 PM
To: "Sager, Kelli" <kellisager@dwt.com>
Cc: karlene.goller@latimes.com, "Kohn, Lisa" <LisaKohn@dwt.com>

Dear Ms. Sager:

The Ex Parte Application will seek the Court's approval to Filed a Second Amended Complaint in the Federal
Case now pending.  The bassis for the Amendedment is to add additioal causes of actions and to clarify
current causes of actions.

Sincerely,

Robert B. Silverman

[Quoted text hidden]

# EXHIBIT "D"

EXHIBIT "D"



Subscribe/Manage Account   Place An Ad   LAT Store   Jobs   Cars   Real Estate   Rentals   More Classifieds   Custom Publishing

# Los Angeles Times

LOCAL   U.S.   WORLD   BUSINESS   SPORTS   ENTERTAINMENT   HEALTH   LIVING   TRAVEL   OPINION

MONEY & CO.   TECHNOLOGY   PERSONAL FINANCE   SMALL BUSINESS   COMPANY TOWN   JOBS   REAL ESTATE   CARS

Search [GO]

YOU ARE HERE: LAT Home → Collections → Business

ADS BY GOOGLE



Advertisement



**FROM THE ARCHIVES**

Tribune bankruptcy Q & A
*March 7, 2011*

Tribune bankruptcy confirmation hearing begins
*March 7, 2011*

Tribune Co. seeks more time for reorganization plan
*August 16, 2010*

Tribune Co. bankruptcy examiner seeks more time
*June 23, 2010*

Judge in Tribune bankruptcy case to pick examiner
*April 20, 2010*

**MORE STORIES ABOUT**

Business

Media

## Bankruptcy judge urges Tribune Co. and creditors to keep working toward a settlement

Recommend

0     0

*U.S. Bankruptcy Judge Kevin Carey also says he will spend the next month coming up with a ruling in the Tribune case but offers no guarantee as to when he will make a decision.*

**June 28, 2011** | By Michael Oneal

U.S. Bankruptcy Judge Kevin Carey on Tuesday asked the bickering parties in the Tribune Co. Chapter 11 case to continue trying to settle their differences.

But he also said he would spend most of the next month coming up with a decision that would resolve the case, although he made no promises about when he would be finished.

ADS BY GOOGLE

### Chapter 7 & 13 Bankruptcy
Free Consultation & Payment Plans Call us Today (877) 706-7607
www.SteersBankruptcy.com

### Bulletproof Your Assets
Solutions to Protect Assets from Lawsuits/Collections 1-888-521-6577
apcg.net

Tribune Co. — the Chicago parent of the Los Angeles Times, KTLA-TV Channel 5, the Chicago Tribune and other media properties — and its creditors have spent the last 2 1/2 years trying to settle claims stemming from the company's 2007 leveraged buyout. Carey has repeatedly pushed them to resolve the disputes consensually. He appointed a mediator to help the process.

Those efforts have produced a one-sided settlement among Tribune Co. and its senior creditors that doesn't include the company's biggest junior creditor, Aurelius Capital Management, a New York hedge fund. That leaves Carey to wade through complex legal issues to choose between two competing plans.

On Tuesday he said he recognized that "sometimes you need a decision from a judge," and promised to produce one as quickly as possible. But he also said that although both sides are far apart, "they still have good reason to continue their discussions" toward a consensual resolution.

What seems more likely, however, is that they will continue plans to sue each other.

The main purpose of the hearing was to clear the way for the consolidation of 52 individual lawsuits in more than 20 state and federal courts that have been brought by Tribune Co.'s junior creditors against the various beneficiaries of the $8.2-billion buyout, including the company's former shareholders and Sam Zell, the Chicago billionaire who led the buyout and is Tribune Co.'s chairman.

Those cases have been effectively stayed for the time being by an order signed by Carey in the bankruptcy case, but the plaintiffs plan to seek what's known as a multi-district litigation, which would bring the cases together before a federal judge.

