**SILVERMAN & ASSOCIATES**
**ROBERT B. SILVERMAN SBN 170517**
**25 S. OAK KNOLL AVE., SUITE 504**
**PASADENA, CA 92683**
**TEL: 714-936-7499**
**FAX: 626-298-6630**
**EMAIL: SILVERATTY@GMAIL.COM**

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| 1 800 GET THIN,<br><br>      Plaintiffs,<br><br>      vs.<br><br>MICHAEL HILTZIK, etc., et al.,<br><br>      Defendants. | Case: 2:11-CV-0505-ODW(Ex)<br><br>**PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION FOR ATTORNEYS FEES**<br><br>HEARING DATE: SEPT ⊇ 2011<br>TIME:  1:30 PM<br>COURTROOM: 750 - Roybal<br><br>HON. OTIS D. WRIGHT |

Case No.: 11-CV-0505-ODW-Ex                    OPP TO MTN FOR ATTY FEES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................ 1

    A.  Statement of the Case ............................................... 1

    B.  Defendants' Motions for Fees ..................................... 2

        1.  Defendants' show no exceptional circumstances under the Lanham Act ..................................................... 2

        2.  Defense counsel charges different fee rates in different Courts ........................................................... 4

        3.  Defendants' attorneys have engaged in willful subterfuge .... 4

        4.  Defendants have willfully concealed their 30% discount ...... 6

        5.  Defendants' motion is a duplicate of motions in other cases .. 7

        6.  The Court should deny defendants' entire fee application ..................................................... 8

    C.  Basis for Opposition to Motion for Fees ............................... 9

II.   DEFENDANTS HAVE ENGAGED IN WASTEFUL, DUPLICATIVE, AND UNNECESSARY SERVICES WHICH THEY CONCEALED FROM THE COURT ................................................................ 9

    A.  Defendants Make No Showing of Exceptional Circumstances .......... 9

        1.  Defendants provide no evidence or testimony to support their claim ........................................................... 9

        2.  Defendants' authorities do not support their position ................ 11

        3.  1 800 GET THIN is not a party to any other litigation with defendants ..................................................... 12

    B.  Defendants' Counsel Engaged in Unreasonable and Excessive Services ........................................................... 13

        1.  Defendants "churned" their bill ................................. 13

        2.  Defendants have "padded" their bill ............................. 15

3. Defense Counsel's billing is unreasonable ................................... 16

C. Defense Counsel's Services Were Wasteful, Duplicative, and

Unjustified ........................................................................ 18

1. Defendants' cannot justify the excessive services ...................... 18

2. Defendants hourly fee rate is unreasonable ................................ 19

3. Defendants' request for "Fees on Fees" is improper ......... 20

III.  CONCLUSION ............................................................................... 21

1

## TABLE OF CASES

2

3   Adidas Am., Inc. v. Calmese, 2011 U.S. Dist. 5175 (D.C. Ore. Nov. 19,

4       2010) ................................................................... 10

5   Beatry v. BET Holdings, Inc., 222 F.3d 607 (9th Cir. 2000) ........................... 5

6   Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980) ........................ 5, 17

7   Butler v. Bensinger, 377 F. Supp. 870 (N.D. Ill. 1974) ................................... 14

8   Cairns v. Franklin Mint Co., 292 F.3d 1139 (9th Cir. 2002) ........................... 11

9   Chavez v. City of Los Angeles, 47 Cal. 4th 970 (2010) ................................... 5

10  Classic Media, Inc. v. Mewborn, 532 f.3d 978 (9th Cir. 2008) ....................... 10

11  Commissioner INS v. Jean, 496 U.S. 154 (1990) ........................................... 21

12  Copeland v. Marshall, 641 F.2d 880 ............................................................. 8

13  Cosby v. AutoZone, Inc., 2010 U.S. Dist. LEXIS 137735 (E.D. Cal.

14      December 16, 2010) ................................................... 5, 14

15  Farris v. Cox, 508 F. Supp. 222 (N.D. Cal. 1981) ....................... 7, 8, 13, 15

16  Gagne v. Maher, 594 F.2d 336 ................................................................. 8

17  Gates v. Deukmejian, 987 F.3d 1397 (9th Cir. 1992) ................... 5, 14, 20

18  Gracie v. Gracie, 217 F.3d 1060 (9th Cir. 2000) ........................ 10, 12, 18

19  Hemsley v. Eckerhart, 461 U.S. 424 (1983) ........................... 19, 20

20  In re Atkins, 69 F.3d 970 (9th Cir. 1995) ...................................................... 7

21  In re Singson, 41 F.3d 316 (7th Cir. 1994) .................................................... 7

22  In re Weibel, Inc., 176 B.R. 209 (9th Cirl. BAP 1994) ................................... 7

23  Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614 (9th Cir. 1993) ....................... 11

24  INVEST Fin. Group v. Chem-Nuclear Sys., 815 f.2d 391 (6th Cir. 1987) ........ 20

25  Jadwin v. County of Kern, 767 F.Supp. 2d 1069 (E.D. Cal.

26      2011) ................................................... 5, 16, 18, 20, 21

27

28

James v. Cardinal Health 200, Inc., 210 U.S. Dist. LEXIS 12312 (C.D.
    Cal. 2010) ............................................. 6, 9

Jordon v. United States Dept. of Justice, 89 F.R.D. 537 (D.D.C. 1981) .......... 9

Kingsford Products Co. v. Kingsford, Inc., 189 W.L. 161544 (D.
    Kan. 1989) ............................................. 21

Lahoti v. Vericheck, Inc., 636 F.3d 501 (9th Cir. 2011) .................................... 10

Love v. Associate Newspapers, Ltd., 611 F.3d 601 (9th Cir. 2010) .............. 3, 10, 15

Luna v. Hoa Trung Vo, 2011 U.S. Dist. LEXIS 56427 (E.D. Cal. May
    25, 2011) ............................................. 21

Lund v. Affleck, 597 F.2d 75 (1st Cir. 1978) ................................................. 8

Milkovich v. Lorain Journal, 497 U.S. 1 (1990) ............................................. 1

Muniz v. UPS, 2011 U.S. Dist, LEXIS 36697 *3
    (N.S. Cal. March 25, 2011) .............................................. 5, 13, 15, 18, 19

Reynolds v. Coomey, 567 F.2d 1166 (1st Cir. 1978) ........................................ 8

Schwarz v. Secretary of Health & Human Services, 73 f.3d 895 (9th
    Cir. 1995) ............................................. 5, 14

Soler v. G&U, Inc., 801 F. Supp. 1056 (S.D.N.Y. 1982) .................................. 20

Rolex Watch USA, Inc. v. Michel Co., 179 F.3d 704 (9th Cir. 1999) .............. 11

Serrano v. Unruh, 32 Cal. 3d 621 (1982) ............................................. 5, 8

Stephen W. Boney, Inc. v. Boney Services, Inc., 127 F.3d 821 (9th
    Cir. 1997) ............................................. 3, 10

