1 | DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
2 |   kellisager@dwt.com
ROCHELLE L. WILCOX (State Bar No. 197790)
3 |   rochellewilcox@dwt.com
LISA J. KOHN (State Bar No. 260236)
4 |   lisakohn@dwt.com
865 South Figueroa Street, Suite 2400
5 | Los Angeles, California 90017-2566
Telephone: (213) 633-6800 / Fax: (213) 633-6899
6 |
LOS ANGELES TIMES COMMUNICATIONS LLC
7 | KARLENE GOLLER (State Bar No. 147065)
   karlenegoller@latimes.com
8 | 202 West First Street
Los Angeles, California 90012
9 | Telephone: (213) 237-3760 / Fax: (213) 237-3810

10 | Attorneys for Defendants MICHAEL HILTZIK,
STUART PFEIFER, and LOS ANGELES TIMES
11 | COMMUNICATIONS LLC

12 | UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
13 | WESTERN DIVISION

14 | 1 800 GET THIN, LLC,                  ) Case No. 2:11-CV-0505-ODW (Ex)
                                          ) Assigned to the Honorable
15 |              Plaintiff,               ) Otis D. Wright
                                          )
       vs.                                )
16 |                                      )
Michael Hiltzik, an individual; Los       ) TIMES DEFENDANTS' REPLY IN
17 | Angeles Times Communications,         ) SUPPORT OF MOTION FOR
LLC; Stuart Pfeifer, an individual; et    ) ATTORNEYS' FEES AND COSTS;
18 | al.                                   ) MEMORANDUM OF POINTS AND
                                          ) AUTHORITIES; DECLARATION OF
19 |              Defendants.             ) JAMES C. WAGGONER AND
                                          ) SUPPLEMENTAL DECLARATION
20 |                                      ) OF LISA J. KOHN WITH EXHIBITS
                                          ) 12-19
21 |                                      )
                                          ) Hearing Date: September 12, 2011
22 |                                      ) Time:          1:30 p.m.
                                          ) Courtroom:     11
23 |                                      )
                                          )
24 | _____) Action Filed: January 18, 2011

25 |        Defendants Michael Hiltzik, Stuart Pfeifer, and Los Angeles Times

26 | Communications LLC (collectively, the "Times Defendants" or "Defendants")

27 | respectfully submit this Reply in support of their Motion To Recover Attorneys'

28 | Fees And Costs pursuant to 15 U.S.C. § 1117(a) ("Motion" or "Fee Motion").

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ...................................................... 1

II.  THIS CASE IS "EXCEPTIONAL" UNDER SECTION 1117(A) ............... 3

III. DEFENDANTS' LODESTAR FIGURE IS REASONABLE ...................... 6

     A.  The Hourly Billing Rates For Defense Counsel Are Reasonable. ....... 6

     B.  The Hours Spent By Defense Counsel Are Reasonable. .................... 8

     C.  Plaintiff Misrepresents DWT's Applications To The Bankruptcy
         Court. ................................................................................... 9

     D.  Plaintiff's "Duplication" Argument Also Is Completely
         Frivolous. ........................................................................... 11

TIMES DEFENDANTS' REPLY ISO FEE MOTION

DWT 18118414v3 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**CASES**

Cairns v. Franklin Mint Co.,
    292 F.3d 1139 (9th Cir. 2002) ......................................................... 3, 5

Children's Hospital & Medical Center v. Bontá,
    97 Cal. App. 4th 740 (2002) ...............................................................9

Commissioner, I.N.S. v. Jean,
    496 U.S. 154 (1990)........................................................................ 12

Jordan v. Dept. of Justice,
    89 F.R.D. 537 (D.D.C. 1981)...............................................................7

Lahoti v. Vericheck, Inc.,
    636 F.3d 501 (9th Cir. 2011) ..............................................................3

Luna v. Hoa Trung Vo.,
    2011 U.S. Dist. LEXIS 56427 (E.D. Cal. May 25, 2011) ................................. 12

Moreno v. City of Sacramento,
    534 F.3d 1106 (9th Cir. 2008) ......................................................... 13

Scientific Weight Loss v. U.S. Medical Care Holdings,
    2009 U.S. Dist. LEXIS 64061 (C.D. Cal. July 15, 2009)...................................3

Serrano v. Unruh,
    32 Cal. 3d 621 (1982) ......................................................................7