**Los Angeles Times** Copyright 2011 Los Angeles Times

*mdoneal@tribune.com* | Index by Keyword | Index by Date

ADS BY GOOGLE

**SRAM Indirect Purchasers**
A Class Action settlement may affect you. For more info, visit:
www.indirectsramcase.com

**Chapter 7 & 13 Bankruptcy**
Free Consultation & Payment Plans Call us Today (877) 706-7607
www.SteersBankruptcy.com

| Email | Print | Digg | Twitter | Facebook | StumbleUpon | Share |

FEATURED



A reversal on carbs



BMW layoffs exemplify the evisceration of the middle class



Lung cancer victim's deathbed image sends potent message

**MORE:**

Taylor Guitars has thrived by being different

Maria Shriver files for divorce

# EXHIBIT "E"

# EXHIBIT "E"

 **Gmail**                                              Robert Silverman <silveratty@gmail.com>

# Response to your Request

**Robert Silverman <silveratty@gmail.com>**                         **Tue, Jul 5, 2011 at 2:10 PM**
To: kellisager <Kellisager@dwt.com>, "Goller, Karlene" <karlene.goller@latimes.com>

Dear Ms. Sager:

Contrary to your assertions, I am not frustrated at all. And contrary to your other assertions and attempts
to mislead Judge Wright, only one case has actually been ruled upon. The other two cases are pending.
Your arrogance concerning these matters do not serve you well. Until there are final rulings, neither you nor
your client can claim victory. The Amended Complaint is based upon the actions of your client. It is you who
has violated the rules and civility of the court and counsel.

With regard to the Meet and Confer, you should recall a series of emails back on June 1, 2011. Those
emails discussed my desire to file an Ex Parte application for the purpose of filing an Amended Complaint.
You raised certain issues for which after careful consideration I conceded that an Ex Parte application would
have been inappropriate. Therefore, we opted for a Noticed Motion. Given the fact that Mr. Pfeifer then
wrote another ridiculous story on June 11, 2011, the Amended Complaint was delayed to incorporate these
actions. However, the essence of either the Ex Parte or the Noticed Motion was discussed with you which is
adequately documented. June 1 is clearly more then 10 days prior to the filing of the Noticed Motion. I
have also personally met with you in two separate Courtrooms on two separate days (June 27 and June
29). No time during any of these court meetings did you inquire or express any desire to discuss the
Amended Complaint. I was available and willing to discuss this had you asked. And if had asked, then I
would have informed you that we were going to file the Amended Complaint pursuant to a Noticed Motion.
Therefore, in no uncertain terms, I disagree with you, and nothing was misrepresented to the Court.

I also disagree with you concerning the so called short Notice. While I expressly stated to you that I would
prefer additional time to respond to your Motion to Dismiss, you _intentionally_ filed your Motion to Dismiss on
short Notice. There is NOTHING in the Court rules or Judge Wright's Courtroom Rules with regard to this
so called "Short Notice." Just like you previously erroneously stated that Oppositions need to be filed by
5:00 pm. When I requested that you provide me with the legal authority for your made up theory, you failed
to respond. Again, I request that you provide me with reference to the Rule that disfavors this so called
"Short Notice." My client's Motion has been timely filed and you have been provided with timely Notice all in
accordance with the Rules.

Furthermore, when I asked you for an extension of time because you set your Motion to Dismiss on short
notice, you refused claiming that my client had a team of lawyers working for them. A team which at that
point was 4 independent lawyers addressing different issues between my client and your client. Last time I
checked Davis Wright Tremaine has hundreds of lawyers. Finally, this is a Rule 15 Motion to Amend the
Complaint. Case law is very clear that Amendment should be freely given and liberally construed. So I am
unclear why your firm with hundreds of lawyers which has probably defended such Motions multiple times in
the past, would need additional time.

Finally, your threats do not scare me nor my clients. You should examine yourself and your own conduct
when discussing unprofessional conduct. It was _you_ who filtered the stories and hid from the Court the
advertising and the scheme of your client. In fact, it will be our intent to call you as a witness due to your
actions in attempting to conceal your clients actions. Additionally, your childish attempt to place Mr. Oxman
in a bad light was a new low as well. If you checked the State Bar website to see he had charges pending
then you knew the Bar still classifies Mr. Oxman as an active attorney. Such conduct only makes you

appear frustrated and desperate.