Thompson v. Goez, 45 F.3d 1365 (9th Cir. 1995) ............................................. 21

Vocca v. Playboy Hotel of Chicago, Inc., 519 F. Supp. 900 (N.D. Ill.
    1981) ............................................. 8

# TABLE OF STATUTES

11 U.S. C. section 327 ........................................................... 7

11 U.S.C.  section 330 ........................................................... 7

15 U.S.C  section 1051 .......................................................... 1

15 U.S.C  section 1114(a) ..................................................... 2

15 U.S.C  section 1117(a) ..................................................... 1, 10

15 U.S.C  section 1125 ........................................................ 1, 3

42 U.S.C. section 1988 ......................................................... 15

Federal Rules of Civil procedure Rule 12(b)(6) ................................. 2

Federal Rules of Bankruptcy Procedure, Rule 2014 ............................ 7

California Rules of Professional Conduct, Rule 4-200 .................... 5, 6

# TABLE OF SECONDARY AUTHORITIES

5 McCarthy on Trademarks and Unfair Competition (4th ed. 2001) ................ 19

# I.

## INTRODUCTION

Plaintiff, 1 800 GET THIN submits this Opposition to Defendants' Motion for Attorneys' Fees.  This Opposition is based on the following:

(1)  Defendants' Motion for Fees is made in bad faith because defense counsel has charged one fee rate in this Court and a different fee rate in the Bankruptcy Court for the identical work, while defendants have concealed the overreaching from this Court;

(2)  Defense counsel has willfully concealed that they have granted a 30% discount on their "reduced" fees in the Bankruptcy Court and sought in bad faith to "fool" this Court into believing the requested fee is their ordinary "market" rate;

(3)  Defendants make no showing of "exceptional" circumstances required for an attorney's fees award under the Lanham Act, and defendants have engaged in wasteful, duplicative, and unnecessary service which were excessive.

**A.  Statement of the Case**.

Plaintiff, 1 800 GET THIN, filed this action on January 18, 2011, alleging False Advertising and Trade disparagement under the Lanham Act, 15 U.S.C. section 1051 et seq.  Defendants LA Times is a newspaper, and defendants Hiltzik and Pfeifer are columnists with the Times.   Defendants have engaged in a fraudulent scheme of adopting false names, aliases, and nom de plums to create "strawman" blogger identities where they engaged in "stock-puppeteering" to write false comments about 1 800 GET THIN in a deliberate false attack against 1 800 GET THIN under the names of the other "screen name" defendants and Doe defendant.  (Complaint, p. 12, line 17, to p. 13, line 17).  These false and fraudulent statements constitute the accusation of the commission of crimes, trade libel, and knowingly false claims that 1 800 GET THIN is responsible for the deaths of patients from the surgical facilities who are its advertisers.  Milkovich v. Lorain Journal,497 U.S. 1, 7 (1990)(false accusation of a crime is defamatory per se which enjoys no constitutional protection).  The false accusation constitutes actionable trade libel and product disparagement under section 43(a) of the Lanham Act, 15 U.S.C. sections 1114(a)

1  and 1125.

2  Defendants' actions were egregious, and the Complaint alleges that Hiltzik has

3  utilized alias "shills" and "strawmen" "stock-puppeteering" on his own website where he

4  places confirmatory and defamatory comments about 1 800 GET THIN when in fact, the

5  comments come from him. (Complaint, p. 13, lines 5-9). Defendant Hiltzik has a history

6  of such conduct and that the Times is on notice of such conduct because it has reprimanded

7  him for "sock-puppeteering" in the past, disciplined him for improperly excluding

8  favorable reader comments from his blogs, and censored his blogs so that only his own or

9  disfavorable comments appear. (Complaint, p. 11, line 25, to p. 12, line6).

10  For reasons which 1 800 GET THIN cannot understand, on July 25, 2011, the Court

11  granted defendants' Motion to Dismiss under Federal Rules of Civil Procedure Rule

12  12(b)(6), with prejudice, finding an amendment to the Complaint would be futile.  The

13  Court found that while defendants' actions and reports regarding 1 800 GET THIN were

14  inaccurate, it was speculative as to what damages the reports had caused and whether there

15  were damages cognizable under the Lanham Act.  1 800 GET THIN has suffered at the

16  hands of a willfully false report, but one which the Court has considered a botched attempt

17  to report it from people who knew better but could not help but "botch" the report.

18  **B. Defendants' Motions for Fees**

19  **1. Defendants' show no exceptional circumstances under the Lanham Act**

20  After having filed only one motion in this case and having conducted no discovery,

21  defendants have filed a motion for fees seeking  $97,200.65 in fees, plus an additional

22  $11,506.50 incurred in connection with the Motion for Attorneys Fees, for a total of $108,

23  707.15. (Defendants' Motion, p. 1, lines 2-16).  Defendants' claim that this matter

24  constitutes an "extraordinary" matter under section 35(a) of the Lanham Act, 15 U.S.C. §

25  1117(a), which provides, in part: "The court in exceptional cases may award reasonable

26  attorney fees to the prevailing party."  However, the Ninth Circuit has stated that

27  attorneys' fees may be awarded to a defendant that prevails "[w]hen a plaintiff's case is

28  groundless, unreasonable, vexatious, or pursued in bad faith." Stephen W. Boney, Inc. v.

1   Boney Services, Inc., 127 F.3d 821, 827 (9th Cir. 1997).  Defendants' claim that 1 800
2   GET THIN engaged in such conduct is without merit and lacks any evidentiary support
3   because defendant has produced not one item of evidence or testimony to make a showing
4   of such facts.  They have provided no testimony from Michael Hiltzik denying he engaged
5   in fraudulent "sock-puppeting" and false reporting.  They provide no testimony from Stuart
6   Pfeifer denying he fabricated facts regarding 1 800 GET THIN.

7          The Court's July 25, 2011, ruling found "The mere fact that people could read
8   Defendants' articles or comments and conclude that Plaintiff engaged in medical
9   procedures is too speculative.  Plaintiff has not proffered to the Court sufficient allegations
10  to demonstrate that Defendants' articles and comments were causing individuals to arrive
11  at such a conclusion." (Opinion, 5-25-11, p. 5, lines 20-24).  The Court found that while
12  defendants may have acted falsely, there would be a "nominative fair use" defense against
13  the falsity.  (Id. p. 5, n. 3, lines 26-27).  The Court found that while false publications may
14  have been made, the Ninth Circuit has found "a news report including the publication of a
15  person's trademark is not commercial speech nor does it constitute a use in connection with
16  commercial advertising or promotion under the Lanham Act," and therefore defendants'
17  publications were "outside the scope of § 1125(a)(1)(B)." (Id. p. 6, lines 16).  The Court
18  concluded the "allegations are too speculative to state a claim." (Id. p. 6, line 17).