Sorenson v. Mink,
    239 F.3d 1140 (9th Cir. 2001) ......................................................... 2, 7

Thompson v. Gomez,
    45 F.3d 1365 (9th Cir. 1995) ......................................................... 12

Vocca v. Playboy Hotel of Chicago, Inc.,
    519 F.Supp. 900 (N.D. Ill. 1981).........................................................7

**STATUTES**

11 U.S.C. § 105(a)........................................................................ 10

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

11 U.S.C. § 331 ............................................................................................... 10

15 U.S.C. § 1125(a)(1)(B) .............................................................................. 4

**RULES**

Federal Rule of Civil Procedure 12(b) ........................................................... 4

iii

TIMES DEFENDANTS' REPLY ISO FEE MOTION
DWT 18118414v3 0026175-000388

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I. SUMMARY OF ARGUMENT

Plaintiff 1 800 Get Thin, LLC and its principals, Michael Omidi and his brother Julian Omidi, have filed more than a half-dozen duplicative, meritless lawsuits[1] in a transparent attempt to stifle any public discussion about their controversial Lap-Band businesses.  Despite being forewarned about the inherent defects in its claim, and about the Times Defendants' right to recover fees incurred in defending against it (Motion, Ex. 2), Plaintiff chose to pursue this lawsuit, consistent with 1 800 Get Thin, LLC and the Omidis' ongoing economic warfare against The Times.  Now, faced with Defendants' Fee Motion, Plaintiff responds with a venomous rant against defense counsel, which goes to remarkable lengths to misrepresent and distort the facts.

First, Plaintiff attempts to distract the Court by making false assertions about the rates reflected in three fee applications filed in the Tribune Company's bankruptcy proceedings by Defendants' counsel, Davis Wright Tremaine ("DWT").  This is a red herring.  The applications – as Plaintiff's own RJN even states – are for fees incurred in 2010, and reflect the 2010 rates charged to The Times.  Plaintiff's lawsuit was filed on January 18, 2011, and all of the fees and costs in this case were incurred in 2011.  Plaintiff's bizarre accusation that the Fee Motion in this case uses "different" rates than the bankruptcy filings last year deliberately ignores DWT's rate adjustment in 2011, which Plaintiff's counsel knew about, since the change in DWT's rates between 2010 and 2011 was reflected in a fee motion filed in a related case against The Times **before** the Opposition brief was filed here.  See Plaintiff's RJN at 180 n.7, 188, 203; Supplemental Declaration of Lisa Kohn at ¶ 3.[2]

---

[1] See Amended Notice Of Related Cases Etc., filed April 26, 2011 (Docket No. 7); see also 1 800 GET THIN, LLC v. Does 1-100, LASC No. BC451267; Beverly Hills Surgery Center et al. v. Does 1-100, LASC No. BC451507.

[2] Plaintiff ignores the relevant test – whether the billing rates for this matter are within the range of rates charged by comparable attorneys for comparable work.  Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001); Motion at 11-13.  The only evidence before this Court shows that DWT's rates easily meet this test.

1

TIMES DEFENDANTS' REPLY ISO FEE MOTION
DWT 18118414v3 0026175-000388

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<span style="padding-left:2em"></span>**Second**, Plaintiff misrepresents Bankruptcy Court records in claiming that the Times Defendants "concealed" a "30% discount" on defense counsel's fees. This false assertion either derives from ignorance of Bankruptcy Court proceedings, or a deliberate distortion of the Bankruptcy Court records. The **interim** fee applications that are attached to Plaintiff's RJN set forth the total amount of fees (which reflect a 10% discount, as noted in the Fee Motion),[3] and <u>also</u> show a calculation for 80% of the fees, pursuant to a Bankruptcy Court order concerning the <u>timing</u> of payments to law firms designated as "special counsel." Under the order, 80% of fees and 100% of costs for special counsel may be paid without court order if no objection is made within 20 days after the application is filed; the remainder is paid after Court approval. <u>See</u> Declaration of James C. Waggoner, ¶ 7, Ex. 13. There is no 20% "discount," and Plaintiff's hysterical rant should be disregarded.