The Motion was filed on Friday, July 1, 2011.  The hearing date is set for August 1, 2011.  Your opposition is due on July 11, 2011.  You sent me an email on July 2, 2011 acknowledging receipt of the Motion and Proposed Complaint which was not seen by me until this morning July 5, 2011, as I was out of town for the weekend.  Therefore, you clearly were working on Saturday July 2, 2011, which I was not.  I was preparing this email response to you and was surprised to see that you already filed your Ex Parte application.  You failed to meet and confer.  You failed to provide proper Notice.  You failed to include our position.  You failed to make any attempts to contact me by telephone over a Holiday weekend.  It would appear that you should be sanctioned for your conduct in bringing a frivolous Ex Parte Application.  I could have filed the Notice Motion on Monday July 4.  The Motion was filed three days earlier as soon as it was completed.

By all accounts, you have more than 10 calendar days in which to file a response to a basic Rule 15 Motion.  In response, you file a 45 page Ex Parte application over the same period of time you claim that you cannot file an Opposition.  You clearly had time to file an Ex Parte Application in violation of the Rules.  But you expect the Court and myself to simply accept that you do not have time to file an Opposition.

Clearly, Judge Wright has not issued any rulings with regard to the Motion to Dismiss.  The resolution of the Amended Complaint has significant impact on the current Motion.  For the sake of the Court, the hearing of this Motion should not be delayed and it will be our position to Oppose your Ex Parte Application.

Sincerely,

Robert B. Silverman

# EXHIBIT "F"

EXHIBIT "F"

Case 2:11-cv-00505-ODW -E    Document 19    Filed 07/06/11    Page 42 of 42    Page ID #:1023



Robert Silverman <silveratty@gmail.com>

# FW: proposed email to Silverman

**Sager, Kelli <kellisager@dwt.com>**          Sat, Jul 2, 2011 at 2:25 PM
To: Robert Silverman <silveratty@gmail.com>
Cc: "Glasser, Jeffrey" <JeffreyGlasser@dwt.com>, "Kohn, Lisa" <LisaKohn@dwt.com>, "Goller, Karlene"
<Karlene.Goller@latimes.com>


Mr. Silverman:
Notwithstanding your evident frustration that you have been unsuccessful thus far in the state court lawsuits
against our clients - and we have confidence that the pending federal lawsuit will be dismissed as well - your
improper filing of a motion at 6:30 p.m. on the Friday before a holiday weekend, scheduled on minimum
notice, sets a new low for inappropriate and unprofessional conduct.

Setting aside the merits of the motion (or lack thereof), it has been filed in clear violation of the Court rules,
which require that the parties "meet and confer" at least ten days before the motion is filed, to "discuss
thoroughly ... the substance of the contemplated motion." LR 7-3. Not only have you failed to comply with
Rule 7-3, but you have flatly misrepresented that fact to the Court, by attesting in a declaration that such a
"meet and confer" has taken place! As you know, the only mention you have ever made of seeking to
amend the Complaint in the pending federal action was in an email exchange a month ago, when you
purported to "give notice" of your intent to file an ex parte application to amend the Complaint, without ever
identifying any basis for an amendment or any changes you proposed to make. I have no doubt that Judge
Wright will look askance on your failure to comply with the Rules, and even more so on your deliberate
misrepresentation to the Court on that point.

The Court's rules also make clear that setting motions on minimum notice is disfavored - not to mention the
gamesmanship engaged in here, where the motion was filed after close of business on the Friday before a
holiday weekend.

If you do not immediately withdraw your motion, or reschedule it for a hearing no sooner than August 29,
2011, we will file an ex parte application with the Court on Tuesday, asking Judge Wright to either strike the
motion entirely, given your failure to comply with the Rules (and your improper filing of a motion to amend in
light of our pending motion to dismiss the current Complaint), or alternatively, we will ask him to reschedule
the hearing on your Motion for August 29, 2011. We will simultaneously ask him to sanction you and your
clients for this improper conduct.

I look forward to hearing from you.

Sincerely,
Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
885 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.