19         Nothing in 1 800 GET THIN's complaint was groundless, unreasonable, vexatious,
20  or pursued in bad faith.  None of the Court's findings indicate such a exceptional
21  circumstance.  To the contrary, the Court concluded that damages were too speculative, and
22  that while defendants acted with "falsity," the false conduct was not cognizable under the
23  Lanham Act.  There is nothing in the Court's decision or any of the facts in this case to
24  show "exceptional" circumstances that 1 800 GET THIN's case was "groundless,
25  unreasonable, vexatious, or pursued in bad faith." Love v. Associated Newspapers, Ltd.,
26  611 F.3d 601, 615 (9th Cir. 2010).  The Court's Opinion demonstrates just the opposite,
27  that there was falsity involved in this case, only the Lanham Act was not the correct
28  remedy.

1    **2.  Defense counsel charges different fee rates in different Courts.**

2         Defendants' request for attorney fees shows the following fee rates for its attorneys

3    and paralegals:

4         Kelli Sager              $522.00 an hour

5         Jeffrey Glasser          $292.50 an hour

6         Paralegals               $171.00 an hour.

7         However attached as Exhibits "A," "B," and "C" are the July 19, 2011, July 20,

8    2011, and July 25, 2011, Fee Applications which defendants' counsel Kelli Sager and

9    Davis, Wright Termaine LLP, made in the LA Times' bankruptcy proceeding entitled <u>In re</u>

10   <u>Tribune Company</u>, United States Bankruptcy Court, District of Delaware, Case No. 08-

11   13141 (KLC), which is consolidated with <u>In re Los Angeles Times Communications, LLC</u>.,

12   United States Bankruptcy Court, District of Delaware, Case No. 08-13185 (KJC).  In those

13   Fee Applications **which were made only 14- days before defendant filed its current**

14   **motion on August 8, 2011**, defendant lists the following hourly fees rates for these same

15   individuals (Request for Judicial Notice, Exhibit "A," p. 4; Exhibit "B," p. 40; Exhibit "C,"

16   p. 77):

17        Kelli Sager              $470.48

18        Jeffrey Glasser          $261.90

19        Paralegals               $108.00

20        **3.  Defendants' attorneys have engaged in willful subterfuge.**

21        Defendants' attorneys charge one rate for their work to one court and another

22   different rate to another court for the identical work.  The conduct is inexcusable because

23   defense counsel is a fiduciary in the Bankruptcy Court with the highest duty of honesty and

24   full disclosure which they are violating with impunity.  Portions of the attached Fee

25   Applications to the Bankruptcy Court involve the preparation for the litigation involved in

26   this matter.  There is no justification for the different rates, and the different billing rates

27   demonstrated defendants' and their counsel's "bad faith."

28        In <u>Muniz v. UPS</u>, 2011 U.S. Dist. LEXIS 36697 * 3 (N.D. Cal.March 25, 2011), the

Court stated:

> "'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether. Serrano v. Unruh, 32 Cal. 3d 621, 635, 186 Cal. Rptr. 754, 652 P.2d 985 (1982); accord Chavez [v. County of Los Angeles], 47 Cal. 4th [970] at 990 [(2010)].'" If ... the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed, a severer reaction is needful.'" Unruh, 32 Cal. 3d at 635 (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980)) (alterations by Unruh court)."

Attorney fees awards must be based on the reasonable hourly rate of the attorney. Beaty v. BET Holdings, Inc., 222 F.3d 607, 612 (9th Cir. 2000)(courts must carefully review attorney's request to avoid "padding," "duplication," and "excessive" requests). The court determines the rates within the range of reasonable rates charged by the judicially awarded comparable attorneys for comparable work. Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1135 (E.D. Cal. 2011). The court is to carefully scrutinize the bills to prevent unreasonable requests for fees, avoid "padding" in the form of inefficient or duplicative efforts, and unreasonably inflated requests. Cosby v. AutoZone, Inc., 2010 U.S. Dist. LEXIS 137735 * 11 (E.D. Cal. Dec. 16, 2010 ), citing Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 905 (9th Cir. 1995), and Gates v. Deukmejian, 987 F.3d 1392, 1400 (9th Cir. 1992).

It is inexcusable to "double dip" and seek different rates before this Court. The standards of Rule 4-200 of the California Rules of Professional Conduct require honesty in fact, reasonableness, and good faith which defendants' attorneys have violated with impunity. Their conduct is inexcusable and willfully in bad faith.

Defendants contend their rates in their motion are "consistent with those prevailing in the Los Angeles market for legal services." (Defendants' Memo, p. 15, lines 10-13).

1  That is bold faced nonsense.  They charge one rate to one court and another rate to this
2  Court, and then hide the fact from both courts.  The egregious nature of the conduct in this
3  matter violates Rule 4-200 of the California Rules of Professional Conduct.  This conduct
4  in itself is justification for total denial of all fees requested.  James v. Cardinal Health 200,
5  Inc., 2010 U.S. Dist. LEXIS 123312 *6-7 (C.D. Cal. 2010)(a fee request that appears
6  unreasonably inflated is a special circumstance permitting the trial court to reduce the
7  award or deny one altogether.).

8                    **4. Defendants have willfully concealed their 30% discount**

9        While telling this Court they are charging their usual market rate, defendants have
10  engaged in even more disturbing conduct of concealing their discounts to other courts.
11  This conduct is inexcusable.  In the Fee Applications to the Bankruptcy Court attached as
12  Exhibits "A," "B," and "C," defendants' counsel, Davis, Wright & Tremaine, has a ten
13  percent (10%) discount granted to the LA Times in the bankruptcy proceeding, and then on
14  top of that 10% discount a 20% discount ordered by the Bankruptcy Court, for a total of a
15  30% discount.[1]

16       THERE IS NO THIRTY PERCENT (30%) DISCOUNT IN THEIR BILLS BEFORE
17  THIS COURT.  The dishonesty is unfathomable and would reduce the fee application by
18  $32,612.14 ($108,707.15 x 30% = $32,612.14).  The concealment is shocking.  There is no
19  possible way for defense counsel to charge the debtor LA Times the fee requested to this
20  Court because the Bankruptcy Court will not permit it.

21

22

23       [1]  See Fee Application dated July 19, 2011, signed by Attorney Kelli Sager, Dr. Omidi's Request for
     Judicial Notice, Exhibit "A," p. 13, where Attorney Sager states:
24          "Davis respectfully requests that payment be made to Davis pursuant to the terms of the
         Compensation Order for the period of September 1, 2010 through September 30, 2010 in the
25         amount of $61,136.25 (80% of $76,420.31) on account of professional services rendered, and
         $1,292.08 for the reimbursement of expenses incurred in connection therewith, for a total payment
26         of $62,428.33." (See Req. Judicial Notice, Exhibit "B," p. 49, & Exhibit "C," p. 90)
27  The 10% discount shown on pages 16, 18, 19, 21, and on many pages throughout the Applications is taken
     first, and then after the total is arrived at the additional 20% discount ordered by the Bankruptcy Court (pp.
28  13, 49, & 90), is then subtracted.  Defendants and their counsel have deliberately concealed this fact and
     their conduct not only from this Court, but also from the Bankruptcy Court.