<span style="padding-left:2em"></span><u>Third</u>, Plaintiff's remaining attacks on defense counsel for purported "churning" of fees are based on either conscious falsehoods or a sloppy review of the Motion and evidence. Among other things, the Opposition inaccurately calculates the fees for work done by associates and paralegals as being billed at the higher rated used by Defendants' lead counsel, Kelli Sager, so that Plaintiff can set up a straw man of false indignation about the supposed total expense for various pleadings. Thus, Plaintiff inaccurately multiplies 100 hours spent by "Defendants' counsel" on the motion to dismiss (Opp. at 14) and 88.4 hours it falsely claims "Ms. Sager expended … drafting the 18-page Reply Brief" (<u>id.</u> at 17) by her $522 billing rate – when the evidence showed Ms. Sager's actual hours **on the entire case** was only **85.3** hours.[4] This type of gross distortion is reflected throughout the Opposition, as Plaintiff desperately tries to cast aspersions on defense counsel and on the Times Defendants' extremely reasonable fee request.

---

[3] <u>See</u> Motion at 13, Sager Decl. at ¶ 3, Ex. 1.

[4] Plaintiff does not suggest – nor could it– that the actual number of hours Ms. Sager billed was unreasonable.

2

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

There is no justification for Plaintiff to evade a fee award after it brought yet another meritless lawsuit, and engaged in scorched-earth litigation tactics in pursuing it. Consequently, this Court should grant the Fee Motion in its entirety, and award the Times Defendants $108,707.15 in fees and costs as set forth in the Motion, and an additional $5,008.95 in fees incurred in connection with this Reply, for a total of **$113,716.10**. Kohn Supp. Decl. at Ex. 15.

## II.  THIS CASE IS "EXCEPTIONAL" UNDER SECTION 1117(A)

Section 1117(a) provides that "in exceptional cases" a court may award reasonable attorneys' fees and costs to a defendant who prevails on a Lanham Act claim. As Defendants explained in the Fee Motion, a case is "exceptional" under Section 1117(a) if the plaintiff's Lanham Act claim is "groundless, unreasonable, vexatious, or pursued in bad faith." Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir. 2002) (emphasis added); see also Motion at 3-5. Courts also have found cases to be exceptional where the plaintiff's litigation tactics unreasonably increased its opponent's burden of defending the lawsuit, see Scientific Weight Loss v. U.S. Medical Care Holdings, 2009 U.S. Dist. LEXIS 64061 at *13-14 (C.D. Cal. July 15, 2009), and where the plaintiff employed abusive litigation tactics. See Lahoti v. Vericheck, Inc., 636 F.3d 501, 510-511 (9th Cir. 2011). Here, both circumstances were present; thus, this case clearly is "exceptional."

In an attempt to avoid liability for Defendants' fees, Plaintiff first contends that the Times Defendants' have not made an adequate evidentiary showing, because Defendants have not provided testimony from Michael Hiltzik and Stuart Pfeifer denying Plaintiff's preposterous allegations. This is nonsense. A defendant seeking fees under Section 1117(a) has no obligation to rebut the plaintiff's factual allegations on a motion under F.R.C.P. 12(b). Unsurprisingly, Plaintiff fails to cite any case law suggesting that Defendants bear any such burden, which would nullify the point of early dismissal of cases, like this one, that have no legal merit.

Next, in a blatant misinterpretation of this Court's order granting Defendant's

motion to dismiss with prejudice, Plaintiff asserts that "the Court found that 1 800 GET THIN's damages were speculative, even though there was falsity involved in defendants' conduct, and because of that falsity there should be no basis to find 'exceptional circumstances' in this case." This Court did <u>not</u> find that "there was falsity," nor did it even address whether 1 800 GET THIN's <u>damages</u> were speculative. <u>See</u> Ex. 4. This Court found that Plaintiff's false endorsement claim failed as a matter of law because the Defendants' use of Plaintiff's mark was a nominative fair use. Ex. 4 at 4-5. Significantly, this Court found that "<u>Defendants have not done anything that would suggest Plaintiff has sponsored or endorsed Defendants' use of Plaintiff's claimed trademark</u> because the articles and comments, by Plaintiff's own admission, do not portray Plaintiff in a positive light." <u>Id.</u> at 5 (emphasis added). This Court also properly found that Plaintiff's false advertising claim failed as a matter of law, because "the Los Angeles Times publications are outside the scope of § 1125(a)(1)(B)." <u>Id.</u> at 6. The Court held, in the alternative, that Plaintiff's <u>allegations</u> were "too speculative" to state either claim under the Lanham Act. <u>Id.</u> at 5-6. But even apart from its inaccurate description of this Court's ruling, Plaintiff does not cite any authority supporting its conclusion that the claims alleged were "reasonable" where, in contrast, the Court found that there was no basis for a Lanham Act claim.