1   Section 330(a)(1)of the Bankruptcy Code, 11 U.S.C. § 330(a) provides that "the

2   court may award to . . . a professional person employed under section 327 . . . [A]

3   reasonable compensation for actual, necessary services rendered by the . . . professional

4   person . . . and (B) reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1);

5   In re Weibel, Inc., 176 B.R. 209, 211 (9th Cir. BAP 1994).  Prior Court approval is

6   required before an attorney can charge a bankrupt debtor any fee.  Federal Rules of

7   Bankruptcy Procedure, Rule 2014; In re Atkins, 69 F.3d 970, 973 (9th Cir. 1995).  "Prior

8   approval is strongly preferred because it permits close supervision of the administration of

9   an estate, wards off volunteers attracted to the kitty, and avoids duplication of effort." In re

10  Singson, 41 F.3d 316, 319 (7th Cir. 1994).

11  Defendants and their counsel are  seeking to "fool" this Court into granting an

12  unlawful fee where they profit 30% more in the amount of $32,612.14 than the Bankruptcy

13  Court will permit.  They have already been paid $459,313.91 in the Bankruptcy Court for

14  the exact same research and legal arguments for which they seek compensation in this

15  Court.  (Request for Judicial Notice, Exhibit "A," p. 33). Defendants conduct is

16  unconscionable.  The entire fee application should be denied.

17  ### 5. Defendants' motion is a duplicate of motions in other cases.

18  Defendants filed a 25-page Motion to Dismiss which was a virtual carbon copy of

19  many other motions and memoranda defendants have filed in other cases, including the

20  case of Julian Omidi v. Stuart Pfeifer and Los Angeles Times, LA Superior Court Case No.

21  BC 458479, (Req. Jud. Not., p.114, Exhibit "D"), and Michael Omidi v. Michael Hiltzik

22  and Los Angeles Times, LA Superior Court Case No. BC 458479 (Req. Jud. Not., p. 141,

23  Exhibit "E").[2]  It was as if defendant pushed a button, duplicated its prior motions in like

24  cases, and then asked the court for $108,707.15 in fees in what amounts to an effort to

25  _____

    [2]  In their Motion for Fees, defendants seek many hours analyzing and discussing these two lawsuits.

26  There is no basis for this Court to be asked to compensate defendants for the work they performed in
    dealing with other plaintiffs in other lawsuits.  The only relevance these other lawsuits have to this matter is

27  that the effort defendants' counsel expended were "duplicative" of the efforts in those lawsuits, and now
    they seek to be "double" paid by filing Motions for Attorneys Fees in the other lawsuits and being paid

28  "twice" for the same work. Farris v. Cox, 508 F.Supp. 222, 227 (N.D.Cal. 1981)(duplication of effort is not
    compensable in motion for attorneys fees and constitutes "overreaching").

1 | "fool" the Court to think defendants' attorney provided "new" work for which it could
2 | charge "new" exorbitant fees, instead of the truth that the work was a "duplicate" of work
3 | already performed.

4 | As discussed below, the Motion for Attorneys Fees is a carbon copy of the Motion
5 | for Attorney's Fees filed in the case of <u>Michael Omidi v. Michael Hiltzik and Los Angeles</u>
6 | <u>Times</u>, LA Superior Court Case No. BC 458479 (Req. Jud. Not., p. 167, Exhibit "F"). It
7 | uses the same language, same declarations, and same arguments. It parrots the touting of
8 | Ms. Sager as a "preeminent" attorney, and when the carbon copy nature of the motion is
9 | examined, such touting becomes offensive. (See pp. 20-21 <u>infra</u>.).

10 | **6. The Court should deny defendants' entire fee application.**

11 | Defendants' effort to fool this Court and not disclose the discount mandated by the
12 | Bankruptcy Court is improper. No court should permit this conduct. This is the type of
13 | conduct that should result in denial of the Motion for Attorney's Fees.

14 | In <u>Serrano v. Unruh</u>, 32 Cal. 3d 621, 635 (1982), the Court warned against attorneys
15 | who engaged in a course of conduct of excessive and wasteful billing for unnecessary
16 | services. The Court found such requests should not be approved in any respect, despite the
17 | fact that other parts of their services "might" have had some value. The Court cited to the
18 | federal cases which denied attorneys any compensation when their bills were wasteful,
19 | duplicative, or unnecessary:

20 | "See, e.g., <u>Copeland v. Marshall</u>, <u>supra</u>, 641 F.2d 880, 902-903 [not allowable
21 | are hours on which plaintiff did not prevail or 'hours that simply should not have
22 | been spent at all, such as where attorneys' efforts are unorganized or duplicative.
23 | This may occur . . . when young associates' labors are inadequately organized by
24 | supervising partners' (fns. omitted)]; <u>Gagne v. Maher</u>, <u>supra</u>, 594 F.2d 336, 345
25 | [excessive time spent]; <u>Lund v. Affleck</u> (1st Cir. 1978) 587 F.2d 75, 77 [if initial
26 | claim is 'exorbitant' and time unreasonable, court should 'refuse the further
27 | compensation'];<u>Reynolds v. Coomey</u> (1st Cir. 1978) 567 F.2d 1166, 1167
28 | [duplication of effort]; <u>Farris v. Cox</u> (N.D.Cal. 1981) 508 F.Supp. 222, 227 [time on

1     fee petition denied for 'overreaching']; <u>Vocca v. Playboy Hotel of Chicago, Inc.</u>

2     (N.D.Ill. 1981) 519 F.Supp. 900, 901-902 [fee denied in entirety on ground of

3     counsel's dilatoriness and hours claimed for clerical work]; <u>Jordan v. United States</u>

4     <u>Dept. of Justice</u> (D.D.C. 1981) 89 F.R.D. 537, 540 [fee denied in entirety on ground

5     of unreasonable request and inadequate documentation]." <u>Id</u>. at 635 n.21.

6        Defendants' counsel owed this Court a duty of candor and honesty when they

7     petitioned for fees.  They violated that duty with impunity, dishonesty, and

8     incomprehensible recklessness.  There is no excuse to conceal the 30% discount, the

9     differences in fee rates, and the duplication of other cases.  These multiple act of

10    concealment should result in a total denial of the fees.  <u>James v. Cardinal Health 200, Inc.</u>,

11    2010 U.S. Dist. LEXIS 123312 *6-7 (C.D. Cal. 2010)(inflated free requests is ground to

12    deny requested fee in total).

13        **B. <u>Basis for Opposition to Motion for Fees.</u>**

14        Defendants' Motion for Fees is made in bad faith because defense counsel has

15    charged one fee rate in this Court and a different fee rate in the Bankruptcy Court for the

16    identical work, while defendants have concealed the overreaching  from this Court.

17    Defense counsel has willfully concealed that they have granted a 30% discount on their

18    "reduced" fees in the Bankruptcy Court and sought in bad faith to "fool" this Court into

19    believing the requested fee is their ordinary "market" rate.  Defendants make no showing of

20    "exceptional" circumstances required for an attorney's fees award under the Lanham Act,

21    and defendants have engaged in wasteful, duplicative, and unnecessary service which were

22    excessive.