Remarkably, Plaintiff then insists that its Lanham Act claim could not be deemed "groundless" even if there was no basis whatsoever for a claim under this federal statute. Opp. at 12. Indeed, Plaintiff essentially **concedes** that the "Lanham Act was not the correct remedy." Opp. at 3. But Plaintiff ignores the fact that his counsel <u>twice</u> was put on notice that there was no basis for a Lanham Act claim, <u>before</u> the Motion To Dismiss was filed. Ex. 2; Sager Decl. at ¶ 13. Plaintiff's disregard of the law, particularly in the face of such notice, easily satisfies the <u>Cairns</u> test for fee awards under Section 1117(a) where a claim is "groundless, unreasonable, vexatious, <u>or</u> pursued in bad faith." 292 F.3d at 1156.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In addition, Plaintiff's assumption that it had a basis for some other claim – namely, its convoluted antitrust and RICO theories – already was rejected by this Court, which granted the Times Defendants' motion to dismiss <u>with prejudice</u>, and denied Plaintiff's motion to amend the complaint to add new claims, on the grounds that "providing Plaintiff an opportunity to amend its Complaint would be futile." Ex. 4 at 7.  Nor does any authority require this Court to consider whether some other unidentified claim might conceivably exist before it can find that Plaintiff's filing of a Lanham Act claim was "groundless."

Independently, this case qualifies as exceptional within the meaning of the statute because Plaintiff employed abusive litigation tactics and unreasonably increased the Times Defendants' burden of defending the lawsuit.  <u>See</u> Motion at 9-11.  Plaintiff did not meaningfully respond to this argument, nor did it deny that its own tactics significantly increased the cost of defense.  These included:  (1) filing a convoluted claim under the Lanham Act without identifying the section of the Act under which it asserted a claim; (2) attempting to add new allegations and theories in its Opposition to Defendants' Motion to Dismiss; and (3) seeking leave to file an "amended" complaint long after the Motion To Dismiss was filed, that was more than 150 pages long and included two new, futile claims (Docket No. 17-1).

Moreover, Plaintiff does not deny that its principals, Michael and Julian Omidi, have used the courts to wage economic warfare against The Times, its employees, and its readers.  Nor does Plaintiff provide <u>any evidence</u> to contradict the well-documented claims about the relationship between it, the Omidis, and other entities they control.  Instead, it hides behind its transparent strategy of filing coordinated lawsuits on behalf of <u>related</u> individuals and entities (Opp. at 13), and misleads the Court by falsely claiming that "1 800 GET THIN was not a party to any other legal proceeding" (Opp. at 18).[5]

---

[5] As noted in materials previously filed with this Court, Plaintiff 1 800 GET THIN, LLC filed a state court lawsuit against the <u>same</u> latimes.com anonymous

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Because Plaintiff's vexatious litigation conduct unreasonably increased the cost and aggravation of defending against its meritless lawsuit, the Times Defendants should be awarded all of their reasonable attorneys' fees and expenses.

## III.    DEFENDANTS' LODESTAR FIGURE IS REASONABLE

Defendants' Fee Motion was amply substantiated with evidence, including (1) detailed billing records and descriptions of the qualifications of the attorneys who worked on this case (Sager Decl. at ¶¶ 3-10 and Ex. 1); (2) a declaration from a leading California media lawyer, who opined that the rates billed by DWT attorneys in this matter were reasonable (Jassy Decl. at ¶¶ 4-5); and (3) a declaration from The Times' in-house counsel, who agreed that the rates and fees were reasonable, and that bills had been or would be approved for payment (Goller Decl. at ¶ 5).

In contrast, Plaintiff has not submitted <u>any</u> evidence challenging the Times Defendants' fees, its attorneys' billing rates, or the amount of time expended. Consequently, the Times Defendants' fee request should be awarded in full.

## A.    The Hourly Billing Rates For Defense Counsel Are Reasonable.

Plaintiff does not and cannot dispute that the billing rates of the Times Defendants' attorneys are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Sorenson</u>, 239 F.3d at 1145.  Indeed, the billing rates for this matter were discounted rates that are well below rates charged by comparable firms, and are consistent with rates approved in other cases even many years ago.  <u>See</u> Sager Decl. ¶ 13; Motion at 14-15.