23                        **II.**

24    **<u>DEFENDANTS HAVE ENGAGED IN WASTEFUL, DUPLICATIVE, AND</u>**

25       **<u>UNNECESSARY SERVICES WHICH THEY CONCEALED</u>**

26              **<u>FROM THE COURT.</u>**

27    **A. <u>Defendants Make No Showing of Exceptional Circumstances.</u>**

28        **1. <u>Defendants provide no evidence or testimony to support their claim.</u>**

1    Defendants have made no showing of exceptional circumstances required by section
2    35(a) of the Lanham Act for an award of attorneys fees.  There is no showing of economic
3    hardship, pattern of abusive litigation, or bad faith.  1 800 GET THIN has a legitimate
4    claim against defendants for their anti-competitive activities, only the Lanham Act,
5    according to the Court's ruling, is not a remedy where other remedies for defendants'
6    falsity, sock-puppeting, and anti-competitive conduct may well be appropriate.  Stephen W.
7    Boney, Inc. v. Boney Services, Inc., 127 F.3d 821, 825 (9th Cir. 1997)(even when case is
8    "exceptional," whether or not to award attorney's fees is within court's discretion).

9    In Adidas Am., Inc. v. Calmese, 2011 U.S. Dist. 51715 * 4 (D.C. Or. November 19,
10   2010), the Court stated:

11       "'The Ninth Circuit construes the '"exceptional cases" requirement narrowly.'
12       Classic Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008)(quoting Gracie
13       v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000)). Under § 1117(a) '[e]xceptional
14       circumstances can be found when the non-prevailing party's case "is groundless,
15       unreasonable, vexatious, or pursued in bad faith."' Gracie, 217 F.3d 1060, 1071
16       (citation omitted). See also Love v. Associated Newspapers, LTD., 611 F.3d 601,
17       615-16 (9th Cir. 2010). The Ninth Circuit has recognized cases may be 'exceptional'
18       on a showing of 'something less than bad faith'; for example, when a party raises
19       'groundless arguments and creat[es] both serious inconvenience and economic
20       hardship' for the opposing party. Stephen W. Boney, Inc. v. Boney Servs., Inc., 127
21       F.3d 821, 825-27 (9th Cir. 1996). In determining whether a case is exceptional, the
22       Ninth Circuit has also considered a party's engagement in a 'pattern and practice of
23       abusive litigation practices.' Lahoti v. Vericheck, Inc., 636 F.3d 501, 510-11 (9th
24       Cir. 2011).

25       "If a court concludes a case is exceptional under § 1117(a), the court has
26       discretion as to whether to award attorneys' fees. 15 U.S.C. § 1117(a)('The court in
27       exceptional cases may award reasonable attorneys' fees to the prevailing
28       party.')(emphasis added)). See also Classic Media, 532 F.3d 978, 990. Under

§1117(a) 'awards are "never automatic and may be limited by equitable considerations." <u>Rolex Watch, U.S.A., Inc. v. Michel Co.</u>, 179 F.3d 704, 711 (9th Cir. 1999)(quoting <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614, 620 (9th Cir. 1993))."

There is no showing, evidence, or testimony to establish any of the elements necessary to have "exceptional circumstances" in this case, and nothing in the Court's July 25, 2011, Order indicate any bad faith, improper litigation tactics, or groundless claims. Rather, the Court found that 1 800 GET THIN's damages were speculative, even though there was falsity involved in defendants' conduct, and because of that falsity there should be no basis to find "exceptional circumstances" in this case.

## 2. Defendants' authorities do not support their position.

Defendant cites <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139 (9th Cir. 2002), for the proposition an exceptional circumstance exists where the lawsuit is groundless, unreasonable, vexatious, or pursued in bad faith. (Defendants' Memo, p. 1, lines 18-21). However, in <u>Cairns</u>, the Estate and Memorial Fund for Princess Diana brought an action against the Franklin Mint alleging Trademark Infringement from the Mint's use of the name and likeness of Princess Diana claiming both false advertising and they owned the right to post-mortem publicity for Diana. The trial court granted defendant summary judgment and awarded attorney's fees. The Ninth Circuit affirmed, finding defendant had a right to fair use and the false advertising was groundless because defendants statements were true. The case met the exceptional circumstance requirement of the Lanham Act for attorneys fees because the false advertising claim was groundless and unreasonable. The "statements in the advertisements at issue were true" and plaintiffs "had no reasonable basis to believe they were false." <u>Id.</u> at 1156. Plaintiffs' "dilution of trademark claim was groundless and unreasonable because it had no legal basis." <u>Id.</u> The Court called the claim "absurd" and "just short of frivolous." The Court stated the evidence demonstrated there was no basis for plaintiffs' claim the mark "'Diana, Princess of Wales' had taken on a secondary meaning in the mind of the public and now primarily identifies 'charitable and

1  humanitarian services rather than Princess Diana the individual.'" Id. Plaintiffs'

2  endorsement claim, while unsuccessful, was not groundless or unreasonable, and therefore

3  not within the exceptional circumstances of the Lanham Act. Id. n. 15.

4  　　　The statements defendants made against 1 800 GET THIN were false, the "sock-

5  puppeting" was false, and the censoring of favorable comments about 1 800 GET THIN

6  was false. The Court's only criticism was that 1 800 GET THIN's claims and damages

7  were speculative. Nevertheless, defendants' falsity was pervasive, and whether the

8  Lanham Act or some other remedy is more appropriate, there is no basis to suggest 1 800

9  GET THIN has litigated in bad faith or without grounds. Defendants have made no

10  showing of bad faith, vexatiousness, or groundlessness. Gracie v. Gracie, 217 F.3d 1060,

11  1071 (9th Cir. 2000)(even when exceptional circumstances exists, the Lanham Act

12  "provides that the court 'may' award fees; it does not require them.")

13  　　　**3. 1 800 GET THIN is not a party to any other litigation with defendants.**

14  　　　Defendants claim they were forced to defend against an "onslaught" of "frivolous"

15  litigation in four (4) other cases for their reporting on persons and entities related to the

16  "ubiquitous" 1` 800 GET THIN. (Defendant's Memo, p. 9, lines 7-13). However, 1 800

17  GET THIN is not responsible for other plaintiff who it cannot control when they bring

18  other lawsuits against defendants. 1 800 GET THIN is not a party to any of those lawsuits,

19  and defendants claim that 1 800 GET THIN is responsible for "individuals and entities

20  connected" with it as advertisers is baseless and show no pattern of any kind.

21  　　　The lawsuits to which defendants refer are:

22  　　　(1) Michael Omidi v. Hiltzik, LA Superior Court case No. BC451424;

23  　　　(2) Julian Omidi v. Pfeifer, Los Angeles county Superior Court Case No.

24  BC458479;

25  　　　(3) Beverly Hills Surgery Center LLC v. Does, LA Superior Court Case No. BC

26  451267

27  　　　(4) Beverly Hills Surgery Center v. Does, LA Superior Court Case No. BC 436609,

28  which was dismissed.