Plaintiff's sole objection to DWT's rates is that the 2011 hourly rates reflected in the Motion are "higher" than the rates reflected in DWT's Bankruptcy Court applications.  Plaintiff's RJN, Exs. A-C.  Based solely on its misreading of

---

posters that were sued in this case:  <u>1 800 GET THIN LLC, et al. v. Does 1 through 100</u>, LASC Case No. BC451507.  <u>See</u> Kohn Decl. at ¶ 4; <u>See</u> Amended Notice Of Related Case and Pendency of Other Actions, filed April 26, 2011 (Docket No. 7).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

these documents, Plaintiff accuses defense counsel of engaging in "willful subterfuge" and asks for "total denial of all fees requested."[6] See Opp. at 4, 6. This is absurd. Defendants have not provided "different" rates to different courts, nor have they concealed DWT's 2010 rates from Plaintiff, its counsel, or this Court. To the contrary, Plaintiff and its counsel were aware from a pending fee motion in a vexatious suit by a related party that DWT billed at 2010 rates for work performed in 2010, and at 2011 rates for work performed this year. See Plaintiff's RJN at 180 n.7, 188, and 203; Kohn Supp. Decl. at ¶ 3.[7] That motion, filed in a SLAPP case involving Michael Omidi, explained in the rates for attorneys who worked on this lawsuit during both 2010 and 2011. See RJN at 180 n.7 and 188.

In an attempt to confuse the Court (and smear defense counsel), Plaintiff's Opposition fails to disclose that the interim fee applications DWT submitted to the Bankruptcy Court, which Plaintiff has submitted here, sought reimbursement of fees for September, October, and November of 2010.[8] See Plaintiff's RJN at 1 and Exs.

---

[6] Plaintiff relies on dicta in Serrano v. Unruh, 32 Cal. 3d 621, 635 (1982) for the contention that the entire Fee Motion should be denied; that case, in which attorneys' fees were not denied or even reduced, does not support such a ruling. In fact, the Court remanded the case, finding that the trial court erred in denying fees for preparing the fee motions. Id. at 639. The string cite contained in Plaintiff's Opposition (Opp. at 8-9) only includes two cases that denied fees altogether, both of which are distinguishable. In Vocca v. Playboy Hotel of Chicago, Inc., 519 F. Supp. 900, 901-902 (N.D. Ill. 1981), counsel seeking fees was dilatory in prosecuting its case and requesting fees, and the request included hours for clerical work – neither of which are true here. In Jordan v. Dept. of Justice, 89 F.R.D. 537, 540-541 (D.D.C. 1981), the court found that the plaintiff's fee motion was inadequately documented and included work performed by volunteers; neither of these defects apply to the Times Defendants' motion either.

[7] The increase in Ms. Sager's rate, from $470.48 in 2010 to $522.00 in 2011, reflects an adjustment taken after Ms. Sager voluntarily froze her rate on Times matters in 2009, and limited her rate increase in 2010. Kohn Supp. Decl. at ¶ 2. Mr. Glasser's rate changed from $261.90 in 2010 as a third-year associate to $292.50 in 2011 as a fourth-year associate, including a standard tenure increase. Id.

[8] The Opposition inaccurately claims that "[p]ortions of the attached Fee Applications to the Bankruptcy Court involve the preparation for the litigation involved in this matter." Opp. at 4 (emphasis added). This is flatly untrue. Those three applications do not contain any entries for work performed in this case, which was not filed until January 18, 2011. See Plaintiff's RJN at Exs. A-C. Instead, the applications reflect work performed in 2010 on entirely different matters, one of

---

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A-C.  Instead, it misleadingly suggests that the applications reflect fees and rates for 2011, and then makes the false accusation that DWT sought "different" rates here. Opp. at 4.  There is no excuse for this kind of misrepresentation, whether careless or deliberate, nor for Plaintiff's unfounded attacks on Defendants' counsel.  This Court should find that the rates charged by DWT are reasonable.

**B.      The Hours Spent By Defense Counsel Are Reasonable.**

Plaintiff's assertion that the fees sought by the Times Defendants are "excessive" (Opp. at 9) similarly has no basis in reality.[9]  To support its concocted premise, the Opposition falsely asserts that dozens and dozens of hours were billed by Defendants' lead counsel, Kelli Sager, when, in fact, the time was spent by associates and paralegals with substantially lower rates.  For example, the Opposition misrepresents that Ms. Sager alone billed 88.4 hours on the reply brief (Opp. at 17).  The evidence, in the form of undisputed billing records, shows that for the seven-month period between the filing of the lawsuit until the fee motion was filed, Ms. Sager spent a **total** of **85.3 hours** on this entire case.  Sager Decl. at ¶ 6 and Ex. 1; Motion at 16, 19.  The majority of time spent by defense counsel on research, drafting pleadings, and other legal work was done by associates and paralegals, in an effort to keep the fees lower.[10]  Moreover, the Fee Motion did not include time for The Times' in-house counsel, which also would be recoverable.