1    A cursory examination of the suits reveals that neither Stuart Pfeifer nor the LA

2    Times are defendants to the first lawsuit.  Michael Hiltzik is not a party to the second

3    lawsuit. Neither Hiltzik, Pfeifer, nor the LA Times are parties to the third or fourth

4    lawsuits, one of which was dismissed.  Most important, 1 800 GET THIN is not a party to

5    any of these lawsuits.  There is no onslaught of litigation against defendants, and

6    defendants claim borders on the nonsensical.  Farris v. Cox, 508 F. Supp. 222, 227 (N.D.

7    Cal. 1981)(wasteful or duplicative litigation should not be rewarded by an award of

8    attorney's fees).

9        However, defendants have included in their billings their examinations and work on

10   all of these lawsuits.  The entry of January 24, 2011, shows 3 hours spent regarding the

11   state court litigation.  On February 7, 2011, counsel spent .3 hours sending a letter

12   regarding the state court cases, another .2 hours doing the same on February 8, 2011, and .6

13   hours on February 9, 2011, regarding the other cases.   The April 4, 2011, hearing on the

14   motion to dismiss was for the state case, and the .2 hours expended was for unrelated

15   matters.  Of the 2.2 hours expended on April 22, 2011, 1.7 were devoted to state court

16   matters.  The entry of .3 hours on April 26, 2011, was for the state court action as was the

17   1.4 hours expended on May 2, 2011.  The .2 hours on May 2, 2011, communicating with

18   Mr. Oxman regarded the state court matter, as did the .3 hours regarding Mr. Hiltzik and

19   Mr. Oxman, and the 0.2 hours regarding Mr. Silverman.  Altogether there were 8.1 hours

20   expended on the state court matters which have no connection to this case.  The effort to

21   bill for state court matters is made in bad faith, and should result in a denial of defendants'

22   motion in total.  Muniz v. UPS, 2011 U.S. Dist. LEXIS 36697 *3 (N.D. Cal. March 25,

23   2011).

24       **B. Defendants' Counsel Engaged in Unreasonable and Excessive Services.**

25           **1. Defendants "churned" their bill.**

26       An examination of defendants'  billing records reveals excessive "churning" of their

27   bills to generate unnecessary fees.   Defendants claim that Ms. Kahn spent 179.9 hours, Ms.

28   Sagal spent 25.1 hours, and Ms. Sager spent 79.3 hours for a total of 284.3 hours.

1  (Defendant's Memo, p. 16, lines 9-21).   However, that is not what defendants' billings

2  show because those billings when total show 311.4 total hours expended.  Nowhere in

3  defendants' moving papers do they total the number of hours expended or explain how the

4  totals were arrived at.  The bills themselves do not keep a running total.  It is defendants

5  duty to keep sufficient records to permit a determination of the amounts, reasonableness,

6  and details of their services, and defendants have failed to provide sufficient information to

7  calculate their bills.  Cosby v. AutoZone, Inc., 2010 U.S. Dist. LEXIS 137735 * 11 (E.D.

8  Cal. Dec. 16, 2010 )(party must present sufficient records to allow court to carefully

9  scrutinize billing to avoid "padding" and  unreasonably inflated fee requests), citing

10  Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 905 (9th Cir. 1995), and

11  Gates v. Deukmejian, 987 F.3d 1392, 1400 (9th Cir. 1992).

12      On January 28, 2011, counsel expended 2.0 hours drafting a two (2) page letter to

13  plaintiff's counsel, and then on January 31, 2011, counsel spent another 2.0 hours revising

14  it.  On February 5, 2011, counsel revised the letter fo 1.0 hours, and then on February 7,

15  2011, held a telephone conference with her colleagues to revise the letter for .3 hours.

16  The time expenditure was nonsensical and demonstrates the churning of her bill.  However,

17  if that wasn't enough, on February 9, 2011, counsel expended .6 hours reviewing and

18  rewriting the two (2) page letter.   On February 8, 2011, she spent .2 hours discussing her

19  revisions, and then an additional email from plaintiffs counsel.  All together the two page

20  letter took 6.1 hours at $522.00 a hour, for $3,184.20.  The billing was absurd.

21      For the months of January, February, and March defendants expended 15.8, 2.1, and

22  82.1 hours, for a total of 100 hours to file a 25-page motion to dismiss.  Defendants spent

23  four (4) hours time per page, and the expenditure of time was abusive, as was the cost of

24  $52,200.00 or 2,088.00 per page.  The cost of $52,200.00 for a single motion should shock

25  this Court's conscience.

26      Ms. Sager is not a novice at these matters.  Attached as Exhibits "A," "B," and "C"

27  are her billings to the bankruptcy court which show she has been paid $459,313, 91 for

28  identical type proceedings in bankruptcy elated matters. (Request for Judicial Notice,

1  Exhibit "A," p. 33). All that defense counsel was required to do was "push" the buttons on

2  her computer to duplicate work she had previously done, and which she has done for years.

3  Her own declaration contain self-touting of her experience in these types of matters.

4  (Defendants' Memo, p. 13, line, 12, to p. 14, line 2). The expenditure of a hundred hours

5  to research matters which defense counsel has done for years is not credible.  A court may

6  disbelieve an affiant's testimony where it is "too incredible to be accepted by reasonable

7  minds." Butler v. Bensinger, 377 F.Supp 870, 874 (N.D. Ill. 1974).

8                    **2. Defendants have "padded" their bill.**

9          The billing for July, 2011, shows 105.7 hours devoted to a consideration of 1 800

10  GET THIN's Motion to Amend to set forth antitrust and racketeering claims which are

11  different in kind from the Lanham Act. The devotion of this kind of time constituted

12  churning and padding of the bill. Muniz v. UPS, 2011 U.S. Dist. LEXIS 36697 * 3 (N.D.

13  Cal.March 25, 2011). While he Court determined there was no Lanham Act violation, the

14  facts showed the Lanham Act was the wrong remedy because defendants' conduct was

15  anti-competitive and an antitrust violation. Defendants make no contention the

16  Amendment was in any way offered in bad faith. The 105.7 hours expended in response to

17  the request do not meet the standards required for exceptional circumstances to award

18  attorneys fees because the motion, which showed anti-competitive conduct by defendants,

19  was not "groundless, unreasonable, vexatious, or pursued in bad faith." Love v. Associated

20  Newspapers, Ltd., 611 F.3d 601, 615 (9th Cir. 2010).

21          In Farris v. Cox, 508 F. Supp. 222, 227 (N.D. Cal. 1981), the court evaluated a

22  statutory attorneys fee request under 42 U.S.C. section 1988, and found the request

23  amounted to "overreaching" and unreasonable padding of the bill. Id. at 227. The Court

24  warned against bills that were determined to be wasteful, duplicative, or unnecessary:

25              "In cases involving statutory fee requests to the prevailing party in a class

26          action, the parties present time records and a short memorandum of controlling law.