Plaintiff's only other "argument" concerning the number of hours reflected in the Fee Motion is the unsupported suggestion that the reasonableness of defense

which was another vexatious lawsuit filed by entities affiliated with Plaintiff against anonymous "Doe" commenters on The Times' website.  In that case, The Times successfully opposed a motion to compel the disclosure of the posters' identities, and obtained sanctions against the named plaintiffs. Kohn Supp. Decl. at ¶ 4.

[9] All time entries in Defendants' billing statements are for work concerning Plaintiff and this case, not for the related state cases.  See Kohn Supp. Decl. at ¶ 5.

[10] Plaintiff also exaggerates the rate increase for "Paralegals" between 2010 and 2011 by inappropriately comparing the **2010** billing rate of $108.00 for Ms. Roth, a junior paralegal, to the **2011** billing rate of $171.00 for Ms. Gonzaque-Taylor, a senior paralegal.  Compare Opp. at 4 with Ex 1.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

counsel's fees should somehow be connected to the number of pages in the pleadings filed with the Court.  See, e.g., Opp. at 18 ("The complete number of pleading pages defendants submitted to the Court totaled 74 pages …, with several hundred pages of exhibits…").  No authority supports such a convoluted suggestion.  To the contrary, as one California Court of Appeal stated:

> The length of a document is no gauge of the time needed to prepare it. The pithy pleadings that are most effective usually require more time to prepare than the endlessly discursive and digressive documents judges often receive.… Judicial use of the length of a pleading or brief as a measure of the time necessary to prepare it would reward verbosity and penalize thoughtful and precise draftsmanship.  Given the ponderous plethora of prolix pleadings that inundate our courts, no trial judge in his or her right mind would adopt such an approach.

Children's Hospital & Medical Center v. Bontá, 97 Cal. App. 4th 740, 783 (2002) (emphasis added) (rejecting argument that fee bill reflecting 39 hours to prepare a six-page document was excessive).

## C.    Plaintiff Misrepresents DWT's Applications To The Bankruptcy Court.

In an even more egregious misstatement of the facts, Plaintiff asserts that the Times Defendants have "concealed" that defense counsel agreed to a "30% discount" of its fees in this matter.  Opp. at 6-7.  This is false.

As set forth in the Motion, DWT agreed to provide the Times Defendants with a discount from the standard rates it ordinarily charges.  See Sager Decl. at ¶¶ 3-4.  The pre-negotiated hourly rates reflect a 10% discount from DWT's standard billing rates in 2011, the same 10% discount (applied to 2010 rates) is reflected in the interim fee applications. This further demonstrates the reasonableness of the rates and total amount sought.  See Motion at 13.

Undeterred by this inconvenient truth, Plaintiff distorts the fee applications filed by DWT with the Bankruptcy Court overseeing the proceedings involving The

Times' parent company, Tribune Company.  In those proceedings, law firms performing services for Tribune or its subsidiaries are governed by the "Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331" (the "Compensation Order").  See Waggoner Decl. at ¶ 4, Ex. 13.  Section (b) of the Compensation Order provides that law firms that have been approved as "special counsel" (including DWT) must submit interim fee applications for each month in which services were provided.  Once the fee application is submitted to the Bankruptcy Court,

> Each Notice Party will have twenty (20) days after service of a Monthly
> Fee Application to object thereto (the "Objection Deadline"). If no
> objections are raised prior to the expiration of the Objection Deadline,
> … the Debtors shall be authorized to pay such Professional an amount
> equal to 80% of the fees and 100% of the expenses requested in its
> Monthly Fee Application (the "Maximum Interim Payment").

See Ex. 13.  This provision is common in bankruptcy court, and allows professionals who perform necessary services for the debtor company to be paid for 80% of their fees and 100% of their costs in a timely fashion, rather than waiting for lengthy court proceedings.  Waggoner Decl. at ¶ 6.