27          To perform this routine task, the Redwood group curiously and, in this court's

28          opinion unnecessarily, engaged the services of the Schear firm in Oakland to prepare

1    a boiler-plate 'Memorandum Brief on Setting Reasonable Attorneys' Fees.' Under

2    the circumstances, the Schear firm's request for payment of 49.5 attorney hours

3    allegedly spent preparing and reviewing this short brief and routine declarations of

4    the Redwood lawyers is patently unreasonable. Further, in light of its decision to

5    delegate this project, Redwood's request for 26.6 attorney hours represents a grossly

6    inflated claim which cannot stand." Id. at 227.

7    The Court concluded:

8         "Even in civil rights cases, fees may be denied in their entirety when

9    petitioning lawyers are guilty of overreaching in seeking outrageously unreasonable

10   fees. Section 1988 provides that a court 'in its discretion, may allow the prevailing

11   party' reasonable attorneys' fees as part of the costs. The present situation is an

12   appropriate occasion for the court to exercise its discretion and deny all fees relating

13   to work on the fee petition because the request here represents a grossly inflated

14   bill." Id.

15        The excessive nature of defendants' billing in this case is inexcusable. There is no

16   justification for the waste, churning, and effort to "stick" it to their opposition. The billings

17   displayed by defendants in this case are shocking and improper. Jadwin v. County of Kern,

18   767 F. Supp. 2d 1069. 1105 (E.D. Cal. 2011).

19                 **3. Defense Counsel's billing is unreasonable.**

20        Defendants expended 88.4 hours talking about, researching, and drafting the 18-page

21   Reply Brief which was filed on May 9, 2011. On May 2, 2011, defendants expended 1.4

22   hours reviewing the opposition, and the .6 hours talking about the opposition, and then

23   another .3 hours talking about the opposition, and then .7 hours talking about an ex part

24   application that never happened. On May 3, 2011, again defendants counsel reviewed the

25   opposition, and then spent 5.3 hours reviewing and analyzing the opposition. The entries

26   in the billing records are nonsensical.

27        On May 4, 2011, defendants' attorneys communicated to one another about the

28   opposition and a reply. They then spent .5 hours talking about it some more. They then

1   expended 8.3 hours drafting a reply, which included another .8 hours of talking about it.

2   On May 5, 2011, defendants talked about it some more for .5 hours and then drafted some

3   more for 11.1 hours.  Then they expended 5.1 hours researching and revising.  That was

4   followed by 9.4 hours of revising the reply on May 6, followed by another 8.5 hours of

5   review on May 7, 2011.  On May 8, 2011, they reviewed the Reply Brief some more for .9

6   hours and then reviewed it some more for 2.4 hours.  That was followed by 1.1 hours of

7   some more review.

8          On May 9, 2011, defendants counsel talked about the Reply some more for .3 hours,

9   and then reviewed it some more for 4.9 hours.  They cite checked it for 2.1 hours.  The

10  expenditure of time on this matter of 88.4 hours was both nonsensical and in bad faith.

11  There was no basis that an 18 page document could reasonably consume such an

12  unnecessary expenditure of time.

13         Altogether, Ms. Sager expended 88.4 hours drafting the 18-page Reply Brief, for

14  $46,144.80, or $2,563.60 per page.  This amount displays a callous "churning" of legal

15  fees.  No reasonable attorney who charges $522.00 per hour should be able to look a court

16  in the eye and say they spent 88.4 hours drafting an 18-page Reply Brief.  The conduct of

17  requesting payment of these fees is nothing short of reckless.

18         In Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980), the Court stated:

19         "If, as appellant argues, the Court were required to award a reasonable fee

20         when an outrageously unreasonable one has been asked for, claimants would be

21         encouraged to make unreasonable demands, knowing that the only unfavorable

22         consequence of such misconduct would be reduction of their fee to what they should

23         have asked for in the first place."

24         Defendants' fee request is outrageous because it (1) charges a different rate from that

25  charged to other courts at the same time, (2) conceals the 30% discount granted in other

26  cases, (3) conceals the duplication and "push button" nature of the proceedings which are

27  identical to other matters where they have been paid $459,313,91, and (4) demonstrates

28  "churning" to make a 18-page Reply which cannot possibly justify 88.4 hours of work.

1   Defendants are attempting to "fool" this Court, and their conduct is improper.  Their

2   conduct fee request should be denied.

3        **C.  Defense Counsel's Services Were Wasteful, Duplicative, and Unjustified.**

4             **1.  Defendants' cannot justify the excessive services.**

5        The 311.4 hours  expended on this case are unreasonable, unnecessary, and

6   unjustified.  The complete number of pleading pages defendants submitted to the Court

7   totaled 74 pages (Motion to Dismiss Memo 25-pages; Reply Brief 18-pages, Opposition to

8   Motion to Amend 25-pages, Ex Parte Application which was withdrawn 6-pages), with

9   several hundred pages of exhibits of the state court cases which had nothing to do with this

10  proceeding.  The real work in this case does not justify $108, 707.15 in fees.

11       Defendants claim the litigation in this case was novel, difficult, and required unusual

12  skill because of the "scorched earth" tactics of 1 800 GET THIN.  (Defendants' Memo, p.

13  2, lines 18-26).  However, defendants' claims are nonsensical.  Not only was there no

14  scorched earth tactic, but also 1 800 GET THIN was not a party to any other legal

15  proceeding.  This was a "push" button case for defendants and the exact same litigation for

16  which they had already billed $459,313.91 in the Bankruptcy Court as of July 19, 2011.

17  (Request for Judicial Notice, Exhibit "A," p. 33).  All defendants did is make the exact

18  same pleading they made in the other matters where they have billed $459,313,91 through

19  the Bankruptcy Court.  (Request for Judicial Notice, Exhibit "B," p. 33).

20       A court should scrutinize an attorney's fee application in detail for "padding,"

21  "duplication," and "excessive" fee requests.  Gracie v Gracie, 217 F.3d 1060, 1071 (9th

22  Cir. 2000)(the District Court should not "uncritically accept[] a party's representations as

23  to the time and money reasonably spend on the case").  The court should reduce the fee

24  award where there is duplication of effort through the inefficient use of multiple counsel.

25  Jadwin v. County of Kern, 767 F. Supp. 2d 1069. 1105 (E.D. Cal. 2011).  Inefficient,

26  unnecessary, and duplicative efforts from counsel seeking fees must be avoided and when

27  present are not subject to compensation.   Muniz v. UPS, 2011 U.S. Dist. LEXIS 36697 * 3

28  (N.D. Cal. March 25, 2011).

1    Defendants' fee application is notable for its "concealment" of its duplication of

2   other case and the push button nature of printing out the same motion it had made in other

3   cases and for which it had already received compensation before the Bankruptcy Court.

4   There is no excuse for not being forthright with this Court.  For defendants to claim they

5   needed to engage in hundreds of hours of research and endless review of legal precedent is

6   not only nonsensical, but also offensive, especially when it included four (4) other lawsuits

7   from other parties which should never be a part of this matter.  5 McCarthy on Trademark

8   and Unfair Competition § 30:102 (4th ed. 2001) ("It is appropriate for the court to reduce a

9   total attorney fee amount by a percentage which represents work on [nonrecoverable]

10   non-Lanham Act claims.").