The Compensation Order does not impose a "discount" or reduce the amount of fees to which the requesting party is entitled.  The remaining fees (20% of each month's bill) are paid after the Court (or its designated Trustee) reviews the bills and has a hearing, at which the final award is made. Id. at 7; Ex. 13 at 4.  Thus, the Compensation Order merely affects the timing on payment of a portion of DWT's fees. Id.  None of these proceedings limits in any way the amount this Court should order Plaintiff to reimburse the Times Defendants for the fees and costs incurred in defending against this meritless lawsuit.

TIMES DEFENDANTS' REPLY ISO FEE MOTION
DWT 18118414v3 0026175-000388

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### D.     Plaintiff's "Duplication" Argument Also Is Completely Frivolous.

Plaintiff also asserts that the amount of time spent by counsel for the Times Defendants must be excessive because they "duplicated its prior motions in like cases." Opp. at 7. Plaintiff's "evidence" of duplication is two successful SLAPP motions that Defendants were forced to file in vexatious state court cases filed by Plaintiff's principals. Those cases involved libel claims, not trademark claims, and Defendants' Motions were based on different legal arguments than the pleadings here. Given that Plaintiff's lawsuit here was designed to evade the SLAPP statute and its mandatory fee provision, by trying to improperly shoe-horn a claim under the federal Lanham Act, Plaintiff cannot now complain that its tactic required defense counsel to research and draft entirely different briefs than in the state cases.

Plaintiff's claim that the Fee Motion here "duplicates" the fee motion in one of the state court cases (RJN at Ex. F) also is flawed, because the statutory basis for the fee award, and the supporting invoices that had to be reviewed, are different. Moreover, since the Fee Motion in this case was filed first, it could hardly have been copied wholesale from the motion that was filed later in the Omidi case.[11]

Plaintiff's related assertion, that DWT's fee applications show that this case involved "the exact same pleading [DWT] made in the other matters where they have billed $459,313.91 through the Bankruptcy Court" (Opp. at 18) is even more ludicrous. Notably, Plaintiff does not point to even a single item in the applications describing the "exact same" work; instead, these documents show that DWT's work for The Times and Tribune involves wide-ranging legal issues, including FTC

---

[11] Plaintiff's argument that "a request for 'fees on fees' for litigating a motion for Attorney's Fees is improper" (Opp. at 20-21) is not supported by its cited cases, two of which **awarded** fees for fee motions. Luna v. Hoa Trung Vo., 2011 U.S. Dist. LEXIS 56427, *31 (E.D. Cal. May 25, 2011); Thompson v. Gomez, 45 F.3d 1365, 1368 (9th Cir. 1995). In the third case, the court found discretion to reduce a fee award where it was out of balance with the results obtained. See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n.10 (1990). Here, the Times Defendants obtained a complete victory, fully justifying the cost of litigating this Fee Motion (a motion that Plaintiff could have avoided, if its counsel had stipulated to a fee award).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

matters, CPRA lawsuits, and courtroom photography issues, among more than a dozen different matters – none of which have any relevance to this case.

Similarly, Plaintiff's assumption that DWT must have filed this same exact brief many times before is fundamentally flawed.  Notwithstanding the efficiencies that an experienced firm can provide, Plaintiff is sadly mistaken if it believes that competent lawyers simply "push a button" and print out the same brief in every case, without regard to the facts of the case or the claims made, and without conducting any specific research or even updating the research.  As the Ninth Circuit recently observed, in discussing a fee award:

> [A] competent lawyer won't rely entirely on last year's, or even last
> month's, research:  Cases are decided; statutes are enacted;
> regulations are promulgated and amended.  A lawyer also needs to
> get up to speed with the research previously performed.  All this is
> duplication, of course, but it's necessary duplication; it is inherent in
> the process of litigating over time … One certainly expects some
> degree of duplication as an inherent part of the process.  There is no
> reason why the lawyer should perform this necessary work for free.

Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) (original emphasis). The Court also emphasized that a trial court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  Id. at 1112.  Thus, practices engaged in by the losing party's counsel cannot be the barometer for "reasonable" efforts made by counsel for the prevailing party.

Plaintiff chose to file a meritless complaint, which forced the Times Defendants to prepare a complete defense.  Because Defendants prevailed, Plaintiff should be held responsible for all of their fees and costs, totaling $113,716.10.

DATED:  August 29, 2011              By: _____/s/_____
                                          Kelli L. Sager

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899