11           **2.  Defendants hourly fee rate is unreasonable.**

12    Defendants state their rates are "reasonable and reflect the attorneys's experience,

13   skills and reputations.  Sager Decl. ¶ 3.  For example, Ms. Sager is a preeminent First

14   Amendment attorney with more than 25 years of litigation experience.  Sager Decl. ¶ 4."

15   (Defendants' Memo, p. 13, lines 15-18).  However, the self-touting is not only without

16   merit, but also displays that Attorney Sager has been at this for a long time, and she has

17   done these same kinds of motions dozens of times.  Her bankruptcy fee applications

18   disclose that fact.  But what she has done before this Court is inexcusable by claiming she

19   and her firm were required to engage in hundreds of hours of research, when the true facts

20   were they "pushed the buttons" on her computer, printed out the duplicative motions she

21   had filed in the past, and then attempted to charge hundreds of hours for work she had

22   already performed in the past and already been paid for in other cases in the bankruptcy

23   proceeding and elsewhere.

24    According to the "loadstar" method developed by the Supreme Court, "the most

25   useful starting point for determining the amount of a reasonable fee is the number of hours

26   reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v.

27   Eckerhart, 461 U.S. 424, 433 (1983).  A party requesting fees must have accurate and

28   detailed records to justify the services or expenses requested.  Muniz v. UPS, 2011 U.S.

1   Dist. LEXIS 36697 * 3 (N.D. Cal. March 25, 2011).   The court may reduce an award of

2   fees for lack of detail or explanation of the reasons that a fee or cost was incurred in

3   connection with the litigation.  Hensley v.. Eckerhart, 461 U.S. 424, 438 n. 13 (1983).

4       In Jadwin v, County of Kern, 767 F. Supp. 2d 1069, 1105 (E.D. Cal. 2011), the Court

5   stated:

6           "'The fee applicant bears the burden of documenting the appropriate hours

7       expended in litigation and must submit evidence in support of those hours worked.'

8       Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  A court must guard

9       against awarding fees and costs which are excessive and must determine which fees

10      and costs were self-imposed and avoidable.  INVST Fin. Group v. Chem-Nuclear

11      Sys., 815 F.2d 391, 404 (6th Cir.1987).  A court has 'discretion to "trim fat" from,

12      or otherwise reduce, the number of hours claimed to have been spent on the case.'

13      Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)(citation omitted).

14      Time expended on work deemed 'excessive, redundant, or otherwise unnecessary'

15      shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley [v.

16      Eckerhart,] 461 U.S. [424] at 433-34 [(1983)]."

17      Defendants' fee request is unjustified because defendants' counsel (1) charge one

18  rate to one court and a different rate to another court, (2) conceals the 30% discount

19  granted in other cases, (3) conceals the duplication and "push button" nature of the

20  pleadings they filed in this case which are virtually identical to their pleadings in other

21  cases where they have been paid $459,313.91, and (4) demonstrates "churning" and

22  overreaching of unconscionable proportions.  Defendants' conduct has been an improper

23  attempt to "fool" this Court.  Their request for attorneys fees should be denied for

24  "churning" and "bad faith."

25          **3. Defendants' request for "Fees on Fees" is improper.**

26      Defendants request $11,506.50, for having filed this Motion for Attorneys Fees,

27  along with additional fees they might incur in connection with further briefing and hearings

28  on this motion. (Defendants' Motion, p. 1 n. 1, lines 25-28).  However, a request for "fees

1    on fees" for litigating a motion for Attorney's Fees is improper. <u>Luna v. Hoa Trung Vo.</u>,

2    2011 U.S. Dist. LEXIS 56427 *31 (E.D. Cal. May 25, 2011). A litigant is not entitled to

3    "fees on fees" for seeking Attorney's Fees. <u>Thompson v. Gomez</u>, 45 F.3d 1365, 1368 (9th

4    Cir. 1995). "Fees on fees" litigation should be excluded from the calculation of an award

5    for attorney's fees. <u>Commissioner, I.N.S. v. Jean</u>, 496 U.S. 154, 163 n.10 (1990).[3]

6        Defendants' Motion for Attorneys Fees is a carbon copy of the motion defendants

7    filed in the case of <u>Michael Omidi v. Michael Hiltzik and LA Times</u>, LA Superior Court

8    Case No. BC 458479 (Req. Jud. Not., Exhibit F, p. 167). The Memorandum is the same,

9    the declarations are the same, the exhibits are the same. The wording in the Memorandum

10   is virtually identical.

11       When it comes to touting Ms. Sager, the Memorandum in this case says "These rates

12   are reasonable and reflect the attorneys' experience, skills and reputations. Sager Decl. ¶ 3.

13   For example, Ms. Sager is a preeminent first Amendment attorney with more than 25 years

14   of litigation experience." (Defendants' Memo, p. 13, lines 15-18). Despite 25-years of

15   experience, Ms. Sager engages in push button carbon copy litigation where in the Omidi

16   case her Memorandum states: "The rates described above are more than reasonably, in

17   light of the respective attorneys' experience, skills and reputations. Kohn Decl. ¶¶ 5-9.

18   For example, Ms. Sager is a preeminent First Amendment attorney with more than 25 years

19   of litigation experience." (Defendants' Memo, p. 6, lines 9-11).

20       The copying of other litigation pleadings in this case is offensive. The request for

21   $11,506.50 to push a button and duplicate an already completed motion in another matter is

22   unreasonable. The Court should recognize defendants' attorneys have provided no time

23   accounting for the making of their $11,506.50 motion because such an account would be a

24   "sham." This request for "fees on fees" is, in and of itself, an overwhelming reason to deny

25   defendants' motion. <u>Jadwin v. County of Kern</u>, 767 F. Supp. 2d 1069. 1105 (E.D. Cal.

26

27      [3]   The Lanham Act does not provide for an award for every fee or cost a party incurs, and it does

28   not provide for an award of costs. <u>See</u> <u>Kingsford Products Company v. Kingsfords, Inc.</u>, 1989 WL 161544
(D. Kan. 1989)("The Lanham Act ... does not define costs to include attorney's fees but only allows
recovery of attorney's fees in exceptional cases.").

1 | 2011)("A court must guard against awarding fees and costs which are excessive and must
2 | determine which fees and costs were self-imposed and avoidable.").

3 | ### III.

4 | ### CONCLUSION

5 | For the foregoing reasons, plaintiff, 1 800 GET THIN, LLC., requests defendants'

6 | Motion to Recover Attorneys' Fees and Costs be denied.

7 | DATED: August 22, 2011          SILVERMAN & ASSOCIATES

By: _____

Robert B. Silveman
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system on this 22th day of August, 2011.


/s/ Brian Oxman


Case No.: 11-CV-0505-ODW-Ex                    OPP TO MTN FOR ATTY FEES